UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                    Case No. 3:20-cr-86-J-TJC-JBT

CHRISTIAN FLETCHER,

    Defendant.
_____/

**FLETCHER'S MOTION FOR HEARING TO DETERMINE THE ADMISSIBILITY OF EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 104(a) AND MEMORANDUM OF LAW**

Defendant Christian Fletcher, pursuant to Federal Rule of Evidence 104(a), (b), and (c), requests that this Court hold a preliminary hearing to determine the admissibility of evidence the government intends to rely on at trial. Both the evidence disclosed in discovery from the government and the discovery the defense has provided to the government reflect that the Private Insurers altered data provided by the defendants before giving it to the government. The government intends to rely on this altered data to prove guilt at trial. The defense contends that the evidence is irrelevant (Fed. R. Evid. 401), is far more confusing than probative of any relevant issue (Fed. R. Evid. 403) and is inadmissible as a summary document (Fed. R. Evid. 1006).

A.  **Statement of Facts**

1. The government intends to use printouts/spreadsheets of billing data ("data") it received from Private Insurers, the alleged victims in the case, who obtained the data from clearing houses that contracted with the Private Insurers.

2. The Private Insurers did not receive this data directly from either Fletcher or his company, LifeBrite Labs.

3. The government intends to use this data to prove the Private Insurers received false information from one or more billing companies or hospitals.

4. The data flowed through at least three, and sometimes four, intermediaries. In a typical instance, Fletcher and his lab provided a report on test results to a hospital. The hospital then provided data to a billing company to submit to the relevant Private Insurer, which pay the hospital for the test. The billing company transmitted the data to a clearing house. The clearing house either transmitted the data directly to a Private Insurer, or to a second clearing house, which then transmitted the data to a Private Insurer. To the extent any data the Private Insurers received contained false or inaccurate data, that data could have been inserted at any step during this odyssey of the data from the laboratory which accurately reported the laboratory test results, to the hospital, to the billing

company, to one or more clearing houses and finally to the Private Insurers, which also entered the data into its internal software data base.

5. The discovery the government has provided to the defense and the information the defense obtained from Private Insurers and third parties reveal data the Private Insurers received had been altered at various times before transmission of that data from one party to another. The alterations involved including or changing different codes on the forms that conveyed certain information to the Private Insurers that apparently governed the Insurers' decision about eligibility for payment and the amount of payment. The information provided by Fletcher is undeniably accurate in all respects. The information that is reflected in the documents that the government obtained from the Private Insurers is not accurate.

6. Despite the fact that the documents provided to the government by the Private Insurers is inaccurate – but not authored by Fletcher -- the government contends that the data the Private Insurers provided is authentic and relevant to prove Fletcher committed insurance fraud. There is no evidence in any discovery that has been provided to the defense that Fletcher caused the hospital, the billing company, the clearing house(s) or the Private Insurers to replace the accurate information about the laboratory tests (the identity of the patient or the location

where the laboratory tests were performed) with the inaccurate information about (1) the location where the laboratory tests were performed, or (2) by whom the tests were performed, or (3) where the person whose urine was tested was located.

7. Before the document can be admitted into evidence, the government must demonstrate that the false data the Private Insurers provided to the government was the same data the clearing house received from the billing company, hospital, or laboratory.

8. Further, the government must prove the Private Insurers did not alter or insert their own data into the printouts/spreadsheets the Private Insurers provided to the government, which the government intends to admit at trial.

9. The discovery provided to the defense necessitates the concerns raised in this motion. For example, one Federal Bureau of Investigation report (Bates-stamped DOJCGH_0001204077) notes:

> Regarding how Anthem pulled the data and loaded it onto a CD, Anthem advised the data provided to the government under subpoena <u>came from the main data warehouse</u>, referred to as "Edward." Anthem has two teams they refer to as "ADF" and "DMS," which have direct access to the main data warehouse. These teams pull the claims information from the data warehouse. Anthem requested the information based on tax ID number. <u>The data was then scrubbed</u> based on the request and provided to Anthem.

(emphasis added). Presumably the scrubbed data was provided to the government, which in turn provided it to the defense.

4

10. Filed under seal, pursuant to Dkt. 447, are documents that plainly illustrate one example of when Putnam County Memorial Hospital submitted billing information to a data clearing house (then named ZirMed and now Waystar), which transferred that information to an Anthem entity. Anthem is comprised of Non-Parties Blue Cross Blue Shield of Georgia, Inc. and RightCHOICE Managed Care, Inc. At least twelve fields of information that Putnam did not transmit were added to information an Anthem entity provided to the government.

11. The sealed documents consist of three pages[*]:

   a. Page one is an excerpt of the raw data a billing company submitted via the Electronic Data Interchange (referred to as "EDI" or 837i data) to ZirMed.

   b. Page two is a chart of data taken from the EDI transmission and translated into three columns. Column one confirms the data was found in the EDI transmission from a billing company to ZirMed. Column two contains the headers of the fields reflected in the EDI, and column three contains the corresponding information. For

---

[*] The sealed documents were prepared by the defense from the discovery provided by the government. The defense will be prepared at the Rule 104(a) hearing to produce the sources from whence the data was procured.

    example, the fourth row from the top reads "Yes," "MEMBER_BIRTH_DATE" and a date. "Yes" indicates that a billing company transmitted that data. "MEMBER_BIRTH_DATE" reflects the field should contain the patient's birth date. The date in the third column is the patient's birth date, which is data Putnam provided.

  c. Page three is a chart that contains twelve fields of information Putnam did not provide via the EDI. Significantly, the twelfth row reads "No," "PLACE_OF_SERVICE_CODE," and "22." No indicates that Putnam did not provide this information. Place of service code indicates where the service was provided to the patient. "22" reflects the patient was an "out-patient" at Putnam.

  d. An out-patient is a patient who entered the hospital, received a service, and left, usually that same day. An in-patient is one who checked into the hospital for services. Finally, a non-patient is a patient who received services but was not physically at the hospital.

12. The government's theory from the inception of the case is that the billing was fraudulent because the defendants allegedly represented to the Private

6

Insurers that the patients had were connected, physically or otherwise, with the hospital. But the billing company's submission to the clearing house(s) and ultimately to the Private Insurers portrayed the patient as a "non-patient," with no connection to the hospital. On June 30, 2020, the government represented to the Honorable Joel B. Toomey, United States Magistrate Judge:

> …And this case is not about inpatient or outpatient billings. It really is about the non-patient billings.
>
> As the allegations in the indictment reflect, the government's view is that billings were involved with individuals that had no connection to these hospitals whatsoever.
>
> So that's the focus of the illegal activity as alleged in the indictment. The government is not concerned with lawful billings for patients to go to a hospital or a clinic, as long as all the material information in the claim is lawful, the claim to the insurance company.

Doc. 122 at 59. When the government said the allegation was "not concerned with lawful billings for patients to go to a hospital or a clinic…," the government referred to billing for in-patients and out-patients who had a connection to the hospital.

13. Although the government's claim that fraud occurred because billing information misled the Private Insurers, we now know the Private Insurers relied on data neither the laboratory, nor the hospital, nor the billing company submitted. But the government still intends to use as evidence the

7

printouts/spreadsheets produced by the Private Insurers containing altered data regardless.

**B.     Memorandum of Law**

Federal Rule of Criminal Procedure 12(a)(2) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Subsection (d) of Rule 12 further states that "[t]he court must decide every pretrial motion before trial unless it finds good cause to defer a ruling." Federal Rule of Evidence 103(c) provides, "[i]n jury cases, proceedings shall be conducted to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means." Federal Rule of Evidence 104 provides a mechanism to ensure that inadmissible evidence is not suggested to the jury during the trial.

Rule 104(a) provides that the Court must decide any preliminary question about whether evidence is admissible. When an objection is based on authenticity or relevance, Rule 104(b) requires the introduction of proof sufficient to support a finding that the fact exists. If Fletcher chooses to testify at such a hearing, then Rule 104(c)(2) requires that any hearing on the preliminary question be conducted outside the hearing of the jury. To determine the preliminary question of

admissibility of the data the Private Insurers alleged to have received over an authenticity or relevance objection, a hearing is required.

Rule 104 does not require such a hearing to be made before trial, and subsection (b) permits the Court to admit the objectionable evidence on the condition that the required proof be introduced later. Thus, the decision on whether to hold a pretrial hearing or consider the question as each item of evidence is introduced is a decision within this Court's discretion. Fletcher contends that the Court should exercise its discretion in favor of holding a separate, pretrial hearing, for the following reasons.

"If the question is factual in nature," as the question presented by Fletcher's authenticity and relevance objections will be, "the judge will of necessity receive evidence pro and con on the issue." Fed. R. Evid. 104, Advisory Committee Note to Subdivision (a). In fact, the specific problem Fletcher's objection presents was considered by the Advisory Committee:

> In some situations, the relevancy of an item of evidence, in the large sense, depends upon the existence of a particular preliminary fact. Thus when a spoken statement is relied upon to prove notice to X, it is without probative value unless X heard it. Or <u>if a letter purporting to be from Y is relied upon to establish an admission by him, it has no probative value unless Y wrote or authorized it</u>.

Fed. R. Evid. 104, Advisory Committee Note to Subdivision (b) (emphasis added). Similarly, submitting false data to Private Insurers purporting to have originated

9

from Fletcher or his alleged co-conspirators has no probative value unless Fletcher, or an alleged co-conspirator, actually sent that false data.

Prior to the admission of the printouts/spreadsheets produced by the Private Insurers, the Court will have to determine how they were prepared, what data was altered, *i.e.*, not submitted by the defendants, who altered the data, and why it was altered. The defendants fully expect this will be a cumbersome and time-consuming process because Rule 104(b) requires the government to introduce evidence sufficient to support a finding that the fact exists before admissibility. Additionally, Fletcher may testify at the hearing, and if so, any hearing must be conducted outside the hearing of the jury. Fed. R. Evid. 104(c). The 1974 committee note to the enactment of the Rule makes clear that this testimony must be outside the presence of the jury to preserve a defendant's right not to testify at trial.

Numerous cases point out that it is often wasteful to have a separate, pre-trial hearing, because it needlessly duplicates effort. The overwhelming majority of these cases deal with determining whether a conspiracy exists such that a conspirator's statement is admissible. Here, for the government to meet its burden to overcome the authenticity and relevancy objections, it will need to provide foundational evidence that tracks the false data back from the insurer through each

10

transmission of the lab reports, and into the lab report initially made or procured by Fletcher. It will need to produce this evidence for each report and each false statement. To stop a trial in progress in order to address the foundational requirements and objections, piecemeal, will result in a great expenditure of judicial resources and a waste of the jurors' time. To hold a pretrial hearing addressing only this issue, in a focused and comprehensive fashion, will be more efficient and better conserve judicial resources than interrupting the trial It would meet the needs of both the Court and Fletcher, while imposing no more than a minimal burden on the government.

>The U.S. Court of Appeals for the Second Circuit has indicated:
>
>In general, an evidentiary hearing need not be granted as a matter of course and must be held "only if the moving papers allege facts with sufficient definiteness, clarity and specificity to enable the trial court to conclude that relief must be granted if the facts alleged are proved."

*Gentile v. County of Suffolk*, 926 F.2d 142, 148 (2d Cir. 1991) (quoting *United States v. Carrion*, 463 F.2d 704, 706 (9th Cir. 1972)). During the trial in *Gentile*, a civil rights case, the defendants requested a hearing to determine the admissibility of a report, pursuant to Rule 104, on the third day. *See id*. at 146. The trial judge declined to hold a hearing during trial but held the hearing after the trial. *See id*. at 146-47. The Second Circuit chastised the defendants for not seeking to have the hearing before the trial. *See id*. at 149-50.

At least one trial court in our Circuit has held pretrial hearings to determine the admissibility of evidence pursuant to Rule 104. *See United States v. Dominguez*, No. 09-20989-CR, 2010 WL 431877 (S.D. Fla. Feb. 2, 2010) (an order granting the government's motion for pretrial admissibility hearings of certain compact discs and transcripts); *see also United States v. Shah*, 125 F. Supp. 3d 570 (E.D.N.C. 2015) (ruling on the government's motion for a pretrial ruling on the admissibility of certain electronic evidence); *United States v. Kahre*, 610 F. Supp. 2d 1261, 1266 (D. Nev. 2009) (granting the government's motion to address preliminary questions regarding the admissibility of evidence pursuant to Rule 104(a)). In actuality, a request for a Rule 104(a) hearing is akin to holding a pretrial evidentiary hearing on a motion *in limine*, which has become a common practice in many courts. *Daubert* hearings are actually hearings conducted pursuant to Rule 104.

## C.     Conclusion

Fletcher requests that the Court grant this motion and set a pretrial hearing to address the admissibility (authenticity and relevance) of printouts/spreadsheets that the Private Insurers produced to the government, which the government will seek to introduce into evidenced at trial.

Respectfully submitted on December 1, 2021.

Respectfully submitted,

**STEVEN H. SADOW, P.C.**

*s/ Steven H. Sadow*
Steven H. Sadow
Georgia Bar No. 622075
260 Peachtree Street, N.W.
Suite 2502
Atlanta, Georgia 30303
Telephone: (404) 577-1400
Facsimile: (404) 577-3600
stevesadow@gmail.com
Admitted Pro Hac Vice

        **LAW OFFICES OF HORWITZ & CITRO, P.A.**

        *s/ Vincent A. Citro*
        Vincent A. Citro
        Florida Bar Number: 0468657
        17 East Pine Street
        Orlando, Florida 32801
        Telephone: (407) 843-7733
        Facsimile: (407) 849-1321
        vince@horwitzcitrolaw.com

        Attorneys for Defendant Christian Fletcher

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 1, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

        *s/ Vincent A. Citro*
        Vincent A. Citro
        Florida Bar Number: 0468657
        Attorney for Christian Fletcher