IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,     Jacksonville, Florida

    Plaintiff,           Case No. 3:20-cr-86-TJC-JBT

vs.                  June 22, 2022

JORGE PEREZ, et al.,       8:51 a.m.

    Defendants.         Courtroom No. 13A

_____


JURY TRIAL PROCEEDINGS
(VOLUME XX)
BEFORE THE HONORABLE TIMOTHY J. CORRIGAN
UNITED STATES DISTRICT COURT JUDGE


COURT REPORTER:

      Shannon M. Bishop, RDR, CRR, CRC
      221 North Hogan Street, #150
      Jacksonville, FL  32202
      Telephone:  (904) 549-1307
      dsmabishop@yahoo.com


    (Proceedings reported by mechanical stenography;
transcript produced by computer.)

A P P E A R A N C E S

GOVERNMENT COUNSEL:

**ANDREW TYSEN DUVA, ESQ.**
**MAI TRAN, ESQ.**
US Attorney's Office - FLM
300 North Hogan Street, Suite 700
Jacksonville, FL  32202

**GARY A. WINTERS, ESQ.**
United States Department of Justice
1400 New York Avenue NW
Washington, D.C.  20902

**JAMES V. HAYES, ESQ.**
Department of Justice, Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C.  20902

COUNSEL FOR DEFENDANT JORGE PEREZ:

**THOMAS M. BELL, ESQ.**
Thomas M. Bell, PA
301 West Bay Street, Suite 1460
Jacksonville, FL  32202

COUNSEL FOR DEFENDANT RICARDO PEREZ:

**RICHARD J. LANDES, ESQ.**
Richard Landes, Esq.
736 2nd Street North
Jacksonville Beach, FL  32250

COUNSEL FOR DEFENDANT AARON DURALL:

**BRIAN T. RAFFERTY, ESQ.**
BakerHostetler
1170 Peachtree Street NE, Suite 2400
Atlanta, GA  30309-7676

COUNSEL FOR DEFENDANT JAMES F. PORTER, JR.:

**SETH SCHWARTZ, ESQ.**
**ALBERT J. TASKER, IV, ESQ.**
Schwartz Law Group, PA
10365 Hood Road, Suite 105
Jacksonville, FL  32257

COUNSEL FOR DEFENDANT SEAN PORTER:

    **CALEB D. ROWLAND, ESQ.**
    Rowland Law
    2130 Riverside Avenue
    Jacksonville, FL  32204

COUNSEL FOR DEFENDANT CHRISTIAN FLETCHER:

    **STEVEN H. SADOW, ESQ.**
    **VINCENT ALBERT CITRO, ESQ.**
    Steven H. Sadow, PC
    260 Peachtree Street NW, Suite 2502
    Atlanta, GA  30303

COUNSEL FOR DEFENDANT NEISHA ZAFFUTO:

    **JOSHUA SABERT LOWTHER, ESQ.**
    Lowther Walker, LLC
    Centennial Tower
    101 Marietta Street NW, Suite 3325
    Atlanta, GA  30303

COUNSEL FOR DEFENDANT AARON ALONZO:

    **DARCY D. GALNOR, ESQ.**
    Galnor Shumard, PA
    121 West Forsyth Street, Suite 610
    Jacksonville, FL  32202

# T A B L E   O F   C O N T E N T S

Page No.

PROCEEDINGS:

Jury exits to begin deliberations.................  56
Forfeiture Discussion............................  69
*Garcia* inquiry.................................. 121

E X H I B I T S   R E C E I V E D

Page No.

Government's Exhibits:

48L(1)......................................... 13
60............................................. 14


Jury Notes:

1............................................. 103

1          P R O C E E D I N G S

2    June 22, 2022                                    8:51 a.m.

3                        - - -

4          COURT SECURITY OFFICER:  All rise.  The United States

5    District Court in and for the Middle District of Florida is now

6    in session.  The Honorable Timothy J. Corrigan presiding.

7          Please be seated.

8          THE COURT:  Good morning.

9          Everybody present now?

10         Ms. Tran, so let me just get a quick statement from

11   you as to which defendants are potentially entitled to jury

12   consideration of forfeiture issues.

13         MS. TRAN:  Yes, Your Honor.

14         The only four defendants that are entitled to a jury

15   determination are Jorge Perez, Ricardo Perez, James Porter, and

16   Christian Fletcher.

17         THE COURT:  Okay.  And is it the government's view

18   that assets in lieu of real property are subject to a jury

19   determination?

20         MS. TRAN:  Yes, Your Honor, because they're tied to a

21   specific property.  We have the money in hand.  So the money is

22   also being treated as specific property, Your Honor.

23         THE COURT:  Okay.  So that -- so that's why

24   Mr. Porter and Mr. -- that's why Mr. Porter is entitled to a

25   jury trial on that piece of property?

1    MS. TRAN:  Yes, Your Honor.

2    THE COURT:  And then the others as -- some of them

3    are not in lieu, but some of them are; is that right?

4    MS. TRAN:  Yes, Your Honor.  Two of them are in lieu,

5    and the rest are not.

6    THE COURT:  Okay.  Yes, Mr. --

7    MR. RAFFERTY:  I have a question, because, you know,

8    again, I'm -- certainly I haven't been focused as much on the

9    forfeiture as perhaps I should.  And I'm certainly not an

10   expert.

11   But the way I read the rules and what I see in the

12   indictment, there's specific property identified and

13   attributable to Mr. Durall that is identified and subject to

14   forfeiture if the verdict comes back against Mr. Durall.

15   And the way I read 32.2, it seems that any -- any --

16   if there's specific property identified in the indictment, any

17   defendant is entitled to a jury determination on that

18   forfeiture.  And it also states that there needs to be a timely

19   request by the defendant for a jury determination.

20   Now, I haven't had an opportunity -- and I've talked

21   with the government about this -- to really talk with

22   Mr. Durall about whether ultimately he's going to seek a jury

23   determination.  But I do want to preserve his right to that.

24   And I know it has to be before the jury starts

25   deliberating on the underlying case.  And so out of an

1  abundance of caution, I'm going to make a jury demand right now

2  for a jury determination on forfeiture as it relates to the

3  various assets identified in the forfeiture section of this

4  indictment.

5         And I'll discuss with both the government and my

6  client about whether ultimately, if a verdict comes back

7  against him, he'll seek that jury determination.

8         MR. BELL:  Judge, just let me elaborate, if I could.

9         THE COURT:  Yeah.

10        MR. BELL:  As Mr. Rafferty noted and we discussed

11  yesterday, none of us have really been focused in on -- and the

12  Court knows it's a challenge to focus on all these issues.

13        I would suggest -- my review of doc 609, the

14  government's memo on this, essentially fairly summarizes what I

15  understand, as Judge Hodges used to put it, prevailing Eleventh

16  Circuit precedent.

17        I would also suggest this, though.  And I would --

18  we've litigated this, Mr. Duva and I, in some other contexts.

19  I would suggest -- under, I guess, the Fifth and Sixth

20  Amendment there is a constitutional -- constitutional right to

21  a jury determination of the forfeiture issue that exists.

22        The Supreme Court may revisit this.  I think the memo

23  fairly summarizes what the existing precedent is, but that may

24  be wrong, based on the *Apprendi/Booker* Fifth and Sixth

25  Amendment related issues.  And it's broader than a simple right

1  to a jury determination as provided by Rule 32.

2        To that extent I am asserting that right on behalf of

3  Mr. Perez, similar to Mr. Rafferty -- not only for the specific

4  real property that's been identified, but for any money

5  judgment that would be subject to forfeiture.

6        Now, as Mr. Rafferty and, I think, Mr. Sadow is going

7  to say, but I'm not 100 percent sure, we will discuss that

8  issue if -- about whether they actually want to have a jury

9  resolve those issues as circumstances dictate.

10        But for today's purposes, we are -- are asserting our

11  actual jury determination issues.  We hopefully won't have to

12  revisit those in the next bit.

13        THE COURT:  Well, if -- if Mr. Rafferty is right --

14  and I don't have any idea -- wouldn't that potentially apply to

15  any defendant in this case?  I mean, I think -- Ms. Tran, are

16  all of -- are all the defendants subject to some forfeiture

17  demand by the government in this case?

18        MS. TRAN:  Your Honor, all of the defendants are

19  subject to a forfeiture in terms of a money judgment, which is

20  proceeds, for example.  And those amounts are not subject to a

21  jury determination, because money judgments are not.  They're

22  not specific property.

23        As to anything that may have been listed under the

24  indictment as specific property, if I could point the Court and

25  all counsels' attention to the bills of particulars that were

1 filed in April of this year, the bills of particular changed

2 the theory of directly traceable asset on some of the

3 properties over to substitute assets.

4        Anything that is directly traceable, a defendant has

5 a jury determination right on. Anything that is a substitute

6 asset, the defendant does not have a jury determination right

7 on.

8        THE COURT: Well, I guess -- I hear you. And maybe

9 you're right. And that's kind of what we were looking at as

10 well. But if Mr. Rafferty and now Mr. Bell are telling me that

11 there may be constitutional rights involved, or it may not be

12 as clear cut, because sometimes forfeiture isn't as clear cut

13 as it could be -- in fact, when we were looking overnight, it's

14 hard to find cases on it.

15        And so wouldn't it be better for me to, at least at

16 this point -- even if it's as a placeholder, wouldn't it be

17 better for me just to preserve any jury trial right for any

18 defendant in this case, unless somebody specifically wanted to

19 waive it right now, and then to have that more fulsome

20 discussion once the jury is deliberating?

21        That's -- I think that probably makes more sense.

22 Because I'm not prepared at this moment to know whether

23 Mr. Rafferty is right or he's wrong, and -- but I think -- I

24 think it's probably -- the rule does seem to contemplate that.

25        The Court has to ask each defendant whether they wish

1 to assert a jury trial right on forfeiture before the jury goes

2 out to deliberate on the original -- on the main case.  I'm not

3 sure why the rule is written that way, but that's the way it's

4 written.

5         And so it seems to me I should just ask each

6 defendant whether they wish to preserve any jury trial right

7 they might have.  And if they say yes, then we just leave it at

8 that right now, and then we litigate that issue while the jury

9 is deliberating.

10         Does that make sense?

11         MS. TRAN:  All right.  Absolutely right.  Yes, Your

12 Honor.

13         THE COURT:  Mr. Bell, does Mr. -- Mr. Bell, does

14 Mr. Jorge Perez wish to preserve his jury trial right on

15 forfeiture?

16         MR. BELL:  He does, Your Honor.

17         THE COURT:  Mr. Landes, does Mr. Perez -- Ricardo

18 Perez wish to reserve his jury -- preserve his jury trial right

19 on forfeiture?

20         MR. LANDES:  Yes, Your Honor.

21         THE COURT:  And, Mr. Rafferty, I already know that

22 Mr. Durall does.  Is that correct?

23         MR. RAFFERTY:  Yes, Your Honor.

24         THE COURT:  Mr. Schwartz, does Mr. James F. Porter

25 wish to preserve any jury trial right he has on forfeiture?

1          MR. SCHWARTZ:  Yes, sir.

2          THE COURT:  Mr. Rowland, does Mr. Sean Porter wish to

3    do so?

4          MR. ROWLAND:  Yes, Your Honor.

5          THE COURT:  Mr. Sadow and Mr. Citro, does

6    Mr. Fletcher wish to do so?

7          MR. CITRO:  Yes, Your Honor.

8          THE COURT:  Mr. Lowther, does Ms. Zaffuto wish to do

9    so?

10          MR. LOWTHER:  Yes, Your Honor.

11          THE COURT:  And, Ms. Galnor, does Mr. Alonzo wish to

12    do so?

13          MS. GALNOR:  Yes, Your Honor.

14          THE COURT:  All right.  So, Ms. Tran, in your view,

15    has the Court complied with the rule that requires the Court to

16    inquire of the defendants and to find out whether they are

17    asserting a jury trial right on forfeiture before the jury goes

18    to deliberate?

19          MS. TRAN:  Yes, Your Honor.

20          THE COURT:  All right.  I think that's all I'm going

21    to do right now.

22          MS. TRAN:  Thank you, Your Honor.

23          THE COURT:  Thank you.

24          Ms. Meyer.

25        (Judge confers with law clerk.)

```
 1              THE COURT:  All right.  Then I'm going to put that to

 2    the side for now and we'll discuss it while the jury is

 3    deliberating.

 4              And any other matters before I call the jury out and

 5    read them the instructions?

 6              MR. HAYES:  Briefly, Your Honor.

 7              THE COURT:  Yes, sir.

 8              MR. HAYES:  48L(1) -- Mr. Rafferty and I discussed

 9    this with you yesterday.  This is what the government was

10    saying we'll do as a guide to what was discussed by the

11    government.  We were going through 48L because the pagination

12    was going to change.  So I don't think that was ever officially

13    admitted.

14              THE COURT:  Okay.

15              MR. HAYES:  We'd like to admit it now without

16    objection.

17              MR. RAFFERTY:  No objection, Your Honor.

18              THE COURT:  Be received without objection.

19         (Government's Exhibit 48L(1) received into evidence.)

20              MR. HAYES:  And, Your Honor, this is not Special

21    Agent Schwinger.  This is a picture of Per Wickstrom.  At

22    sidebar you denied the rest of the website, but we did show

23    this picture to Mr. Marcotte.  And we'd like to admit this

24    large disembodied picture of --

25              MR. RAFFERTY:  No objection.
```

1          MR. DUVA:  This is over my objection, Your Honor.

2          THE COURT:  Be received.

3          MR. HAYES:  Don't listen to him.

4          MR. DUVA:  They'll be like, Who is this guy?

5          MR. HAYES:  This is how we do it, Steve.

6          THE COURT:  All right.  What's the number on it, sir?

7          MR. HAYES:  Government's Exhibit 60.

8          THE COURT:  All right.  Sure.

9      (Government's Exhibit 60 received into evidence.)

10          MR. HAYES:  It's not Mr. Goldner, either.

11          THE COURT:  Are we ready for the jury?

12          MR. LANDES:  Yes.

13          THE COURT:  All right.

14          MR. HAYES:  Steve, I can't hear you.

15          THE COURT:  That's okay.

16          Let's have the jury, please.

17          COURT SECURITY OFFICER:  All rise for the jury.

18      (Jury enters, 9:03 a.m.)

19          COURT SECURITY OFFICER:  Please be seated.

20          THE COURT:  Good morning, ladies and gentlemen.

21          Well, good morning, ladies and gentlemen.  I am going

22  to earn my keep this morning by giving you the jury

23  instructions that you will use in -- in applying the law to the

24  facts of this case.

25          And so the way this works is that, because it's the

1  law and because the law is written by Congress, and then is

2  interpreted by the courts, every single word matters.

3          And so what that means is, as opposed to me just

4  being able to conversationally tell you what the law is, I have

5  to read it to you, because every -- every word matters.

6          But the good news is that I will -- I will be giving

7  you copies of these jury instructions to take back with you in

8  the -- in the jury room.  So you'll have copies.  And, also,

9  while I'm reading the instructions, Ms. Hatfield is going to

10 put them up on the screen.

11         We've tried to make it as big as we can.  It may be a

12 little hard to read, but you've got several screens you can

13 look at.  And so you can follow along.

14         What that means is you don't have to -- you don't --

15 unless you really want to, you don't have to try to take notes

16 on the jury instructions, because you'll have -- you'll have

17 copies of them back there.  We're going to put them up on the

18 screen.  I'm going to read them to you.

19         And so I apologize in advance for having to read to

20 you, but that's just the way we do things.  So -- so if you

21 will please give me your attention, I will appreciate it.

22         Members of the jury, it's my duty to instruct you on

23 the rules of law that you must use in deciding this case.

24 After I've completed these instructions, you will go to the

25 jury room and begin your discussions, what we call your

1  deliberations.

2      You must decide whether the government has proved the

3  specific facts necessary to find each defendant guilty beyond a

4  reasonable doubt.

5      Your decision must be based only on the evidence

6  presented during the trial.  You must not be influenced in any

7  way by either sympathy for or prejudice against the defendants

8  or the government.

9      You must follow the law as I explain it, even if you

10  do not agree with the law, and you must follow all of my

11  instructions as a whole.  You must not single out or disregard

12  any of the Court's instructions on the law.

13      The indictment or formal charge against a defendant

14  isn't evidence of guilt.  The law presumes every defendant is

15  innocent.  A defendant does not have to prove his or her

16  innocence or produce any evidence at all.  A defendant does not

17  have to testify, and if a defendant chose not to testify, you

18  cannot consider that in any way while making your decision.

19  The government must prove guilt beyond a reasonable doubt.  If

20  it fails to do so as to any defendant, you must find that

21  defendant not guilty.

22      The government's burden of proof is heavy, but it

23  doesn't have to prove a defendant's guilt beyond all possible

24  doubt.  The government's proof only has to exclude any

25  "reasonable doubt" concerning a defendant's guilt.

1    A "reasonable doubt" is a real doubt, based on your

2  reason and common sense after you've carefully and impartially

3  considered all the evidence in the case.

4    "Proof beyond a reasonable doubt" is proof so

5  convincing that you would be willing to rely and act on it

6  without hesitation in the most important of your own affairs.

7  If you are convinced that a defendant has been proved guilty

8  beyond a reasonable doubt, say so.  If you are not convinced,

9  say so.

10    As I said before, you must consider only the evidence

11  that I have admitted in the case.  Evidence includes the

12  testimony of witnesses and the exhibits admitted.  But,

13  anything the lawyers say is not evidence and isn't binding on

14  you.

15    You shouldn't assume from anything I've said that I

16  have any opinion about any factual issue in this case.  Except

17  for my instructions to you on the law, you should disregard

18  anything I may have said during the trial in arriving at your

19  own decision about the facts.

20    Your own recollection and interpretation of the

21  evidence is what matters.

22    In considering the evidence you may use reasoning and

23  common sense to make deductions and reach conclusions.  You

24  shouldn't be concerned about whether the evidence is direct or

25  circumstantial.

1    "Direct evidence" is the testimony of a person who

2  asserts that he or she has actual knowledge of a fact, such as

3  an eyewitness.

4    "Circumstantial evidence" is proof of a chain of

5  facts and circumstances that tend to prove or disprove a fact.

6  There's no legal difference in the weight you may give to

7  either direct or circumstantial evidence.

8    When I say you must consider all the evidence, I

9  don't mean that you must accept all the evidence as true or

10 accurate.  You should decide whether you believe what each

11 witness had to say, and how important that testimony was.  In

12 making that decision you may believe or disbelieve any witness,

13 in whole or in part.  The number of witnesses testifying

14 concerning a particular point doesn't necessarily matter.

15    To decide whether you believe any witness I suggest

16 that you ask yourself a few questions:

17    Did the witness impress you as one who was telling

18 the truth?

19    Did the witness have any particular reason not to

20 tell the truth?

21    Did the witness have a personal interest in the

22 outcome of the case?

23    Did the witness seem to have a good memory?

24    Did the witness have the opportunity and ability to

25 accurately observe the things he or she testified about?

1        Did the witness appear to understand the questions

2   clearly and answer them directly?

3        Did the witness's testimony differ from other

4   testimony or other evidence?

5        You should also ask yourself whether there was

6   evidence that a witness testified falsely about an important

7   fact.  And ask whether there was evidence that at some other

8   time a witness said or did something, or didn't say or do

9   something, that was different from the testimony the witness

10  gave during this trial.

11       To decide whether you believe a witness, you may

12  consider the fact that the witness has been convicted of a

13  felony or a crime involving dishonesty or a false statement.

14       But keep in mind that a simple mistake doesn't mean a

15  witness wasn't telling the truth as he or she remembers it.

16  People naturally tend to forget some things or remember them

17  inaccurately.  So, if a witness misstated something, you must

18  decide whether it was because of an innocent lapse in memory or

19  an intentional deception.  The significance of your decision

20  may depend on whether the misstatement is about an important

21  fact or about an unimportant detail.

22       You must consider some witnesses' testimony with more

23  caution than others.

24       In this case, the government has made plea agreements

25  with three alleged codefendants in exchange for their

1   testimony.  Such "plea bargaining," as it's called, provides

2   for the possibility of a lesser sentence than the codefendants

3   would normally face.  Plea bargaining is lawful and proper, and

4   the rules of this court expressly provide for it.

5           But a witness who hopes to gain more favorable

6   treatment may have a reason to make a false statement in order

7   to strike a good bargain with the government.

8           And the fact that a witness has pleaded guilty to an

9   offense isn't evidence of the guilt of any other person.

10          Additionally, a witness who has been promised

11  immunity from prosecution testified and may have a reason to

12  make a false statement in order to strike a good bargain with

13  the government.

14          So while these witnesses may be entirely truthful

15  when testifying, you should consider their testimony with more

16  caution than the testimony of other witnesses.

17          When scientific, technical or other specialized

18  knowledge might be helpful, a person who has special training

19  or experience in that field is allowed to state an opinion

20  about the matter.

21          But that doesn't mean you must accept the witness's

22  opinion.  As with any other witness's testimony, you must

23  decide for yourself whether to rely upon the opinion.

24          The indictment charges twenty-three separate crimes,

25  called "counts," against the defendants.  Each count has a

number.  You'll be given a redacted copy of the indictment to refer to during your deliberations.

Count One charges that the defendants (except Sean Porter) knowingly and willfully conspired to commit health care fraud and wire fraud.

Counts Seven and Eight charge that certain defendants knowingly and intentionally conspired to commit money laundering.

Note that the defendants charged in Counts One, Seven, and Eight are not charged with committing a substantive offense, they are charged with conspiring to commit that offense.

Counts Two through Six charge that certain defendants committed what are called "substantive offenses," specifically health care fraud.  Counts Nine through Twenty-Three charge that certain defendants committed substantive offenses, specifically money laundering.  I will explain the law governing those substantive offenses in a moment.

I will now give you specific instructions on conspiracy.

Count One charges that all defendants (except for Sean Porter) -- I'm sorry.  Let me read that again.

Count One charges all defendants (except for Sean Porter) with conspiracy to commit health care fraud and wire fraud.

1       It's a federal crime to knowingly and willfully

2   conspire or agree with someone to do something that, if

3   actually carried out, would result in the crime of health care

4   fraud and wire fraud.

5       A "conspiracy" is an agreement by two or more persons

6   to commit an unlawful act.  In other words, it is a kind of

7   partnership for criminal purposes.  Every member of the

8   conspiracy becomes the agent or partner of every other member.

9       The government does not have to prove that all people

10  named in the indictment were members of the plan, or that those

11  who were members made any kind of formal agreement.  The heart

12  of a conspiracy is the making of the unlawful plan itself, so

13  the government does not have to prove that the conspirators

14  succeeded in carrying out the plan.

15      A defendant can be found guilty of this conspiracy

16  offense only if all of the following are proved beyond a

17  reasonable doubt:

18      1, two or more persons, in some way or manner, agreed

19  to commit to accomplish a -- I'm sorry, agreed to try to

20  accomplish a common and unlawful plan to commit health care

21  fraud and wire fraud, as charged in the indictment; and the

22  defendants knew the unlawful purpose of the plan and willfully

23  joined in it.

24      I'm going to read those two again.  I kind of -- let

25  me try that again.

1    A defendant can be found guilty of this conspiracy

2   offense only if all the following are proved beyond a

3   reasonable doubt:

4        1, two or more persons, in some way or manner, agreed

5   to try to accomplish a common and unlawful plan to commit

6   health care fraud and wire fraud, as charged in the indictment;

7   and, 2, the defendant knew the unlawful purpose of the plan and

8   willfully joined in it.

9        A person may be a conspirator without even knowing

10  all the details of the unlawful plan or the names and

11  identities of all the other alleged conspirators.

12       If a defendant played only a minor part in the plan

13  but had a general understanding of the unlawful purpose of the

14  plan, and willfully joined in this plan on at least one

15  occasion, that's sufficient for you to find that defendant

16  guilty.

17       But simply being present at the scene of an event or

18  merely associating with certain people and discussing common

19  goals and interests doesn't establish proof of a conspiracy.

20  Also, a person who doesn't know about a conspiracy but happens

21  to act in a way that advances some purpose of one doesn't

22  automatically become a conspirator.

23       In Count One, regarding the alleged conspiracy, the

24  indictment charges that the defendants (except Sean Porter)

25  conspired to commit health care fraud and to commit wire fraud.

1    In other words, the defendants are charged with conspiring to

2    commit two separate substantive crimes.

3        The government does not have to prove that a

4    defendant willfully conspired to commit both crimes.  It is

5    sufficient if the government proves beyond a reasonable doubt

6    that a defendant willfully conspired to commit one of those

7    crimes.  But to return a verdict of guilty, you must all agree

8    on which of the two crimes each defendant conspired to commit.

9        As I previously stated, Count One of the indictment

10   charges the defendants (except for Sean Porter) with conspiring

11   to commit health care fraud and wire fraud.  I will explain

12   health care fraud in Instruction No. 13.  Although none of the

13   defendants are charged with the substantive crime of wire

14   fraud, I will explain wire fraud now to assist you in

15   determining whether there was a conspiracy to commit wire

16   fraud.

17       It's a federal crime to use interstate wire, radio,

18   or television communications to carry out a scheme to defraud

19   someone else.

20       A defendant can be found guilty of wire fraud only if

21   all the following are proved beyond a reasonable doubt:

22       1, the defendant knowingly devised or participated in

23   a scheme to defraud someone by using false or fraudulent

24   pretenses, representations, or promises;

25       No. 2, the false pretenses, representations, or

1 promises were about a material fact;

2 No. 3, the defendant acted with the intent to

3 defraud;

4 And, No. 4, the defendant transmitted or caused to be

5 transmitted by wire some communication in interstate commerce

6 to help carry out the scheme to defraud.

7 A "scheme to defraud" means any plan or course of

8 action intended to deceive or cheat someone out of money or

9 property by using false or fraudulent pretenses,

10 representations, or promises.

11 A statement or representation is "false" or

12 "fraudulent" if it is about a material fact that the speaker

13 knows is untrue or makes with reckless indifference to the

14 truth, and makes with the intent to defraud. A statement or

15 representation may be "false" or "fraudulent" when it is a

16 half-truth, or effectively conceals a material fact, and is

17 made with the intent to defraud.

18 A "material fact" is an important fact that a

19 reasonable person would use to decide whether to do or not do

20 something. A fact is "material" if it has the capacity or

21 natural tendency to influence a person's decision. It doesn't

22 matter whether the decision-maker actually relied on the

23 statement or knew or should have known that the statement was

24 false.

25 To act with the "intent to defraud" means to act

1    knowingly and with the specific intent to use false or

2    fraudulent pretenses, representations, or promises to cause

3    loss or injury.  Proving intent to deceive alone, without the

4    intent to cause loss or injury, is not sufficient to prove

5    intent to defraud.

6            The government does not have to prove all the details

7    alleged in the indictment about the precise nature and purpose

8    of the scheme.  It also doesn't have to prove that the material

9    transmitted by interstate wire was itself false or fraudulent;

10   or that using the wire was intended as the specific or

11   exclusive means of carrying out the alleged fraud; or that a

12   defendant personally made the transmission over the wire.  And

13   it doesn't have to prove that the alleged scheme actually

14   succeeded in defrauding anyone.

15           To "use" interstate wire communications is to act so

16   that something would normally be sent through wire, radio, or

17   television communications in the normal course of business.

18           The health care fraud statute is relevant to Count

19   One, which charges all the defendants (except Sean Porter) with

20   conspiracy to commit health care fraud and wire fraud, which

21   involves your determination of whether there was an agreement

22   or understanding to commit health care fraud.  The health care

23   fraud statute is also relevant to Counts Two through Six, which

24   charge Jorge Perez, Ricardo Perez, and Aaron Durall with the

25   substantive counts of health care fraud.

1       It's a federal crime to knowingly and willfully

2  execute, or attempt to execute, a scheme or artifice to defraud

3  a health care benefit program, or to get any of the money or

4  property owned by, or under the custody or control of, a health

5  care benefit program by means of false or fraudulent pretenses,

6  representations, or promises.

7       A defendant can be found guilty of health care fraud

8  only if all the following are proved beyond a reasonable doubt:

9       No. 1, the defendant knowingly executed, or attempted

10  to execute, a scheme or artifice to defraud a health care

11  benefit program, or to obtain money or property owned by, or

12  under the custody or control of, a health care benefit program

13  by using false or fraudulent pretenses, representations, or

14  promises;

15       No. 2, the health care benefit program affected

16  interstate commerce;

17       No. 3, the false or fraudulent pretenses,

18  representations, or promises related to a material fact;

19       No. 4, the defendant acted willfully and intended to

20  defraud;

21       No. 5 -- and No. 5, the defendant did so in

22  connection with the delivery of or payment for health care

23  benefits, items, or services.

24       "Health care benefits program" -- "health care

25  benefit program" means any public or private plan or contract,

affecting commerce, under which any medical benefit, item, or
service is provided to any individual, and includes any
individual or entity that is providing a medical benefit, item,
or service for which payment may be made under the plan or
contract.

A health care program affects interstate commerce if
the health care program had any impact on the movement of any
money, goods, services, or persons from one state to another.
The government need only prove that the health care program
itself either engaged in interstate commerce or that its
activity affected interstate commerce to any degree.  The
government need not prove that the defendant engaged in
interstate commerce or that the acts of the defendant affected
interstate commerce.

A "scheme to defraud" includes any plan or course of
action intended to deceive or cheat someone out of money or
property by using false or fraudulent pretenses,
representations, or promises relating to a material fact.

A statement or representation is "false" or
"fraudulent" if it is about a material fact that the speaker
knows is untrue or makes with reckless indifference as to the
truth and makes with the intent to defraud.  A statement or
representation may be "false" or "fraudulent" when it's a
half-truth or effectively conceals a material fact and is made
with the intent to defraud.

1    A "material fact" is an important fact that a

2    reasonable person would use to decide whether to do or not do

3    something.  A fact is "material" if it is already -- if it has

4    the capacity or natural tendency to influence a person's

5    decision.  It doesn't matter whether the decision-maker

6    actually relied on the statement or knew or should have known

7    that the statement was false.

8    To act with "intent to defraud" means to do something

9    with the specific intent to use false or fraudulent pretenses,

10   representations, or promises to cause loss or injury.  Proving

11   intent to deceive alone, without the intent to cause loss or

12   injury, is not sufficient to prove intent to defraud.

13   The government doesn't have to prove all the details

14   alleged in the indictment about the precise nature and purpose

15   of the scheme.  The government also doesn't have to prove that

16   the alleged scheme actually succeeded in defrauding anyone.

17   What must be proved beyond a reasonable doubt is that the

18   defendant knowingly attempted or carried out a scheme

19   substantially similar to the one alleged in the indictment.

20   Count Seven charges Aaron Durall and Neisha Zaffuto

21   with conspiracy to commit money laundering.  Count Eight also

22   charges Jorge Perez, Ricardo Perez, James Porter, Jr., Sean

23   Porter, and Christian Fletcher with conspiracy to commit money

24   laundering.

25   It's a federal crime to conspire to engage in money

laundering or transactions involving the proceeds of specified

unlawful activity that violates 18 -- Title 18, United States

Code, Section 1956 or 1957.

I will explain promotional money laundering

(18 U.S.C., Section 1956(a)(1)(A)(i)), which is at issue in

Count Seven in Instruction 15.

I will explain monetary transaction money laundering

(18 U.S.C., Section 1957), which is at issue in Counts Seven

and Eight, in Instruction 16.

As I stated previously, a "conspiracy" is an

agreement by two or more persons to commit an unlawful act.  In

other words, it is a kind of partnership for criminal purposes.

Every member of the conspiracy becomes the agent or partner of

every other member.

The government does not have to prove that all the

people named in the charge were members of the plan, or that

those who were members made any kind of formal agreement.  The

heart of a conspiracy is the making of the unlawful plan

itself, so the government does not have to prove that the

conspirators succeeded in carrying out the plan.

A defendant can be found guilty of conspiracy to

commit money laundering only if all the following are proved

beyond a reasonable doubt:

No. 1, two or more people agreed to accomplish a

common and unlawful plan to violate 18 U.S.C., Section 1956 or

1957; and, No. 2, the defendant knew about the plan's unlawful

purpose and voluntarily joined in it.

A person may be a conspirator even without knowing

all the details of the unlawful plan or the names and

identities of all the other alleged conspirators.

If the defendant played only a minor part in the plan

but had a general understanding of the unlawful purpose of the

plan, and voluntarily joined in the plan on at least one

occasion, that's sufficient for you to find the defendant

guilty.

But simply being present at the scene of an event or

merely associating with certain people and discussing common

goals and interests doesn't establish proof of a conspiracy.

Also a person who doesn't know about the conspiracy but happens

to act in a way that advances some purpose of one doesn't

automatically become a conspirator.

The promotional money laundering statute (18 U.S.C.,

Section 1956(a)(1)(A)(i)) is relevant to Count Seven, which

charges Aaron Durall and Neisha Zaffuto with conspiracy to

commit money laundering, and Counts Nine and Ten, which charges

Aaron Durall with the substantive counts of promotional money

laundering.

It's a federal crime to knowingly engage in certain

kinds of financial transactions commonly known as money

laundering.

1    A defendant can be found guilty of promotional money

2    laundering only if all the following are proved beyond a

3    reasonable doubt:

4    No. 1, the defendant knowingly conducted, or tried to

5    conduct, a financial transaction;

6    No. 2, the defendant knew that the money or property

7    involved in the transaction was the proceeds of some kind of

8    unlawful activity;

9    No. 3, the money or property did come from an

10   unlawful activity, specifically the conspiracy to commit health

11   care fraud and wire fraud, and health care fraud; and, No. 4,

12   the defendant was involved in the financial transaction with

13   the intent to promote the carrying on of that specified

14   unlawful activity.

15   To "conduct a transaction" means to start or finish a

16   transaction, or to participate in a transaction at any point.

17   A "transaction" means a purchase, sale, loan,

18   promise, gift, transfer, delivery, or other disposition of

19   money or property.  A transaction with a financial institution

20   also includes a deposit, withdrawal, transfer between accounts,

21   exchange of currency, loan, extension of credit, use of a safe

22   deposit box, or purchase or sale of any stock, bond,

23   certificate of deposit, or other monetary instrument.

24   A "financial transaction" means a transaction that in

25   any way or to any degree affects interstate or foreign commerce

1   by sending or moving money by wire or other means.

2          "Interstate or foreign commerce" means trade and

3   other business activity between people or businesses in at

4   least two states or between people or businesses in the United

5   States and people or businesses outside the United States.

6          To "know that the money or property involved in the

7   transaction came from some kind of unlawful activity" is to

8   know that the money or property came from an activity that's a

9   felony under state, federal, or foreign law.

10          The term "proceeds" means any property derived from

11  or obtained or retained, directly or indirectly, through some

12  form of unlawful activity, including the gross receipts of the

13  activity.

14          The term "specified unlawful activity" means

15  conspiracy to commit health care fraud and wire fraud, and

16  health care fraud, in violation of Title 18, United States

17  Code, Sections 1349 and 1347, as alleged in the indictment.

18          The term "with intent to promote the carrying on of

19  specified unlawful activity" means that the defendant must have

20  conducted or attempted to conduct the financial transaction for

21  the purpose of making easier or helping to bring about the

22  "specific unlawful activity" as just defined.

23          The monetary transaction money laundering statute

24  (18 U.S.C., Section 1957) is relevant to Count Seven, which

25  charges Aaron Durall and Neisha Zaffuto with conspiracy to

1  commit money laundering, and Count Eight, which charges Jorge

2  Perez, Ricardo Perez, James Porter, Jr., Sean Porter, and

3  Christian Fletcher with conspiracy to commit money laundering.

4  The monetary transaction money laundering statute also is

5  relevant to Counts Eleven through Twenty-Three, which charge

6  Jorge Perez, Ricardo Perez, Aaron Durall, Neisha Zaffuto, James

7  Porter, Jr., Sean Porter, and Christian Fletcher with

8  substantive counts of money -- monetary transaction money

9  laundering.

10        It's a federal crime for anyone to engage in certain

11  kinds of financial transactions commonly known as money

12  laundering.

13        A defendant can be found guilty of monetary

14  transaction money laundering only if all the following are

15  proved beyond a reasonable doubt:

16        No. 1, the defendant knowingly engaged or attempted

17  to engage in a monetary transaction;

18        No. 2, the defendant knew the transaction involved

19  property or funds that were the proceeds of some criminal

20  activity;

21        No. 3, the property had a value of more than $10,000;

22        No. 4, the property was, in fact, proceeds of a

23  conspiracy to commit health care fraud and wire fraud, and

24  health care fraud; and, No. 5, the transaction took place in

25  the United States.

1       The term "monetary transaction" means the deposit,

2   transfer, exchange of funds, or a monetary instrument by,

3   through, or to a financial institution in a way that affects

4   interstate commerce.

5       A "financial institution" means an insured bank.

6       The term "proceeds" means any property derived from

7   or obtained or retained, directly or indirectly, through some

8   form of unlawful activity, including the gross receipts of the

9   activity.

10       It doesn't matter whether a defendant knew the

11   precise nature of the crime or that the property came from the

12   conspiracy to commit health care fraud and wire fraud, in the

13   commission of health care fraud.  But the government must prove

14   that the defendant knew -- that a defendant knew that the

15   property involved in the monetary transaction was obtained or

16   derived from committing some crime.

17       Also it doesn't matter whether all the property

18   involved was derived from a crime.  The government only has to

19   prove that $10,000 worth of the property was obtained or

20   derived from a conspiracy to commit health care fraud and wire

21   fraud, and health care fraud.

22       It's possible to prove a defendant guilty of a crime

23   even without evidence that the defendant personally performed

24   every act charged.

25       Ordinarily, any act a person can do may be done by

1    directing another person, or "agent."  Or it may be done by

2    acting with or under the direction of others.

3           A defendant "aids and abets" a person if the

4    defendant intentionally joins with the person to commit a

5    crime.

6           A defendant is criminally responsible for the acts of

7    another person if the defendant aids and abets the other

8    person.  A defendant is also responsible if the defendant

9    willfully directs or authorizes the acts of an agent, employee,

10   or other associate.

11          But finding that a defendant is criminally

12   responsible for the acts of another person requires proof that

13   the defendant intentionally associated with or participated in

14   the crime, not just proof that the defendant was simply present

15   at the scene of a crime or knew about it.

16          In other words, you must find beyond a reasonable

17   doubt that a defendant was a willful -- a willful participant

18   and not merely a knowing spectator.

19          I'm going to read that last sentence to you again

20   just to make sure.

21          In other words, you must find beyond a reasonable

22   doubt that a defendant was a willful participant and not merely

23   a knowing spectator.

24          Where a statute specifies multiple alternative ways

25   in which an offense may be committed, the indictment may allege

1    the multiple ways in the conjunctive, that is, by using the

2    word "and."  If only one of the alternatives is proved beyond a

3    reasonable doubt, that is sufficient for conviction, so long as

4    you agree unanimously as to that alternative.

5           If you find that the government has proved beyond a

6    reasonable doubt Counts Nine, Ten, or Eleven through

7    Twenty-Three, you must decide whether venue for each offense

8    exists in the Middle District of Florida.  Venue exists

9    where -- venue exists where the crime was committed.  You are

10   instructed that Jacksonville, Jacksonville Beach, Atlantic

11   Beach, and Ocala, Florida, are all within the Middle District

12   of Florida.

13          The government must prove that venue for an offense

14   exists in the Middle District of Florida by a preponderance of

15   the evidence.  A preponderance of the evidence means that the

16   government must prove it is more likely than not that venue for

17   an offense exists in the Middle District of Florida.  You must

18   consider the elements of the charged offense as previously

19   instructed when determining where that offense was committed.

20   You must unanimously agree that the charged offense occurred

21   within the Middle District of Florida.

22          Venue exists in the Middle District of Florida for

23   Counts Nine, Ten, or Eleven through Twenty-Three if you find by

24   a preponderance of the evidence that the offense was begun,

25   continued, or completed in the Middle District of Florida.

1    If the government does not prove, by a preponderance

2    of the evidence, that venue for Counts Nine, Ten, or Eleven

3    through Twenty-Three exists in the Middle District of Florida,

4    you must return a verdict of not guilty for that offense.

5    You'll see that the indictment charges that a crime

6    was committed "in or about" a certain date.  The government

7    doesn't have to prove that the crime occurred on an exact date.

8    The government only has to prove beyond a reasonable doubt that

9    the crime was committed on a date reasonably close to the date

10   alleged.

11   The word -- the word "knowingly" means that an act

12   was done voluntarily and intentionally and not because of a

13   mistake or by accident.

14   The word "willfully" means that the act was committed

15   voluntarily and purposely, with the intent to do something the

16   law forbids; that is, with the bad purpose to disobey or

17   disregard the law.  While a person must have acted with the

18   intent to do something the law forbids before you can find that

19   that person acted "willfully," the person need not be aware of

20   the specific law or rule that his or her conduct may be

21   violating.

22   "Good faith" is a complete defense to a charge that

23   requires intent to defraud.  A defendant isn't required to

24   prove good faith.  The government must prove intent to defraud

25   beyond a reasonable doubt.

An honestly held opinion or an honestly formed belief
cannot be fraudulent intent, even if the opinion or belief is
mistaken.  Similarly, evidence of a mistake in judgment, an
error in management, or carelessness can't establish fraudulent
intent.

But an honest belief that a business venture would
ultimately succeed doesn't constitute good faith if the
defendant intended to deceive others by making representations
the defendant knew to be false or fraudulent.

Defendant James Porter, Jr., and Sean Porter are also
raising a defense of good faith reliance upon advice of
counsel.  This defense is raised only as to James Porter, Jr.,
and Sean Porter, and does not apply to any other defendant.

Good faith is a complete defense to the counts James
Porter, Jr., and Sean Porter are charged with because the
government must prove beyond a reasonable doubt that a
defendant acted with intent to defraud.  Evidence that a
defendant in good faith followed the advice of counsel would be
inconsistent with such an unlawful intent.

Unlawful intent has not be proved if a defendant,
before acting:  made a full and complete good faith report of
all material facts to an attorney he considered competent;
received the attorney's advice as to the specific course of
conduct that was followed; and reasonably relied upon that
advice in good faith.

1    You have heard testimony about standard of care and

2 industry standards and seen evidence pertaining to insurance

3 coverage including contracts, policies, or agreements.

4    I remind you that a violation of a standard of care

5 or industry standards is not a crime.  The defendants are not

6 on trial for violations of standard of care or industry

7 standards.

8    However, this evidence may be relevant in determining

9 whether any defendant acted with intent to defraud.

10    Each count of the indictment charges a separate crime

11 against one or more of the defendants.  You must consider each

12 crime and the evidence relating to it separately.  And you must

13 consider the case of each defendant separately and

14 individually.  If you find a defendant guilty of one crime,

15 that must not affect your verdict for any other crime or any

16 other defendant.

17    I caution you that each defendant is on trial only

18 for the specific crimes charged in the indictment.  You're here

19 to determine from the evidence in this case whether each

20 defendant is guilty or not guilty of those specific crimes.

21    You must never consider punishment in any way to

22 decide whether a defendant is guilty.  If you find a defendant

23 guilty, the punishment is for the judge alone to decide later.

24    Your verdict, whether guilty or not guilty, must be

25 unanimous; in other words, you must all agree.  Your

deliberations are secret, and you'll never have to explain your
verdict to anyone.

Each of you must decide the case for yourself, but
only after fully considering the evidence with the other
jurors.  So you must discuss the case with one another and try
to reach an agreement.  While you're discussing the case, don't
hesitate to reexamine your own opinion and change your mind if
you become convinced that you were wrong.  But don't give up
your honest beliefs just because the others think differently
or because you simply want to get the case over with.

Remember that, in a very real way, you're judges,
judges of the facts.  Your only interest is to seek the truth
from the evidence in the case.

When you get to the jury room, choose one of your
members to act as foreperson.  The foreperson will direct your
deliberations and will speak for you in court.

And a verdict form for each defendant has been
prepared for your convenience.

And I'm going to show you one of those verdict forms.
And I'm just going to show you the one for Jorge Perez.  And I
only do that because he's the first name listed in the
indictment, of course.  I'm not -- there's no other reason for
me to show you his verdict form as opposed to another
defendant's.

But just so I can show you, and what you'll have back

1 there, before I look at his specifically -- you'll have a

2 verdict form -- a separate verdict form for each defendant.

3 And so you'll -- when you're doing your deliberations, you'll

4 have to go through the verdict form for each defendant

5 individually and make unanimous decisions for each defendant,

6 and eventually, when you're concluded with your deliberations,

7 all eight verdict forms will be filled out and signed by

8 your -- by your foreperson.

9      So obviously there's one for each of the named

10 defendants in the case, but it's a separate -- separate form --

11 verdict form for each defendant.  Okay?

12      But I'm just going to briefly show you the one for

13 Jorge Perez so that I can just kind of show you how it works.

14      So it starts out here -- and, by the way, each -- not

15 all defendants are charged -- as you can tell from the

16 instructions, not all of them are charged in every count.  And

17 so the verdict form for that defendant will only include the

18 counts that they are charged in.  So -- so you just have to

19 keep that in mind too.

20      So that means each of the verdict forms are likely to

21 be different for each of the defendants.  All right?

22      So -- but just as an example here, with regard to

23 Count One of the indictment, which charges conspiracy to commit

24 health care fraud and wire fraud, we, the jury, find Jorge

25 Perez, and then you have to unanimously agree, not guilty or

1  guilty, and then there's instructions.

2          And please -- there'll be instructions as to what to

3  do next.  If you found Jorge Perez not guilty of Count One,

4  skip the next question and proceed to consider Count Two below.

5          And Count Two is actually on the next page.

6          However, if you have found Jorge Perez guilty of

7  Count One, answer this question:  We, the jury, unanimously

8  find the following to be the object of the conspiracy, and then

9  you would use one of these options, health care fraud, wire

10 fraud, both health care fraud and wire fraud, and you would

11 check that box.

12         So the point of that is -- for me telling you this is

13 that it's very important that you do it in sequence and that

14 you follow the directions so that you properly will fill out

15 the form.

16         Now, as we turn over the page, it gets a little bit

17 more -- it gets a little bit simpler for -- Count Two is health

18 care fraud, and then Count Three health care fraud, and so

19 forth.

20         And -- but then -- and some of the other verdict

21 forms, there may be another conspiracy charge.  And it will be

22 the same thing, that you have to decide guilty or not guilty.

23 And depending on what you've decided, you may skip the next

24 question, or you may have to answer it.  So you just have to

25 follow the directions on the verdict -- on the verdicts very

1   carefully.

2         And -- and it goes all the way through and -- and,

3   Ms. Hatfield, if you'll just put the last page of the -- of

4   this verdict form -- you'll see at the very end it says "so say

5   we all," and then your foreperson signs and dates the verdict

6   form once you have filled it out completely.  And remember that

7   every decision has to be unanimous.  Okay?

8         All right.  And, as I said, there's one of these

9   forms for each defendant, Ricardo Perez, Aaron Durall, James

10   Porter, Jr., Sean Porter, Christian Fletcher, Neisha Zaffuto,

11   and Aaron Alonzo.  There's one for -- one separate verdict form

12   for each -- each of the defendants.

13         Now, you may be asking:  Well, how do we know which

14   counts are what?

15         And, of course, the jury instructions will help you

16   do that.  They tell you about certain counts.  But what I've

17   done is I've given you a -- a redacted form of the indictment

18   itself.  And the indictment, as you remember, is a formal

19   charge.

20         I have removed information that was not relevant to

21   your deliberations.  So you'll see there's quite a few gaps in

22   it.  But don't pay any attention to that.  I've given you what

23   you need in order to be able to do -- to do your job.

24         So here's -- for example, Count One is a conspiracy

25   count.  And it -- it charges Jorge Perez, Ricardo Perez, Aaron

1   Durall, James Porter, Christian Fletcher, Neisha Zaffuto, Aaron

2   Alonzo -- it charges them with a conspiracy count.  You have

3   instructions on that conspiracy count that I've just read you

4   that you'll have.  You'll be able to refer to this, so you'll

5   know what charge we're talking about.

6           And so then when it gets to Counts Two through Six

7   with this health care fraud, it also -- in that one it just

8   charges Jorge Perez, Ricardo Perez, and Aaron Durall, and it

9   gives you some -- it gives you some ability to know what charge

10  that was.  And then there's these little boxes which show the

11  specific counts.  So this is Count Two.  And here's what Count

12  Two alleges.  Count Three, Count Four.

13          So you'll be able to use this indictment.  As you go

14  through it, you'll be able to -- to use this, the instructions,

15  to understand what the counts are that you put on to the

16  verdict form.

17          So -- so I've tried to give you everything you need

18  to be able to say, Okay, this is Count Five, let's say.  All

19  right.  Here's what that is.  Here's who it's against.  And

20  then you can make your decisions and your deliberations and

21  fill out your verdict forms accordingly.  Okay?

22          And, as I said, you do need to be careful when you're

23  going through the verdict forms, because not every defendant is

24  charged with the same thing.  So you're going to have to make

25  sure you keep track of that as well.

1    But with this indictment, with the verdict forms,

2    which try to walk you through it, and with the instructions,

3    you should have all the tools you'll need to -- to -- in

4    addition, of course, to all the exhibits in evidence that

5    you'll have as well, you should have the tools you'll need

6    to -- to reach a verdict.

7    So you'll take these verdict forms and other

8    materials with you to the jury room.  When you've all agreed on

9    the verdict, your foreperson must fill in the form, sign them,

10   date them, and carry them to the court security officer who

11   will be posted outside.

12   And then you'll return -- then you'll return them to

13   the -- to the courtroom.  So you'll -- this is a little bit --

14   you'll sign -- the foreperson -- once you've agreed on a

15   unanimous verdict, you sign them, you date them, you carry

16   them, and return them to the -- to the court security officer,

17   who will then -- he'll be standing outside and he'll -- he'll

18   give them to me, and then we'll go from there.

19   Actually, that's not right.  I apologize.  We -- this

20   is -- I'm going to give you a new page 26 here, because this is

21   not exactly the way I should have said it.

22   What I should be saying to you is this, you will --

23   once you've reached a verdict, you will sign the verdicts --

24   your foreperson will sign the verdicts, so that makes them

25   final.  We have envelopes there.  And you can put the verdicts

1  in envelopes.

2          And I would recommend that you put -- you can either

3  put them all in one big envelope, if it will fit, or you can

4  put them in separate envelopes, or use as many envelopes as you

5  need to put all the verdict forms in there.  You can even put

6  one in each envelope, if you want to, but we'll give you

7  envelopes to do that.

8          You then notify the court security officer that you

9  have a verdict.  You keep -- you hold on to them.  You bring

10 them in.  And then I will take them from you once you come back

11 to the courtroom.

12         So don't give them to the court officer.  That was a

13 mistake own my part.  Let the court security officer know

14 you've got a verdict.  But your foreperson holds on to the

15 verdicts until you come into the courtroom.  And I'll change

16 this on here just to -- just so it's clear to you.

17         Now, if you wish to communicate with me at any time,

18 please write down your message or question and give it to the

19 court security officer.  And he -- in that case you will give

20 it to him.  And put it in an envelope, give it to him, he'll

21 bring it to my attention.

22         Now, sometimes -- you're not required to have

23 questions.  So if you don't have any questions, you don't --

24 you don't have to -- to -- it's not required that you

25 communicate with me.  And if you do communicate with me, don't

1  tell me any votes or anything about the deliberations.

2         If you have a specific question that you feel like

3  I -- that you want to bring to my attention, you can do so.

4  Your foreperson writes it down, puts in envelope, give it to

5  the court security officer.

6         What happens then, if there is a question --

7  sometimes it takes us a while to get back to you, because

8  sometimes I have to talk to the lawyers about it and figure out

9  what an answer can be.

10        And I will tell you, truly sometimes you ask

11 questions -- sometimes juries ask questions that I just can't

12 answer.  And so if that's the case, I'll have to tell you, I'm

13 sorry, I can't -- can't give you any more information on that.

14        But -- but if you do have a question, write it down,

15 put it in the envelope, and let me -- let me look at it through

16 the court security officer, and then I'll give you an answer as

17 quickly as I can, and I'll give you the best answer I can, but

18 it may not always be able to directly answer your question,

19 because there are legal requirements involved in those

20 questions.

21        Let me see counsel at sidebar briefly, please.

22    (Sidebar conference:)

23        THE COURT:  All right.  All previous objections to

24 the Court's instructions and the verdict forms are preserved.

25        Do counsel have any additional objections to the

1  Court's jury instructions or the manner in which the Court has

2  instructed the jury?

3       MR. LANDES:  No, Your Honor.

4       THE COURT:  Anybody?

5       MR. BELL:  No, Judge.

6       THE COURT:  Okay.

7     (Counsel confer.)

8       MR. DUVA:  Your Honor, only just cleaning up what the

9  Court intends to clean up, on Instruction No. 26 on page 39.  I

10  think the Court will just have to fashion some language that we

11  all agree on.

12       THE COURT:  Okay.  That's fine.  I mean, it's

13  routine.  And I'm not sure -- maybe that's my normal language.

14  It doesn't -- it didn't look like it.  So I'm going to -- I'm

15  going to look at it.  But we'll just -- I mean, basically I

16  told them what to do, so...

17       MR. DUVA:  This is the pattern.  I never thought it

18  made any sense, frankly.

19       THE COURT:  Okay.  Yeah.  Okay.  I -- just when I was

20  reading it, it hit me as not being what we really want them to

21  do.  So I think it's fine.  I think I've told them what to do,

22  but I'll clean it up and we'll get it to them.

23       MR. DUVA:  Yes, Your Honor.

24       THE COURT:  Okay.  Any other objections?

25       MR. BELL:  No, Your Honor.

1     THE COURT:  All right.

2     (The following proceedings occurred in open court, in the

3  presence of the jury:)

4     THE COURT:  Okay.  So here's how this is going to

5  work.  And it's going to take us a little while.  Ms. Hatfield

6  will be the one bringing you the evidence, all the exhibits.

7  You do have a -- a cart there in the jury room that will allow

8  you to look at any -- any evidence that's on electronic format,

9  if you wish to do so.

10     But it takes us a while to do that.  I've got to fix

11  this instruction, because I -- the last instruction that I just

12  gave you, about how to -- how to handle the verdict, I want

13  to -- I want to fix that.  And I'll give that to you.

14     We're going to give you four sets of the

15  instructions.  Our experience is if we -- is that giving 12

16  sets is just a lot of paper and people don't really want it.

17     But if four is not enough and you need more, all

18  you've got to do is write a note and we'll give you some --

19  we'll give you more.

20     You only get one set of the verdict forms, because we

21  want -- we want that to be the -- the only verdict that you --

22  that you write on and have in mind.

23     And then we'll give you four sets of the redacted

24  indictment as well, so you'll have those to pass around.  And,

25  again, if you need more, you can ask us for more through a note

1    to your court security officer.

2              And so we have arranged for you to be able to

3    deliberate in -- in a courtroom, like -- a courtroom like this.

4    It's not quite as big, but almost as big.

5              And we started doing that during COVID because people

6    wanted to be, like, spread out and so forth.  And juries seem

7    to like it because it gives them more room.  As you might have

8    seen, that room in there is pretty small.

9              And so we're going to have it -- we have a courtroom

10   on 12, so one floor below us, that's all set up for you.  It's

11   set up in a U shape and people can sit and have room and so

12   forth.

13             So -- so -- and once you go down there, that will

14   kind of be your home base after that.  So if you want to

15   take -- you know, I don't know what you have with you.  But if

16   you want to take things and go down -- any personal items, you

17   can take that down there, because you'll have access to the

18   courtroom, you'll have access to rest rooms down there, and

19   other things.

20             So -- and once you go down there, that will be --

21   that will become your home base until you reach a verdict.  You

22   won't be back up here until you actually come back into the

23   courtroom and -- and announce your verdict.

24             So what we're going to do is -- once you leave, I'm

25   going to ask you to stay -- stay back in your area back there

1    until Ms. Hatfield and the court security officers can -- can

2    escort you down to the twelfth floor, kind of get you situated.

3    And then after that she'll be bringing in the exhibits and

4    all -- and so forth.

5              If you want to go ahead and elect your foreperson,

6    you can do that, and kind of get settled in.  The other thing

7    that happens is -- there's, of course, no time limit on your

8    deliberations.  And I don't have any rules at all or -- to

9    suggest to you about how you go about your business.

10             Obviously you've heard a lot of evidence and

11   testimony.  It's a -- it's a big project that we've given to

12   you.  We understand that.

13             I don't have any advice for you other than this, I do

14   ask that all jurors participate in all discussions.  What I

15   mean by that is, you'll all be in a room together, you'll be

16   talking about the case.

17             If somebody needs to take a break, go to the rest

18   room, or if -- if there's several people on break, I'm going to

19   ask you to stop talking about the case, wait for everybody to

20   be all back together.  I'm also going to ask for you not to

21   have three or four of you go off in a corner and talk about it

22   and then come back.

23             I want everybody to be able to hear everything and

24   all deliberations to be with everybody present, so -- and, of

25   course, you can take a break.  It's up to you.

1      Just remember, once you're on break and you want to

2   go to the bathroom, or stretch your legs or whatever, don't

3   talk about the case at all with anybody, and try to just make

4   those as brief as you can, and then -- and then get back to --

5   get back to work.

6      The other thing is, once a jury starts deliberating,

7   we -- we bring lunch in.  And so you will be getting lunch

8   today.  If some of you brought your own lunch, that's perfectly

9   fine.  But we're not going to have you go out today.  We're

10  going to bring lunch in to you.  I'm not sure...

11      (Judge confers with courtroom deputy.)

12      THE COURT:  So we're going to -- we -- we're going to

13  bring you -- from Quizno's, which is right across the street.

14  The sandwiches are pretty good, but the cookies are really

15  good, so -- and usually there's cookies involved.  So -- so we

16  will bring that lunch in to you at the appropriate time.

17      And during lunch you can either just decide let's eat

18  lunch and talk about our kids, or whatever, and not talk about

19  the case, or you can continue to deliberate during lunch, as

20  long as everybody -- everybody is together.

21      I think those are all the things that I wanted to --

22  to say.  Anything else?

23      (Judge confers with courtroom deputy and law clerks.)

24      THE COURT:  All right.  I'm told by my -- my law

25  clerks here that I misspoke twice reading the instructions, so

1    I'm just going to clean that up for you.  Neither one of them

2    are very significant, but I'm just going to -- so -- and you'll

3    see in the written instructions -- but on Jury Instruction

4    No. 14, page 22, a -- the -- in the discussion about whether --

5    it says, A defendant can be found guilty of conspiracy to

6    commit money laundering only if all the following are proved

7    beyond a reasonable doubt:

8              No. 1, two or more people agreed to try to accomplish

9    a common and unlawful plan to violate 18 U.S.C., Section 1956

10   or 1957.

11             I'm told that I omitted the word "try" when I first

12   read it to you.  So I'm sorry about that.  But it will be in

13   the written instructions.

14             And in Jury Instruction No. 15, on page 26, the very

15   last sentence, I'm told that I used -- what was the word?

16             LAW CLERK:  Specific.

17             THE COURT:  That instead of -- instead of using the

18   term "specified unlawful activity" that I called it "specific

19   unlawful activity."  So it is "specified unlawful activity."

20   And that's at the very end of that instruction.

21             So those -- I'm just cleaning that up for the record,

22   but that will be in the written instructions that you get --

23   that you get as well.

24        (Judge confers with law clerk.)

25             THE COURT:  Anything else from counsel?

1          MR. HAYES:  No, Your Honor.

2          MR. LANDES:  Yo, Your Honor.

3          THE COURT:  All right.  So you-all have -- y'all have

4    been amazing in terms of your attendance, and -- but as you --

5    as I told you at the beginning of the trial, we -- a jury is 12

6    people.  And we have 13 people.  So one of you -- and -- is an

7    alternate.

8          And, Ms. Lewis, that is you.

9          And so what I'm going to do is -- I'm going to let

10   the others go into the area back there while they wait to be

11   taken down to the twelfth floor, and I'm going to talk to you

12   just briefly afterwards, but, of course, we appreciate your

13   service.  And I'll talk to you more about your service.

14         But that means Ms. Lewis will not be participating in

15   the deliberations of the 12 of you.  And so when she -- I'm

16   going to keep her here for a minute.

17         When she comes back in, if you want to say good-bye

18   or whatever you want to do, that's fine, but don't talk about

19   the case.  And, of course, we're not ready to talk about the

20   case anyway.  But I just wanted to let you-all know that.

21         So the rest of you will be deliberating.  And we --

22   so I'm going to go ahead and let you-all go in the back there.

23   And if you'll just -- and you can take your notepads and

24   everything, too -- everything else you have.  And just wait

25   back in there until you get further instructions.

1    And, thank you, ladies and gentlemen.

2    (Jury exits to begin deliberations, 10:07 a.m.)

3    THE COURT:  Just have a seat for a minute.

4    So here's the deal.  First of all, thank you for all

5    your hard work.  And I know you -- you weren't feeling well for

6    part of the time and you stuck with it.  And we -- so we're

7    grateful for that.

8    As you have seen in this trial, we do lose jurors,

9    because somebody gets sick or something happens.  And if that

10   were to happen, we would ask you to step in.  And so I want to

11   just talk with you a minute and kind of get -- see how you're

12   feeling about things.

13   We can -- we can have a place for you to be here in

14   the courthouse that you're just waiting for the verdict to come

15   in, and that way if we needed to -- to ask you to step in,

16   we'd -- you know, you'd be right here ready to go.

17   If -- so I'm willing to do that.  I'm happy to do

18   that.  We can make you comfortable.  We can do whatever we need

19   to do to make you comfortable.

20   If you really wanted and thought it would be better

21   to be able to go home, I would let you do that if you would

22   promise me that you would do everything you've been doing,

23   which is not talk about the case and not do any of your own

24   research, so that -- and, also, if you were to promise me that

25   you'd be available kind of on a moment's notice.

1    So is it -- just as you're thinking about it -- I

2   don't know what your situation is.  Is it better for you --

3   like, you could stay today at least and see and then we can

4   have a decision about it.

5        What -- can you just tell me what you're thinking?

6        ALTERNATE JUROR:  I have no problems staying here at

7   all.

8        THE COURT:  All right.  Why don't we do that, then.

9   All right.  And so what -- what you will do, then, is you'll

10  kind of be a little bit in the cone of silence, meaning that

11  you'll -- unfortunately, since it's only one of you, you'll

12  kind of be a little by yourself, but we'll try to make sure

13  you're looked after.

14       But the most important thing is that you do nothing

15  on the case.  Don't talk about it with anybody, all the same

16  things.  Don't do any of your own research.  Just nothing on

17  the case, in case we need to call you.

18       It will almost be like calling you out of the -- out

19  of the secret room or something, if we need to.  But I will

20  need -- if we do that, I'll need to be able to know that you

21  are -- you haven't -- that you're just -- that you have not

22  done anything on the case, you've not talked about it, you've

23  not done your own research, you've not looked up anything.  So

24  I'll need to be able to know that.  So will you -- will you do

25  that for me, please?

1        ALTERNATE JUROR:  Yes, sir.

2        THE COURT:  And nothing on social media either.

3        ALTERNATE JUROR:  Yes, sir.

4        THE COURT:  But you can have your phone.  You can

5   look up anything else you want to.  You can talk.  You can --

6   and we have -- we can make some other arrangements for you, and

7   we'll also -- we'll also give you some lunch, too.

8        So let's do that.  Okay?

9        So what I will do is this, once the...

10      (Judge confers with courtroom deputy.)

11       THE COURT:  So you can go back there.  Just don't

12  talk about the case.  Okay?  And -- and then when everybody

13  else goes down to the twelfth floor, you'll just stay there.

14  Ms. Hatfield will come back and get you.  And we'll go from

15  there.  Okay.  All right?

16       Well, thank you, again, Ms. Lewis.  We appreciate it.

17       All right.  So you can go ahead and go on back.  But

18  make sure you don't talk about the case.

19      (Alternate juror exits the courtroom, 10:12 a.m.)

20       THE COURT:  All right.  Everybody have a seat for a

21  moment.

22       I'm going to talk to y'all for a minute and then

23  we'll see where we are on things.  But I do want to keep

24  everybody in the courtroom until the jury clears out and gets

25  downstairs.  And that's what they're going to work on now.  A

1    couple of things I just -- a couple of things for the...

2            Kelly.

3        (Judge confers with law clerk.)

4            THE COURT:  All right.  This is just -- I just want

5    the instruction to be what I told them to do.  So when -- it's

6    going to say, When you've all agreed upon your verdict, your

7    foreperson must fill in the forms, sign them, date them, put

8    them in an envelope -- put them in envelopes, and notify the

9    court security officer.  You will then return to the courtroom

10   with your verdicts.

11           Is that all right?

12           MR. DUVA:  Sure.

13           THE COURT:  Any objection?

14           MR. SADOW:  No objection.

15           THE COURT:  Okay.  Obviously we've got to talk about

16   this forfeiture.  And we'll -- we'll figure that out in a

17   minute.  But before I do that, I -- I wanted to -- and I -- of

18   course, there's always a risk when you do something like this.

19           But I do feel like this trial has been relatively

20   extraordinary, in terms of the demands it's placed on all

21   involved, for lots of reasons.

22           And I thought it would be appropriate -- and if I

23   miss somebody, I apologize.  But I thought it would be

24   appropriate to -- obviously the lawyers are -- are the ones

25   that are -- that are front and center, but there's an awful lot

1    of folks who have made this trial go that -- that aren't front

2    and center.

3              I've already acknowledged Ms. Hatfield and Ms. Bishop

4    once, but I'll do so again for their stellar work during the

5    trial.

6              Ms. Milliron, my law clerk, has worked very hard on

7    the case, and Ms. Meyer has now joined us on the forfeiture

8    issue.  And they -- they have all worked extremely hard, and

9    sometimes late, to -- to provide the resources that they do in

10   order to have the trial run efficiently.  I could not do it

11   without them.

12             And I appreciate all of their efforts.  And that also

13   goes for the court security officers.  We've had -- we've had a

14   number of court security officers, but all of them have -- have

15   done a good job for us.

16             And if you'll pass my good wishes along, I will

17   appreciate it.

18             I think it would be -- I think it would be -- I would

19   be remiss if I didn't also recognize Ms. Stockholm for her

20   great work in the case for -- really for both sides, in

21   providing the resource that she did, in terms of displaying the

22   exhibits.  And I know that -- I want to recognize her good

23   work.

24             I also want to recognize Ms. Hinchey and Special

25   Agent Busic, who have kind of provided the gatekeeping that we

1  needed to keep the case moving.

2        And if I miss somebody on the staffs of the defense

3  counsel, let me know.  But the ones that I'm aware of are

4  Ms. -- Ms. Leadholm, if I'm saying her name correctly, who --

5  and Ms. King, who have provided paralegal services for the

6  defense side, and have done a good job.

7        Is there somebody on the defense side, non-lawyer

8  that I'm missing?

9     (No response.)

10       THE COURT:  Okay.  So I just want to personally thank

11  all of you for your efforts and, as I said, in a fairly

12  extraordinary circumstance.

13       And I thought about what to say to the lawyers,

14  because I -- I always want to be able to thank the lawyers

15  for -- for their efforts.  These are -- you know, trials are

16  difficult.  And there's a lot at stake.

17       And so -- and this one has been particularly

18  difficult.  And so what I would say to the lawyers is this.  I

19  do appreciate all of the efforts that have been made by all

20  lawyers to -- to fairly try this case.

21       And -- and I think for the most part the lawyers in

22  this case have conducted themselves professionally.  And we did

23  have a couple of spasms of what I would think of as

24  unprofessional conduct, and I regret that, but I also think

25  they were relatively short-lived, and that -- and on the whole

 1   the lawyers have conducted themselves professionally.

 2          And you almost literally couldn't try a case like

 3   this without a pretty high level of agreement and cooperation

 4   between lawyers and among lawyers, both that -- within the

 5   defense team itself and also between the defense and the

 6   government.

 7          And I also think that the lawyers did take to heart

 8   my request that the -- that we be as efficient as we could be

 9   without sacrificing a fair trial for anyone involved.  And I

10   feel like we did that.

11          So, you know, recognizing that it wasn't perfect and

12   that we did have some unfortunate events, I think I'm just

13   going to leave it at that.  And, mainly, I want to -- to

14   commend the lawyers for their efforts in the case.

15          I do all this now because, of course, when a verdict

16   is -- comes in, this will be the least of the things that any

17   of us are thinking about.  And so I wanted to go ahead and do

18   that on the record while I had a moment to do so.

19          And so I guess the only thing -- and I told you

20   yesterday that you need to -- to stay pretty close.  And

21   Ms. Hatfield is going to be the one that you need to keep close

22   to and make sure that she has her -- that she has -- has your

23   whereabouts pretty closely held.

24          I'd ask you to really stay on this floor as much as

25   you can.  The government, of course, is not too far away.  And

1   they can go to their office.  But for the rest of you-all, I'd

2   ask you not to wander off too far.

3          At lunchtime -- I think the lunch will be delivered

4   about noon to the -- to the jurors, and so we will be in --

5   you'll be able to go out and have lunch for 45 minutes or so as

6   you wish.  And we'll -- we'll -- because I don't expect that --

7   I don't expect the jury would -- would give a -- the -- I

8   wouldn't expect that the jury would be rendering a verdict over

9   lunchtime and/or have a question.

10          So I think it's usually -- my experience is when it's

11  time for lunch, they eat lunch, so -- so I think that will be

12  okay.  So I would say at noon you're kind of free for 45

13  minutes or so, and -- but other than that, I'd ask you to stay

14  around pretty close so that we -- if there's a question or a

15  verdict, that we're able to gather everybody together.  We've

16  got quite a few people that need to all be here.  So I'll ask

17  you to try to do that.

18          And I should also mention -- and I meant to do this

19  before.  I should also mention that -- I believe Mr. Bell,

20  Mr. Landes, Mr. Rowland, and Ms. Galnor are all CJA appointed

21  in this case.  And I do thank you for your service.  I

22  understand that a trial of this nature is difficult for anybody

23  and -- but I do appreciate your service to the Court in this

24  matter.

25          All right.  Is there anything else that counsel can

1  think of except for forfeiture that needs to be addressed at

2  this moment?  Anybody?

3          MR. DUVA:  No, Your Honor.

4          THE COURT:  Okay.  All right.  So...

5          So, Mr. Rafferty, I know you told me you hadn't

6  really had a chance to think about this.  And this is always

7  the problem with forfeiture.  It's -- it's important, but it's

8  hard to focus on before -- before we get to a certain point in

9  the trial.  It just is.

10          And, of course, we don't know what the jury is going

11  to do.  And all of this could end up being for naught.  But I

12  do -- if I'm going to keep this jury, I need to know what I'm

13  doing and why I'm doing it.

14          And so, Mr. Rafferty, do you have any -- I guess you

15  and Mr. Bell both mentioned that you thought there were --

16  maybe Mr. Bell said constitutional issues.  You just said you

17  thought that maybe any forfeiture that your client was a part

18  of might be subject to jury consideration.

19          Is there any more that you have to elaborate on that

20  at the moment?

21          MR. RAFFERTY:  No, Your Honor.  I spoke to the

22  government this morning.  You know, based on the government's

23  prior representations and the pretrial hearings that Mr. Durall

24  did not have a right to a jury trial, I hadn't really focused

25  on it until the Court started raising some questions yesterday

1 evening.

2      I looked into it for myself. And I wanted to just

3 make sure that I preserve Mr. Durall's rights to a jury

4 determination of forfeiture, if it comes to that point.

5      But given what the government said, it may well be

6 that he's not entitled to it. I just wanted to preserve that.

7 What I'd like to do is have a chance to speak to Mr. Duva and

8 the other folks on the government's side, between now and

9 lunch, to see if I can understand whether Mr. Durall, in fact,

10 has that right.

11      If he doesn't, then I think the issue has been

12 resolved. And that may well resolve the issue for many of the

13 other defendants. The government has said four, I think,

14 defendants have that right. And I'll let those four defendants

15 sort of decide on their own whether they want to move forward

16 with that or not.

17      THE COURT: Okay.

18      MR. BELL: And, Judge, maybe we can do two things.

19 One, maybe confer amongst ourselves on, one, who -- will clear

20 our position on who is -- whether we're going to assert a

21 constitutional right to a jury on not only what we have in

22 front of us by the rule, but on any other claims; and, two,

23 we're -- practically speaking, discuss with our individual

24 clients a little more at length about whether they're prepared

25 to exercise those, depending on how all this turns out.

1          So if I could propose maybe either a break of

2     some -- half hour or so, just to discuss that amongst ourselves

3     and individually, or even through the lunch hour, and come back

4     shortly after lunch to kind of articulate what those positions

5     are going to be.

6          I don't know how Mr. Sadow and the others feel about

7     this, but that may give us time to kind of sort all this out in

8     a little more systemic fashion.

9          THE COURT:  That's fine.

10         MR. DUVA:  Can we go through the lunch break so that

11    they have some time to do that?  I don't think 30 minutes is

12    going to get it done.  But if we go through the lunch hour and

13    come back at a time certain, we can figure out where we are.

14    That will also give me an opportunity to talk to Ms. Tran

15    and look at some of --

16         THE COURT:  Yeah.  She's right back there.

17         MR. DUVA:  -- and to determine, if we have a full

18    proceeding with the four defendants, how long it would take.

19         THE COURT:  Okay.  Ms. Tran, you wanted to be

20    recognized?

21         MS. TRAN:  Yes, Your Honor.  Only to make one point

22    that might save everyone a lot of time between now and the

23    lunch break.

24         I want to put on the record a -- a United States

25    Supreme Court ruling, or case, that stands for the proposition

1  that there is no constitutional right to a jury determination

2  regarding forfeiture of property.

3       That is the case *United States versus Libretti* [sic].

4  That's L-i-b-r-e-t-t-i, 516 U.S. 29, at page -- or at point 49.

5  That's a 1955 -- or 1995 case.

6       It stands for the proposition that the nature of

7  criminal forfeiture as an aspect of sentencing compels the

8  conclusion that the right to a jury verdict on forfeiture --

9  forfeitability does not fall within the Sixth Amendment

10 constitutional protection.

11      As a result of that case, Your Honor, the only right

12 to a jury trial for forfeiture proceedings is created within

13 the confines of the Federal Rule of Criminal Procedure 32.2,

14 sub (b), sub (5), which, of course, all defendants have

15 exercised their right at this juncture and asked for that jury

16 determination.

17      But (b)(5) triggers (b)(6), which indicates that once

18 the defendants have triggered their request and demand for jury

19 trial, the special verdict form would only go to the -- the

20 specifically directly traceable assets.  And I'm happy to

21 discuss further with any defense counsel between now and then.

22      THE COURT:  Sure.  And I'm sure they'll appreciate

23 that.  And -- and it's your view -- it's your view that those

24 assets would only be either real property that's still -- that

25 could be subject to forfeiture or the -- I don't want to use

1  "substitute," or the money that is the proceeds of the sales of

2  the properties which are currently segregated in the count?

3         MS. TRAN:  That is correct, Your Honor.

4         THE COURT:  All right.  And other things that the

5  government -- other things that the government is trying to

6  forfeit that is cash, but unspecified cash or, like, money

7  judgments, I guess, or I think I saw some jewelry and cars --

8  those are not entitled to a jury determination; is that right?

9         MS. TRAN:  That's correct, Your Honor.  There's no

10 nexus determination required for substitute assets or for

11 proceeds.  The only reason we would ever need a jury

12 determination is to hear the factual issue of nexus.  And that

13 only pertains to directly traceable assets.

14        THE COURT:  And why wouldn't something like jewelry

15 be directly traceable?

16        MS. TRAN:  All right.  Your Honor, not all property

17 that a defendant owns -- sometimes real property and personal

18 property is purchased with proceeds.  Innocent -- completely

19 innocent property that is untainted, i.e., substitute property,

20 can be used to satisfy the money judgment in any case for the

21 proceeds that came from the crime committed.

22        THE COURT:  All right.  I appreciate that.  So I

23 think that -- I think what we'll do is -- we'll take the time

24 and y'all can talk among yourselves.  You can talk with the

25 government.  You can do whatever makes sense.

1           What about -- and, you know, I'm just -- of course,

2   we don't have any idea how long the jury is going to be, but

3   given the -- given the -- how much is in front of them and that

4   we don't even have the exhibits to them yet, the -- it will

5   probably be a while.

6           So how about if we -- do you want to -- would 1:30 be

7   right?  Let's do that.

8           All right.  We're going to reconvene -- we'll be in

9   recess until 1:30.  We're going to reconvene at 1:30 to have

10  this discussion.

11          COURT SECURITY OFFICER:  All rise.

12      (Recess from 10:31 a.m. to 1:31 p.m.; all parties

13  present.)

14          COURT SECURITY OFFICER:  All rise.  This Honorable

15  Court is now back in session.

16          Thank you.  You may be seated.

17          THE COURT:  All right.  We're back in session to

18  further discuss the forfeiture issue.  The parties asked me to

19  give them some time to work on the issue.  And then we were

20  going to reconvene to find out where everybody stood.  In the

21  meantime, I've continued to do some work on it and kind of get

22  in my mind more clearly where -- where I think we are.

23          But let's just start -- I'll start with you, Ms. Tran

24  or Mr. Duva, whoever is speaking for the government, and just

25  tell me where you think we are from the government's

1  standpoint.

2       MR. DUVA:  Yes, Your Honor.  And this is with all my

3  forfeiture experience coming.  No, where we are is we're, I

4  think, waiting to hear from the four defendants who we believe

5  have a right to a jury trial, Jorge Perez, Ricardo Perez, Jim

6  Porter, and Christian Fletcher, if we get to that phase of the

7  case.

8       We're prepared to go forward with the jury trial.  I

9  think the "when" is the question.  That will depend, of course,

10  on the verdict.  That will answer the question, and then -- you

11  know, when the verdict comes in.

12       So I think what we're looking for is what those

13  defendants are -- are asserting with respect to their jury

14  trial right, if they're going to waive it or not.  So I think

15  that's where we are.

16       THE COURT:  And if we do try the forfeiture aspect of

17  it, I have some jury instructions that I think are appropriate

18  to the occasion.  They're very brief.  It looks like they're

19  given at the beginning of the session, as opposed to the end.

20       How long does the government estimate its forfeiture

21  presentation -- let's say you have to go forward with all four

22  defendants, how long is the government estimating that would

23  take?

24       MR. DUVA:  Not long, Your Honor.  I think maybe

25  total, on direct, 90 minutes with both witnesses.  There's two

1  witnesses.  There's one who really did the tracing of seven

2  properties, so it would be the formula -- if all seven

3  properties are in play, it would be the warranty deed, purchase

4  and sale agreement, you know, documents that pertain to the

5  property.

6          Then there would be a summary chart as to tracing of

7  funds, much like what we did with Ms. Henderson during the

8  criminal case.  So there was one witness who had handled those

9  four -- those types of exhibits for all seven properties.

10          Then there's a second witness who did a deep dive as

11  to what of the proceeds were fraud proceeds and what were not.

12  And then there's some discounts based on percentages, based on

13  the fraud proceeds, and, in particular, bank accounts, as

14  opposed to clean proceeds.

15          So that witness is the deeper dive.  And he will be

16  limited to one set of exhibits for all seven properties.  So we

17  envision putting on -- John Hummel would be the first witness

18  for the first categories of exhibits that I talked about.  I

19  think that would be fairly quick.

20          The second witness will be for the deeper dive, which

21  it's -- it's a chart.  It's not going to take long.  I mean,

22  it's -- you know, what did you do and how did this work, and

23  then, ultimately, what did you conclude?  So it will be kind of

24  a narrative type answer.  His name is Scott Skinner.

25          THE COURT:  All right.  Thank you, sir.

1    And is it your recommendation, Mr. Duva, that if we

2  go forward -- obviously we would do it with this jury.  I guess

3  you're just saying it depends on what time of day we get a

4  verdict and depends on what that verdict is.

5    But I take it you'll be ready to proceed whenever; is

6  that right?

7    MR. DUVA:  Yes, Your Honor.  We do have witness --

8  one witness that's out of town.  So if we got a verdict at the

9  end of day today, which I don't really think is likely -- but

10  if we did, we would ask to reconvene sometime tomorrow.

11    THE COURT:  Okay.  All right.  Let me do this, let me

12  talk to the four defendants who the government -- I take it,

13  Mr. Duva, that y'all are standing on your position that because

14  of the nature of the assets being considered for forfeiture for

15  the other four defendants that they're not entitled to a jury

16  trial on any forfeiture issues?

17    Is that the government's view?

18    MR. DUVA:  Yes, Your Honor.

19    THE COURT:  All right.  Let me start with those

20  defendants and ask them, having had an opportunity to look at

21  the situation, how they're -- whether they agree with that or

22  not.  Let me -- I'm trying to separate out the bills of

23  particulars here.

24    Let me start with you, Mr. Rafferty, because you

25  raised the issue earlier this morning.  What is Mr. Durall's

1   position on whether any forfeiture consideration that might be

2   required for Mr. Durall -- what's your position with respect to

3   whether Mr. Durall would be entitled to jury consideration?

4           MR. RAFFERTY:  Well, a couple of things, Your Honor.

5   With respect to the allegations in paragraph 13, my experience

6   when I was an AUSA is it would -- it would allege specifically

7   in the indictment that they were seeking a money judgment in

8   the sum of $184,407,671.

9           And those cases where a money judgment is sought, I

10  understand that no jury trial is necessary, the judge -- a

11  court can make that determination.

12          The way this indictment reads, it says they're

13  seeking specifically to forfeit the sum of $184 million from

14  Mr. Durall.  The way it's written, at least the way I read

15  it -- and, again, I do not profess to be an expert, but that

16  does not say money judgment.

17          And so I do believe that with respect to that, as

18  it's written, it would be entitled to a jury trial.

19  Additionally, throughout the indictment there are all these

20  pieces of property -- which I now understand, from speaking

21  with the government, they're looking at these as substitute

22  assets.

23          But the way it's actually charged in the indictment,

24  it's not charged as substitute assets.  It's specifically

25  alleged as these are -- these are proceeds.

1           And so I'm still -- I haven't -- I haven't been
2   persuaded by the government that I'm not entitled to a jury
3   trial as it relates to both paragraph 13(c), as well as
4   paragraphs (n) -- I think it's -- hold on a second.  Yeah,
5   13(n).
6           THE COURT:  Hold on one second.
7           MR. RAFFERTY:  13(o).
8           MR. BELL:  Are you looking at the indictment,
9   Mr. Rafferty?
10          MR. RAFFERTY:  Yes.
11          THE COURT:  And are you -- are you taking the
12  position that the indictment controls over the bill of
13  particulars?
14          MR. RAFFERTY:  That would be -- that would be my
15  position, Your Honor, but I leave it to the government to
16  perhaps explain that.
17          THE COURT:  I mean, I'm looking at the bill of
18  particulars involving Mr. Durall, and it says that Mr. Durall
19  is subject to forfeiture on the basis of the allegations set
20  forth in the forfeiture section of the superseding indictment.
21  So it does refer to the indictment, the sum of at least $184
22  million, which represents the total amount of proceeds the
23  defendant personally obtained as a result of the offenses
24  charged.
25          And then it says, Further, the United States hereby

1   gives notice that upon defendant's conviction of the alleged

2   count, it intends to seek forfeiture of the following

3   properties as substitute assets.

4           And it has a footnote that says the properties were

5   previously specified as being sought for forfeiture as directly

6   traceable assets.  This filing amends the classification from

7   directly traceable to substitute assets.  So -- and then that

8   includes some real property, some vehicles, and some jewelry.

9           So your view is --

10          MR. RAFFERTY:  That's -- I would suggest, Your Honor,

11  respectfully, that that would be an amendment of the

12  indictment.  And I'm not sure that it's permissible.

13          But, additionally, just the way the Court just

14  described the bill of particulars, they're not seeking a money

15  judgment in the amount of 184 million.  It says specifically

16  they're seeking $184 million from Mr. Durall.

17          THE COURT:  Well, what's the difference between -- I

18  mean, I understand there's maybe a distinction.  But when you

19  say they're not seeking a money judgment in the amount of

20  184 million -- it says specifically they're seeking $184

21  million from Mr. Durall.

22          What's the difference between those two things?

23          MR. RAFFERTY:  You know, Your Honor, I just know from

24  experience and what the case law says.  And the case law says

25  you can't get a jury trial on a forfeiture if the government is

1  seeking a money judgment.

2          THE COURT:  I think that's -- I think that's true.

3          MR. RAFFERTY:  And my experience is the indictment

4  typically says somewhere that they are seeking a money judgment

5  in the amount of whatever they're seeking.  And the government

6  is not saying that.

7          They're saying -- they're going to take the $184

8  million from Mr. Durall, period.  It's not a money judgment.

9  They're going to take it from him.

10          And for that reason, I would suggest that the way

11  it's written, the way it's written in the bill of particulars,

12  he's entitled to a jury trial on that.

13          THE COURT:  All right.  Well, let me put a pin in

14  that for a moment and ask, Mr. Lowther, what your position is.

15          Now, in your case, the -- there's an amount listed of

16  $10 million, and then there is substitute assets also listed in

17  the bill of particulars.

18          What's your position on Ms. Zaffuto's right to a jury

19  trial?  Or is she asserting one?

20          MR. LOWTHER:  Your Honor, I believe Mr. Rafferty's

21  argument is correct.  And we would adopt that.  However, we

22  don't intend to ask the Court for a jury trial.

23          THE COURT:  All right.  Does that mean you are --

24  that Ms. Zaffuto is -- are you meaning she's willing to waive

25  any right to jury trial she has and have the Court determine

1  forfeiture issues?

2          MR. LOWTHER:  That's correct, Your Honor.

3          THE COURT:  All right.  We'll hold on to that.

4          Ms. Galnor, on behalf of Mr. Alonzo, what's your

5  position?  In your bill of particulars it just says the sum of

6  at least 8 million and change, which represents the total

7  amount of proceeds that Mr. Alonzo personally obtained.

8          What's your position on jury versus non-jury?

9          MS. GALNOR:  Your Honor, we're not seeking a jury

10 determination on that.

11         THE COURT:  Does that mean that Mr. Alonzo is

12 prepared to waive any right to jury trial he might have and to

13 have the Court determine any forfeiture issues?

14         MS. GALNOR:  That's correct, Your Honor.

15         THE COURT:  All right.  We would likely engage in a

16 little bit of a colloquy with both -- with both Ms. Zaffuto and

17 with Mr. Alonzo to confirm that, but that's understood.

18         Mr. Rowland, on behalf of Sean Porter, what's your

19 position?

20         MR. ROWLAND:  The same as Mr. Rafferty, on behalf of

21 his client.  And we're not prepared to waive our right to a

22 jury determination on that at this time.

23         THE COURT:  Okay.  All right.  We'll circle back to

24 you and Mr. Rafferty after I hear from the government.  But let

25 me go ahead and finish this out.

1    Assuming that -- assuming -- so I guess -- I guess I

2    do need to get a position from each one of you, then.

3    So Mr. Jorge Perez -- we have -- we have -- we have

4    real property which is listed in item C of the bill of

5    particulars.  And that's real property.

6    The one item -- before I ask you to take a position,

7    Mr. Bell, the one item I had question about -- Ms. Tran, if

8    you're the one -- the real property located at 15424 Southwest

9    175th Street, that's listed in the bill of particulars.  I

10    assume it's listed in the indictment, too.

11    Do I have the indictment now?

12    Yeah.  And the -- but there's a release of lis

13    pendens somewhere that I saw.  Is the government still seeking

14    to forfeit that property, or is it not?

15    MS. TRAN:  Yes, Your Honor, the government is.  The

16    reason why I released the lis pendens on the case -- or on the

17    real property was because the morning that I released the

18    lis pendens I received a call from defense counsel indicating

19    that the closing was about to go through for the sale of this

20    home.

21    That residence would have been similarly situated as

22    the other properties that we would have collected money in lieu

23    of the real property on, if the closing were to go through.

24    And the closing would not go through if the lis pendens is

25    still there.  And, accordingly, I released the lis pendens for

1    the closing to go through.

2            I regret to say that I was informed that a few days

3    ago, or a couple of days ago, that the closing did not go

4    through, even despite efforts to reschedule.  So that's where

5    we stand, Your Honor.

6            So in absence of money in lieu of the property, we

7    would still revert back to seeking the property as forfeitable

8    property.

9            THE COURT:  Okay.  One other question I have while

10   I've got you here, Ms. Tran, I noticed that the titled owner in

11   many situations is not the actual named defendant.  One of them

12   is -- like, I'm looking at Mr. Jorge Perez.  The titled owner

13   is Empowerment Investment Group.  I know there's a couple of

14   other titled owners that are not the actual named defendants.

15           Does that -- how does the government go about -- is

16   that something I -- that a jury is going to resolve, or is that

17   something -- or is the government just having to show the nexus

18   between that property and the proceeds, and then -- then I

19   figure that out?  What -- what significance is it that the

20   property is not titled in the name of a defendant?

21           MS. TRAN:  Your Honor, the jurors will only be asked

22   to determine a nexus between the criminal proceeds and the

23   property itself.  Thereafter the issue of the ownership

24   interest in Empower, LLC, for example, or Empower HIS, that

25   would be something the Court would consider in terms of how

 1  much ownership interest that individual has.  But we are

 2  prepared to bring it out in the testimony anyway.  And we --

 3          THE COURT:  No, I'm not -- I'm not suggesting one way

 4  or the other.  I just want to make sure I understand what we're

 5  doing here.  I mean, by the way, could they make this any more

 6  complicated than it is?  I mean, that -- that some people --

 7  sometimes you get a jury, sometimes you don't, and even when

 8  you do get a jury, the jury only decides this little bit of it,

 9  and then the Court decides the rest of it?  I mean, could it

10  possibly be any more complicated?  But I know you don't write

11  the law, but...

12          All right.  So -- thank you, ma'am.

13          MS. TRAN:  Yes, Your Honor.

14          THE COURT:  So, Mr. Bell, what is Mr. Jorge Perez's

15  position on jury trial?

16          MR. BELL:  Well, for today's purposes, Your Honor,

17  he's not prepared to waive and would opt for his jury trial

18  rights.  And since we're in for that, we might as well be in

19  for the whole ride and argue that everything should be subject

20  to a jury determination, including ownership, to proof beyond a

21  reasonable doubt, asserting the Sixth Amendment right under the

22  United States Constitution and the Eighth Amendment to the

23  United States Constitution.

24          I understand prevailing law is against us on this,

25  but we have to start somewhere with preserving these interests.

1  So this is where we start today.

2            THE COURT:  Thank you.

3            Mr. Landes --

4            MR. BELL:  And, Judge -- I'm sorry.  Mr. Duva and I

5  had discussed in kind of general terms potentially when we

6  would do this.  And I don't know that we have the supporting

7  documents we would need to kind of proceed on this this week,

8  simply -- I provided Mr. Perez this morning all the charts that

9  the government had furnished.  We've been obviously pretty

10 occupied.

11           So the government can certainly go forward.  I don't

12 know that we'd be in a position to provide any responsive

13 documents to the -- to the government's position on relatively

14 short notice like this.  We'd hopefully be in a position next

15 week, as Mr. Duva and I kind of generically discussed late

16 yesterday.

17           THE COURT:  Okay.  Mr. Landes, on behalf of Ricardo

18 Perez?

19           MR. LANDES:  Ricardo Perez is willing to waive his

20 right to a jury trial and have the Court determine the issues.

21           Thank you.

22           THE COURT:  Thank you.

23           Mr. Citro, are you the one on this, or Mr. Sadow?

24 What's y'all's position?

25           MR. CITRO:  Your Honor, I think our position is

1    fairly clear.  We're not waiving our right to a jury trial.  We

2    agree with the arguments that Mr. Rafferty made and adopt

3    those.

4          And specifically as to paragraph 14 in the

5    indictment, the grand jury has alleged that any of the property

6    described above is a result of any act or omission -- it goes

7    on and on and on.  So there's got to be a finding as to the

8    funds.  There's got to be a finding as to even now what they

9    claim are substitute assets.

10          And it's my recollection -- and I profess to be no

11    expert on forfeiture, although I spend an ungodly amount of

12    time talking about forfeiture with a forfeiture lawyer, that

13    they cannot get substitute assets until they obtain a money

14    judgment.

15          THE COURT:  Is there anybody that's an expert on

16    forfeiture?  I'm not sure.

17          MR. CITRO:  I'm married to one, Your Honor.

18          THE COURT:  Okay.  All right.  So, Mr. Fletcher --

19          MR. CITRO:  We'll demand our jury trial.

20          THE COURT:  Yes.

21          MR. SADOW:  Your Honor, is our argument clear on

22    paragraph 14 in the forfeiture and the superseding?  Because

23    the way it's described it says if any of the property described

24    for both is the result of any act or omission of the

25    defendants, and then it goes through the substitute assets

1    language.

2            But it's making reference to the fact that all that

3    property is described above, and, therefore, we take the

4    position that it is specified property.  It's not -- it doesn't

5    carve out money judgment.

6            It says if that property is not available, then

7    there's going to be substitute.  And I don't know -- how do you

8    have a substitute for a certain amount of cash if it is

9    specified as such?

10           THE COURT:  Okay.  Thank you.

11           James Porter, Jr., Mr. Schwartz?

12           MR. SCHWARTZ:  Yes, sir.  He's going to maintain his

13   right to a jury trial.  We'll also adopt Mr. Rafferty and

14   Mr. Citro and Sadow's arguments.

15           THE COURT:  All right.  So I think we have -- I think

16   we have three buckets here.  Let me see if I can -- if I can

17   get this right.

18           There are -- there are three defendants who have

19   advised that they wish to waive or give up their right to the

20   jury trial in forfeiture and to allow the Court to determine

21   any forfeiture issues, even if those issues otherwise would

22   have been subject to a statutory or other jury determination.

23           And -- and the Court would probably conduct a waiver

24   discussion with -- briefly with each of the -- of those

25   defendants.  And that's Ricardo Perez, that's Aaron Alonzo, and

1    that's Neisha Zaffuto.

2          So if that -- if that plays out, those individuals

3    would not be affected or interested in any jury determination

4    of forfeiture issues.

5          And we have another group of defendants.  And that's

6    James Porter, Jorge Perez, who the government acknowledges is

7    entitled to a jury trial on forfeiture issues.

8          And I don't think there's any dispute as to which

9    assets are subject to forfeiture determination.  I think in

10   Mr. Porter's case it would be the only asset that the

11   government has specifically identified, and -- although

12   Mr. Rafferty, I think, makes an argument that the entire 67

13   million is somehow -- needs to be adjudicated.  I'm not quite

14   sure what that entails, but we'll hold on to that.

15         But that -- if you put that issue to the side, then

16   both Jorge Perez and James Porter, Jr., are, under the

17   government's view of things, entitled to a jury trial on

18   forfeiture, and that other -- the other defendants -- and

19   that'd be -- that's Aaron Durall, Christian Fletcher, and Sean

20   Porter -- are asserting a right to a jury trial that the

21   government believes they do not possess.

22         Do I have the buckets correct?

23         MR. DUVA:  Your Honor, I think you have to add

24   Christian Fletcher to that list as well.

25         MR. HAYES:  The second bucket, Your Honor.

1      MR. DUVA:  The second bucket.

2      MR. HAYES:  He has a right to a jury trial.

3      THE COURT:  Sorry about that.

4      So, Mr. Citro, let me be clear, because I did

5 misspeak.  I guess Mr. Fletcher -- we already knew that the

6 real property at Woodhaven Road was subject to a jury nexus

7 determination, but the government had previously taken the

8 position that the vehicle -- the McLaren and then the jewelry

9 and then, certainly, the 75 million were not part of the jury's

10 forfeiture consideration.

11      Are you taking a different view of it?

12      MR. CITRO:  I'm taking the view that because of how

13 the indictment has charged the forfeiture provisions in

14 paragraph 14 that he's entitled to a jury trial on all of those

15 things.

16      THE COURT:  Okay.  So is that -- is that position,

17 Mr. Rafferty -- I understand you haven't had -- you know,

18 you're just doing the best you can, based on trying to look at

19 it -- my guess is this is the first time you've really looked

20 at it hard, because that's just the nature of these things.

21      MR. RAFFERTY:  Yes, Your Honor.  And, you know, I --

22 you know, I studied the forfeiture allegations over the lunch

23 hour.  And I'm just speaking from my familiarity of having been

24 a prosecutor for a long time.

25      It's typically written, in my experience, that

1  they're seeking a money judgment in the amount of whatever

2  they're seeking.  That's not what it says here.  And that's not

3  what the government has said that they're looking for in the

4  bill of particulars.

5          And I believe that -- I agree with what Mr. Citro has

6  said.  And I just believe the way this is written they're

7  seeking to forfeit $184 million.  Not a money judgment, but

8  $184 million from Mr. Durall.  I think he's entitled to a jury

9  determination of that, if we get to that point.

10          Like Mr. Bell, I'm not prepared to waive Mr. Durall's

11  right to that just yet.  I mean, I'm sure I'm going to have

12  conversations with him as we go on through this process, if we

13  get to that.  But right now I'm just not prepared to make that

14  waiver.

15          THE COURT:  Ms. Tran or Mr. Duva, what -- so if I'm

16  understanding the government's position, neither Mr. Sean

17  Porter nor Mr. Aaron Durall -- I think those are the only two

18  left that haven't waived, that they're not entitled to any jury

19  consideration of any forfeiture issues; is that -- is that

20  correct?

21          MS. TRAN:  That is correct, Your Honor.

22          THE COURT:  And how do I know that for sure?

23          MS. TRAN:  You know that for sure because Rule 32.2,

24  which is the confines within which we're working this

25  forfeiture jury determination, provides that for each party's

 1    right to a jury determination on forfeiture it is as to

 2    specific property only.

 3            An order of forfeiture as to proceeds in this case --

 4    for example, the millions that Mr. Durall received as a result

 5    of the criminal activity -- is effectively the money judgment.

 6    It is not called a money judgment.  That's not how they're

 7    labeled in terms of the order, but it is an order of forfeiture

 8    as to criminal proceeds.

 9            That is synonymous and equivalent to a money

10    judgment.  A money judgment is not specific property that is

11    afforded a jury determination.

12            I will refer all counsel to page 8 of my memorandum

13    of law that indicates that the Court must determine the amount

14    of money that a defendant will be ordered to pay.

15            That cites to and quotes Rule 32.2(b)(1)(A), and

16    also, under sub (b), if the government seeks a personal money

17    judgment, which is what a proceeds order is, the court must

18    determine the amount of money that the defendant will be

19    ordered to pay.

20        (Judge confers with law clerk.)

21        THE COURT:  Well, what about Mr. Rafferty's argument

22    that the indictment doesn't call it a personal money judgment,

23    the bill of particulars doesn't call it a personal money

24    judgment?  So how do I know it's a personal money judgment

25    that's being sought?

1          MS. TRAN:  They just don't label it as a money

2     judgment.

3          THE COURT:  When you say "they," who are they?

4          MS. TRAN:  The entire realm of forfeiture.  I know

5     there was a point where they used to be called "money

6     judgments."  And at some point there was a turning point where

7     they changed and called them "orders of forfeiture as to

8     proceeds," but essentially they accomplish the same thing.

9          The money judgment is a piece of paper that the court

10    signs that indicates that amount of money is due, but is not an

11    amount of money that is in hand.  It is not an amount of money

12    that has been seized.  It is not -- it is not specified,

13    because it is not there.

14         And that is the whole point of substitute property,

15    Your Honor, because when moneys that is otherwise not there

16    gets dissipated by the expenditures of a defendant using

17    proceeds of their crime to purchase other property, it could

18    either be tainted property or otherwise property that's

19    completely innocent that the defendant owns, can be used to

20    satisfy that money judgment, slash, order of proceeds.  They

21    are synonymous, Your Honor.

22         THE COURT:  So even though the statute -- I think the

23    statute you just cited to me to refers to personal money

24    judgments, right?

25         MS. TRAN:  Yes, Your Honor.

1        THE COURT:  It says, If the government seeks a

2    personal money judgment, the Court must determine the amount of

3    money that the defendant will be ordered to pay.

4        It says, As soon as practical after a verdict or a

5    finding of guilty, the Court must determine what property is

6    subject to forfeiture under the applicable statute.  If the

7    government seeks forfeiture of specific property, the Court

8    must determine whether the government has established the

9    requisite nexus.

10       But the specifics -- but it's also true, I take it,

11   that if the government seeks forfeiture of specific property,

12   then -- then the defendants are entitled to a jury trial on

13   that; is that correct?

14       MS. TRAN:  There are two types of specific property,

15   Your Honor --

16       THE COURT:  Really?

17       MS. TRAN:  -- directly traceable or substitute.

18   Specific being something you can actually identify, such as a

19   house, real property, or personal property like jewelry.  It is

20   specific.

21       But that same specific property can be categorized as

22   either directly traceable, in which they are entitled to a jury

23   determination, or substitute, in which they are not entitled to

24   a jury determination.

25       So for the lack of a better way to phrase it, there

1  are three buckets, the first bucket being the money judgment,

2  or the order -- it's called the order for proceeds; the second

3  bucket being specified property that is traceable; and the

4  third bucket being specified property that is substitute.

5         THE COURT:  And you're only entitled to a jury trial

6  on the second bucket?

7         MS. TRAN:  Yes, Your Honor.

8         THE COURT:  And so, Mr. Rafferty or Mr. Citro, are

9  you-all disagreeing with that, or are you making an argument

10 that because of the way the indictment is worded that somehow

11 that's -- rule of law that Ms. Tran just announced is not

12 applicable?

13        Is it the wrong rule of law or is it the way the

14 indictment is worded that gives you a basis to say that the

15 jury ought to be considering everything having to do with

16 forfeiture?

17        MR. RAFFERTY:  From my perspective, Your Honor, it is

18 the way that the indictment is phrased.  And what I'd like the

19 opportunity to do is to keep looking.  And I've been looking

20 over the lunch hour and I'm going to keep looking.  And

21 ultimately I may come to the conclusion that the government is

22 correct.

23        But, again, I'm speaking from my own familiarity with

24 forfeiture.  Things may have changed since I was an AUSA.  That

25 was three or four years ago.  But I do recall that we typically

 1 │ wrote that we were seeking a money judgment, which is not here.

 2 │ And that just gives me some concern.

 3 │         I also want to just research the ability to change

 4 │ the theory that's charged in the indictment, so that, you know,

 5 │ it's now substitute assets, as opposed to the way I read it

 6 │ currently, that these are not listed initially as substitute

 7 │ assets.

 8 │         There may be a basis for the government to make an

 9 │ amendment, as they have.  I just want the opportunity, if I

10 │ could, Your Honor, to just keep looking at that.

11 │         THE COURT:  Thank you.

12 │         Mr. Citro?

13 │         MR. CITRO:  It's the same, Your Honor.  How the

14 │ Court's [sic] drafted the indictment has altered the parameters

15 │ of what they are ordinarily permitted to do, and in this case,

16 │ 14, If any of the property described above is the result of any

17 │ act or omission, so it's inclusive of (a) through (hh).

18 │         In addition, as I said, I don't think --

19 │         THE COURT:  Can I just interrupt you a minute.  For

20 │ some reason you said as the Court drafted the indictment.

21 │         MR. CITRO:  Sorry, Your Honor.

22 │         THE COURT:  And you certainly didn't mean that.

23 │         MR. CITRO:  I certainly did not mean that.  I've been

24 │ doing this long enough to know better.

25 │         And, also, as I said, I don't think they're entitled

1   to substitute assets until they obtain a money judgment.

2       THE COURT:  Well, I think that's -- I think that's

3   right.  So I'm not -- but -- so -- but as I understand it, the

4   government's not seeking to put those assets before the jury;

5   is that correct?

6       MS. TRAN:  No, Your Honor.  In fact, there has been a

7   case within the Middle District -- it was a 2011 case, *United*

8   *States versus Weiss* -- I can get you the citation on that

9   one -- where the government waited until nine years later to

10  obtain a -- an order as to a substitute property.

11      So if the government can wait until nine years later

12  to seek one of those, there is no place for a jury

13  determination as to substitute property.

14      THE COURT:  Okay.  So, Mr. Bell, are you -- are you

15  taking the -- are you taking the position that if a jury

16  returns an adverse verdict to your client -- are you taking the

17  position that you're not ready to proceed on the forfeiture

18  aspect of the case until next week?

19      MR. BELL:  Yes, Your Honor.  I think -- I need a

20  little bit of review time with Mr. Perez to gather up any

21  documents that he believes supports his position that it's not

22  traceable to proceeds of criminal activity.

23      And, Judge, I'll assume -- you know, part of the

24  fault here is that the charge that the government had provided

25  just about the time the trial was started -- I can't represent

1  that I had provided those to Mr. Perez prior to this morning.

2  Whether they got transmitted with others, I don't know.

3         But I can't tell you that he's -- I can only

4  represent that he's had a chance to look at the -- I actually

5  have one other request.

6         Can we dismiss of the masks at this point?

7         THE COURT:  Now you can.

8         MR. BELL:  So, yes, I don't know that we'd be ready

9  to go if we got a jury verdict in the next -- you know, this

10  week.  We should be ready to go by mid next week, I would

11  think, at the latest.

12         MS. TRAN:  Your Honor, would you like me to put the

13  citation on the record?

14         THE COURT:  Sure.

15         MS. TRAN:  It's *United States versus Weiss*,

16  W-e-i-s-s, 791 F.Supp.2d 1183, specifically at 1219 to 1220.

17         And also, Your Honor, *United States versus Knowles*,

18  819 F.App'x 781, specifically at 783 through 784.  That's an

19  Eleventh Circuit case from 2020, where the government -- the

20  court held that the government may seek forfeiture of

21  substitute assets under Rule 32(e) at any time, even if it were

22  aware of property at the time of the original order and

23  sentencing.

24         THE COURT:  Well, it seems to me that with respect to

25  the arguments made by Mr. Rafferty and Mr. Citro, and then

1    adopted by others -- I'm not -- I'm not convinced at the moment

2    that just because the government identifies a larger amount of

3    money that that means that that turns into a jury consideration

4    of that sum.

5         I think the jury, as I understand it, is supposed to

6    consider specific property in a nexus to the unlawful activity.

7    And I don't -- I don't really think that the statement of a

8    larger amount of money that were allegedly proceeds is really

9    what they mean by specific property.

10        But this is an area that's fraught, and I -- I can't

11   say I know for sure at the moment, although I'm leaning pretty

12   strongly that way -- if I'm -- if that's correct, that means

13   Mr. Durall and Mr. Sean Porter would not be entitled to

14   forfeiture consideration, and it would mean that the forfeiture

15   consideration of Mr. Fletcher would be limited, as well as

16   Mr. Porter and Mr. Jorge Perez, although -- yes, Mr. Jorge

17   Perez.

18        So I'm trying to just think through -- in the

19   environment we're in now, to try to figure out -- of course,

20   I've got this jury.  And if y'all are asking this jury to

21   decide these issues, I'm going to have to figure out -- you

22   know, the few times I've ever had to do this, we just brought

23   the jury back in, told them they had something else to do, and

24   we tried it right then, and -- but I will confess that it was

25   in much more simple situations, and not dealing with the

1  amounts of money we're dealing with here.

2      So -- so I -- I don't know that a brief delay is

3  unreasonable.  I'm going to have to figure out how to make that

4  happen.  And I suppose -- and then I'm also going to have to

5  figure out who's entitled to what, in terms of a jury

6  consideration.

7      So I guess, Mr. Duva or Ms. Tran, what -- I mean,

8  obviously it depends on how long this jury is deliberating how

9  much time we have to look into this and try to figure out if we

10  can come up with a -- an answer to it.

11      And, of course, if there's any authority that anybody

12  wants to provide, we'll be happy to get it.  I'm guessing

13  there's not, or there's very little, because we were having

14  trouble finding authority on some other points in forfeiture

15  law.

16      But I guess the question is:  What's the government's

17  position with respect to holding the jury over and when we

18  would -- when we would try the -- whatever there is to be

19  tried, when we would try it?

20      MR. DUVA:  Yes, Your Honor.  We would definitely want

21  to hold this jury over if there is a jury determination that

22  is -- that that right is maintained by the defendants that it

23  applies to.  And I think the "when" is just a wait and see.

24      I think it just depends when the verdict comes back.

25  We have disclosed the exhibits that we intend to use.  And I

1  know some of the defendants may want more time, but we did make

2  disclosure of those before the trial and during the trial.

3          I'm looking at them -- not right this second, but

4  that's what I was doing before I came up here.  There may be a

5  couple of additional exhibits, such as records from the

6  Division of Corporations website, and some signature cards that

7  have already been turned over in discovery that we would add,

8  but I believe the defendants have those.

9          So, you know, it's just -- it's hard to say, in terms

10  of timing.  If there is a verdict late today, I would want to

11  do it this week.  If there's a verdict midday on Friday, we

12  would ask to do it sometime the following week, or a date that

13  makes sense.

14          I know as we get into July -- and the Court was very

15  concerned -- Your Honor knows more details about the juror

16  schedules than we all do.  And so I think that becomes a

17  factor, too, as we get towards July 1st, which I think is next

18  Friday.

19          THE COURT:  Yeah.  Well, we did look at -- we -- in

20  preparation for the trial, we did look at the difference

21  between holding the jury over and impanelling a new jury and so

22  forth.

23          And it does appear that it has happened before

24  that -- that a jury has been held over and you reconvene at a

25  later time to try to -- to try to resolve these issues.

1    There's some benefit to that -- there's some benefit

2  to that.  And the -- because it also, I suppose, gives -- and

3  this, of course, is only if there's an adverse verdict, so --

4  but it does give maybe -- perhaps some room for discussion as

5  well, to see if either the matter can be agreed upon or some

6  other resolution of it, short of a jury consideration, is

7  appropriate for the parties.

8    I know that happened recently in Judge Howard's case.

9  She actually sent the jury out to get ready for the forfeiture

10  part of the case and then the parties ended up agreeing not to

11  go forward with the jury consideration and resolve the issue,

12  and either -- I don't know if they had her resolve it or if

13  they just agreed on something, but...

14    So there is -- there could be some benefit to doing

15  that.  And until, of course, I know for sure who's entitled to

16  what, that's going to be an unknown, too, but...

17    So I do have a question from the jury.  And it's

18  written on a -- it's written on a sticky.

19    And it says GX 27Q, which I assume means Government's

20  Exhibit 27Q, and the question is:  What does CPSI stand for?

21    So...

22   (Judge confers with courtroom deputy.)

23    MR. BELL:  While they're looking at it, if they could

24  put it on the screen, maybe, because I don't have the exhibits,

25  if it's not too much trouble for the government.

1      THE COURT:  Yeah.  That's fine.  Let's put it up on
2  the screen.
3     (Counsel confer.)
4      MR. HAYES:  Your Honor, we don't have the hookup to
5  the portal.  We can't -- Ms. Stockholm isn't here, so we
6  can't --
7      MR. CITRO:  Here, we can do this.  Is the ELMO on?
8      MR. SADOW:  Do we have the ELMO on?
9      MR. CITRO:  It's okay.  It's magnetic.  It's supposed
10  to come out.  That's why I bought it.
11      So it's going to be the...
12      MR. SADOW:  We can't answer, not unless we agree.
13  And there's no testimony.
14      MR. DUVA:  Your Honor, I think the parties agree that
15  the response should be along the lines of, We can't answer the
16  question.
17      THE COURT:  Okay.
18      MR. SADOW:  And it's the government's fault.
19      MR. CITRO:  I don't think you say you can't answer.
20  You can say, You have to rely on your recollection and memory
21  of the testimony.
22      THE COURT:  I understand.  I -- is -- is there no
23  evidence of what it means anywhere?
24      MR. CITRO:  I don't remember hearing it.
25      MR. DUVA:  I don't believe there is.

1           THE COURT:  Okay.

2           MR. DUVA:  I would have thought Mr. Sadow would have

3   crossed on that point, but he didn't.

4           THE COURT:  All right.

5           MR. SADOW:  Can we reopen?  It's about the only one I

6   didn't cross on.

7           THE COURT:  Okay.  So I guess typically you would

8   tell them what -- similar to what Mr. Citro said, but I don't

9   want to tell them you have to rely on your memory or you have

10  to -- I mean, if it's not there, can I just tell them it's not

11  there, or...

12          MR. DUVA:  We could -- we could look in the

13  transcript and reconvene to be sure, because I don't remember.

14  I don't believe I asked --

15          MR. LANDES:  It wasn't defined.  So I think we

16  could -- something along the lines of, We can't at this point

17  in time define what CPSI is for you.  Something along those

18  lines.  I know that's not great, but short of telling them what

19  it is.

20          THE COURT:  No, I understand.  I agree we can't tell

21  them apart from the record what it is.  The question is:  Was

22  it ever -- I don't want to tell them that they just have to

23  rely on their own memory or they have to rely on the record

24  that they have if we know for sure that nobody ever defined it,

25  because then they're going to be looking for a needle in a

1   haystack that's not even there.

2          And if I could just say to them -- if it's true that

3   that term was not further defined in the evidence, I'd prefer

4   to tell them that, if I could, but...

5          MR. LANDES:  I believe that's the case, Judge.

6          THE COURT:  All right.  I tell you what --

7          MR. SADOW:  Shouldn't we check David Byrns'

8   testimony, though, first?

9          THE COURT:  Well, hold on a second.  Hold on a

10  second.

11         Shannon.

12      (Judge confers with court reporter.)

13         MR. CITRO:  So that was the 2nd or the 10th.

14      (Court reporter read back requested portion of previous

15  transcript from June 2, 2022.)

16         MR. SADOW:  Page 239, Volume --

17         MR. HAYES:  Your Honor, this e-mail discusses

18  TruBridge and CPSI as a subsidiary of TruBridge.  So in the

19  context of the e-mail, there is some evidence about it, but I

20  don't --

21         MR. SADOW:  No, no.  We have it.  It's on page 239 of

22  the transcript, Volume XIII, which is 6/10/22.

23         Does that sound right?

24         COURT REPORTER:  This is from June 2nd.

25         MR. SADOW:  Okay.  It's also on 6/10.

 1          THE COURT:  All right.  Ms. Bishop, will you read out

 2    what you found.

 3       (Court reporter read back requested portion of previous

 4    transcript from June 2, 2022.)

 5          THE COURT:  Yes, sir, Mr. Sadow?

 6          MR. SADOW:  Page 239, the question is:  I want to

 7    talk about the computer system at Putnam and Empower HIS and

 8    these -- some of these independent labs that we've been talking

 9    about, Pinnacle and LifeBrite.  Talk about the software and the

10    connectivity between Empower HIS and the hospital, Putnam

11    County Memorial Hospital.

12          Answer:  Empower HIS ran the billing for the labs,

13    for the urine specimens.  Okay?  The hospital system itself,

14    before December 31st, 2016, was a CPSI system, which is a

15    common hospital system for smaller hospitals.

16          And then it goes on and says, And on either -- on

17    both the CPSI and the Morris system, Empower had -- HIS had

18    access to both of these.

19          MR. HAYES:  And who was that testimony from?

20          MR. SADOW:  Sorry.  I've got to go back to the

21    beginning.  Hang on.  It would appear to be David Byrns,

22    because his starts at 163 in that transcript.

23          MR. HAYES:  Thank you.

24          THE COURT:  So I don't think it's quite accurate to

25    say that it wasn't talked about, so I don't think we can tell

1    them that.

2           And unless we can all agree on exactly what to tell

3    them, I think I probably will just have to tell them that

4    they'll have to rely on their recollection of the evidence.

5           MR. DUVA:  Yes, Your Honor.

6           MR. SADOW:  We agree.

7           THE COURT:  Everybody agree?

8           MR. BELL:  Yes.

9           MR. HAYES:  Well, Your Honor, we could agree that

10   CPSI was the billing system that was used prior to December

11   31st of 2016.

12          MR. SADOW:  Our position, if you start doing that, I

13   think you wind up with a situation where they ask you other

14   questions.

15          THE COURT:  Okay.  All right.  Unless -- unless

16   there's specific agreement, I'm going to just tell them they

17   have to rely...

18      (Counsel confer.)

19          THE COURT:  All right.  Here's what -- I'm just going

20   to tell them, I'm sorry I cannot answer your question.  You

21   will have to rely on your recollection of the evidence.

22          Is that good enough?

23          MR. DUVA:  Yes, Your Honor.

24          MR. SADOW:  Yes.

25          MR. LANDES:  Yes.

1          THE COURT:  Anybody want to be heard on that?

2          MR. HAYES:  No, Your Honor.

3          THE COURT:  Okay.  All right.  I've written out, I am

4    sorry that I cannot answer your question.  You will have to

5    rely on your recollection of the evidence.  Judge Corrigan,

6    6/22/22, 2:30 p.m.

7          All right.  So, Ms. Hatfield, what you'll do

8    is -- especially since this is on a sticky here, we can go

9    ahead and send the original back with the sticky, and then my

10   answer below it, but, of course, we need to make a copy for the

11   court record before we do that, so -- and I normally list those

12   as court exhibits, but they're telling us not to do that now.

13   I'm not sure what I'm supposed to label it.

14         COURTROOM DEPUTY:  They'll be considered jury notes.

15         THE COURT:  Say it again.

16         COURTROOM DEPUTY:  They'll be considered jury notes.

17         THE COURT:  All right.  Jury Note No. 1.  Okay.

18      (Jury Note 1 received into evidence.)

19         THE COURT:  Well, that's a very specific question.

20         MR. BELL:  They already made it to 27Q.

21         THE COURT:  Here's -- Ms. Hatfield, I don't know if

22   you want that or not.  Thank you.

23         All right.  Back on our consideration of forfeiture.

24      (Counsel confer.)

25         THE COURT:  I'm sorry?  What's going on?

1    MR. ROWLAND:  We're having some power connection

2 issues here for a second.

3    THE COURT:  Okay.  So, Ms. Tran, just so I'm clear

4 here -- let me get my -- I had to -- there we go.

5    So, for example, in Mr. Durall's case, because

6 Mr. Rafferty was the one that raised the issue, is there an

7 account -- I mean, I think I know the answer to this, but

8 I -- I want the record to be clear, so I'm getting clear on it.

9    Is there an account in which the sum that's listed

10 here, or is there a place in which the sum that's listed here

11 of $184,407,671.87 is located, or is that just the amount that

12 the government believes -- is that the total amount that the

13 government believes was the allegedly ill-gotten gain, and then

14 the government is going to try to -- by whatever other means,

15 either through money judgment or substitute assets, or whatever

16 other means is available under forfeiture, that the government

17 is going to try to recover as much of that amount as it can?

18    MS. TRAN:  My answer is the latter, Your Honor.

19    THE COURT:  Okay.  And the substitute assets -- is it

20 true that substitute assets only become relevant after a money

21 judgment is obtained?

22    MS. TRAN:  That is correct, Your Honor.  All the more

23 reason why there is no place for a jury determination as to

24 substitute property, as you have not yet ruled on the money

25 judgment.

1    THE COURT:  Okay.  And same with -- and so remind me

2 again -- all right.  So if -- okay.  Okay.  I understand that.

3    All right.  Is the same true in the government's view

4 with respect to Sean Porter and the amount of $3,036,000?  Is

5 that -- is there an account anywhere or is there specific funds

6 that the government is aware of that represents that sum, or is

7 that -- is that the government's view of Mr. Porter's allegedly

8 ill-gotten gain that the government would seek to try to

9 forfeit through other -- through obtaining either a money

10 judgment or substitute assets?

11    MS. TRAN:  My answer is again the latter, Your Honor.

12    THE COURT:  And then with respect to Christian

13 Fletcher, you have listed $75,972,061.86.  Is there any fund

14 that -- or place where that amount is located the government's

15 aware of, or is that just the total amount of allegedly

16 ill-gotten gain?

17    MS. TRAN:  Again, my answer is the latter, Your

18 Honor.

19    THE COURT:  Okay.  Now, why -- on Mr. Fletcher's bill

20 of particulars, why is -- why are the -- you have already

21 conceded that Mr. Fletcher's entitled to a jury determination

22 of nexus as to the Woodhaven Road property, but you are taking

23 the position that the vehicle listed -- the McLaren and the

24 jewelry listed are not subject to jury determination.

25    Is that because they're listed as substitute assets?

1    MS. TRAN:  Yes, Your Honor.

2    THE COURT:  And why are they substitute assets, as

3  opposed to specific property that was -- so this will be

4  helpful to me.

5    So why is Woodhaven Road specific property that the

6  government is trying to prove a nexus between criminal activity

7  and that property, whereas the vehicle and the jewelry are not

8  specific property that the government is trying to prove a

9  nexus on?

10    What's the -- why the different treatment of those

11  assets?

12    MS. TRAN:  Your Honor, the Woodhaven property is

13  properly traceable based on the financial records run by our

14  financial analyst that demonstrate the criminal proceeds are

15  tied to the residence itself.

16    There is not a belief by the government at this stage

17  that we could prove by a preponderance of the evidence that I

18  could carry that burden as to the other assets, which is why

19  I've switched them back over to substitute property.

20    MR. SADOW:  Your Honor, can we be heard on that?

21    THE COURT:  Oh, yeah.  Sure.  I'm just trying to

22  understand what I'm dealing with here.

23    MS. TRAN:  I will indicate to the Court, Your Honor,

24  that when assets were previously listed as directly traceable,

25  that would have been under a lower burden when Ms. Glober was

1    here and reviewing the indictment.

2          And at that stage the burden was only probable cause,

3    which allows for a later determination that the assets should

4    be recategorized to substitute assets, because at the juncture

5    where we're preparing for trial the burden and review is quite

6    different.

7          THE COURT:  Okay.  Is the same true of the -- is the

8    same -- is the government's position as to the -- even as to

9    the defendants who are entitled to jury consideration as to

10   some of the assets, is the government's position with respect

11   to the total sum which is listed under preliminary order of

12   forfeiture for proceeds -- is the government's position the

13   same as you just indicated with respect to these others, that

14   those are total amounts representing the government's view of

15   allegedly ill-gotten gain, but does not represent any specific

16   fund, or place?

17         MS. TRAN:  That is correct, Your Honor.  We have not

18   seized or obtained in hand any amount of those proceeds that we

19   are asking for.  They are purely money judgments.

20         THE COURT:  Okay.  So, Mr. -- was it Mr. Sadow that

21   asked to be heard?  I wasn't sure who was asking.

22         MR. SADOW:  The explanation given by the government

23   with regard to probable cause and preponderance, unfortunately,

24   makes sense.

25         The only thing that concerns -- you see, when you've

1   got a forfeiture allegation in the indictment, that puts the

2   world on notice, including obviously the defendant, that

3   certain items have been, in this position, constructively

4   seized.

5          But ultimately what they've just said is they should

6   never have been seized, and they could have been dealt with as

7   they've seen fit, but now they've been classified as substitute

8   assets.

9          So the question becomes:  Is that in some form or

10  fashion a constructive amendment of the indictment?  And the

11  answer in our position is it is.

12         THE COURT:  All right.  So that's really where we

13  are?  We're at -- we're at whether the allegations in the

14  indictment would constructively amend what would otherwise be

15  the case that the government is putting forward vis-à-vis

16  assets which are subject to jury determination and those which

17  are not?

18         You're taking the position that because of the way

19  the indictment is worded, because of the way the indictment is

20  structured, that the government, in effect, has pled itself

21  into a jury determination on all forfeiture issues?

22         MR. SADOW:  And that's correct.  And it's based on --

23  if the Court needed to, you could review the grand jury

24  testimony of Ben Busic, who testified to the forfeiture.

25         It's fairly clear that he was speaking in terms of

1    property -- specifically as to the car and the jewelry, we're

2    talking about for Mr. Fletcher, as specific property.

3          THE COURT:  Okay.  I'm betting there is not an

4    on-point Eleventh Circuit case that solves this, so I'm going

5    to have to think about it.  But at least I understand what

6    everybody is saying now.

7          Is there any -- Ms. Tran, is there anything else you

8    want me to know about this?  And then I'll ask any of the

9    defendants.

10         MS. TRAN:  Not at this time, Your Honor, but I will

11   do legal research into the issue.

12         THE COURT:  Is there any other defendant that wishes

13   to be heard further on this issue?

14      (No response.)

15         THE COURT:  All right.  We'll be looking at it and

16   trying to figure it out.  In terms of whatever jury

17   determination is required of us -- and I understand that

18   decisions can be made all along the way, depending on what

19   happens here.

20         So I understand we may be dealing with either a

21   larger or a smaller number of people or issues than -- it just

22   depends on how it plays out, and depends on what positions the

23   parties want to take.

24         But at some point I guess I'll have to rule and say,

25   Here's what I think a jury can consider and here's what I don't

1    think a jury can consider, and I'll be prepared to do that.

2            In terms of when we go forward, we'll just have to --

3    as Mr. Duva suggested, we'll just have to see.  I'm -- I'm, of

4    course -- got to keep this jury in mind, and so I want to -- I

5    want to be fair to everybody, but I also want to be fair to

6    this jury.  So we're going to have to work on that.

7            Now, we do have some jury instructions that we could

8    provide.  We also have some verdict forms.  But those -- I

9    don't think I'm ready to give either one of those to you,

10   because a little depends on the rulings that I make based on

11   the arguments I heard today.

12           And then also the verdict forms aren't pertinent

13   until we see what the jury does, because you could have --

14   obviously, if you get not guilty verdicts on everything, then

15   forfeiture is not an issue.

16           And if you get guilty verdicts on everything, then

17   forfeiture is at play in a large number of counts.  But you

18   could also get a situation where you had guilty on some counts,

19   not guilty on other counts, and then you'd have to be specific

20   about which counts you were proceeding on forfeiture.

21           So -- so I don't think, until we actually get the

22   information from the verdict, we'll be able to do much more

23   than we've done already, which is try to prepare.

24           Now, with respect to those defendants who wish to

25   waive their forfeiture rights, I think I probably will take

```
 1   those waivers and get that resolved.  And then at the same
 2   time -- Mr. Rowland, are you scheduled to be gone starting
 3   tomorrow?  Is that correct?
 4             MR. ROWLAND:  That's correct, Your Honor.
 5             THE COURT:  So do I need to go ahead and do a *Garcia*
 6   this afternoon, you think?
 7             MR. ROWLAND:  If we don't get a verdict back by, say,
 8   4:30, I would say.
 9             THE COURT:  Even that, depending on if there's
10   forfeiture issues and going forward -- I don't know that we're
11   going to address them this week, but I'm not sure we're not.
12   So I think we probably will have to do the inquiry.
13             Who's going -- who's going to be the attorney that
14   is -- that Mr. Sean Porter is agreeing to sit in for you?
15             MR. ROWLAND:  I believe A. J. Tasker will be.
16             THE COURT:  Okay.  All right.  And that also, I
17   think, means that James Porter, I think, means he would have to
18   agree to it as well, because he's -- because Mr. Tasker has
19   been representing James Porter during the trial, along with
20   Mr. Schwartz.
21             So we'll do a modified *Garcia* probably at the end of
22   this session.  I don't know that everybody else necessarily
23   wants to listen to it, but they're welcome to.  But we'll do
24   that at the end of this session.  Okay?
25             MR. ROWLAND:  Okay.  Thank you, Judge.
```

1    THE COURT:  And one other issue, and then I'll take

2  the waivers, and then I think that's about all we can do.

3    The -- and I wanted to just put this on the record.

4  I don't think anybody will have any problem, but I did not want

5  to act before -- before I put it on the record and made sure

6  nobody had a problem with it.

7    Under federal jury service statutes the jury is paid

8  $50 a day for their attendance at -- in jury service.

9  Contrary -- maybe not contrary, but I -- when we took that

10  two-week pause, I -- and I addressed the jury, I told them that

11  they needed to consider themselves on jury service for that two

12  weeks because they could be called back at any time, because,

13  as you recall, they could have been called back at any time,

14  depending on when we were ready to go.

15    So I asked them to continue to be available for jury

16  service and that they should consider themselves on jury

17  service, and do all the things that you do when you're on jury

18  service, subject to the call of the Court.

19    The federal jury service statute requires the

20  physical presence of the juror in the courthouse in order to

21  pay them the $50 a day.

22    And I have investigated that.  And that's the way

23  it's interpreted in Washington.  And that's the way it's been

24  interpreted.  I wish it wasn't interpreted that way, but it

25  was.

1    But one thing that's recommended by the

2    administrative office in a -- in a case where a juror --

3    whether it was juror hardship or other extenuating

4    circumstances, is to see if the Court's local bench bar fund

5    will, in effect, come forward and compensate the jurors for

6    that time, even though the -- even though the statute wouldn't

7    allow it.

8    And so what I have done is I've made a request to the

9    bench bar fund to, in effect, pay each of our jurors $50 a day

10   for the two-week period that they were in service but not being

11   required to come to the courthouse because of our COVID

12   outbreak.

13   And I am prepared at the end of their service to --

14   in addition to the $50-a-day money they're going to get for the

15   days they were actually here, I am prepared to give them that

16   extra check for those days.  I think it's going to end up being

17   nine days of -- of service that -- that they were performing

18   even though they weren't here.

19   It's a little bit unusual, but I thought it was

20   appropriate.  But I did not, of course, want to do that until I

21   put it on the record and until I determined whether any party

22   had any objection to me doing so.

23   And, of course, I would just simply tell them exactly

24   what I just told you, that we -- and that would be -- because

25   they're going to get the -- they get the $50 a day from the --

 1 | from their days when they're here in person, they get that

 2 | electronically.  And so this would essentially be a supplement

 3 | to that for those days of service.

 4 | Does anybody see any problem with that?  Does anybody

 5 | have any objection to that?

 6 | MR. DUVA:  No, Your Honor.

 7 | MR. BELL:  No, Your Honor.

 8 | THE COURT:  Anybody?

 9 | MR. SADOW:  No.

10 | MR. LANDES:  No.

11 | THE COURT:  Okay.  All right.  Then that will be --

12 | I'm going to wait until the end of their service to do that,

13 | but I just wanted to put that on the record and make sure

14 | nobody had any problems with it.

15 | Okay.  So let me go ahead and...

16 | All right.  If I could just ask Mr. Ricardo Perez,

17 | Ms. Zaffuto, and Mr. Aaron Alonzo to just stand up for me,

18 | please.

19 | MR. LANDES:  Judge, I'm sorry to do this.  Before I

20 | do this, I've looked at these -- these charts a little bit more

21 | closely.  Ricardo Perez and his brother Jorge Perez are listed

22 | on all these properties.  They're, in a sense, joined at the

23 | hip with regard to these forfeited properties.

24 | I'm not quite sure how that would work, if Mr. Bell

25 | was going forward with a jury and Mr. Ricardo Perez would

1 waive. Are we going to do this twice?

2          I think for the time being, with regard to

3 Mr. Ricardo Perez, until I can have some further discussions

4 about how that would work, I'm going to reserve the right to a

5 jury trial, I think for judicial economy as well.

6          THE COURT: All right. I understand. That's fine.

7          Ms. Zaffuto and Mr. Alonzo, could you please -- raise

8 your right hands, please.

9          Do each of you swear to the tell truth, nothing but

10 the truth, so help you God?

11          DEFENDANT ALONZO: I do.

12          DEFENDANT ZAFFUTO: Yes, Your Honor.

13          DEFENDANT ALONZO: Yes.

14          THE COURT: So your attorney has advised me that you

15 wish to waive your right to a jury determination as to

16 forfeiture of the items listed in the superseding indictment

17 which could be forfeited by you.

18          And, Ms. Zaffuto, in -- in your case that would be

19 the amount of 10,902,011 -- I'm sorry, $10,902,011.30. There's

20 also substitute assets listed here, which includes real

21 property located at 9705 Northwest 67th Court, in Tamarac,

22 Florida, as well as real property located at 13851 Stirling

23 Road, Southwest Ranches, Florida 33330.

24          And the -- and in Mr. Alonzo -- in your case, it's

25 just -- it's just an amount of money, $8,657,647.44, which the

1  government has stated in a bill of particulars it's seeking to

2  forfeit from you.

3          And I'm referring to the bill of particulars in

4  Ms. Zaffuto's case, which is doc 607.

5          And I'm referring to the bill of particulars in

6  Mr. Alonzo's case at doc 608.

7          It is -- it is a matter of, I take it, some debate as

8  to which of -- which of those properties or moneys you would

9  have a right to a jury consider -- right to jury consideration,

10 in terms of a jury's consideration of forfeiture as to those

11 properties, as opposed to the Court considering it.  And this

12 is only if you were to be convicted, of course.

13         But the -- you do -- to the extent you do have that

14 jury right -- and, again, we'd have to figure out exactly which

15 assets and -- or all of them that you'd have that right.

16         But to the extent you do have a jury trial right in a

17 forfeiture proceeding, it would be incumbent upon a jury at

18 that point to determine whether or not the United States has

19 satisfied its burden of proof with regard to that forfeiture.

20         So do each of you understand that to the extent you

21 have a jury trial right on these issues that -- that the jury

22 would be the one to determine whether the government had

23 satisfied its burden of proof with regards to the forfeiture

24 issues?

25         Do both of you understand that?

1    DEFENDANT ZAFFUTO:  Yes, Your Honor.

2    DEFENDANT ALONZO:  Yes.

3    THE COURT:  Okay.  And do you understand that you do

4  have the right, if you wish, to waive and give up that jury

5  determination for those forfeiture proceedings?

6    DEFENDANT ZAFFUTO:  Yes, Your Honor.

7    DEFENDANT ALONZO:  Yes.

8    THE COURT:  And is it, in fact, your desire to waive

9  and give up any jury consideration of any forfeiture issues

10  involved in your case?

11    DEFENDANT ZAFFUTO:  Yes, Your Honor.

12    DEFENDANT ALONZO:  Yes.

13    THE COURT:  And has anybody threatened, forced,

14  coerced, or intimidated you in any way to get you to give up

15  those rights, promised you anything?

16    DEFENDANT ZAFFUTO:  No, Your Honor.

17    DEFENDANT ALONZO:  No.

18    THE COURT:  Have any -- and are you both making a

19  free, knowing, and intelligent decision to waive and give up

20  your forfeiture jury trial rights?

21    DEFENDANT ZAFFUTO:  Yes, Your Honor.

22    DEFENDANT ALONZO:  Yes.

23    THE COURT:  Have you had enough time to talk with

24  your lawyers about this to understand the implications of that?

25    Ms. Zaffuto?

1    DEFENDANT ZAFFUTO:  Yes, Your Honor.

2    THE COURT:  Mr. Alonzo?

3    DEFENDANT ALONZO:  Yes, Your Honor.

4    THE COURT:  Okay.  Are there any other questions you

5  have of me before I officially accept your waiver?

6    DEFENDANT ZAFFUTO:  No, Your Honor.

7    DEFENDANT ALONZO:  No, Your Honor.

8    THE COURT:  And, Mr. Lowther, are you comfortable

9  that Ms. Zaffuto is proceeding appropriately?  And are you

10 satisfied with the Court's colloquy?

11   MR. LOWTHER:  Yes, Your Honor.

12   THE COURT:  Same question for you, Ms. Galnor.

13   Are you comfortable that the Court has done a good

14 job with the colloquy and that your client is fully advised in

15 making these decisions?

16   MS. GALNOR:  Yes, Your Honor.

17   THE COURT:  Okay.  Is the government satisfied with

18 the waiver colloquies on forfeiture for these two individuals?

19   MR. DUVA:  Yes, Your Honor.

20   THE COURT:  All right.  All right.  I'm making a

21 finding with respect to both of you that you have both waived

22 or given up any right you have to jury consideration of any

23 forfeiture issues that may be appropriate or pertinent to your

24 case, including the ones that I reviewed with you from the bill

25 of particulars, that you're making a free, voluntary, knowing,

1  and intelligent decision to waive or give up those jury trial

2  rights, and that you have had the advice of capable counsel in

3  making those decisions.

4      Do you agree with me on my findings, Ms. Zaffuto?

5      DEFENDANT ZAFFUTO:  Yes, Your Honor.

6      THE COURT:  And, Mr. Alonzo?

7      DEFENDANT ALONZO:  Yes, Your Honor.

8      THE COURT:  All right.  Thank you very much.  Y'all

9  can have a seat.

10      All right.  I don't know anything else to do at the

11  moment other than do the *Garcia* hearing with Mr. -- but I don't

12  know anything else to do on forfeiture.

13      Does everybody agree we're kind of about -- we've

14  gone about as far as we can until we know more information, and

15  until we do a little more research?  Is there anybody that

16  wishes to be heard further on forfeiture at this moment?

17      MR. BELL:  No, Your Honor.

18      MR. RAFFERTY:  Not at this time, Your Honor.

19      MR. LANDES:  No, Your Honor.

20      THE COURT:  All right.

21      All right.  Then I'm going to go ahead and conduct

22  the *Garcia* inquiry for Mr. Rowland.  And I don't know if y'all

23  want to stay or not.  Anybody who wants to absent themselves

24  can absent themselves.

25      MR. BELL:  Thank you, Your Honor.

```
 1          MR. SCHWARTZ:  Judge, can I have two minutes real
 2   quick to use the rest room?
 3          THE COURT:  Yeah.  Sure.  That's fine.
 4          MR. RAFFERTY:  And, Your Honor, can I ask a question?
 5   How long are you intending to keep the jury today?  Have you
 6   made that determination yet?
 7          THE COURT:  What I do, Mr. Rafferty, is I -- at
 8   5 o'clock I check with them.  And if they want to stay longer
 9   than that, I let them.  But realistically I probably wouldn't
10   let them go past 6 o'clock.
11          MR. RAFFERTY:  Thank you.
12          THE COURT:  But I usually check with them right
13   around 5 o'clock.
14          MR. RAFFERTY:  Okay.
15          THE COURT:  All right.  I tell you what, we'll just
16   be in recess for five minutes.  And then -- so I need
17   Mr. Rowland and his client.  I need Mr. Tasker and Mr. Schwartz
18   and his client to come back.  All right?  And I need somebody
19   from the government.
20          MR. BELL:  Judge, do we need to physically be here at
21   5:00?  You won't call the jury -- you'll just get a message to
22   them and --
23          THE COURT:  Well, I -- actually, I usually do call
24   them back in to kind of give them the -- the speech.
25          MR. BELL:  All right.  That's fine.
```

1       THE COURT:  Yeah.  So probably -- so you should be

2  planning on that, assuming they want to --

3       MR. BELL:  Just be present, if we're out and about?

4       THE COURT:  Yeah.  Yes.  All right.  We're in recess

5  for five minutes.

6       COURT SECURITY OFFICER:  All rise.

7    (Recess from 2:59 p.m. to 3:06 p.m.; after which

8  Mr. Rowland, Mr. Schwartz, Mr. Tasker, Mr. Winters, Mr. Hayes,

9  Mr. Duva, Ms. Tran, Defendant James F. Porter, Jr., and

10  Defendant Sean Porter were present.)

11       COURT SECURITY OFFICER:  All rise.  This Honorable

12  Court is now back in session.

13       THE COURT:  Thank you.  You may be seated.

14       All right.  So I'm going to go ahead and get Mr. Sean

15  Porter and Mr. James Porter under oath, if I could, please.

16       Ms. Hatfield.

17       COURTROOM DEPUTY:  If you'd raise your right hands.

18       Do you solemnly swear that the testimony you are

19  about to give before this Court will be the truth, the whole

20  truth, and nothing but the truth, so help you God?

21       DEFENDANT J. PORTER:  Yes, I do.

22       DEFENDANT S. PORTER:  Yes.

23       THE COURT:  Why don't -- actually, why don't both of

24  you just come up to the podium, if that's okay.

25       So here's the situation.  Mr. Rowland, of course,

1   represents Mr. Sean Porter.  And, as you know, he is not going

2   to be able to be with us tomorrow and Friday.

3            And so the solution to that, rather than to have --

4   the solution to that is -- that y'all are proposing to me is to

5   allow Mr. Tasker to represent Sean Porter just during the time

6   that he's gone.

7            And -- and that seems like a fairly simple solution,

8   but the law requires me to make what's called a probing inquiry

9   with regard to that decision, because -- because of any

10  potential conflicts of interest or something that might arise

11  that could be problematic in that representation, even though

12  it's going to be brief, and even though we're in a part of the

13  case where it's far less likely that there will be any big

14  issues that come up.

15           But, nevertheless, I need to tell you you each have

16  the absolute right to be represented by an attorney that you

17  have retained.  You have the right to be represented by an

18  attorney who provides effective assistance to you individually

19  and who has the duty to represent only your individual

20  interest.

21           In other words, you have the right to be represented

22  by an attorney who does not have an actual or potential

23  conflict of interest.

24           Representation by an attorney who has an actual

25  conflict of interest that adversely affects the attorney's

1    performance would be a violation of your Sixth Amendment right

2    to effective assistance of counsel.

3           And that right to effective assistance of counsel

4    includes the right to be represented by a separate attorney who

5    does not represent or who has not represented any other party

6    in this case.

7           And the Court has previously appointed Mr. Rowland as

8    your counsel, Mr. Sean Porter.  And, of course, Mr. James

9    Porter is represented by both Mr. Tasker and Mr. Schwartz.

10          And so I just need to make sure that you understand

11   that at least there's some potential for conflict of interest.

12   I don't expect that to happen necessarily, but it's something

13   that I need to advise you about.

14          And it requires me to give serious consideration and

15   balancing of individual considerations, public policy and

16   public interest in the administration of justice, and basic

17   concepts of fundamental fairness.

18          And the reason -- and there can be all kinds of

19   potential conflicts of interest.  Most of them don't apply at

20   this point.

21          I mean, Mr. Sean Porter and Mr. James Porter have

22   been represented by separate counsel throughout this trial.

23   And we are now in the phase of the trial where the jury has the

24   case.

25          So the likelihood is -- of something arising is much,

1  much less.  But, nevertheless, I do need to point out to you

2  that if you're both represented by the same sets of attorneys,

3  even for a couple of days, there is a possibility of some

4  conflict of interest that could arise, and that would be --

5  could potentially put one client adverse to the other, and --

6  and would put your attorneys in a situation where they're

7  representing two people in a conflict situation.

8          You are able to waive that conflict of interest if

9  that waiver is made knowingly, freely, voluntarily, and

10  intelligently.  And it's hard for me to predict whether any

11  conflict would arise.

12          As I said, I can't say for sure that it wouldn't.  It

13  seems like in the phase of the case we're in it's less likely,

14  as I said.

15          But I just want to make sure that both of you do

16  understand that that's why everybody has separate lawyers,

17  and -- because of any potential conflicts, and I just want to

18  make sure you're aware of that.

19          If your lawyer was put in a position of having to --

20  to deal with a conflict of interest, it would be difficult for

21  that lawyer, because then they would be having loyalty to two

22  different clients.

23          And is the -- Mr. Rowland, if you can just let me

24  know if you -- what -- based on your conversations with -- with

25  your client, and also with -- with Mr. Schwartz and Mr. Tasker,

1  do you foresee or believe there are any actual conflicts of

2  interest, or really any potential conflicts of interest, that

3  you're concerned about?

4        MR. ROWLAND:  Based on the conversations that I've

5  had with both Mr. Schwartz, Mr. Tasker, and my client, I don't

6  believe that there are any actual conflicts at this point.

7        Obviously, like you said, hard to predict any

8  potential conflict that would come up.  However, I don't

9  believe, based on the way that the case has gone, that any of

10 those potentials are likely at this point.

11       THE COURT:  And, of course, it seems to the Court, at

12 least, that -- for almost -- certainly, and really the entirety

13 of the trial, that Mr. James Porter's defense has been

14 consistent with Mr. Sean Porter's defense.

15       MR. ROWLAND:  They've been almost exactly aligned,

16 Your Honor, yes.

17       THE COURT:  Yeah.  So -- and, of course, they are

18 brothers, which is -- is something to also consider.

19       Mr. Tasker, are you going to be the one to represent

20 Sean Porter?

21       MR. TASKER:  Yes, Judge.

22       THE COURT:  Okay.  Are you aware or concerned about

23 any actual conflicts of interest in having both you and

24 Mr. Schwartz representing Mr. James Porter and also

25 representing Mr. Sean Porter for this couple-of-day period?

1    MR. TASKER:  No actuals, Judge, no.

2    THE COURT:  Okay.  And are you concerned about any

3  potential conflicts of interest?

4    MR. TASKER:  I agree at this point it's highly

5  unlikely.

6    THE COURT:  Okay.

7    MR. ROWLAND:  And, Your Honor, I can also tell you I

8  worked with Mr. Tasker for a number of years when I was working

9  for Mr. Schwartz.  And I'm sure you're aware as well, since

10  you're aware of him, but he is highly competent.  He knows

11  exactly what he's doing.  He's been here the entire time.  He's

12  heard all the testimony.

13    So I think that that alleviates some of the concerns,

14  in terms of any conflict, given that he knows what's going on

15  in this case at this point, too.

16    THE COURT:  Of course, I have a script that we use

17  for these types of proceedings, but very little of it really

18  applies at this point in the case.  So I'm just trying to get

19  to the stuff that does.

20    So, Mr. Sean Porter, do you understand the Court --

21  the reason I'm asking these questions is because I want to make

22  sure that you're comfortable allowing Mr. Tasker to represent

23  you for the two days that Mr. Rowland will be gone, and that

24  you're -- don't have any concerns about conflicts arising in

25  that representation, or don't have any concern about divided

1    loyalty in that situation.

2         Have you had those discussions with Mr. Rowland?

3         DEFENDANT S. PORTER:  Yes, sir.

4         THE COURT:  Okay.  And do you have any concerns about

5    conflicts of interest?  Are you concerned about having

6    Mr. Tasker represent you, knowing he's also representing your

7    brother?

8         DEFENDANT S. PORTER:  No, sir.

9         THE COURT:  Do you understand that if some type of

10   conflict did arise that you -- if you allow this to happen,

11   then you're kind of waiving your -- you're waiving and giving

12   up any right you would have based on that conflict?

13        Do you understand that?

14        DEFENDANT S. PORTER:  Yes, sir.

15        THE COURT:  And, Mr. James Porter, same set of

16   questions for you.  Do you have any concern about letting

17   Mr. Tasker represent Mr. Sean Porter for the two days that

18   we're -- that we're in jury deliberations here?

19        DEFENDANT J. PORTER:  No, sir, I do not.

20        THE COURT:  Do you understand that there's potential

21   for conflict of interest?  We don't have any reason to think

22   there will be any, but there's potential for it, and that your

23   attorney could be put in an awkward situation if there was a

24   conflict of interest, but that by agreeing to the

25   representation that you're waiving or giving up any right you

```
 1  have to complain about that conflict of interest?
 2          DEFENDANT J. PORTER:  Yes, sir, I do.
 3          THE COURT:  And do you have any additional concerns
 4  or anything on your mind regarding your -- your decision, if
 5  that be your decision, to allow Mr. Tasker to represent
 6  Mr. Sean Porter for these next two days?
 7          DEFENDANT J. PORTER:  No, sir.
 8          THE COURT:  And have both of you had enough time to
 9  talk to your lawyers and to think about this before you make
10  this decision?
11          DEFENDANT J. PORTER:  Yes, sir.
12          DEFENDANT S. PORTER:  Yes, sir.
13          THE COURT:  Do you need me or wish me to appoint a
14  separate attorney to consult with you to make sure that you're
15  the -- that you're in a position to go forward?  Do you want me
16  to get another attorney to consult with you?  Or do you believe
17  that not to be necessary?
18          DEFENDANT S. PORTER:  I don't believe it to be
19  necessary, sir.
20          DEFENDANT J. PORTER:  Me either, sir.
21          THE COURT:  And, Mr. Sean Porter, are you willing
22  to -- are you willing to let Mr. Tasker represent you for these
23  next couple of days, even if it means that he could not
24  represent you effectively because of his representation of your
25  brother?
```

1          DEFENDANT S. PORTER:  Yes, sir.

2          THE COURT:  And same question for you, Mr. Porter.

3          Are you willing to allow Mr. Tasker to represent your

4    brother, even if it meant that he would be put in a conflict

5    situation and not be able to represent you effectively?

6          DEFENDANT J. PORTER:  Yes, sir.

7          THE COURT:  All right.  Mr. Sean Porter, do you

8    understand that if you waive conflict-free counsel you will not

9    be later heard to complain that the issue of your attorney's

10   potential or actual conflict has caused you a problem?

11         Do you understand that?

12         DEFENDANT S. PORTER:  Yes, sir.

13         THE COURT:  Is it your desire, in fact, to waive

14   conflict-free counsel and to be represented by Mr. Tasker for

15   the next couple of days, even though he's also going to be

16   representing Mr. James Porter?

17         DEFENDANT S. PORTER:  Yes, sir.

18         THE COURT:  Is that your own free and voluntary

19   choice?

20         DEFENDANT S. PORTER:  Yes, sir.

21         THE COURT:  Has anyone threatened, coerced, or

22   intimidated you, or promised you anything, in order to get you

23   to do this?

24         MR. S. PORTER:  No, sir.

25         THE COURT:  Is this your own independent, reasoned

1  judgment with full knowledge and understanding of the right you

2  have to the effective assistance of counsel and the right you

3  would be giving up?

4            MR. S. PORTER:  Yes, sir.

5            THE COURT:  Mr. James Porter, is it your desire to

6  waive or give up your right to conflict-free counsel in this

7  case and allow Mr. Tasker to also represent Mr. Sean Porter?

8            DEFENDANT J. PORTER:  Yes, sir.

9            THE COURT:  Will you -- do you understand you would

10 not be heard to later complain about any conflict that might

11 arise as a result of this agreement?

12           MR. J. PORTER:  Yes, sir.

13           THE COURT:  Is this your own free and voluntary

14 choice?

15           DEFENDANT J. PORTER:  Yes, sir.

16           THE COURT:  Has anyone threatened, coerced,

17 intimidated you, promised you anything in order to get you to

18 do this?

19           DEFENDANT J. PEREZ:  No, sir.

20           THE COURT:  Is this your own independent, reasoned

21 judgment, with full knowledge and understanding of the right

22 that you have to effective assistance of counsel and the right

23 that you're giving up?

24           DEFENDANT J. PORTER:  Yes, sir.

25           THE COURT:  Is the government satisfied with the

1  colloquy?

2       MR. WINTERS:  Yes.

3       MR. HAYES:  Yes, Your Honor.

4       THE COURT:  Okay.  All right.  Based upon the

5  discussions we've had, I find that you are both competent and

6  know what you're doing.  I find that you have both been fully

7  advised of your right to effective assistance of counsel,

8  including representation by an attorney who has neither a

9  potential nor an actual conflict of interest.

10      I find you understand your right to separate counsel,

11 including court-appointed separate counsel.  I find that you

12 understand the details of the attorneys' possible conflict of

13 interest, to the extent they could be determined at this time,

14 and the dangers of that conflict of interest.

15      I find that your waiver of your right to effective

16 assistance of counsel based upon conflict of interest is made

17 knowingly, freely, voluntarily, and intentionally.  I also find

18 that under *Wheat versus United States* this waiver will not

19 undermine the due administration of justice.

20      I, therefore, will accept the waivers of both

21 Mr. Sean Porter and Mr. James Porter.  And -- and I will,

22 therefore, allow Mr. Tasker to represent Mr. Sean Porter, in

23 addition to his ongoing representation of Mr. James Porter.

24      And, of course, Mr. Schwartz will continue to provide

25 conflict-free counsel to Mr. James Porter and -- although I

1  guess y'all are in the same firm, right?

2          MR. SCHWARTZ:  Yes.

3          THE COURT:  So I guess I can't make that finding.  So

4  I'll withdraw that last statement.  I'm just going to determine

5  that Mr. Tasker is able to represent both Mr. Sean Porter and

6  Mr. James Porter based upon the waiver of conflict-free counsel

7  that Mr. Sean Porter and Mr. James Porter have made.

8          And this will be for the two days, Thursday and

9  Friday, while the jury is deliberating, and while -- while we

10 prepare for any forfeiture proceedings.

11         And I think that's it.  Is there anything else I need

12 to do?

13         Does the government have anything else on its mind?

14         MR. HAYES:  No, Your Honor.

15         MR. SCHWARTZ:  I've got a tangential issue real

16 quick.

17         THE COURT:  Yes.

18         MR. SCHWARTZ:  So A. J. was in court Monday on a case

19 that's in state court -- I'm sorry, Tuesday -- in state court

20 that -- a case -- a felony court with Judge Salem.  The State

21 was supposed to drop the case down to county court.  They

22 didn't do it.  Judge Salem expressed his displeasure with that,

23 but reassigned the case for tomorrow morning at 9 a.m.

24         I don't know if you're willing to give a call just

25 asking that that be excused.  He had indicated that he expected

1  the State to do what they were supposed to do and transfer it

2  to county court, but I don't want to hold anything up as a

3  result of that.

4          It's literally -- it's just the State having to drop

5  the case down to the county jurisdiction.  I don't expect

6  there's going to be any issues.  And it may already be done,

7  but it's technically still on the calendar.

8          THE COURT:  Well, what -- and that would require

9  Mr. Tasker's appearance?

10          MR. SCHWARTZ:  Yes, sir.

11          THE COURT:  And how long would that appearance be?

12          MR. SCHWARTZ:  Who knows with the state court.  It

13  wasn't an issue until now, but --

14          THE COURT:  I mean, I guess I meant if he was just

15  going to go over there and come right back, I doubt that we're

16  going to -- I mean, we could just hold -- I don't think we'd

17  have anything that would happen during that time.  But do

18  you -- but I -- I mean, I'm happy to call --

19          MR. SCHWARTZ:  I expect that the State is likely

20  going to make sure that they reach their 5 o'clock deadline, to

21  the extent that the judge, you know, understands that -- and he

22  had made, I believe, mention on the record that we're in the

23  middle of this federal trial and the State needed to get moving

24  on it.

25          It was supposed to be done before Tuesday.  I expect

1  that he will just excuse his appearance, because it doesn't

2  require any argument or anything.  It's literally the State

3  just coming in and announcing they dropped the case down, and

4  the court just wants to make sure it clears their calendar.

5  That's all -- there's nothing going on.  So he doesn't have to

6  be present for that, especially if the jury continues its

7  deliberation in the morning.

8         THE COURT:  Well, I guess I'm not for sure

9  understanding what you're asking me to do.

10         MR. SCHWARTZ:  Just a call from your assistant to his

11  assistant saying Mr. Tasker is supposed to be in court tomorrow

12  morning.  You know, has the State taken care of this?  Can he

13  be excused from his appearance, since it doesn't require

14  literally anything from him?

15         THE COURT:  Okay.  All right.  We will do that.

16         And so then I would expect you to be here, then,

17  Mr. Tasker.

18         MR. TASKER:  Yes, sir.

19         THE COURT:  Okay.  Now, I don't -- and we'll talk

20  about this when everybody is here.  But I don't normally

21  reconvene court when the jury is coming back in.  I just --

22         MR. SCHWARTZ:  Oh, okay.

23         THE COURT:  I just tell them to come back in and keep

24  going.  So it may turn out not to be an issue, but -- but I --

25  I'll be happy to call Judge Salem.

1    MR. ROWLAND:  Your Honor, one other thing.

2    THE COURT:  Yeah.

3    MR. ROWLAND:  Were you planning on hearing the Rule

4  29 arguments --

5    THE COURT:  You know, we --

6    MR. ROWLAND:  -- tomorrow or Friday?

7    THE COURT:  -- had put those off.  And we haven't

8  talked about it with anybody.  I -- if you -- if you wanted

9  to -- I have taken -- I've reserved them.  And I'm -- I'll

10  be -- I'll be honest with you, I'm likely to continue to

11  reserve on them.

12    MR. ROWLAND:  Okay.

13    THE COURT:  And so I wasn't necessarily contemplating

14  additional argument, but I -- but, yeah, I don't -- I mean, I

15  probably should be having this discussion when everybody is

16  here, but I -- and nobody has really brought it back up to me

17  until you just did.  So I -- but I -- I am likely under

18  Rule 29(b) to reserve.

19    MR. ROWLAND:  Okay.  I'm not trying to put anything

20  more on your plate right now.  I just want to make sure we

21  don't have a conflict there either.

22    THE COURT:  Yeah.  Yeah.  29(b) says, The Court may

23  reserve decision on the motion, proceed with the trial, submit

24  the case to the jury, and decide the motion either before the

25  jury returns a verdict or after it returns a verdict of guilty,

1    if it does return a verdict of guilty, or is discharged without

2    having returned a verdict.  And so I -- I am likely to just

3    continue to reserve until after we hear from the jury.

4            MR. ROWLAND:  Okay.  Great.  Thank you, Judge.

5            I believe Ms. Tran had an issue.

6            MS. TRAN:  Only briefly, Your Honor.  I just wanted

7    to let the Court know to expect an amended bill of particulars

8    from me to be filed today.

9            Mr. Rowland was kind enough to point out to me that

10   there was a real property that I had inadvertently left out of

11   the bill of particulars.  It was on the indictment.  It just

12   did not make its way into the bill of particulars.

13           THE COURT:  Is that with respect to his client?

14           MS. TRAN:  Yes, Your Honor.

15           MR. ROWLAND:  And to be clear, what I was trying to

16   clarify is, is the government planning on seeking forfeiture of

17   that property, or is it just the $3 million that's listed in

18   the bill of particulars.

19           THE COURT:  Okay.  Well, I guess, Ms. Tran, I

20   won't -- I'm not -- I don't know what the legal effect of the

21   amended bill of particulars would be at this point.

22           I don't know what Mr. Rowland or Mr. Tasker is going

23   to argue about that.  I'm not sure -- so, I mean, obviously I'm

24   not going to prevent the government from doing it, but I

25   don't -- I don't know what the legal effect of it is.  But

1    I'll -- but you can certainly -- certainly file it.

2          MR. ROWLAND:  And just to be clear, you know --

3          THE COURT:  I tell you what, Mr. Rowland, you need

4    to -- if you're going to say something, you need to say it

5    for -- because the court reporter won't be able to hear you.

6          MR. ROWLAND:  I just want to make sure that the

7    government is planning on just moving forward on a judgment for

8    the three million and change, as opposed to trying to seek

9    forfeiture of that actual property.

10         THE COURT:  Is that a substitute asset?

11         MS. TRAN:  Yes, Your Honor.  It would be a substitute

12   asset.  Like I mentioned to Your Honor, I only identified seven

13   properties as directly traceable.  Everything else was a

14   substitute asset.  I think that one just didn't make it into

15   the pleading, so...

16         THE COURT:  Yeah.  Okay.  All right.  Is the

17   government required to list substitute assets in a bill of

18   particulars?

19         MS. TRAN:  Not specifically, Your Honor.  I could

20   just as easily come in tomorrow, if we had the forfeiture

21   stage, and announce to the Court that I don't believe I could

22   meet the preponderance standard for that same asset, and we

23   would be in the same place.  I just thought for accuracy

24   sake...

25         THE COURT:  Okay.  All right.

1          All right.  Is there anything else that we need to

2    do?

3          MR. ROWLAND:  I don't think so, Judge.

4          THE COURT:  All right.  Thank you, Mr. Sean Porter

5    and Mr. James Porter.  I appreciate that.

6          And is there anything else from counsel?

7          MR. HAYES:  Nothing from the government, Your Honor.

8          THE COURT:  All right.  Then we're in recess.

9          As I said, we'll be in recess until the jury either

10   calls us or -- I'm going to check with them around 5:00, see

11   what they want to do.  And then we'll call everybody back in.

12   All right?

13         COURT SECURITY OFFICER:  All rise.

14      (Recess from 3:30 p.m. to 5:04 p.m.; all parties present.)

15         COURT SECURITY OFFICER:  All rise.  This Honorable

16   Court is now back in session.

17         THE COURT:  All right.  Everybody have a seat.  I'm

18   told that the jury wants to go home.

19         Are they back there?

20         All right.  Let's have the jury, please.

21         COURT SECURITY OFFICER:  All rise for the jury.

22      (Jury enters, 5:05 p.m.)

23         THE COURT:  All right.  Everybody can be seated.

24   Thank you.

25         So I'm told that y'all are ready to go home, which is

1  perfectly fine.  This is when we would normally ask you anyway.

2  And so that's good.

3         And, of course, I'll remind you there's no time limit

4  on your deliberations.  And so it's perfectly fine.  I just

5  wanted to talk to you for a minute before I -- before I let you

6  go.

7         Let me just -- I know you probably are tired of

8  hearing of it, but let me just kind of -- now that you've

9  already kind of started your deliberations, you might wonder

10  whether the rules are the same.  But the rules are the same;

11  that is, once you leave here, don't talk about the case with

12  each other or with anybody else, don't let anybody overnight

13  talk to you about the case, at all, don't do any of your own

14  research, computer or otherwise, regarding the case, and don't

15  engage in social media on the case.

16         So the same rules that have applied throughout the

17  trial, even though you're in deliberations, apply overnight

18  while you're not here.

19         And in the morning we will not gather like this in

20  court.  You can just go straight to the twelfth floor, straight

21  to the courtroom where you've been deliberating.

22         I'd ask everybody to try to get here at quarter to

23  9:00, like we've been doing, and get organized.  And then

24  whenever everybody is here and your foreperson calls you to

25  order, then you can just start your deliberations.

 1      So we will not see you in the morning.  You'll just

 2  go straight to the -- to the jury room on the twelfth floor,

 3  the courtroom there.

 4      And I assume that those -- that courtroom is

 5  satisfactory?  It's working for you?  And -- and, obviously, if

 6  there's anything we can do to make your -- make your conditions

 7  more comfortable, we will be happy to do that, if we can.

 8      We will be, again, bringing lunch in tomorrow for

 9  you, if -- if you're still deliberating.  Usually we bring in

10  from someplace else besides Quizno's and -- but that's not my

11  department.  That's up to Tim, the jury guy.  So we'll let him

12  figure that out.

13      Other than that, I thank you for your continued

14  service.  And I wish you a pleasant evening.  And I'll ask

15  you -- again, don't come up here.  Go straight to the twelfth

16  floor, into the courtroom, about quarter to 9:00 tomorrow.

17  When everybody is together, you can start your deliberations

18  again.

19      All right, ladies and gentlemen.  Have a nice

20  evening.

21      COURT SECURITY OFFICER:  All rise for the jury.

22    (Jury exits, 5:08 p.m.)

23      THE COURT:  All right.  Everybody just have a seat

24  for a minute, please.  Just a couple of things.  The -- as you

25  heard, I will not be convening court in the morning.  So I'll

1  just simply ask you to be here and available starting quarter

2  to 9:00 or 9 o'clock in order to -- in case -- that there's any

3  question or -- from the jury.

4          And then the conditions will be the same tomorrow, in

5  terms of your availability and so forth, until we get a

6  verdict.

7          Secondly, with regard to the forfeiture issues, I'm

8  looking at the issues independently that have been raised by

9  the parties, especially those who are contending a broader

10  right to jury trial than the government is -- is proposing.

11          I'll be happy to accept any authority or briefing

12  that anybody wants to provide me, but I'm trying to -- we're

13  trying to work it through ourselves and come up with a -- a

14  decision on that, in the event we have to make one.

15          I will say this about -- and this kind of addresses

16  Mr. Bell's argument about needing some time to get ready and so

17  forth.

18          I am sympathetic to the idea that -- especially on

19  the defense side, that maybe you need to get some documents or

20  you need to think things through and get prepared.

21          However, I guess I view the time that we're waiting

22  for this jury to come back as time that you can be doing that.

23  And so the longer the jury deliberates, the more -- in my mind,

24  the more time you're having to begin those and do those

25  preparations.  And so I'm not going to want to necessarily hear

1  that we get a verdict and now we need to start getting ready.

2        I want -- I want all efforts to be made to do that if

3  you -- if you're asking for your jury trial right.  And I'd ask

4  the government -- I heard -- I think I heard Ms. Tran say today

5  that -- that there were additional -- potentially additional

6  documents or so forth, or maybe Mr. Duva.

7        But whatever it is, we need to be -- we can't just

8  sit around and wait for the verdict and then start to work on

9  it.  We need to be working on it as -- as we are in chambers,

10  in terms of the law.

11        But I'm talking about the factual development, so

12  that we can -- because I don't want to -- if I have to ask this

13  jury to handle forfeiture, I want to be able to do it as

14  quickly as we can do it, fairly, because I don't want to hold

15  them -- on to them longer than -- than I need to.

16        So just a word to the wise in terms of scheduling.  I

17  mean, I don't have any idea when we would schedule it, because

18  we don't have any idea when the verdict is going to come back.

19  But I do want people to be focused on it and thinking about it

20  and working on it so we're ready to go when we need to go.

21        And in terms of the alternate, she -- I have asked

22  her to stay in the courthouse while the jury is deliberating.

23  And she will also be back tomorrow.  And she's in a -- she's in

24  a separate place, and -- and so she is continuing her service

25  in case she's needed.

1          And she's requested if -- if there is a verdict,

2    she's requested to be in the gallery when it's read.  We'll

3    cross that bridge when we come to it, but I'm not going to

4    worry about that right now.  But y'all might be thinking about

5    whether anybody has any objection to that.

6          I also have James Porter, Jr.'s motion for protective

7    order, which was filed today.

8          Mr. Schwartz, I would have thought that this would

9    have been moot, but -- but you tell me otherwise?

10          MR. SCHWARTZ:  Yes, sir.  It's -- basically, the

11    government apparently served Mr. Thomas on his way out with a

12    subpoena that asked for all communications during a specific

13    timeframe.  And Mr. Thomas represented Mr. Porter on other

14    issues.

15          I don't take any issue with the subject matter of

16    this case and the waiver that we did on the record.  But to the

17    extent it involves all matters, I think it's protected by

18    attorney/client privilege, so...

19          THE COURT:  Okay.  I guess the question is --

20    Mr. Duva, or whoever is talking for the government, is this

21    still a live issue?  Or does the fact that we've completed the

22    testimony make this issue go away?

23          MR. DUVA:  Your Honor, I haven't seen it.  Well, I

24    did print it, but I haven't read it.

25          Can we just address it tomorrow sometime?

```
 1              THE COURT:  Yeah.  Sure.  That's fine.
 2              Kerri, anything else?
 3              COURTROOM DEPUTY:  No.
 4              THE COURT:  Okay.  Anything else from counsel?
 5              So, Mr. Rowland, we will not have the pleasure of
 6  your company tomorrow; is that correct?
 7              MR. ROWLAND:  That is correct, Your Honor.
 8              THE COURT:  All right.  Good luck to you, sir.
 9              MR. ROWLAND:  I appreciate it.
10              THE COURT:  And, Mr. Tasker, I did talk to Judge
11  Salem's office.  Did that get resolved?
12              MR. SCHWARTZ:  Yes, Judge.  Thank you.
13              THE COURT:  Okay.  Good.  Okay.  They were very
14  amenable.  I didn't have the case number, so I couldn't -- I
15  asked them to -- I asked y'all to get in touch with them with
16  the case number, but they were -- they were -- they were acting
17  like they were going to be good about it, so -- which I
18  appreciated.
19              All right.  Yes, Ms. Tran?
20              MS. TRAN:  Your Honor, you asked if there was any
21  case law or legal authority that Your Honor should consider, or
22  defense counsel --
23              THE COURT:  Yeah.
24              MS. TRAN:  -- should consider.  May I?
25              THE COURT:  Yeah.  Sure.
```

1       MS. TRAN:  You asked before the break, Your Honor,

2   whether there was any Eleventh Circuit case law that you could

3   consider in terms of the issue that was brought forth by

4   Mr. Fletcher's defense team that the government is otherwise

5   bound by the indictment and the forfeiture language set out

6   therein.

7       THE COURT:  Yes, ma'am.

8       MS. TRAN:  Your Honor, I found a case, *United States*

9   *versus Diaz*.  It is an Eleventh Circuit case.  It is somewhat

10  old, 1999.  The citation is 190 F.3d 1247.

11      I Shepardized it, Your Honor.  It only had a yellow

12  flag for a negative treatment on a nonforfeiture issue.  So I

13  think the opinion is still binding on the Court.

14      Within this case the government put the defendant on

15  notice that it intended to forfeit his real property, I believe

16  it was his home.  They did so -- the timing of that was

17  actually right after the jury came back with their verdict,

18  their guilty verdict, on the conspiracy and money laundering

19  charges in his case.  It came after their verdict, but before

20  the forfeiture stage of the trial.

21      So even when the notice came at that juncture, the

22  Court, in analyzing whether Diaz had an argument that that

23  timing violated his due process rights, determined that it did

24  not, and that that notice satisfied due process.

25      I will also take Your Honor's attention to Rule 32.2,

1  subsection (a), that talks about the notice to the defendant.

2  The last provision in that subsection indicates that the

3  indictment or information need not identify the property

4  subject to forfeiture or specify the amount of any forfeiture

5  money judgment that the government seeks.

6      So if you read those two in tandem, Your Honor, the

7  *Diaz* case clearly came out before Rule 32.2 was enacted.  But,

8  of course, 32.2 was silent as to timing.

9      And what it did say, it further made clear that the

10  indictment did not need to specifically list anything, meaning

11  the Court could find that it was proper for the forfeiture

12  provision to even list generally speaking just the forfeiture

13  authority, with no listing whatsoever, to be later amended or

14  specified down the road with bills of particular, which was,

15  for example, what we did in this case.

16      So it stands to reason if under the rule we may

17  notice the defendant generally on forfeiture and be permitted

18  to specify at a later date, then that is directly inconsistent

19  with defense counsels' argument that the Court must accept that

20  somehow the government is bound to the indictment forfeiture

21  language.  It simply is not.

22      THE COURT:  All right.  Thank you, ma'am.

23      MS. TRAN:  Thank you, Your Honor.

24      THE COURT:  I'll view that in the nature of authority

25  that's been provided to the Court and counsel for

1  consideration.

2      I'm not asking for any defense counsel to be prepared

3  to respond at this point, but I want to give anybody the

4  opportunity to say anything they want to say in light of

5  Ms. Tran's statements.

6      MR. SADOW:  Only that, unlike the case apparently

7  that she is citing, we actually have a recitation in the

8  indictment of the forfeiture, and it says something specific.

9      So in the sense that the case that she says if it's

10  not listed it's okay to notice, we have listed.  So that might

11  be a difference.

12      THE COURT:  Okay.  All right.  Well, we're continuing

13  to look at it.  I guess you-all will too.  And, as I said, I

14  will also ask anybody who thinks they're entitled to a jury

15  trial, whether we decide you are or not, and those that know

16  they are already, at least as to some assets, to be -- to be

17  doing their preparation, so that we can timely get this in

18  front of the jury, should that become necessary.

19      Anything else from counsel?

20    (No response.)

21      THE COURT:  All right.  Have a good evening.  We're

22  in recess.

23      COURT SECURITY OFFICER:  All rise.

24      THE COURT:  Hold on.  Put me back on.

25      I think I already said this, but we are not convening

1  tomorrow.  So you just need to be here, but we're not

2  convening.  All right?

3          MR. SADOW:  What time did you say?

4          THE COURT:  I said -- we're in recess.

5      (The proceedings concluded at 5:19 p.m.)

6                        - - -

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## <u>CERTIFICATE</u>

UNITED STATES DISTRICT COURT    )
                               )
MIDDLE DISTRICT OF FLORIDA      )


        I hereby certify that the foregoing transcript is a true

and correct computer-aided transcription of my stenotype notes

taken at the time and place indicated herein.


        DATED this 6th day of July, 2022.



                    s/Shannon M. Bishop
                    Shannon M. Bishop, RDR, CRR, CRC