IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,          Jacksonville, Florida

     Plaintiff,                 Case No. 3:20-cr-86-TJC-JBT

vs.                                June 27, 2022

JORGE PEREZ, et al.,               10:36 a.m.

     Defendants.                Courtroom No. 13A

_____

JURY TRIAL PROCEEDINGS
(VOLUME XXIII)
BEFORE THE HONORABLE TIMOTHY J. CORRIGAN
UNITED STATES DISTRICT COURT JUDGE

COURT REPORTER:

     Shannon M. Bishop, RDR, CRR, CRC
     221 North Hogan Street, #150
     Jacksonville, FL  32202
     Telephone:  (904) 549-1307
     dsmabishop@yahoo.com

    (Proceedings reported by mechanical stenography;
transcript produced by computer.)

                    A P P E A R A N C E S

GOVERNMENT COUNSEL:

        **ANDREW TYSEN DUVA, ESQ.**
        **MAI TRAN, ESQ.**
        US Attorney's Office - FLM
        300 North Hogan Street, Suite 700
        Jacksonville, FL  32202

        **GARY A. WINTERS, ESQ.**
        United States Department of Justice
        1400 New York Avenue NW
        Washington, D.C.  20902

        **JAMES V. HAYES, ESQ.**
        Department of Justice, Criminal Division, Fraud Section
        1400 New York Avenue, N.W.
        Washington, D.C.  20902

COUNSEL FOR DEFENDANT JORGE PEREZ:

        **THOMAS M. BELL, ESQ.**
        Thomas M. Bell, PA
        301 West Bay Street, Suite 1460
        Jacksonville, FL  32202

COUNSEL FOR DEFENDANT RICARDO PEREZ:

        **RICHARD J. LANDES, ESQ.**
        Richard Landes, Esq.
        736 2nd Street North
        Jacksonville Beach, FL  32250

COUNSEL FOR DEFENDANT AARON DURALL:

        **BRIAN T. RAFFERTY, ESQ.**
        BakerHostetler
        1170 Peachtree Street NE, Suite 2400
        Atlanta, GA  30309-7676

COUNSEL FOR DEFENDANT JAMES F. PORTER, JR.:

        **SETH SCHWARTZ, ESQ.**
        **ALBERT J. TASKER, IV, ESQ.**
        Schwartz Law Group, PA
        10365 Hood Road, Suite 105
        Jacksonville, FL  32257

COUNSEL FOR DEFENDANT SEAN PORTER:

      **CALEB D. ROWLAND, ESQ.**
      Rowland Law
      2130 Riverside Avenue
      Jacksonville, FL  32204

COUNSEL FOR DEFENDANT CHRISTIAN FLETCHER:

      **STEVEN H. SADOW, ESQ.**
      **VINCENT ALBERT CITRO, ESQ.**
      Steven H. Sadow, PC
      260 Peachtree Street NW, Suite 2502
      Atlanta, GA  30303

COUNSEL FOR DEFENDANT NEISHA ZAFFUTO:

      **JOSHUA SABERT LOWTHER, ESQ.**
      Lowther Walker, LLC
      Centennial Tower
      101 Marietta Street NW, Suite 3325
      Atlanta, GA  30303

COUNSEL FOR DEFENDANT AARON ALONZO:

      **DARCY D. GALNOR, ESQ.**
      Galnor Shumard, PA
      121 West Forsyth Street, Suite 610
      Jacksonville, FL  32202

# T A B L E   O F   C O N T E N T S

Page No.

PROCEEDINGS:

Jury Note 4........................................  5
Jury Note 5........................................  36
Jury enters with partial verdict..................  78
Defendant Jorge Perez waives right to jury trial
on forfeiture.....................................  91
Defendant Ricardo Perez waives right to jury
trial on forfeiture..............................  92
Jury excused......................................  96
Motion for mistrial on counts where no verdicts
were reached by Mr. Duva..........................  96

## N O   E X H I B I T S   R E C E I V E D

1               P R O C E E D I N G S

2    June 27, 2022                                    10:36 a.m.

3                           - - -

4         COURT SECURITY OFFICER:  All rise.  This Honorable

5    Court is now in session.

6              Please be seated.

7         THE COURT:  So about 20 or 25 minutes ago I received

8    a communication from the jury.  I went ahead and asked

9    Ms. Hatfield to make copies of it for everybody, because it --

10   it's a little hard to read, although I think I understand what

11   they're saying.  But I'll go ahead and read it into the record.

12            The communication says, Good morning.  We are -- and

13   I think that squiggle line means approximately 20 percent

14   unanimous on all counts and deadlocked on other counts.  Please

15   advise.  Thanks.

16            So -- and I asked Ms. Hatfield to provide this to

17   counsel and to give you a few minutes to digest it and to think

18   about how you would recommend that we proceed.

19            And we have -- I had previously -- as I do in almost

20   all trials, but especially in lengthy ones, I had looked at

21   various alternatives the Court has when things like this

22   happen.  So I'm -- have tried to be prepared for these types of

23   eventualities, so -- but let me start with where the parties

24   are.  And I guess I'll start with the government.

25            MR. DUVA:  Your Honor, we've received the note

1  reviewed it, discussed it, we're asking the Court to give a

2  modified *Allen* charge.

3        THE COURT:  All right.  I guess this is probably

4  significant enough of an issue that rather than just try to

5  have somebody speak for a defendant I'll just go down the line,

6  except I don't have the list.

7        Mr. Bell.

8        MR. BELL:  Judge, we're -- I think the consensus

9  among the defense team -- I didn't anticipate getting nominated

10  to advance this, but it's too early in the process.

11       One, I think the larger issue is we just don't really

12  know what they mean.  And the initial position of the defense,

13  I think collectively, is -- we'd ask the Court to inquire for

14  further clarification of exactly what it is they're asking the

15  Court to do, but we are certainly opposed to a modified *Allen*

16  charge at this point.

17       It is simply premature.  We -- to the extent that we

18  can't get any further clarification or the Court won't do that,

19  then we'd just simply request that they be advised to continue

20  to deliberate.  I think that's a fair summary of the

21  defendants' position, but...

22       THE COURT:  All right.  Well, I wasn't meaning

23  necessarily to make you the spokesperson.  I'm just going down

24  the list, because I think -- I think it's significant enough

25  that each defendant ought to have a say.

1          So you're saying to me that you think that -- no

2   *Allen* charge yet.  What should I ask them -- if you want me to

3   ask them something, what is it you want me to ask them?

4          MR. SADOW:  I have some language.

5          MR. BELL:  Mr. Sadow has apparently drafted some

6   language.  And I would say, Mr. Perez's position is consistent

7   with our understanding -- my understanding of Mr. Fletcher's.

8   So I'll defer, if the Court would permit, to Mr. Sadow's

9   proposed language.

10         THE COURT:  Sure.  Yes, sir.

11         MR. SADOW:  Your Honor, I think we should keep it

12  very simple and simply say, Please clarify your note without

13  telling us your numerical division.

14         THE COURT:  Is that enough information for them to

15  know what we're asking them?  I mean, when -- when we say

16  "please clarify your note," what are we asking them to clarify?

17         MR. SADOW:  I mean, obviously we can say, Please

18  clarify what you mean by approximately 20 percent unanimous or

19  deadlocked on other counts.  I mean, we can get very specific.

20         But I'm suggesting we don't get specific until we get

21  a response along the lines that I have outlined.  Let's let

22  them determine what it is they want to tell us, as opposed to

23  us asking them what they want.

24         THE COURT:  All right.  Do you have that written out,

25  Mr. Sadow?  Or is it just written in your scratch?

1    MR. SADOW:  I take offense at that, but, yes, it's my

2    scratch.

3    THE COURT:  What's your -- what's the language again,

4    your --

5    MR. SADOW:  It's, Please clarify your note without

6    telling -- I guess it would be the Court -- your numerical

7    division.

8    MR. HAYES:  Your Honor, if you do that, they may come

9    back with, Okay.  We won't tell you our numerical division, but

10   here's the count we are and here's the count we aren't.  You

11   might be a little more clear.

12   MR. SADOW:  That's precisely what I'm wondering --

13   what I'm looking for for information.  Let us tell -- let them

14   tell us.  If they think that that's important, let them tell us

15   that.

16   THE COURT:  All right.

17   All right.  Mr. Landes, on behalf of Ricardo Perez?

18   Hold on one second.

19   (Judge confers with law clerk.)

20   THE COURT:  Yes, sir.

21   MR. LANDES:  Judge, I agree with the defense

22   counsels' consensus.  We all spoke prior to coming in.  I think

23   it is too early to give an *Allen* charge.  And, quite honestly,

24   the note just doesn't make sense to us -- or I would say to me.

25   I don't know how juries can be unanimous on all

1  charges, but then in the next sentence saying they're

2  deadlocked on other counts.  And I think we need some

3  clarification in order to advise them.  So the first step would

4  be Mr. Sadow's language.  And then we can revisit what needs to

5  be done next.

6          Thank you.

7          THE COURT:  Mr. Rafferty?

8          MR. RAFFERTY:  Your Honor, I would join in

9  Mr. Landes' arguments.  I think it's premature to give a -- you

10 know, a modified *Allen* charge at this time, and would join in

11 Mr. Sadow's request for some clarification on this note.

12         THE COURT:  Mr. Schwartz?

13         MR. SCHWARTZ:  Yes, sir.  I think the others said it

14 well.  We join.

15         THE COURT:  Mr. Rowland, welcome back.

16         And what's your position?

17         MR. ROWLAND:  Thank you, sir.

18         Same as the other defendants.  We're on board with

19 that.

20         THE COURT:  Mr. Lowther?

21         MR. LOWTHER:  Your Honor, Ms. Zaffuto concurs with

22 Mr. Fletcher.

23         THE COURT:  Ms. Galnor?

24         MS. GALNOR:  Your Honor, I would adopt -- Mr. Alonzo

25 would adopt the same position as other defense counsel.

```
 1          THE COURT:  All right.  Let me hear from the
 2   government.
 3          I understand the government's position on the
 4   modified Allen charge.  If I were to ask for some clarification
 5   from the jury before I considered doing that, what -- what's
 6   the government's position on what that clarification should ask
 7   for?
 8          MR. DUVA:  Yes, Your Honor.  We maintain our position
 9   on the Allen charge.  I will -- I'm going based on the jury's
10   prior notes.  This is not a jury that send notes that are
11   models of clarity.
12          If you're going to ask them for clarification and be
13   general about it, you're probably going to get something else
14   like this, which is similar to what the prior notes have been.
15          I think they're kind of four for four on confusing
16   notes.  We've had an hour discussion about one of them, about
17   the interstate commerce and what to do.
18          If you're going to ask them for information, I would
19   be very specific about what counts you've decided as to what
20   defendants.  But we maintain we want the modified Allen charge
21   without getting to that step.
22          MR. BELL:  Judge, I would object to any specific
23   direction of which counts and which defendants.  To the extent
24   that, you know, the continuing discussion may provide the
25   opportunity to revisit anything that they've decided, I -- I
```

1  don't know that we want, you know, a written clarification that

2  they -- a commitment that they've -- they've resolved certain

3  defendants.  Maybe the counts in general, but not -- certainly

4  not a tie to any particular defendants.

5        MR. DUVA:  I don't see how that's possible.  There's

6  eight defendants and a number of different defendants charged

7  in different counts.  There's -- it doesn't seem possible that

8  they would say, We've decided Count Seven.  You know, I think

9  they would have to say as to who, or Count One, or whatever the

10  case may be.  I think that would just lead to more confusion.

11        THE COURT:  All right.  I'm still thinking about

12  whether I should just go ahead and give the *Allen* charge or

13  not, but I'm -- I'm leaning toward doing something to try to

14  clarify what they're talking about here and what they're asking

15  us to do here.

16        As you-all know, of course, the Court -- they do say

17  they're unanimous on all counts, on 20 percent -- we are

18  approximately 20 percent unanimous on all counts.  So it's

19  clear to me they have reached unanimous verdicts on some

20  counts.  Now, whether that's some counts as to certain

21  defendants or not, we don't have any way to know.

22        And, of course, the Court does ultimately, depending

23  on the situation, have the ability to take partial verdicts,

24  but I just don't think we know enough about what they're

25  doing -- what they mean by this.  And I'm considering this.

1   I'm considering along the lines of Mr. Sadow's suggestion, but

2   not exactly so.  I'm considering saying -- and I'm just working

3   this out as I'm saying it, so y'all can...

4          One approach would be to say:  Please clarify what

5   you mean by approximately 20 percent unanimous on all counts.

6   I caution you not to tell me how many jurors have voted one way

7   or the other.

8          I mean, it seems to me that they're saying they have

9   reached unanimity on some aspects of the case on the verdicts

10  and they're deadlocked on everything else.  And so I -- I'm not

11  sure this is the right thing to do, but I'm thinking about it.

12         We -- it's also true we -- we could be more specific.

13  So far I'm being counseled, at least by the defendants, not to

14  do that.  I mean, the 20 percent unanimity could be -- could be

15  unanimity as to certain defendants, although it says on all

16  counts, it doesn't say as to certain defendants.

17         And you would likely think that if they meant that

18  they would have said so.  It could -- it could, of course,

19  be -- based on the way the verdicts are written, it could mean

20  that 20 percent unanimity on all counts could involve a

21  complete verdict as to certain defendants.

22         And we could, of course, ask them what they mean more

23  specifically.  Do you mean you have reached unanimous decisions

24  as to some counts, but that you are deadlocked as to the rest?

25         MR. HAYES:  Your Honor, if you say just "counts," you

1  may get an equally confusing answer.  You may want to say

2  "unanimous on counts," "unanimous on defendants," or both.

3            THE COURT:  Well, the reason I focused on "counts" is

4  because that's what the question focused on.  It says, We are

5  approximately -- we think that's what that means -- 20 percent

6  unanimous on all counts and deadlocked on other counts.  So

7  they used the word "counts."

8            And because the defendants who are charged in this

9  case -- the verdicts obviously only address each count that

10 that particular defendant is charged with.

11            And so what you easily could get, if you -- if I --

12 if I were to stop everything and took a -- took the verdicts

13 right now, you could easily get what I -- what -- I think the

14 most likely thing you would get would be verdicts on certain

15 counts, consistent all the way through the verdict forms and

16 deadlocked on those same counts, consistently all the way

17 through the verdict forms.

18            And how that played out for each defendant would

19 completely depend upon which counts that defendant had been

20 charged with.  That's what I think you're most likely to get, I

21 think.

22            MR. BELL:  Judge, if I could have just a minute?

23            THE COURT:  Yeah.

24    (Counsel confer.)

25            MR. BELL:  My reaction -- I haven't heard the

1    government's reaction to the Court's proposed question.  I

2    think the -- my reaction was our -- Mr. Sadow's question is

3    preferable, because it still kind of forces the jury to -- to

4    articulate a position that perhaps they hadn't thought about.

5    And we may very well get something back equally unclear, but we

6    don't want to really kind of direct them any more than we

7    absolutely -- than absolutely avoidable.

8         If the Court -- if -- the Court's language about

9    "don't tell me your vote" is certainly appropriate.  But the

10   initial question, I think, should remain as Mr. Sadow framed

11   it, as general as it possibly can, to let them articulate what

12   their position is.  And we'll deal with it from there, as

13   opposed to what we think is the most likely, which very well

14   may be, but it does not provide any more kind of direction than

15   is absolutely necessary.

16        MR. SADOW:  Your Honor, on behalf of Mr. Fletcher --

17   while I urge the Court to go with our initial position, if

18   we're going to be specific at all, we should be specific in

19   great detail.

20        Let's go ahead and get it all if we're going to ask

21   for it, which would be counts and verdicts, which defendants,

22   if we're going do that.  I'm not saying that -- we're not in

23   favor of that, but...

24        MR. DUVA:  Your Honor, just in response to the

25   Court's suggestion, we are still at the modified *Allen* charge.

1  If we're not -- if the Court is not inclined to do that, we

2  want a degree of specificity.  And then if the Court's not

3  going to do that, I think we ask the general question that the

4  Court has posed.

5          If -- I think either Mr. Sadow's proposal or the

6  Court's proposal likely gets an equally-as-confusing response.

7  And then it's been an hour or so and this is really all we've

8  done.

9          So I think we have to -- that's kind of how we've

10 tiered it:  *Allen* charge, more specificity.  And if we get

11 neither of those, then the general inquiry, and we live with

12 what happens in the response.

13         THE COURT:  So just so I'm clear, Mr. Duva, if I ask

14 for more -- if I went with number two of your tier, what --

15 what specificity are you asking for?  I mean, what would the

16 question be?

17         MR. DUVA:  What counts have you decided as to what

18 defendants?  Please be more specific about, quote, 20 percent

19 unanimous on all counts.  What do you mean by that?

20         I'm talking out loud.

21         Have you decided certain counts as to -- as to

22 certain defendants?  Or, List the counts that you've decided

23 as to specific defendants.

24         MR. SADOW:  Tysen, didn't you --

25         MR. DUVA:  Something along those lines.  I'm not wed

1  to the specific language.  I'm just, again, thinking out loud,

2  which I know is a little bit dangerous.  But I think more

3  specificity is better if we're going to ask them a question.

4         MR. SADOW:  Your Honor, may I speak openly to

5  government counsel?

6         THE COURT:  Sure.

7         MR. SADOW:  Doesn't your first question accomplish

8  the same thing as the remainder of what you just read?  The

9  first specificity was:  Tell us defendants and counts, right?

10         MR. DUVA:  Yes.  If we're going to --

11         MR. SADOW:  Wouldn't that tell us -- wouldn't that

12  answer the next part?

13         MR. DUVA:  I think so, if we can get that.  I'd

14  rather do that, instead of "clarify what you mean by your

15  note."

16         MR. SADOW:  No, no.  I don't mean that.  I'm just

17  saying you were adding stuff after your first sentence.

18         MR. DUVA:  Sure.  I was talking out loud.

19         MR. SADOW:  Oh, okay.

20         MR. DUVA:  But I think we can make it simple and:

21  What counts have you decided as to what defendants?

22         Something like that.

23         MR. LANDES:  Judge, for me, I think that's going --

24  that's the next step.  That's too much detail, either what

25  Mr. Sadow said or the Court said.

1    I agree with the government.  We haven't had very

2  clear notes.  But this is the first time that we are asking for

3  some clarity.  We may just ask it in a simple way and we'll get

4  a response that we need and then we can go from there, without

5  going into this much great depth of certain counts and certain

6  defendants.

7    THE COURT:  Well, I would say this, if -- if we do

8  either something along the lines Mr. Sadow suggested, just

9  "please clarify your note" or if we do something along the

10  lines I've suggested, which is "please clarify what you mean by

11  approximately '20 percent unanimous on all counts and

12  deadlocked on other counts,'" you may well get the same

13  information that we would ask if we asked the specific

14  question, but you might not.

15    And if you ask the specific question, you at least

16  know you're going to get -- at least you hope you're going to

17  get more specific information, which I think -- I'm starting to

18  wonder -- wouldn't that be helpful to everyone to know what --

19  what they've decided?  I mean, they've told us they're

20  deadlocked on the remaining counts.

21    Now, we can do an *Allen* charge.  And we'd have to

22  have that discussion as to whether that's appropriate or not.

23  But -- and, you know, there's something to be said for that,

24  just telling them to keep trying.

25    But the truth of it is they've been deliberating now

1  for, what -- we're on the fourth day of deliberations.  And
2  they have been doing so painstakingly.
3          And I'm not hopeful -- I'm not ruling out giving an
4  *Allen* charge.  I probably would strongly consider doing one
5  without making a decision if it -- if that's what we had to do,
6  because of the length of the trial.
7          And we always tell the jurors in an *Allen* charge -- I
8  don't give them very often, but that there's no other
9  circumstance or jury that could do better than you can do, so
10 keep trying.  And I think that would likely be true in this
11 case.
12          However, it may be, depending on what this is, that
13 this would provide useful information for everyone to try to
14 determine whether that's an appropriate -- and for me to
15 determine whether an *Allen* charge is appropriate or whether I
16 should just -- I don't know.
17          I'm -- it's a tough call, I think, about what to say
18 to them.  This note is -- given the complexity of the case,
19 it's just hard to know what this means.
20          As I said, my -- my guess is that it means that they
21 have reached unanimous verdicts on several of the counts all
22 the way through.  And however that touches each defendant,
23 that's how it touches them.  And they're deadlocked on the
24 remaining counts.
25          That would be the most likely scenario.  But there

1    could be other ways to look at it.  The "approximately 20

2    percent" is interesting.

3            So I'm -- we need to make a decision.  And I will

4    make one.  But I guess I -- I guess I need to hear from

5    everybody one more time -- should I, in some way or another,

6    either through Mr. Sadow's version or through my version, which

7    just quotes back to them the question they asked -- is that the

8    appropriate way to proceed?  Or should we go to the next level

9    of specificity, which says, Which counts as to which defendants

10   have you reached unanimous verdict?  Please don't tell me your

11   divisions, or something like that.

12           So, Mr. Bell, assuming I've put the *Allen* charge off

13   to the side -- although I haven't made a final decision on the

14   government's request, but that would be my first go-to.  But

15   assuming I put that to the side, do I ask them the more general

16   question?  Or do I ask them a more specific question?

17           MR. BELL:  Ask a more general question, despite, Your

18   Honor -- I think everybody wants to know the answer to the more

19   specific question.  But despite that, on behalf of Jorge Perez,

20   I -- we opt for the more general question, and let the jury

21   kind of articulate however it chooses back to us.

22           THE COURT:  All right.  Mr. Landes?

23           MR. LANDES:  More general question, Judge, as I

24   suggested, either Mr. Sadow's or your language.  And, quite

25   honestly, when I see approximately 20 percent unanimous on all

```
 1  counts, that, to me, doesn't mean we're unanimous on all
 2  counts.  I don't really know what that means.  So I think we
 3  need that first level of inquiry.
 4          Thank you.
 5          THE COURT:  All right.  Mr. Rafferty?
 6          MR. RAFFERTY:  I agree with Mr. Landes.
 7          THE COURT:  Mr. -- let me get my list here.
 8          Mr. Schwartz?
 9          MR. SCHWARTZ:  I agree with Mr. Rafferty and
10  Mr. Landes.
11          THE COURT:  Mr. Rowland?
12          MR. ROWLAND:  We would agree with the rest of the
13  other defendants on this.
14          THE COURT:  And, Mr. Sadow, you have given a specific
15  alternative, but you said you're not advocating for that;
16  you're still advocating for a general question?
17          MR. SADOW:  I'm torn here.  But on behalf of being
18  unified, I'm in agreement with the other defense counsel.
19          THE COURT:  Mr. Lowther?
20          MR. LOWTHER:  We concur with the other defendants.
21          THE COURT:  Mr. Galnor -- Ms. Galnor?  Sorry.
22          MS. GALNOR:  Same position, Your Honor, on behalf of
23  Mr. Alonzo.
24          THE COURT:  All right.  And, Mr. Duva, you've given
25  me the three tiers.  Is that the government's position?
```

1   MR. DUVA:  It is, Your Honor.

2   THE COURT:  Mr. Landes, I had not considered that

3   approximately 20 percent unanimous may -- might mean something

4   different than they had reached unanimous verdicts on

5   approximately 20 percent of the counts, or 20 percent of their

6   decisions.  Could be anything.

7   I had not considered that that could somehow entail

8   less than unanimous decision-making on something.  So I'm not

9   sure that's the best reading of it, but -- but, you're right,

10  we don't know.

11  All right.  The Court's proposed answer, after

12  hearing from all counsel and considering the matter in what is

13  a difficult scenario whenever you're trying to -- you know, we

14  try not to communicate with juries about their decision-making.

15  But I think that given the lack of certainty that

16  this note has raised in the minds of the Court and in the minds

17  of the parties, that rather than try to guess what they mean by

18  their note, that we simply ask them to clarify what they mean

19  using the language that they used, and letting them come back

20  to us and tell us what they meant, hopefully, and in a more

21  clear way.

22  It does raise the possibility that we'll get

23  information that sometimes we don't get when a jury is

24  deliberating.

25  But the fact that they're telling us that they're

1   deadlocked on other counts, the remaining counts, and clearly

2   asking for some direction, the Court -- in order to be able to

3   provide that direction, and be able to determine how to

4   proceed, the Court believes that asking the question of the

5   jury -- just asking them to clarify what they mean by their

6   statement is the appropriate way to proceed.

7           I understand there could be other ways to proceed.  I

8   understand I could give an *Allen* charge right now.  I think I

9   probably would be within my rights to do so.  But I -- I would

10  think it would be preferable for us to try at least to have a

11  clearer understanding of what the jury is saying to us before

12  I -- before I take that step of the *Allen* charge, or any other

13  potential remedies the Court has, such as partial verdicts or

14  any other remedies the Court has at its disposal.  I think it's

15  best that we at least try to understand what the jury is saying

16  to us with more clarity before I make those decisions.

17          So my proposed instruction or response to their

18  question, Please clarify what you mean by "approximately 20

19  percent unanimous on all counts and deadlocked on other

20  counts."  I caution you not to tell me how many jurors have

21  voted one way or the other.  That second sentence is taken

22  straight from the original Court's instructions.

23          Mr. Bell?

24          MR. BELL:  No objection to that, Your Honor.

25          THE COURT:  Mr. Landes?

1      MR. LANDES:  No objection.

2      THE COURT:  Mr. Rafferty?

3      MR. RAFFERTY:  No objection.

4      THE COURT:  Mr. Schwartz?

5      MR. SCHWARTZ:  No objection.

6      THE COURT:  Mr. Rowland?

7      MR. ROWLAND:  No objection, Your Honor.

8      THE COURT:  Mr. Lowther?

9      MR. LOWTHER:  No objection.

10     THE COURT:  Mr. Sadow?

11     MR. SADOW:  No objection.

12     THE COURT:  Ms. Galnor?

13     MS. GALNOR:  No objection, Your Honor.

14     THE COURT:  And I understand the government's

15 preference.  This is, I guess, the third preference of the

16 government.  But does the government wish to be heard further?

17     MR. DUVA:  No, Your Honor.

18     THE COURT:  Okay.  All right.  So I'm going to ask

19 Ms. Hatfield to make this Jury Question No. 4.

20     Right, 4?

21     And so what I've done with -- with Ms. Milliron's

22 help, she's actually typed up my answer, because my handwriting

23 is terrible.  And so what I'm going to ask you to do -- I'm

24 thinking maybe I'll -- I think I'm going to put that in quotes.

25     Does anybody -- unless somebody objects to me --

1  because that's an exact quote -- I'm going to quote -- starting

2  at "approximately 20 percent," and go all the way to the end of

3  "the counts," just so they -- they're clear that I'm asking

4  them -- I'm asking them to clarify exactly what they said to

5  me.

6          And hearing no objection to that...

7          All right.  I'm going to put quote marks.

8          All right.  So please clarify what you mean by,

9  quote, approximately 20 percent unanimous on all counts and

10  deadlocked on other counts, close quote.

11          I caution you not to tell me how many jurors have

12  voted one way or the other.  Judge Corrigan, 6/27/22,

13  11:10 a.m.

14          So, Ms. Hatfield, if you could make a copy of the

15  jury question and a copy of my response, put them together, and

16  that will be Jury Instruction [sic] No. 4 for the court record.

17  And then staple the original together and give it back to the

18  jury.  Okay?  Thank you, ma'am.

19          MR. BELL:  Judge, you said "jury instruction."  I

20  assume you meant jury question?

21          THE COURT:  Jury question.  Sorry.  Jury Question

22  No. 4, if I said "instruction."

23          All right.  Before we -- before we depart -- and we

24  may -- you know, we may hear something back pretty soon, so

25  I -- matter of fact, I'd probably stick around.  I'll stay up

1  here, too, and maybe -- we may get a question -- we may get it

2  back pretty quick.  Hopefully we'll get some clarification.

3         While I have you-all here, I received -- I guess from

4  Ms. Tran.  I'm not sure when it got filed -- I saw it this

5  morning, an amended bill of particulars.

6         So, Ms. Tran, can you tell me what -- I read it.  And

7  I read your footnote.  So I think I understand what you're

8  saying, but tell me what -- where we are on that.

9         MS. TRAN:  Yes, Your Honor.  At this juncture, the

10 United States --

11        THE COURT:  Why don't you come up to a microphone so

12 I can...

13        MS. TRAN:  Thank you, Your Honor.

14        Your Honor, at this juncture the United States does

15 not believe that it could proceed with a jury determination as

16 to the Woodhaven property as to Christian Fletcher.

17        The trial team and I sat down to review the evidence

18 and the exhibits to move forward with the forfeiture

19 proceedings and that stage of the trial upon receiving a jury

20 verdict in this case.  We've been preparing for that.

21        And in our preparations, we have discovered an error

22 that was made by the forfeiture agent working on the case.  He

23 had an assumption that the date range for a particular transfer

24 of $3.8 million that occurred on February 18 of 2016 was within

25 the fraud period timeline for the defendant Christian Fletcher.

1  However, it was not.

2          While it was in the timeframe for the entire health

3  care fraud conspiracy, it was not as to the particular

4  defendant.  So upon discovery of that error, Mr. Duva and I

5  conferred, and we agreed that it would be proper to amend the

6  bill of particulars to not include that particular property as

7  directly traceable.

8          MR. DUVA:  Your Honor, if I may, it was within the

9  timeframe of Mr. Fletcher's participation.  But the tracing of

10  the $3.8 million that went to buy the land did not come from an

11  account that had alleged dirty money in it yet.  So that's the

12  answer.

13          THE COURT:  Okay.  So is there -- did the government

14  have a lis pendens on that property?

15          MS. TRAN:  We do, Your Honor.  I received a request

16  from defense counsel to release the lis pendens.  And I am in

17  the process of reviewing the case law to confirm the decision

18  that can be made.  I believe that we are going to be releasing

19  the lis pendens, Your Honor.

20          THE COURT:  I would think you'd have to, wouldn't

21  you?

22          MS. TRAN:  I -- we actually have -- under the case

23  law as it currently stands, Your Honor -- if I can get my

24  computer.

25          The government's position is that it would not be

1    inappropriate to maintain the lis pendens as filed.  That's

2    because I'm relying on a case *United States versus Register*,

3    182 F.3d 820, at 836 through -37.  That's an Eleventh Circuit

4    decision in 1999, Your Honor.

5            And it stands for the fact that the filing of a

6    lis pendens is not a seizure or a restraint on the property.

7    And under Florida law, when a suit is filed that could affect

8    the title and property, some notice should be given to future

9    purchasers or encumbrances of that property.  I'll cite to

10   *Chiusolo versus Kennedy*.  That's C-h-i- --

11           THE COURT:  So you're saying that if that property is

12   still potentially in play as a substitute asset that a

13   potential buyer of that property would be entitled to know

14   that?  That's what the theory of the case law is?

15           MS. TRAN:  Yes, Your Honor.

16           THE COURT:  All right.

17           MS. TRAN:  So it's okay to --

18           THE COURT:  Let me ask you this.  If the

19   government -- if there -- if this error had not been committed,

20   would the government have -- has the government placed lis

21   pendens on property that it has known all along was only going

22   to be substitute assets?

23           Or does the government only put lis pendens on

24   property that it thought it could prove was specifically

25   specific property subject to the forfeiture?

1      MS. TRAN:  Your Honor, in this case the government

2  has only originally placed lis pendens on the properties that

3  it believed it could trace as early as back to the superseding

4  indictment, document 180.

5      At that juncture the government believed the

6  properties to be traceable.  And that's when the lis pendens

7  were placed on -- when I -- when I recategorized the directly

8  traceable assets to be substitute assets, I did not release the

9  lis pendens based on the reading of the law that I just

10  provided to the Court.

11      But, of course, with that understanding, I am

12  amenable to releasing the lis pendens, not only to Christian

13  Fletcher, but also out of fairness to the other defendants in

14  uniformity and consistency in the case, I am agreeable to

15  releasing the lis pendens for all substitute assets that are

16  real properties for the defendants in this case.

17      THE COURT:  Okay.  All right.  So regardless of

18  whether you're required to do it, you're planning to do it?

19      MS. TRAN:  Yes, Your Honor.

20      THE COURT:  All right.  How quickly will that happen?

21      MS. TRAN:  I have all the drafts right now.  I just

22  have to review them.  I anticipate they should be filed within

23  the next couple of hours.

24      THE COURT:  Okay.  All right.  So if -- if that's all

25  the way it's going to work, and if you're now classifying

1    Mr. Fletcher's property as potentially substitute assets,

2    which, if I'm understanding, would mean, first of all, that it

3    would have to be a guilty verdict against him; and, secondly,

4    the Court, at a later proceeding, in conjunction with

5    sentencing, would have to make a determination as to a total

6    amount of money that was forfeitable to the government by way

7    of a money judgment.

8              And once that determination was made, depending on if

9    it was, and if it was in favor of the government, then the

10   government -- then and only then would the government be

11   entitled to try to go after this property as a substitute asset

12   to help pay for the money judgment that the Court found; is

13   that accurate?

14             MS. TRAN:  That's absolutely accurate, Your Honor.

15             THE COURT:  Okay.  And in the government's view,

16   there's no longer, under the rule, a jury determination to be

17   made to this piece of property?

18             MS. TRAN:  That's correct, Your Honor.

19             THE COURT:  All right.  Thank you.

20             Mr. Citro, have you had a chance to take a look at

21   this, or --

22             MR. CITRO:  Your Honor, we have, and we've had some

23   discussions with Ms. Tran this morning via e-mail.  It's our

24   position that after the Supreme Court case in *Lewis* the

25   government has conceded, and we believe it's the Department of

1    Justice's position in D.C. that substitute assets are not

2    subject to restraining orders, and, therefore, logically, they

3    can't be subject to lis pendens either.  It would be just like

4    in a civil litigation, where someone files a lis pendens hoping

5    that they prevail.

6         I think before *Lewis* -- and there was at least one

7    circuit that permitted it.  We don't think it's a proper use of

8    the lis pendens.  And it should be removed.

9         THE COURT:  All right.

10        MR. SADOW:  And to go one step further, in light of

11   the amended bill of particulars, we would move to dismiss the

12   forfeiture count against Mr. Fletcher, because the items in

13   that forfeiture count, as pled, no longer apply.  And they're

14   seeking the money judgment through the amended bill of

15   particulars.

16        THE COURT:  All right.  Well, let's take -- let me

17   just ask you two separate questions, Mr. Citro.  So I

18   understand you're saying the lis pendens ought to come off.

19        Ms. Tran is telling me that she doesn't necessarily

20   agree, that there may be an argument why it could stay on, but

21   they're going to -- they're planning to take it off and they're

22   planning to do so immediately.  So that issue goes away, I

23   think, if that happens, right?

24        MR. CITRO:  If that happens and it's immediately

25   taken off, that's correct.  We're preserving the record.  And,

1  obviously, if there's acquittal and the lis pendens is still

2  pending, there might be other remedies available against the

3  government by Mr. Fletcher that we want to make sure the

4  government is on notice of.

5          THE COURT:  Okay.  All right.  Then the second

6  question -- and, Mr. Sadow, I guess you're raising that.  I'm

7  not sure which one of you are going to take it, but -- so I'm

8  not -- I'll hear from the government on this, but the -- if the

9  government, by way of bill of particulars, has now indicated

10  that that property is no longer in play, in terms of specific

11  property, and that it's only listed as a potential substitute

12  asset, I'm not sure if your remedy is to have dismissal of the

13  forfeiture count against Mr. Fletcher.

14          But it does seem to me that that obviates any jury

15  issue that could be determined by a jury, and that any issue of

16  forfeiture would be determined by the Court at a later time, at

17  least that's what I think, but -- especially based on my ruling

18  the other day.  But I'll hear from you all on that.

19          MR. SADOW:  We are in agreement.  It's no longer a

20  jury issue.  At the same time, the government has argued before

21  the Court that the notice required for forfeiture is not

22  necessarily that which is in the indictment, and, therefore,

23  since we have an amended bill of particulars, that sets forth

24  the government's position vis-à-vis property, be it real

25  property or personal property of Mr. Fletcher, there's no

1    purpose for which their forfeiture count continues.

2            THE COURT:  Ms. Tran, what's your answer to that?

3            MS. TRAN:  Your Honor, in a way I believe that we've

4    already heard this issue.  The Court has already determined

5    that, upon the review of the *Diaz* case, upon review of

6    Rule 32.2, and the government's ability to amend the theory of

7    its forfeiture from the indictment and subsequent bills of

8    particular, I just don't -- I agree with the Court, it's not

9    the correct remedy to then dismiss the forfeiture language as

10   to the indictment, because it has been changed and adopted in

11   the bill of particulars.

12           The bill of particulars specifically pursues it as a

13   substitute asset.  And I don't think that Mr. Sadow and I

14   disagree.  There is no direct traceable theory at this

15   juncture.

16           THE COURT:  All right.  Well, here's all I'm

17   concerned about right now.  I'm concerned about the lis

18   pendens.  But you've already told me you're going to take that

19   off.

20           I'm concerned about any -- any role this jury might

21   have to play in Mr. Fletcher's forfeiture matters, whatever

22   those matters are.  And Mr. Sadow and you have agreed that

23   there is no longer a role for a jury in light of the amended

24   bill of particulars.

25           With those two things resolved, I'm not going to try

1  to figure out at the moment whether I ought to dismiss the

2  forfeiture count or what else in the way of forfeiture is live,

3  because I don't think I have to right this moment, and I'm just

4  not prepared to do so.

5        But we know that the lis pendens is coming off.  And

6  we know that this jury is not going to be asked to determine

7  anything regarding forfeiture with Mr. Fletcher, right?

8        MS. TRAN:  That's correct, Your Honor.

9        THE COURT:  All right.  And, Mr. Sadow and Mr. Citro,

10 you agree with those two things, the lis pendens should come

11 off and the jury has no role to play in any forfeiture issues

12 involving Mr. Fletcher?

13       MR. CITRO:  Yes, Your Honor.

14       THE COURT:  Okay.  All right.  Thank you.

15       So that means that under the Court's previous ruling

16 we are now down to Jorge Perez, Ricardo Perez, and James

17 Porter, Jr., as potentially having specific property subject to

18 forfeiture as to which they would be entitled to a jury

19 determination.

20       At this moment they have asked to preserve their

21 right to have that jury determination be made.  The Court's

22 prepared to -- to honor that.

23       Obviously we're going to have to see what happens

24 with the -- the main verdicts.  And then we will -- but we're

25 going to have to have a discussion between the time -- if

1    there's -- if there is a guilty verdict as to any of these

2    defendants that is subject to potential forfeiture

3    consideration, we're going to have to have a discussion right

4    after that verdict as to whether -- whether that affected

5    defendant wants to go forward with a jury determination and the

6    schedule for us to do so.

7           Given the situation with this jury and how long it's

8    worked, we're going to have to determine whether we can try to

9    immediately start it or whether we need to give a break, and,

10   if so, how long.

11          So those are all things, unfortunately, that are

12   going to have to be decided after a verdict comes in, unless

13   the parties have reached any agreement on that at this point,

14   or have any other announcements.

15          But now we're down to Jorge Perez, Ricardo Perez, and

16   James Porter, Jr.

17          MR. BELL:  Judge, I'd just add this, we do -- on

18   behalf of Jorge Perez, we received some updated charts on the

19   nexus this morning.  So we're looking through those, digesting

20   that information.  I can't commit to a position one way or the

21   other, obviously.

22          THE COURT:  Yeah.

23          MR. BELL:  We hope not to have to revisit this issue.

24          THE COURT:  I understand.

25          MR. BELL:  But we are aware of the circumstances and

 1    discussions are ongoing.

 2          THE COURT:  Okay.  All right.  I would expect we'll

 3    hear back from these folks fairly soon.

 4        (Judge confers with law clerk.)

 5          THE COURT:  I'm told that the court security officer

 6    is bringing up another communication from the jury, so we might

 7    as well just hold our positions.

 8        (Judge confers with law clerk.)

 9          THE COURT:  Ms. Tran, are you planning to release the

10    lis pendens on all the assets which have now been designated

11    substitute assets by the government?

12          MS. TRAN:  All the real properties, Your Honor.

13    There's no lis pendens on the jewelry or the cars or anything

14    like that.

15          THE COURT:  Okay.  So that -- so any defendant that

16    has a lis pendens on property that's now been designated as

17    substitute assets, you're releasing the lis pendens on those?

18          MS. TRAN:  Yes, Your Honor.

19          THE COURT:  Okay.  Second question:  You indicated --

20    there was some amendment to be made with respect to Sean

21    Porter.  And what -- I don't quite remember what that was.  But

22    has that been cleared up?

23          MS. TRAN:  Your Honor -- Your Honor, that has been

24    cleared up.  I have not filed it yet.  But I can file that this

25    morning, to confirm that as well.

1      THE COURT:  What is that?  Remind me.

2      MS. TRAN:  It was the -- while I transferred -- while

3  I recategorized Sean Porter's asset as substitute and did that

4  on the record, did that with defense counsel, it didn't make

5  its way into the pleading itself.  And I'll be correcting that

6  error, Your Honor.

7      THE COURT:  Okay.

8    (Court security officer enters with jury note.)

9      THE COURT:  All right.  Here's the jury's response.

10      We are deadlocked on 54 counts of the 68 total

11  counts.  Unanimous on 14 counts of 68 total counts.  We are

12  deadlocked.

13      Are there --

14      MR. LANDES:  Could you just read that one more time?

15      THE COURT:  Oh, sure.  Of course I can.

16      We are deadlocked on 54 counts of the 68 total

17  counts.  Unanimous on 14 counts of 68 total counts.  We are

18  deadlocked.

19      Is it true that -- if you count all the decisions the

20  jury has to make on the verdict forms that there's 68 --

21      MR. CITRO:  Your Honor, I did that during the

22  previous one.  I broke it down in every potential way.  And,

23  yes, the total number of defendants in each count comes out to

24  that.

25      THE COURT:  So -- so just to be clear on the record,

```
 1    there's eight defendants.  There's separate verdict forms for
 2    each one of them.  Each one of those verdict forms requires, in
 3    most cases, multiple decisions by the jury on counts.
 4          And if you multiply eight times all the decisions
 5    they have to make, it comes out to 68.  Is that correct?
 6          MR. CITRO:  Yes, Your Honor.
 7          THE COURT:  Okay.  So they're saying, We are
 8    deadlocked on 54 counts of the 68 total counts.  Unanimous on
 9    14 counts of 68 total counts.  We are deadlocked.
10          MR. SADOW:  The only thing that doesn't make sense is
11    the last "we are deadlocked."  Maybe I'm missing something.
12    Didn't they say -- they're deadlocked on 54.  They're good on
13    14, which I think totals 68.  But then --
14          THE COURT:  I think they're just emphasizing they're
15    deadlocked.
16          MR. HAYES:  They're deadlocked on the remainder.
17          MR. SADOW:  It would be the 54.
18          THE COURT:  Right.  I think -- if I'm -- just
19    interpreting, of course, I think they're wanting to emphasize
20    to us that they're deadlocked on -- that the ones they said
21    they're deadlocked on, they're deadlocked on, is what I think
22    they're trying to say to us, but...
23          All right.  I'm going to take a brief recess, give
24    y'all time to caucus, and then we'll figure out what we're
25    going to do.
```

```
 1              COURT SECURITY OFFICER:  All rise.
 2              THE COURT:  And if anybody -- I'll put this at the
 3    clerk's table in case anybody wants to eyeball it.
 4    Ms. Hatfield will have custody of it.
 5          (Recess from 11:39 a.m. to 11:52 a.m.)
 6              THE COURT:  I assume somebody is advising Mr. Duva?
 7              MR. WINTERS:  We've texted him.
 8              MR. HAYES:  Your Honor, while we're waiting, there
 9    are 61 counts.  So that 68 number, I think they may be adding
10    up Count One as seven separate counts, but I've added up the
11    verdict sheets.  61.
12              THE COURT:  Well, they could also be taking the
13    subsidiary questions on some of them and adding those to it.
14    There's a number of ways they could possibly be -- be doing it,
15    but I take your point.
16              Mr. Citro, since the government is here, even though
17    Mr. Duva isn't here, how did you -- how were you able to
18    replicate the 68?
19              And, by the way, I think I used the term you take the
20    eight defendants and you multiply it.  That's not correct.
21    You -- you take the eight defendants, you find out how many
22    decisions are to be made for each one of those defendants, you
23    add them all together, I think is more appropriate way to look
24    at that, but --
25              MR. CITRO:  That's exactly how I did it.
```

1          THE COURT:  Right.  And how did you come up with 68?

2    What were you --

3          MR. CITRO:  I could show you my scribbling.  But I

4    went through each count and counted the defendants, of course,

5    excluding the defendants not here, Mr. Rojas and Mr. Guterman,

6    and then did a multiplication depending on whether people were

7    charged -- you know, two people in Count Ten, so forth.  And

8    then did this nice little running chart down the side in things

9    that only I could decipher.

10          THE COURT:  And it came up with 68?

11          MR. CITRO:  Yes, Your Honor.

12          MR. HAYES:  It's more primitive, Your Honor, but you

13   add up the number of the counts on the verdict sheets and it's

14   61.  I understand there's a subsidiary question.  But if they

15   decide a certain way on one of them, you never get to that

16   question.  You might be 63 or 64 or 65.

17          THE COURT:  Yeah.

18          MR. HAYES:  So the only correct way in the

19   government's view is you add up decisions -- numbers on the

20   verdict sheets, that's 61.

21          THE COURT:  Well, what really matters is what the

22   jury is doing, so...

23       (Mr. Duva enters the courtroom.)

24          THE COURT:  All right.  All --

25          MR. HAYES:  If it is 68, Your Honor, that would mean

1    they answered Count One in the affirmative each time.

2         THE COURT:  All right.  So we now have received the

3    jury's response to my request for clarification of their

4    earlier question.

5         I'll remind the record that that response is, We are

6    deadlocked on 54 counts of the 68 total accounts, unanimous on

7    14 counts of 68 total counts.  We are deadlocked.

8         So -- and I gave the parties some time to think about

9    how they were going to ask me to proceed now that we have that

10   additional information.

11        I think I -- for no real reason, other than just to

12   not put the burden always on the government to go first, I'll

13   ask you -- start with you, Mr. Bell.

14        If there's a designated spokesperson for the

15   defendants, that's fine.  But I'll ask you, Mr. Bell, what --

16   how you think the Court ought to proceed, in light of the

17   response from the jury.

18        MR. BELL:  Judge, I'll mimic Mr. Sadow, who I think

19   probably is the person that can most articulate our position,

20   in the best fashion as I mumble through this.

21        But at this point I think we want yet more

22   information.  We've reached the point where we would ask for a

23   specific breakdown on which count and which defendant, which

24   was probably what some advocated originally, but now that

25   they -- the jury has responded in some fashion, we want more

1    information.  And that would be the -- I think the consensus

2    amongst the defense.

3            THE COURT:  All right.  Mr. --

4            MR. BELL:  If I didn't butcher that too badly,

5    although next time you have to start with Ms. Galnor.

6            THE COURT:  All right.  Mr. Sadow, if you want to

7    articulate your position, then I'll just see if any other

8    defendants wish to be heard.

9            MR. SADOW:  Your Honor, the first thing we'd like to

10   do is inquire of the 14 counts, which defendants, which counts.

11   If the Court is disinclined to start with that, then we begin

12   to speak about the modified *Allen* charge.  And we have

13   modifications that we would suggest to even the modified *Allen*

14   charge, having to do with essentially taking out the first --

15   let's see, the second and third paragraphs.

16           The paragraph that says that "this is an important

17   case," take that out.  Take out the paragraph that starts "any

18   future jury."

19           So you'd go right from 'and I have a few additional

20   comments I'd like you to consider as you do so," and then you

21   go to "if a substantial majority," and read it from that point

22   on.

23           MR. BELL:  Judge, I will add on this, I think we've

24   had this discussion before and the Court has been somewhat

25   amenable to moving some or all of those, the second --

1      THE COURT:  All right.  Mr. Landes, what's your

2  position?

3      MR. LANDES:  I agree with some further clarification.

4  And after we receive that further clarification, modify the

5  *Allen* charge, as has been advocated by Mr. Bell and Mr. Sadow.

6      THE COURT:  So what I'm not sure about, Mr. Sadow --

7  if we ask for more information and then we get it, what -- why

8  then -- what then is the -- other than everybody just knowing

9  what's going on, why then is the *Allen* charge -- if we're going

10 to be asking them to continue deliberating on the things they

11 haven't decided yet, why wouldn't we just ask them that now, as

12 opposed to -- what use is going to be made of the -- of more

13 specific information as to counts and defendants, other than

14 obviously everybody is deeply interested in it?  But what -- I

15 guess I'm not quite understanding the sequence.

16     MR. SADOW:  The sequence, more information is better

17 than less information.  All the defense counsel would like more

18 information.  And it may impact what we think about the

19 modified *Allen* charge, whether to give it at all, whether to

20 make the changes, modifications that we have suggested.  But

21 bottom line is we all believe that since we've gotten this far

22 with the information, more is better than less.

23     THE COURT:  Mr. Rafferty, you wish to be heard?

24     MR. RAFFERTY:  I concur with Mr. Landes, Your Honor.

25     THE COURT:  Mr. Schwartz, you wish to be heard?

1    MR. SCHWARTZ:  We agree with the rest of the defense,
2  Judge.
3          THE COURT:  Mr. Rowland, you wish to be heard?
4          MR. ROWLAND:  We agree with the rest of the defense,
5  Your Honor.
6          THE COURT:  Mr. Lowther?
7          MR. LOWTHER:  We concur.
8          THE COURT:  Ms. Galnor?
9          MS. GALNOR:  We agree, Your Honor.
10          THE COURT:  All right.  Now let me turn to the
11  government and ask the government what it is proposing.
12          MR. DUVA:  We say take the partial verdict, Your
13  Honor.  We can play the information game all day with them and
14  it would possibly never stop.
15          MR. HAYES:  And, Your Honor, to add to that, they've
16  said they're deadlocked.  That's the last statement in the
17  note, We're deadlocked.
18          THE COURT:  So just to be clear, if the Court takes a
19  partial verdict under the rules, which the Court is permitted
20  to do, the Court then declares a mistrial on the remaining
21  counts of the indictment that the jury was not able to reach
22  agreement on, and then the government has to make a decision
23  after that whether to try to retry the case on the mistried
24  counts.
25          Is that correct, Mr. Duva?

1      MR. DUVA:  Yes, it is, Your Honor.

2      MR. SADOW:  Okay.  And that's exactly why we would

3  like more information.  What the government is attempting to do

4  is save itself the possibility of an additional trial; whereas,

5  if we had more information, the defense may be encouraged to

6  seek a modified *Allen* charge, because it would be to the

7  defense's advantage.

8      MR. BELL:  Or potentially even agree -- to speak on

9  behalf of Jorge Perez -- or on this rare instance, potentially

10  agree with the government in taking a partial verdict, however

11  unlikely that might be.  I must say, Judge, we didn't really

12  anticipate that possibility, that the government would suggest

13  that when we discussed our options.

14      THE COURT:  Well, it's interesting because --

15      MR. DUVA:  Which is why we should have *Allen* charged

16  them to begin with.

17      THE COURT:  Yeah.  It's interesting, because I -- I

18  was discussing whether or not to give an *Allen* charge in a

19  situation like this.  It is fairly typical, in my experience,

20  that it's the government that wants the *Allen* charge and it's

21  the defense that doesn't.

22      I have had one other case that I can recall where

23  it's been visa versa.  And I won't talk about what happened in

24  it, but it's not the norm.

25      But I am -- I had to say that I was -- I'm -- I

1  was -- if it had played out like it typically does, where the

2  government was going to ask for it and the defendants were

3  going to oppose it -- I am going to have to think about it

4  pretty hard.  Because I think this jury has been deliberating a

5  long time.

6          They've been very -- even though we're not 100

7  percent sure what the verdicts are going to look like, they're

8  now being very specific on the fact that they have deadlocked

9  on 54 -- it may not be counts, but it's 54 decisions that they

10  think they have to make within the verdict forms, out of a

11  total of 68, and that they are unanimous on 14 decisions, or

12  counts of the 68 total counts, as they referred to them, and

13  they're -- reminded me twice in this response that they're

14  deadlocked.

15          And, typically, the concern of *Allen* charges is that

16  they can be viewed as being coercive, and that you're not

17  supposed to be coercing a jury into doing anything.  They're

18  supposed to reach those agreements of their own

19  decision-making.

20          So -- so, Mr. Sadow, what -- what is the -- just to

21  make sure I'm understanding, you're -- you want to know exactly

22  which counts they've reached a verdict on as to exactly which

23  defendants, but not -- not ask them what those verdicts are,

24  just ask them as to which counts and which defendants.  And

25  what -- what is it that that is going to accomplish exactly?

1    MR. SADOW:  It gives us more -- excuse me, gives us
2  more information to make determinations on whether we are
3  opposed to an *Allen* charge, whether we want a modified *Allen*
4  charge as written, or whether we want a modified modified *Allen*
5  charge.
6         And in light of the position the government is
7  taking, we don't want this case necessarily to just wind up
8  with verdicts and then a hung -- and then mistrial declared,
9  giving the government the opportunity immediately, if it so
10  chose, to try those defendants again; that is, those that --
11  for which verdicts were not reached.
12         THE COURT:  And, Mr. Duva, your point is that if we
13  had given them an *Allen* charge to begin with, I mean, we could
14  still be exactly where we are, right?
15         MR. DUVA:  Probably not right now.  They -- I mean, I
16  think if the Court gives them the modified *Allen* charge, they
17  go back and do what they're going to do, we may be back in the
18  same spot at the end of the day.  But I think this is a case
19  for the defense of be careful what you wish for.
20         We asked for the *Allen* charge.  The Court didn't do
21  it.  Now we have much more specific information.  We don't know
22  exactly what they decided, but everybody can look at the
23  indictment and the verdict forms and make a pretty decent guess
24  of what they're hung on and what they've decided.
25         And if they're -- if they've decided one way on 14

1    counts, it may be all Count One.  They may be counting those as

2    two.  They may be counting Count One as seven and Count Seven

3    as two and Count Eight as five for 14.  We don't really know.

4         But if it's not guilty across the board, why would

5    they be hung on 54 counts?  It's probably a mixture.  We're not

6    exactly sure.  But this is where the defense put us, in terms

7    of the information that we have.

8         And as I said earlier, the quest for more information

9    is probably never going to stop.  And the last -- the last

10   thing that the jury told the Court is, We are deadlocked.  So

11   we didn't -- the government's recommendations didn't put us

12   here.

13        MR. SADOW:  Do we need to -- excuse me, Your Honor.

14        Do we need to be on record as to defendants that we

15   are against a partial verdict at this point?  I don't know if

16   we've been clear on that, but I -- that is certainly Defendant

17   Fletcher's position.

18        THE COURT:  And specifically what is Defendant

19   Fletcher's position right now, that the Court ought to ask

20   which counts and which defendants as to which there are

21   verdicts, and then to consider after that, depending on what

22   the answer is, whether to give an *Allen* charge or not as to the

23   remaining matters?

24        MR. SADOW:  I think at that point we can make a

25   determination not just as to the *Allen* charge, as to the way

1   I've suggested it, but then we may be in a position to

2   reconsider our position on partial verdict.

3          We're just seeking to have more information before we

4   have to make our next decision as a defense unit.  Again, I'm

5   speaking for Mr. Fletcher specifically.  And if there's anyone

6   that is in discord or disagreement, they can certainly speak

7   up.

8          MR. BELL:  Judge, on behalf of Mr. Perez, I don't

9   know that a partial verdict at this point really accomplishes

10  much more than letting us know whoever the affected party is

11  immediately.  And it may adversely affect some of the others,

12  so I would adopt Mr. Sadow's reasoning on --

13         THE COURT:  When you say it doesn't -- I mean, it

14  would be -- it would be what this jury can do; would it not?

15         MR. BELL:  Well, the fact that --

16         THE COURT:  I mean, the jury has told me that they're

17  deadlocked.  They've told me three times they're deadlocked.

18  And even when they answered my question, they made sure at the

19  end to tell me they're deadlocked.  They've been deliberating

20  now into their fourth day.

21         And not only are they deadlocked, but they're

22  deadlocked on 54 -- whether it be counts or decisions or --

23  it's not as though they're just deadlocked on a couple of

24  things.

25         And so I'm just not -- I'm not sure that -- I mean,

1     this is what -- this is what the defendants as a -- as a -- in
2     a unified way asked the Court to ask the question that it did.
3     And I was persuaded to do that.  And I was persuaded partially
4     because I wasn't entirely sure that an *Allen* charge in this
5     case was going to be appropriate.
6           There are -- when you look at the case law, there --
7     you -- I probably have discretion to do it.  The discretion is
8     not unbridled, though, and it -- the cases look at
9     non-exhaustive factors, such as how long has the jury been
10    deliberating, how clear have they been about their position,
11    and a number of other factors.
12          And so it was not -- it was not immediately apparent
13    to me that I was going to give a *Allen* charge.  And I was
14    persuaded to ask for more information because I truly agreed
15    that we -- their first note, where they say we're 20 percent
16    unanimous was -- or approximately 20 percent unanimous was
17    unclear.
18          And -- and so I was persuaded by the defendants
19    and -- that I would ask for clarification.  And we got the
20    clarification.  I'm not sure now that it justifies asking for
21    more information.  I don't know.
22          MR. BELL:  Judge, on behalf of Jorge Perez, I would
23    say this.  I -- as I walked over here this morning, I -- I must
24    say I never thought about the prospect that I would be
25    advocating for a modified *Allen* charge.  But under the

 1    circumstances, at this point I'm going to adopt Mr. Sadow's

 2    position as to a partial verdict.

 3            THE COURT:  Which position is what?

 4            MR. BELL:  He's opposed to accepting a partial

 5    verdict at this moment in time, and proposes asking for further

 6    clarification, as I understand it.

 7            THE COURT:  Mr. Landes, now that you've heard the

 8    government's position, what's your position on behalf of

 9    Ricardo Perez?

10            MR. LANDES:  Again, I'd like just some further

11    clarification.  And then based on that, I would not object to a

12    modified *Allen* charge, Judge.  And I would oppose a partial

13    verdict at this time.

14            THE COURT:  So why wouldn't I go ahead and give the

15    *Allen* charge now, then?  That's what I'm not understanding.  I

16    mean, there's a couple of things I'm not understanding.  But

17    one of them is, why wouldn't I just go ahead and give it to

18    them now, if I'm going to give it?  Why do I need -- why do I

19    need more information in order to then give an *Allen* charge?

20            Because you're telling me -- you're telling me -- I

21    think you're telling me that no matter what I -- no matter what

22    information I get back from the jury that you're going to then

23    be asking for an *Allen* charge.

24            MR. LANDES:  I -- based on that, Judge, I would not

25    be opposed to a modified *Allen* charge at this time.

1          THE COURT:  Well, I don't know.

2          Mr. Rafferty?

3          MR. RAFFERTY:  Your Honor, I think your -- I

4    understand your point.  And I agree with Mr. Landes.  I would

5    not be opposed to a modified *Allen* charge, of course.

6          Like Mr. Sadow, I would obviously prefer to get more

7    information, but I understand the Court's point.

8          THE COURT:  Mr. Schwartz?

9          MR. SCHWARTZ:  We agree with the defense position,

10   Judge.

11         THE COURT:  I'm not sure what the defense position

12   is, because Mr. Sadow asked me to ask for more information and

13   then to give an *Allen* charge.

14         Now Mr. Landes and Mr. Rafferty have just kind of

15   said, Well, maybe you should just go ahead and give an *Allen*

16   charge now.

17         MR. SCHWARTZ:  We agree with Mr. Landes and

18   Mr. Rafferty.

19         THE COURT:  Mr. Rowland?

20         MR. ROWLAND:  We concur with -- excuse me.  We concur

21   Mr. Rafferty and Mr. Landes.

22         THE COURT:  Mr. Lowther?

23         MR. LOWTHER:  Ms. Zaffuto concurs with Mr. Fletcher.

24         THE COURT:  Ms. Galnor?

25         MS. GALNOR:  Your Honor, I concur with Mr. Rafferty

1    and Mr. Landes.

2            MR. BELL:  And just to be clear, Judge, I am opposed

3    to giving the modified *Allen* charge now.  I think I won't make

4    that decision until I get more information, so I'm

5    wholeheartedly in on what at least I understood what

6    Mr. Fletcher's position is.

7            THE COURT:  All right.  And, Mr. Duva, you want me to

8    just take the partial?

9            MR. DUVA:  I tried -- the three tiers again, Your

10   Honor.  It didn't go well for us the first time.

11           But tier one, no more information.  I don't think

12   we're in a position or have any reason to keep communicating

13   with the jury back and forth on this issue at this point.

14           Number two, tier two, take the partial verdict.  If

15   the Court is not willing to do that, then tier three is give

16   the *Allen* charge.

17           The Court is probably within its discretion to do

18   that, especially now, because most of the defendants are asking

19   for it as well.

20           THE COURT:  Okay.  I'll be in recess.

21           COURT SECURITY OFFICER:  All rise.

22           MR. SADOW:  Should we stay around, Your Honor?

23           THE COURT:  Please.

24      (Recess from 12:16 p.m. to 12:32 p.m.; all parties

25   present.)

1      COURT SECURITY OFFICER:  All rise.  This Honorable

2 Court is now in session.

3      Please be seated.

4      THE COURT:  All right.  The Court has carefully

5 considered this matter and -- and is -- I've made one decision.

6 And then I'll ask each defendant and then the government to

7 tell me what I ought to do in light of that decision, and then

8 I'll -- I'll make a final decision.

9      I have decided that further questioning of the jury

10 is not appropriate.  I don't think that asking this jury

11 more -- with more specificity than they've already given us as

12 to which counts they've reached a verdict on and which

13 defendants they've reached a verdict on is appropriate.

14      I think it is -- we've already asked the jury more

15 than typically we would.  And we did so, I think advisedly, and

16 with the -- at the request of the defendants.  And I did so

17 because of the jury's question itself, which led us down this

18 path.

19      The original jury question that they were 20

20 percent -- or approximately 20 percent unanimous on all counts

21 and deadlocked on other counts, I think was sufficiently

22 unclear that the Court was persuaded that asking the jury for

23 additional information was appropriate.

24      The Court then, with the approval of the -- the

25 defendants again, and -- and the request by the government

1  that -- that the -- I believe the last thing that I would do --

2  I asked the jury to clarify their earlier question.  And they

3  did.

4          And they clarified it by saying that they're

5  deadlocked on 54 counts of the 68 total counts.  We may not be

6  entirely sure where they got the number 68, but there's a

7  number of different ways you can count the decisions they have

8  to make on those verdict forms.

9          And they're also clear that they're unanimous on 14

10 counts of 68 total counts, and they also state to me again, now

11 for the third time, "We are deadlocked."

12         And I just simply don't think that inquiring more of

13 the jury, asking them to be more specific, is appropriate.  I

14 don't think that you -- I just don't think that in the way that

15 the jury system works that a defendant is entitled to more

16 specific information about the jury's decision-making than it

17 already has, because we have way more than we usually have.

18         And I just don't think that asking the jury for more

19 information at this point, and getting them to be even more

20 specific -- I think that in and of itself could potentially be

21 disruptive to their decision-making and their process.

22         They've -- they asked me a question.  We asked them

23 to clarify it.  They did to the best of their ability.  And

24 they emphasized they're deadlocked.  I think that's all I can

25 reasonably ask them to do in this context.

1    So I am not inclined to ask them any additional

2 questions to try to get additional clarification on -- on

3 the -- what the jury is meaning and what their position is,

4 because I worry it would invade their province and -- and I

5 just don't think it's appropriate.

6    And I -- so to the extent that a number of the

7 defendants -- and it's not clear to me how many now were asking

8 me to do this.

9    But a number of defendants had asked me to further

10 inquire -- to make further inquiry of the jury regarding the

11 specifics of which counts and which defendants they had reached

12 unanimous agreement on.  To the extent that those defendants

13 took that position, I'm denying that request.

14    So now, with that decision made, I'm going to ask

15 each defendant for their specific position on what the Court

16 ought to do next.  And then I'll ask the government.

17    So, Mr. Bell, I'll start with you again as the first

18 named defendant.

19    MR. BELL:  Judge, I object to any form of the *Allen*

20 charge and move that the Court accept partial verdicts.

21    THE COURT:  Mr. Landes?

22    MR. LANDES:  I'd ask for a modified *Allen* charge and

23 oppose accepting a partial verdict at this time.

24    THE COURT:  So you -- you're disagreeing with

25 Mr. Bell?

```
 1            MR. LANDES:  Correct.

 2            THE COURT:  Okay.  Mr. Rafferty?

 3            MR. RAFFERTY:  I agree with Mr. Landes, Your Honor.

 4   We'd ask for a modified *Allen* charge.

 5            THE COURT:  Okay.  Mr. Schwartz?

 6            MR. SCHWARTZ:  I agree with Mr. Landes and

 7   Mr. Rafferty.

 8            THE COURT:  Mr. Rowland?

 9            MR. ROWLAND:  I'll agree with Mr. Landes and

10   Mr. Rafferty.

11            THE COURT:  Mr. Sadow?

12            MR. SADOW:  I'm in agreement with all those except

13   for Bell -- Mr. Bell.

14            THE COURT:  Mr. Lowther?

15            MR. LOWTHER:  I agree with Mr. Bell, Your Honor.

16            THE COURT:  All right.  So you want me to accept the

17   partial verdict?

18            MR. LOWTHER:  That's correct.

19            THE COURT:  Ms. Galnor?

20            MS. GALNOR:  I agree with Mr. Lowther and Mr. Bell,

21   Your Honor.

22            THE COURT:  So you want me to accept the partial

23   verdict?

24            MS. GALNOR:  Yes, Your Honor.

25            THE COURT:  All right.  So if I have it correct, five
```

1    defendants are asking me to give a modified *Allen* charge; three

2    defendants are asking me to accept a partial verdict.

3        Before I take the government's position -- well, let

4    me go ahead and take the government's position.  I think I know

5    what it is, but let's go ahead and hear from the government.

6        MR. DUVA:  Yes, Your Honor, in the spirit of

7    agreement, we agree with Mr. Bell, Mr. Lowther, and Ms. Galnor,

8    but we want to extend that to all defendants.  The Court should

9    take the partial verdict now.

10       THE COURT:  Okay.  So I have -- I considered this

11   possibility, that there might not be unanimity among the

12   defendants as to how the Court ought to proceed.

13       And I considered whether -- it seems to me in my

14   decision-making the -- that I have to decide it -- that I have

15   to make an initial decision as to whether a modified *Allen*

16   charge is appropriate at all at this juncture.

17       And then, secondly, if it is, would I somehow try to

18   go ahead and take the verdicts from the defendants who didn't

19   want me to -- regarding the defendants who didn't want me to

20   give an *Allen* charge and leave the other defendants to have a

21   modified *Allen* charge?

22       I think there's lots of problems with that.  I've not

23   really ever seen that done before, so I'm -- but we'll get to

24   that in a moment, if we need to.

25       So, Mr. -- whoever -- whoever wants to advocate for a

1    modified *Allen* charge -- and I guess there's five of you that

2    have asked me to do that -- I'm interested -- one of the

3    reasons that I declined the government's invitation to give it

4    when we first started this morning on this path was (a) because

5    I didn't think the jury's question was clear, and that I

6    thought everybody was entitled to at least understand what the

7    jury was saying, which we have now heard back from them.

8          So I thought it was appropriate to -- as the defense,

9    at that point, unanimously recommended that I ask the jury for

10   more clarification, I thought that was appropriate.

11         But the other reason that I was not prepared at the

12   government's instance to give a modified *Allen* charge is I was

13   not -- I had not, at that point, determined whether it would be

14   appropriate to do so.

15         It's -- as you know, there's a lot of law on *Allen*

16   charges.  Almost universally that is a situation where the

17   government has requested it and the defense has objected to it.

18   A defendant is then convicted and the matter goes up on appeal.

19         And the courts have talked about the discretion a

20   district judge has, has talked about making sure that whatever

21   you do it's not overly coercive.

22         The courts have also looked at non-exhaustive

23   factors, such as how long the -- the jury has been

24   deliberating, how emphatic they've been in terms of their

25   statement of deadlock, and a number of other factors, which I

1    can review in a moment if I need to.

2        But I need to understand -- now that we've had a jury

3    who's told us three times, one in the initial question and

4    twice in the -- in the response to the Court's request for

5    clarification, that they are deadlocked, having now deliberated

6    into -- well into the fourth day -- or in the fourth day, at

7    least, of jury deliberations, I need to understand what it is

8    that -- why it's in the interest of justice for me to give that

9    modified *Allen* charge if we could -- then we'd have to figure

10   out the language, because it's -- and I have one that I have,

11   for lack of a better term, watered down from the Eleventh

12   Circuit patterns that I have considered giving before.  My

13   colleague Judge Howard and I have worked on it together at some

14   points.  So we could look at a possible charge.

15       And I'm sure we'd have to modify it even further to

16   account for the specific situation that we have -- that we're

17   in right now.

18       But I need to hear from a defendant who is advocating

19   for a modified *Allen* charge what it is, what's the reason for

20   me to give it, and why it would not be, at this point, either

21   coercive, potentially, or just unnecessary, in light of how

22   clear the jury has been about their deadlock and how long

23   they've been deliberating.

24       So if there's a defendant who asked me for the

25   modified *Allen* charge and explained to me why the Court ought

1  to give it, given our circumstances, I'm available to hear

2  that.

3      MR. LANDES:  Judge, I don't mind starting.  Richard

4  Landes on behalf of Ricardo Perez.

5      Judge, I'm one of the lawyers that advocated for a

6  note, or for the Court to ask for some clarification on the

7  note because I didn't understand what it meant.

8      The jury came back and they were clear and they told

9  us that they're deadlocked on 54 of 68 counts.  That's about

10  three-quarters of the counts in this case, or I think as they

11  calculated 20 percent of -- so they're deadlocked as to, say,

12  75 percent of this case.

13      And I know that they've been working hard.  And

14  they've been out since Wednesday afternoon.  But this has been

15  an incredibly complex case.  And we've had 50 to 60 witnesses

16  and hundreds of exhibits, 30-plus trial days.

17      So given the amount of testimony that we've heard,

18  the number of exhibits that we've seen, and the fact that they

19  haven't made a decision yet on 54 of 68 counts, I think that's

20  a situation where it would be proper for the jury to be given

21  some urging to come to a conclusion, based on all that they've

22  had in this case.

23      Yes, they've been deliberating for a long time.  But

24  one more go at it I don't think would be -- is such a -- is

25  such a big thing to ask in this particular case, when there's

1    so many counts that are unresolved.  So that would -- that

2    would be my pitch, Your Honor.

3         THE COURT:  All right.  Any other counsel who was

4    advocating for a modified *Allen* charge wish to be heard?

5         MR. SADOW:  Your Honor, I would like to adopt

6    counsel's position.  I'd also like to make it clear on the

7    record that we are opposed -- that is, Defendant Fletcher is

8    opposed to a partial verdict.

9         THE COURT:  Any other counsel advocating for a

10    modified *Allen* charge wish to be heard?

11       (No response.)

12        THE COURT:  Just to be clear and state for the

13    record, is there any defendant who's asking for a partial

14    verdict to be taken?  There's three of you.

15        Any of you wish to be heard further on that point?

16        MR. BELL:  No, Your Honor.

17        THE COURT:  All right.  Mr. Duva, could you please

18    articulate for me the government's position as to why a

19    modified *Allen* charge would not be appropriate at this point.

20        MR. DUVA:  Your Honor, we will say we're not asking

21    for one, but we think the Court is within its discretion to

22    give one.

23       (Counsel confer.)

24        MR. DUVA:  All right.  I think the reason is is the

25    jury -- they have said, as the Court pointed out, they are

1  deadlocked.

2        THE COURT:  So, Mr. Duva, I'm going to need you to --

3  so the government, I thought a moment ago, told me that they

4  wished for me to take a partial verdict, and that was your

5  position.

6        MR. DUVA:  We do.

7        THE COURT:  And I guess I understood that to mean you

8  did not think it was the thing to do or appropriate for me to

9  give a modified *Allen* charge instead of taking a partial

10  verdict.  Otherwise you wouldn't have asked me to take the

11  partial verdict.

12        And so I was asking you to articulate for me why you

13  thought that was correct.  And the answer you gave me was that

14  you're not asking me to do it, but you think I have the

15  authority do it.

16        And I'll -- I guess I'll accept that for the moment,

17  that I do have the authority to exercise discretion.  But if

18  the government has any reasoning as to why I should not

19  exercise my discretion to give a partial *Allen* -- or a modified

20  *Allen* charge at this point, I'd ask the government to

21  articulate it.  If it doesn't, then I'll just accept what you

22  told me.

23        MR. DUVA:  Your Honor, we're asking for the Court to

24  take a partial verdict.  If the Court decides it's not willing

25  to do that -- three defendants have asked for that as well --

1  then we believe the Court is in its discretion either way on

2  the *Allen* charge.

3      We agree it's been a long case; it's been complex.  I

4  don't -- I know this is the fourth day of deliberation, but the

5  jury really started sort of midday on Wednesday.  There was a

6  lot of back-and-forth on Thursday with questions.  Friday they

7  left at 3:30.  And then today the question process began at

8  10:00.

9      We don't know what they're doing right now, if

10  they're just waiting for us or they're not.  We have no idea.

11      But the reason not to give the *Allen* charge, which we

12  believe the Court is within its discretion either way, is the

13  jury said they're deadlocked, plain and simple.

14      And the reason the Court probably can still give one

15  is for the reasons that Mr. Landes laid out, long trial, tons

16  of evidence, 42 government witnesses, I believe around 8, 9, 10

17  defense witnesses, hundreds of exhibits.

18      So I think the state of the record is the Court is

19  probably within its discretion either way on the *Allen* charge.

20  But that's not what the government is asking for.  We're asking

21  the Court to take the partial verdict.  We agree with Jorge

22  Perez, Neisha Zaffuto, and Aaron Alonzo on that point.

23      We don't agree that the Court should take partial

24  verdicts for some defendants and not others.  We agree with the

25  Court that that invites all kinds of things, if that happens,

 1    that we don't necessarily want to deal with.

 2         THE COURT:  All right.  I think I know what I want to

 3    do.  But I want to think about it for a minute.  I'll ask

 4    everybody to stay around.

 5         COURT SECURITY OFFICER:  All rise.

 6       (Recess from 12:56 p.m. to 1:10 p.m.; all parties

 7    present.)

 8         COURT SECURITY OFFICER:  All rise.  This Honorable

 9    Court is now in session.

10         Please be seated.

11         THE COURT:  All right.  I'm just going to talk for a

12    few minutes, explain the basis for what I'm going to do, and

13    then I'm going to do it.

14         So as I have articulated a number of times on the

15    record, the decision I'm getting ready to make will have to be

16    viewed in the context of the entirety of the way this has

17    played out this morning, and now into the afternoon, in terms

18    of responding to the original jury question with a request for

19    clarification, getting the clarification, now being asked by

20    some, but not all defendants, to request additional

21    clarification, deciding that that was not appropriate, and

22    as -- again, I'm going to incorporate my comments from earlier

23    on the record about that, and then asking each defendant --

24    given that the Court is not going to ask the jury for more

25    information about their deliberations and what agreements

1  they've reached and which ones they haven't been able to agree

2  on, asking each defendant what they would ask the Court to do.

3  　　　　Five of the defendants have indicated to me that they

4  wish the Court to give some version of a proposed *Allen*

5  charge -- modified *Allen* charge, although I note that

6  Mr. Sadow, earlier in his remarks, said that he would want the

7  ability to modify the modified *Allen* charge even more.  There's

8  no -- there's no agreement on what that *Allen* charge would be,

9  because we haven't worked on that problem, but that could prove

10 problematic in and of itself to try to agree on what we would

11 say to this jury at this point by way of a modified *Allen*

12 charge.

13 　　　　But, in any event, five of the defendants have asked

14 me to give some type of modified *Allen* charge.  Three

15 defendants have now asked me to go ahead and accept the partial

16 verdict that we would expect from the jury based on their

17 statements to me that they have reached unanimity on 14 counts

18 and deadlocked on the remaining 54 counts.

19 　　　　The government's position is that I should also take

20 a partial verdict, although the government acknowledges that if

21 the Court were to decide to give a proposed modified *Allen*

22 charge that the Court would likely be within its discretion to

23 do so.

24 　　　　So I've thought -- I've thought about this carefully.

25 I've listened all morning.  We've kind of been on this journey

1    together to try to figure out what to do in this relatively
2    unusual situation.
3           And against the backdrop of all that has been the --
4    the fact of this trial itself being -- with multiple
5    defendants, that is, eight defendants, being a multi-week
6    trial, having a complicated indictment that required the jury
7    to make complicated and complex decisions, both based on the
8    jury instructions and on the verdict forms, which themselves --
9    there's eight verdict forms.
10          Each one of them asks a series of questions as to
11   each of the defendants, because they're not all charged in the
12   same counts.  So it's -- it is a very complicated, complex
13   undertaking.
14          And I can tell that this jury, by the questions it
15   asked that I previously answered, and by the amount of time it
16   has spent on the deliberations, which have spanned over parts
17   of four days -- I understand they weren't four complete days,
18   but they started before lunch on Wednesday, they went all day
19   Thursday, they went almost all day on Friday, and then they
20   came back again this morning and, about 10 o'clock or so, gave
21   us the first indication that they had -- that they were
22   unanimous on some counts and deadlocked on others.
23          To me that bespeaks a jury which has worked hard and
24   been diligent, again, by both the questions they asked and
25   the -- and the amount of time.  It's obvious that they have

1    labored over this and -- and have endeavored to do their duty.

2         And so the question arises should the Court further

3    advise them, further, in the words of the *Allen* charges,

4    encourage them in whatever way is appropriate to continue to

5    work on the case, and to continue to try to reach verdicts on

6    those matters as to which they are currently deadlocked.

7         And the law on *Allen* charges is such that the Court

8    talks about it -- the Eleventh Circuit talks about it as being

9    an oft-criticized -- that is, an *Allen* charge is an

10   oft-criticized but long-approved practice.  I have to be

11   careful not to coerce any juror to give up an honest belief.

12        The Eleventh Circuit in *Davis* outlined -- and that's

13   *U.S. versus Davis*, 779 F.3d 1305, 1312, Eleventh Circuit, 2015,

14   outlined the factors that assist in determining whether an

15   *Allen* charge is coercive:  first, the risk of coercion

16   increases as deliberations run longer, and in that case the

17   jury had only deliberated for six hours; second, when a jury

18   has an end in sight, the risk of coercion is diminished.

19        And in that case the Court told the jury that if it

20   worked through lunch and they still couldn't reach a verdict

21   they would be discharged.

22        And, of course, all these cases having to do with

23   *Allen* charges -- almost all of them are appeals from defendants

24   who over- -- whose objections were overruled when the court

25   decided to give the *Allen* charge; that is, it's the government

1   that asked for it and the defendant that objected to it.

2           You don't really see any *Allen* charge cases in the

3   reverse.  And I'll note that the government, I think trying to

4   be careful here, has not told the Court it can't do it or

5   doesn't have the authority to do it.  It's just not

6   recommending to the Court that it do it.

7           But, nevertheless, I think, looking at the case law,

8   the things that you look at from the Eleventh Circuit are the

9   total length of deliberations, the number of times the jury

10  reported being deadlocked and was instructed to resume, whether

11  the judge knew of the jury's numerical split, whether any of

12  the instructions imply that the jurors were violating their

13  oath or acting improperly by failing to reach a verdict, and

14  the time between the *Allen* charge and the jury's verdict.

15  Those are some things that the Eleventh Circuit says you can

16  look at.

17          But it ultimately comes down to whether the Court

18  believes that further instruction of this jury is appropriate.

19  And in this case, as I have indicated, the jury has been

20  deliberating long, a number of days.

21          The jury has now told me three times -- you can --

22  you can count it as two or three.  But in their original

23  question they said they were deadlocked.

24          In their response to the Court's clarification, they

25  use the word, "We are deadlocked on 54 counts of the 68 total

1 counts."

2       And then at the very end of the answer, they also

3 said, quote, "We are deadlocked," close quote, communicating

4 pretty clearly to the Court that -- I view that as a clear

5 communication to the Court that they are, in fact, deadlocked,

6 that they've done everything they can do.  They've reached

7 agreement on what they can reach agreement on and have been

8 unable to agree on the rest of it.

9       And the fact that they've only been able to agree on

10 14 out of potentially 68 total decisions that they've counted

11 they have to make is -- you could look at it either way.

12       Mr. Landes says that shows that they're -- they could

13 do more work and maybe reach more agreements.  But I think the

14 fact that they were able to reach unanimity on 14 matters and

15 unable to on the 54 matters, it's not as though they're close

16 or that they're -- that further deliberations may produce

17 additional verdicts, likely.

18       I just think at some point the Court has to make a

19 decision as to whether any further encouragement for the jury

20 would devolve into the area of coercion.

21       And I understand it's some defendants, but not all

22 defendants, by the way, who are asking me to do this and not

23 the government, as is usually the case.  But I think the

24 principles of law still apply.

25       And I think, as a matter of the Court's discretion,

 1   that a further instruction to this jury, especially after -- at

 2   the request of the defendants -- I asked them for this

 3   clarification.  To now go back in and say, Okay.  You've given

 4   me this clarification and now you need to -- you need to keep

 5   working, I think they've been loud and clear that they're

 6   deadlocked.  And this is not a case in which a deadlock cannot

 7   be explained.

 8         There were lots of complex matters that were

 9   discussed.  There was a vigorous prosecution and a vigorous

10   defense.  And so -- and you also have complicated counts, such

11   as money laundering and so forth that are in play here.

12         So I think this jury has told me they're deadlocked

13   and I think any further instruction of them at this point

14   would -- it's not indicated, potentially could be coercive.

15         And in the exercise of the Court's discretion, I

16   think this jury has done its duty.  They've done everything

17   they can do.  The Court ought to take the work product that it

18   has been able to come up with and then we need to deal with it

19   accordingly.

20         And so the Court, again, notice -- and I did, of

21   course, also consider -- I want to say for the record that

22   we're now in a position where three of the defendants did not

23   want me to give the *Allen* charge and wanted me to take the

24   partial verdict.  Five of the defendants wanted me to give the

25   modified *Allen* charge and not take the partial verdict.  And

1 the government is asking me initially -- their initial position

2 is for me to take the partial verdict.

3       So there's not unanimity even within the defendants

4 as to how the Court ought to proceed at this point.  I

5 considered whether it would be feasible to take the partial

6 verdict for the three defendants who have asked me to and not

7 for the five defendants who want me to give the *Allen* charge.

8       I don't think that is feasible.  And I don't think

9 the law would really countenance that.  I think there's lots of

10 reasons why that's a bad idea.

11       But more to the point, I'm making a decision that I

12 do not believe that a modified *Allen* charge is appropriate at

13 this point, in any event.  And so I don't really have to reach

14 that decision.

15       But I do think it is significant that three out of

16 the eight defendants have asked me not to do it either and have

17 asked for the partial verdict to be returned.

18       Obviously each defendant has to make their own

19 decision.  I respect that.  And I have given each defendant

20 individual consideration.  But it's the Court's view that the

21 modified *Allen* charge will not be given.  And the Court intends

22 to take the partial verdict.

23       The rule on partial verdicts is Rule 31.  31(b)(1)

24 says, If there are multiple defendants, the jury may return a

25 verdict at any time during its deliberations as to any

1  defendant about whom it has agreed.

2          And 31(b)(2) says, Multiple counts.  If the jury

3  cannot agree on all counts as to any defendant, the jury may

4  return a verdict on those counts on which it has agreed.

5          And then 31(b)(3) says, If the jury cannot agree on a

6  verdict on one or more counts, the Court may declare a mistrial

7  on those counts.  The government may retry any defendant on any

8  count on which the jury could not agree.

9          It's the Court's intention to take a partial verdict,

10  assuming they're in good form, and then, depending on the

11  situation, to declare a mistrial as to the counts and

12  defendants that the jury was not able to agree upon.

13      (Judge confers with law clerk.)

14      THE COURT:  The Court has made its ruling, but, of

15  course, I will allow anybody to put anything else on the record

16  that they care to at this time.

17          It is the Court's intention, by the way, to send back

18  a -- a note to the jury which will read something as follows:

19  Please fill out the verdict forms where you have reached a

20  unanimous agreement, leave the verdicts where you have not

21  reached a unanimous verdict blank, and have your foreperson

22  sign and date each verdict form.

23          That would be the Court's proposal as to how to take

24  the partial verdict.

25          All right.  Does the government wish to be heard?  Is

1  there anything I need to do to clarify the record?  Or is there

2  any step I've missed?  Anything else that needs to be on the

3  record?

4          MR. DUVA:  No, Your Honor.

5          THE COURT:  Mr. Bell, do you wish to be heard

6  further?

7          MR. BELL:  Nothing further, Your Honor.

8          THE COURT:  Mr. Landes, do you wish to be heard

9  further?

10          MR. LANDES:  No, Your Honor, only to make it clear

11  that on behalf of Ricardo Perez, I oppose taking a partial

12  verdict.

13          Thank you.

14          THE COURT:  Yes, sir.

15          MR. RAFFERTY:  Same for Mr. Durall, Your Honor.

16          THE COURT:  Yes, sir.  Just to be clear,

17  Mr. Rafferty -- when you say "same," you're -- go ahead and

18  state your position on the record, just so we'll have it.

19          MR. RAFFERTY:  My position is we oppose taking a

20  partial verdict and would request that *Allen* charge.

21          THE COURT:  All right.  Mr. Schwartz?

22          MR. SCHWARTZ:  Yes, sir.  Oppose partial verdict and

23  request an *Allen* charge.

24          THE COURT:  Mr. Rowland?

25          MR. ROWLAND:  Oppose the partial verdict and request

1   the modified *Allen* instruction.

2          THE COURT:  Mr. Sadow?

3          MR. SADOW:  Your Honor --

4          THE COURT:  Or Mr. Citro.

5          MR. CITRO:  That's okay.

6          On behalf of Mr. Fletcher, we oppose taking the

7   partial verdict and request the Court to provide the modified

8   *Allen* charge to the jury.

9          THE COURT:  Mr. Lowther?

10         MR. LOWTHER:  Nothing further.

11         THE COURT:  Ms. Galnor?

12         MS. GALNOR:  Nothing further, Your Honor.

13         THE COURT:  All right.  So everybody is taking the

14  same positions they took previously, but have offered no

15  additional advice to the Court as to how it ought to proceed.

16         So I'm going to...

17         So my -- I'm going to have this retyped, but my

18  instruction to the jury will be:  Please fill out the verdict

19  forms where you have reached a unanimous agreement, leave the

20  verdicts where you have not reached a unanimous verdict blank,

21  and have your foreperson sign and date each verdict form, and

22  give them to the court security officer.

23         Anybody wish to be heard?

24      (No response.)

25         THE COURT:  All objections are preserved, of course,

```
 1   to the Court taking the partial verdict.  But does anybody wish
 2   to be heard on the message the Court intends to give to the
 3   jury?
 4           MR. DUVA:  No, Your Honor, from the government.
 5           MR. BELL:  No, Your Honor.
 6           MR. LANDES:  No, Your Honor.
 7           THE COURT:  Anybody?  Okay.
 8       (Judge confers with law clerk and courtroom deputy.)
 9           THE COURT:  I was reminded that that's -- that we had
10   that issue when we did the jury instructions about giving the
11   verdicts to the court security officer.  So I've changed the
12   thing a little bit.  But I'll read it out loud as soon as it's
13   typed.  And then we'll get it to the jury.
14           All right.  It now reads, Please fill out the verdict
15   forms where you have reached a unanimous agreement, leave the
16   verdicts where you have not reached a unanimous verdict blank,
17   and have your foreperson sign and date each verdict form and
18   put them in the envelopes.  Then notify the court security
19   officer, who will escort you back to the courtroom.
20           Any objection?
21           MR. DUVA:  No, Your Honor.
22           THE COURT:  Judge Corrigan, 6/27/22, 1:35 p.m.
23           So, Ms. Hatfield, we'll have to mark this as No. 5.
24   It will just be Court's communication to the jury.  I think
25   we'll just make it No. 5.
```

1          And then I don't think I'm going to send the question

2     and the answer back again.  I'll just let you give that to

3     them.  Make a copy of it, please.  Thanks.

4          Obviously this could be important for the record

5     purposes.  So the jury has -- when they asked the original

6     question on the original piece of paper, I gave them a

7     typewritten response.  And then they responded just by drawing

8     a line and writing it down below there.

9          I'm inclined to denominate that in some way, but I'm

10    reluctant to write on the jury's original writing.  The -- I'm

11    inclined to just write the words -- or write the number 1 on

12    the -- here, 2 on the Court's instruction, and 3 here to

13    just -- just so the record is clear as to what the sequence

14    was.  It probably is from the transcript.

15         But does anybody think that's a bad idea?  Does

16    anybody have a better idea?  Does anybody think it's not an

17    issue?

18         MR. LANDES:  I would say it's not an issue.  I'm

19    sorry.

20         MR. DUVA:  We agree it's not an issue.  But if the

21    Court wants to do the 1, 2, 3 as it's stated on the record,

22    that's fine.

23         THE COURT:  Okay.  Does anybody object to the Court

24    doing that?

25         MR. BELL:  No.

1    THE COURT:  All right.

2    All right.  The Court's just written 1 on the first

3  question, 2 on the Court's response, and 3 on the jury's

4  response to the Court's response, and circled them.  And that

5  will be part of the -- I believe this is No. 4.  So that's --

6  this will all -- this will be the original.

7    I'm going to take -- I don't know how long it will

8  take them to do that.  I'm going to take -- let's be in recess

9  for ten minutes.  So you can have ten minutes.

10    COURT SECURITY OFFICER:  All rise.

11    MR. BELL:  Judge, can -- I assume it will take them

12  20 to 30 minutes to fill out the paperwork.  Could we get until

13  2:00, 2:15 to at least go get a cup of coffee, since it's been

14  a long morning.  At least we can get out of the building and

15  get back by then.

16    MR. LANDES:  Or 2 o'clock, Judge, just 20 minutes to

17  get a coffee.

18    THE COURT:  Okay.  All right.  That's fine.  And it

19  could be longer.  I don't know.

20    Okay.  That's fine.

21    MR. LANDES:  Thank you, Judge.

22    MR. BELL:  Thank you, Judge.

23    THE COURT:  Don't wander off, though, please.

24    (Recess from 1:39 p.m. to 2:13 p.m.; all parties present.)

25    COURT SECURITY OFFICER:  All rise.  This Honorable

 1    Court is now in session.  Please be seated.

 2          THE COURT:  All right.  Let's have the jury, please.

 3       (Jury enters with partial verdict, 2:14 p.m.)

 4          COURT SECURITY OFFICER:  All rise for the jury.

 5          Please be seated.

 6          THE COURT:  Well, good afternoon, ladies and

 7    gentlemen.  Through your communications to me you have told me

 8    that you had reached unanimous agreement on some of the charges

 9    and that you were unable to agree on other charges.  And what I

10    need to -- who's the foreperson?

11          FOREPERSON:  (Hand raised.)

12          THE COURT:  Okay.  Madam Foreperson, as I look at the

13    verdicts that you're going to give me, was -- and I don't want

14    you to tell me what they are.  But on the ones that the jury

15    did find on, was the agreement unanimous?

16          FOREPERSON:  Yes.

17          THE COURT:  All right.  And is it true that on other

18    counts that the jury was deadlocked?

19          FOREPERSON:  Yes.

20          THE COURT:  All right.  If you could hand those

21    verdicts to the court security officer, please.

22          So, ladies and gentlemen, what I'm going to do is I'm

23    going to read these verdicts.  And it will take me a few

24    minutes, because, as you know, there's a number of them.

25          And then I'll ask you to listen carefully, because

1  I'll be asking each of you whether the verdicts that you did

2  agree to -- whether they represent the verdict that you agreed

3  to with the rest of the jury.

4      Okay.  So if you'll just give me a -- it will take me

5  a minute here.

6      (Judge confers with law clerk.)

7      THE COURT:  Ladies and gentlemen, I'm going to ask

8  you to just step back for a moment while I talk to the lawyers

9  briefly.  All right.  We'll get you right back out here.  Thank

10  you.

11      COURT SECURITY OFFICER:  All rise for the jury.

12      (Jury exits, 2:23 p.m.)

13      THE COURT:  Have a seat, everyone, for a moment.  I

14  think I know the answer to this, but I just -- I wanted to make

15  sure that -- before I proceeded to announce the verdicts, that

16  I'm proceeding appropriately.  I'm sure I am.  I think I need

17  to just announce the verdicts the way they've been given to me.

18      I will tell you that a -- as to a substantial number

19  of the defendants, the jury has reached no verdict.  And so

20  the -- there are verdicts as to some defendants, but the -- but

21  as to a substantial number of the defendants, the jury has been

22  unable to reach any verdicts on those defendants.

23      So that's -- that's -- you know, obviously, when -- I

24  just wanted that to be said.  I don't know of any other way to

25  proceed other than to just announce and record the jury's

1    verdicts, if these are their true verdicts, given where we are

2    in the case.

3              But I just wanted to -- I wanted to -- before I did

4    it, I wanted to make sure that the -- that there was no other

5    way to proceed or any other suggestion from any party.

6              MR. DUVA:  There is no other way to proceed, Your

7    Honor.

8              THE COURT:  Okay.  Anybody on the defense side?

9              MR. BELL:  No, Your Honor.

10             MR. RAFFERTY:  No, Your Honor.

11             THE COURT:  All right.  I'm going to announce the

12   verdicts.

13             Let's have the jury, please.

14             COURT SECURITY OFFICER:  All rise.

15        (Jury enters, 2:25 p.m.)

16             COURT SECURITY OFFICER:  All rise for the jury.

17             THE COURT:  Thank you for your patience, ladies and

18   gentlemen.

19             I'm now going to read out loud -- we call it

20   publishing the verdicts.  And I will read out loud the verdicts

21   that you reached.  And I will also state if you were unable to

22   reach verdicts where appropriate.

23             At the end of it I'll be asking each of you if this

24   is the verdict that -- that -- where you are.  Now, I

25   understand you didn't agree on some.  So when I say that you

1    don't agree, that's -- I understand that.

2         But I just -- I just want to make sure that the

3    verdicts that I'm reading capture your agreements and also

4    capture your disagreements.  All right?

5         Okay.  In the United States District Court, Middle

6    District of Florida, Jacksonville Division, *United States of*

7    *America versus Jorge Perez*, Case No. 3:20-cr-86, Verdict:  With

8    regard to Count One of the indictment, which charges conspiracy

9    to commit health care fraud and wire fraud, we, the jury, find

10   Jorge Perez guilty.

11        And if you found Jorge Perez guilty of Count One,

12   answer this question:  We, the jury, unanimously find the

13   following to be the object of the conspiracy.  And the jury has

14   checked both health care fraud and wire fraud.

15        With regard to Count Two of the indictment, which

16   charges health care fraud, we, the jury, find Jorge Perez

17   guilty.

18        With regard to Count Three of the indictment, which

19   charges health care fraud, we, the jury, find Jorge Perez

20   guilty.

21        With regard to Count Four of the indictment, which

22   charges health care fraud, we, the jury, find Jorge Perez

23   guilty.

24        With regard to Count Five of the indictment, which

25   charges health care fraud, we, the jury, find Jorge Perez

1   guilty.

2          With regard to Count Six of the indictment, which

3   charges health care fraud, we, the jury, find Jorge Perez

4   guilty.

5          With regard to Count Eight of the indictment, which

6   charges conspiracy to commit money laundering, we, the jury,

7   find Jorge Perez guilty.

8          And then with regard to Count Eleven of the

9   indictment, which charges money laundering, we, the jury, find

10  the -- the guilty box was originally checked, but it has been

11  crossed through and initialled by the foreperson, which I

12  assume means the jury did not reach a verdict as to that.

13         Is that correct, ma'am?

14         FOREPERSON:  Yes.  That's correct.

15         THE COURT:  So there is no verdict with respect to

16  Count Eleven of the indictment.  There is no verdict with

17  respect to Count Thirteen, Count Fourteen, Count Seventeen,

18  Count Nineteen, Count Twenty, and Count Twenty-One of the

19  indictment.

20         So say we all -- signed by the foreperson and dated

21  today's date.

22         And I'm just going to go through them all and then

23  I'll ask whether these are your correct verdicts.

24         In the United States District Court, Middle District

25  of Florida, Jacksonville Division, *United States of America*

1  *versus Ricardo Perez*, Case No. 3:20-cr-86, Verdict:  With

2  regard to Count One of the indictment, which charges conspiracy

3  to commit health care fraud and wire fraud, we, the jury, find

4  Ricardo Perez guilty.

5        If you found Ricardo Perez guilty of Count One,

6  answer this question:  We, the jury, unanimously find the

7  following to be the object of the conspiracy.  Both health care

8  fraud and wire fraud is checked by the jury.

9        With regard to Count Two of the indictment, which

10  charges health care fraud, we, the jury, find Ricardo Perez

11  guilty.

12        With regard to Count Three of the indictment, which

13  charges health care fraud, we, the jury, find Ricardo Perez

14  guilty.

15        With regard to Count Four of the indictment, which

16  charges health care fraud, we, the jury, find Ricardo Perez

17  guilty.

18        With regard to Count Five of the indictment, which

19  charges health care fraud, we, the jury, find Ricardo Perez

20  guilty.

21        With regard to Count Six of the indictment, which

22  charges health care fraud, we, the jury, find Ricardo Perez

23  guilty.

24        With regard to Count Eight of the indictment, which

25  charges conspiracy to commit money laundering, we, the jury,

1    find Ricardo Perez guilty.

2            The jury did not reach a verdict on Counts Eleven,

3    Fourteen, Nineteen, Twenty, and Twenty-One of the indictment.

4            So say we all, signed by the foreperson and dated

5    today's date.

6            In the United States District Court, Middle District

7    of Florida, Jacksonville Division, *United States of America*

8    *versus Aaron Durall*, 3:20-cr-86, Verdict.  The jury did not

9    reach a verdict with respect to the charges against Aaron

10   Durall with respect to Count One, Count Two, Count Three, Count

11   Four, Count Five, Count Six, Count Seven, Count Nine, Count

12   Ten, and Count Twenty-Three of the indictment.

13           So the jury did not agree on a verdict with respect

14   to Mr. Durall on any of the counts.

15           *United States of America versus James F. Porter, Jr.*,

16   Case No. 3:20-cr-86, Verdict.  The jury did not reach a verdict

17   with respect to any of the counts against Mr. Porter.

18           That would be Count One, Count Eight, Count Eleven,

19   Count Twelve, Count Thirteen, Fourteen, Fifteen, Sixteen,

20   Seventeen, Eighteen, Nineteen, Twenty, Twenty-One, Twenty-Two

21   of the indictment.  So the jury did not reach a verdict on any

22   of the counts against Mr. James F. Porter, Jr.

23           And United States District Court, Middle District of

24   Florida, Jacksonville Division, *United States of America versus*

25   *Sean Porter*, Case No. 3:20-cr-86, Verdict.  The jury did not

1  reach a verdict with respect to any of the counts against

2  Mr. Sean Porter.  And that would be Count Eight, Count Sixteen,

3  and Count Twenty-Two of the indictment.

4  *United States of America versus Christian Fletcher*,

5  Case No. 3:20-cr-86, Verdict -- the jury did not reach an

6  agreement with respect to any counts of the indictment against

7  Mr. Fletcher.  That would be Count One, Count Eight, Count

8  Fifteen, Count Eighteen of the indictment.

9  So say we all, signed by the foreperson and dated.

10  And if I didn't say so with Mr. Sean Porter, it was

11  also signed by the foreperson and properly dated.

12  *United States of America versus Neisha Zaffuto*,

13  3:20-cr-86, Verdict -- the jury did not reach a verdict with

14  respect to any of the charges against Ms. Zaffuto.  That would

15  be Count One of the indictment, Count Seven of the indictment,

16  Count Twenty-Three of the indictment.

17  So say we all, signed by the foreperson and dated.

18  *United States of America versus Aaron Alonzo*,

19  3:20-cr-86, Verdict -- and this is, of course, in the United

20  States District Court, Middle District of Florida, Jacksonville

21  Division, the jury did not reach a verdict with respect to any

22  of the charges against Mr. Alonzo.

23  That would be Count One of the indictment only,

24  signed by the foreperson and properly dated.

25  So, ladies and gentlemen, I've now read the eight

1  verdicts that you have given to me.  I'll be asking each of

2  you, just by your juror number, whether the verdicts that you

3  did agree to represent the verdict that you agree to personally

4  and the fact that you did not reach agreement on the rest of

5  them as I read -- that also was part of the jury's

6  decision-making.

7          So I'll ask you to just -- when I ask you to stand

8  up, I'll say:  Is this -- is this the verdict -- the ones I've

9  read, did I read those correctly, and are those -- are those

10 the verdicts that you reached today, both the ones you reached

11 and the ones you could not agree on?

12         Okay?  Everybody understand what I'm asking you?

13         Okay.  Juror No. 1, are these your verdicts?

14         JUROR:  Yes.

15         THE COURT:  Juror No. 2, are these your verdicts?

16         JUROR:  Yes.

17         THE COURT:  Juror No. 3, are these your verdicts?

18         JUROR:  Yes.

19         THE COURT:  Juror No. 4, are these your verdicts?

20         JUROR:  Yes.

21         THE COURT:  Juror No. 5, are these your verdicts?

22         JUROR:  Yes.

23         THE COURT:  Juror No. 6, are these your verdicts?

24         JUROR:  Yes.  7.

25         THE COURT:  Ma'am?

1          JUROR:  I thought I was No. 7.

2          THE COURT:  Okay.  Sorry.

3          I think I have it right.  6.  Yeah, you're 6.

4          Okay.  Juror No. 7, are these your verdicts?

5          FOREPERSON:  Yes.

6          THE COURT:  Juror No. 8, are these your verdicts?

7          JUROR:  Yes.

8          THE COURT:  Juror No. 9, are these your verdicts?

9          Right here, sir.

10         JUROR:  Yes, sir.

11         THE COURT:  Okay.  Juror No. 10, are these your

12    verdicts?

13         JUROR:  Yes.

14         THE COURT:  Juror No. 11, are these your verdicts?

15         JUROR:  Yes.

16         THE COURT:  Juror No. 12, are these your verdicts?

17         JUROR:  Yes, Your Honor.

18         THE COURT:  The clerk will record the verdicts.

19         Ladies and gentlemen, I'm going to ask you if you'll

20    just one more time step back for me and -- and then I'll bring

21    you back out.  Just give me a few minutes.

22         All right, ladies and gentlemen.  Thank you.

23         COURT SECURITY OFFICER:  All rise for the jury.

24    (Jury exits, 2:36 p.m.)

25    (Judge confers with law clerk.)

1       THE COURT:  Have a seat, please.

2       I'm told that I -- I may not have said that each of

3  the verdict forms were properly signed by the foreperson and

4  dated properly, but all of them were.

5       If I didn't specifically announce one, I am now

6  making clear that all of the verdicts -- as will be reflected

7  in the record, all of the verdicts -- whether they be ones that

8  the jury reached verdicts on or ones they did not, all of them

9  were signed and dated by the foreperson.

10       So, Mr. Bell and Mr. Landes, I believe your clients

11  are the only ones remaining that potentially have a forfeiture

12  issue to be decided -- that could be decided by this jury.

13       I need to know at this point whether you wish to

14  exercise that right, and then we'll need to -- because I'll

15  need to further instruct the jury depending on that.

16       So what -- what say you, Mr. Bell?

17       MR. BELL:  Well, Judge, after the opportunity to kind

18  of discuss it at great length and review kind of the more

19  recent charts and evidence, and just in the interest of justice

20  at this point, Mr. Perez has opted to waive his right to a jury

21  trial on the nexus issue and stipulate to the Court --

22  stipulate to a non-jury finding of all the relevant forfeiture

23  issues.

24       THE COURT:  Mr. Landes?

25       MR. LANDES:  The same, Judge.  Mr. Ricardo Perez will

1    have the -- will have the Court decide the forfeiture issue and

2    will waive his rights to a jury to decide.

3              Judge, I'd just -- for clarification, with regard to

4    Mr. Ricardo Perez, the -- the only charge of money laundering

5    for which he was found guilty was -- was No. 8; is that

6    correct?

7              THE COURT:  That is correct.

8              MR. LANDES:  Okay.  That's fine.  That is -- that's

9    our position.

10             THE COURT:  All right.  I will take actual waivers

11   from you, but I won't -- I won't -- I think I need to deal with

12   the -- with the jury first and then with the parties here as to

13   what's next here.

14             But, Mr. Bell, did you have something you wanted to

15   say?

16             MR. BELL:  No.  I was going to hand the stipulation

17   to the Court, but I can wait on it.

18             THE COURT:  Okay.  Thank you.

19             All right.  I tell you what, let's do it -- let's --

20   and I apologize to everybody else who I know -- but let me --

21   let's get this done.

22             So, Mr. Jorge Perez and Mr. Ricardo Perez, if you'll

23   please raise your -- stand and raise your right hands, please.

24             Do each of you swear to the tell the truth, nothing

25   but the truth, so help you God?

1    DEFENDANT J. PEREZ:  Yes, sir.

2    DEFENDANT R. PEREZ:  Yes, sir.

3    THE COURT:  You can have a seat.  Thank you.

4    Each of you has now been found guilty of crimes that

5    potentially carry with them forfeiture issues.  Each of you are

6    entitled to jury consideration of a portion of those forfeiture

7    issues that we've already previously discussed.

8    With respect to Mr. Perez, that has to do with the

9    proceeds in lieu of property at 96000 Overseas Highway; real

10   property located also at 96000 Overseas Highway, a different

11   unit, Unit M-4; real property located at 13820 Southwest 142nd

12   Avenue; real property located at 15424 Southwest 175th Street;

13   and real property located at 15434 Southwest 175th Street.

14   With respect to Ricardo Perez, it's approximately

15   246,000 in lieu of real property located at the 9600 [sic]

16   Overseas Highway, Unit W-31, which is the same unit that

17   Mr. Jorge Perez is also on as well, as well as real property

18   located at 1380 Southwest 142nd Avenue; and real property

19   located at 15424 Southwest 175th Street; and real property

20   located at 15434 Southwest 175th Street.

21   So those are potentially -- those are properties as

22   to which you might be entitled to -- or you likely are entitled

23   to jury consideration on an aspect of forfeiture, which I've

24   already talked about at length with you and your counsel.

25   I'm told now that you wish to waive or give up your

1    right to have the jury make those decisions and to allow the

2    Court to do so as appropriate.

3            Do you understand -- Mr. Jorge Perez, do you

4    understand that you have the right to a forfeiture proceeding

5    where it would be incumbent upon the jury to determine whether

6    the United States has satisfied its burden with regard to that

7    forfeiture?

8            DEFENDANT J. PEREZ:  Yes, Your Honor.

9            THE COURT:  And is it your wish to waive and give up

10   that jury determination for the forfeiture proceeding?

11           DEFENDANT J. PEREZ:  Yes, Your Honor.

12           THE COURT:  Has anybody threatened, forced, coerced,

13   intimidated you in any way, promised you anything to get you to

14   give up that jury right?

15           DEFENDANT J. PEREZ:  No, Your Honor.

16           THE COURT:  Has any promises been made to you in that

17   regard, sir?

18           DEFENDANT J. PEREZ:  No, Your Honor.

19           THE COURT:  Are there any other questions that you

20   wish to ask before I accept this waiver?

21           DEFENDANT J. PEREZ:  No, Your Honor.

22           THE COURT:  Mr. Ricardo Perez, do you understand that

23   you have the right to a forfeiture proceeding where it would be

24   incumbent upon the jury to determine that the United States has

25   satisfied its burden of proof with regard to forfeiture?

1          DEFENDANT R. PEREZ:  Yes, Your Honor.

2          THE COURT:  And is it your wish to waive and give up

3   that jury determination for the forfeiture proceeding and allow

4   the Court to handle those issues?

5          DEFENDANT R. PEREZ:  Yes, Your Honor.

6          THE COURT:  Has anyone threatened, forced, coerced,

7   intimidated you in any way, given you -- in any way regarding

8   giving up that right, sir?

9          DEFENDANT R. PEREZ:  No, Your Honor.

10          THE COURT:  Have any promises been made to you to

11   cause you to do so?

12          DEFENDANT R. PEREZ:  No, sir.

13          THE COURT:  Are there any additional questions you

14   have of me about your waiver?

15          DEFENDANT R. PEREZ:  None.

16          THE COURT:  Mr. Jorge Perez, are you making a free,

17   voluntary, knowing, and intelligent decision to waive or give

18   up your jury right on forfeiture?

19          DEFENDANT J. PEREZ:  Yes, Your Honor.

20          THE COURT:  Mr. Ricardo Perez, are you making a free,

21   voluntary, knowing, and intelligent decision to waive or give

22   up your jury right on forfeiture?

23          DEFENDANT J. PEREZ:  Yes, Your Honor.

24          THE COURT:  I find that each of you has made a free,

25   voluntary, knowing, and intelligent decision to waive your --

1  waive jury consideration of your forfeiture issues, and

2  therefore, I will be discharging the jury, and the Court will

3  handle any forfeiture matters regarding your cases at a later

4  point in time.

5         Is the government satisfied with the colloquy?

6         MR. DUVA:  Yes, Your Honor.

7         THE COURT:  Okay.  All right.  Is there any reason

8  that the jury cannot be discharged at this time?

9         MR. DUVA:  No, Your Honor.

10         THE COURT:  Anything?

11         MR. SADOW:  Your Honor, I understand that there is a

12  local rule that prohibits contact with jurors; is that correct?

13         THE COURT:  Yes.

14         MR. SADOW:  And does the Court believe it has the

15  authority to waive that rule?  Or is that one that is strictly

16  enforced?

17         THE COURT:  Yeah.  I don't know.  But why don't we --

18  I'll be happy to talk with you about this, but let me go ahead

19  and discharge them.  Okay?

20         Anybody else?

21    (No response.)

22         THE COURT:  All right.  Let me have the jury, please.

23         COURT SECURITY OFFICER:  All rise for the jury.

24    (Jury enters, 2:45 p.m.)

25         COURT SECURITY OFFICER:  Please be seated.

1    THE COURT:  Ladies and gentlemen, it would be hard to

2  ask a jury to do more than you've done.  You know, we started,

3  as you recall, back on May the 9th with this journey.  And it's

4  now almost July 1st.  And so -- and you have obviously given

5  great effort and great attention to this matter, including some

6  of you suffering illness and then coming back to serve.

7    And -- and then the amount of time you spent on your

8  deliberations was substantial.  And so it showed me that you

9  did everything you could to reach verdicts in this case.

10    And, of course, you did reach some verdicts.  And you

11  weren't able to agree on others.  But I don't want any of you

12  to think that that represents a failure on your part or on the

13  jury's part.

14    There is a reason that our system requires unanimity

15  among 12 people.  It's not supposed to be easy to get.  And --

16  and so I know you-all tried your best and worked as hard as you

17  could.  And I can tell by your questions how hard you were

18  working.  And so it's only with gratitude that we're going to

19  discharge you from your jury service.

20    The -- the rules of the court provide that you will

21  not be contacted by the attorneys or by anybody else

22  involving -- and the parties involving your service.

23    Sometimes those rules are waived.  And that's up to

24  me later on.  But that's the rule that we have in place right

25  now.  And -- and so unless I give specific permission, you will

1  not be contacted by the lawyers or the parties in the case.

2        Sometimes -- especially in a situation where a jury

3  was not able to reach a verdict, sometimes it can be helpful

4  for the lawyers to talk to jurors, if they're willing to talk.

5  So I'll see about that.  But for now that's the rule.

6        And one rule is -- for sure, is that you're not

7  required to talk to anybody.  So -- so even if I were to

8  authorize it, if you just don't want to, all you've got to say

9  is, "I don't want to," and that will be fine.  So we'll see how

10  that plays out.

11        Obviously my restrictions on you otherwise, in terms

12  of -- of talking about the case or looking things up, those do

13  not apply anymore.  If the case is to go forward further, it

14  would be with a different jury.  It would not be with you.  So

15  your service on this case is -- is concluded.  And, again, my

16  deep, deep appreciation for all of your efforts.

17        Now, what's going to happen is when I -- I let you

18  go, if you'll go down to the first floor, and Tim will have

19  some paperwork for you and will talk to you for a moment.

20        I need to talk to the lawyers for a few moments.  But

21  if you're inclined to, I will -- I'll come down and to thank

22  you personally for all of your efforts, and -- and I'd like to

23  do that if I can.

24        But if I take too long or you can't wait, then I'll

25  certainly understand.  But you do need to go down, in any

 1    event, on the first floor and talk to Tim and make sure all

 2    your paperwork is okay and that everything is under control.

 3          We -- and there's some additional things that we're

 4    going to be dealing with.  So I really would -- it would really

 5    be better if you could stay and wait for me.  I would really

 6    appreciate it.  So can you do that for me?

 7          And I'll be down just as soon as I can.  But go

 8    ahead.  And when you leave here, just go on down to the first

 9    floor, talk to Tim, relax for a minute, and I will be down just

10    as soon as I can.  All right?

11          Thank you, ladies and gentlemen.

12          COURT SECURITY OFFICER:  All rise for the jury.

13       (Jury excused, 2:50 p.m.)

14          COURT SECURITY OFFICER:  Please be seated.

15          THE COURT:  Mr. Duva, what is the government's

16    position with respect to the charges that the jury could not

17    agree on?

18          MR. DUVA:  We're going to proceed on those, Your

19    Honor.

20          THE COURT:  Okay.  Are you asking the Court to

21    declare a mistrial as to those counts?

22          MR. DUVA:  Yes, Your Honor.

23          THE COURT:  All right.  The rule -- and I'll hear

24    from any defendant, but the -- and I wasn't necessarily asking

25    for a commitment to retry the case, but I just wanted to make

1   sure that procedurally we're correct.

2          The rule that allows the Court to take partial

3   verdicts and also addresses mistrial reads -- it's 31(b)(3):

4   If the jury cannot agree on a verdict on one or more counts,

5   the Court may declare a mistrial on those counts.  The

6   government may retry any defendant on any count on which the

7   jury could not agree.

8          The government's now asked me to declare a mistrial

9   on those counts that -- on which the jury could not agree.  And

10  I'm not going to try to recapitulate all those counts that the

11  jury could not agree on.  I think the record and the verdict

12  forms will be very clear about that.  It would be too lengthy

13  to do so.

14         Does any defendant at this point wish to be heard or

15  have anything they want to state for the record regarding the

16  Court declaring a mistrial on those counts as to which the jury

17  could not agree?

18            MR. BELL:  On behalf of Jorge Perez, no.

19            THE COURT:  Okay.  Anybody else wish to be heard?

20      (No response.)

21            THE COURT:  All right.  The Court hereby declares a

22  mistrial on those counts as to which the jury did not reach a

23  verdict.  And those are documented in the verdict forms.  So

24  that will be filed of record.  And the Court also read them out

25  loud on the record.

1    The government -- according to the rule, the

2  government may retry those defendants on any count on which the

3  jury could not agree, therefore -- and in this case, it also --

4  there were many counts -- I mean, many cases where the jury

5  could not agree on any count against any defendant.

6    Mr. Duva, I guess I will need -- I think the

7  government ought to have time to consider the matter and let --

8  kind of let -- let any discussions take place that are

9  appropriate, or whatever the government needs to do, and --

10  before it makes a final decision that would then put us -- put

11  us on a path to the retrial.

12    I guess the question is, this -- how long does the

13  government need in order to make a decision or to be of record

14  on a decision as to how it wishes to proceed?

15    (Counsel confer.)

16    MR. DUVA:  Can we have 21 days, Your Honor?

17    THE COURT:  Yes, sir.  And, also, I do have the

18  Rule 29 under reservation.  And, obviously, each defendant will

19  need to consult Rule 29.  I don't -- I'm always hesitant to

20  give advice on that.

21    But there is a time limit by which the -- by which a

22  defendant can, in effect, renew the motion or file a written

23  motion in accordance with the Rule 29 motion made at -- both at

24  the close of the evidence -- I mean, the close of the

25  government's case and the close of the evidence.  And so I

1  would just ask you to make sure that those rules are followed.

2      If the rules provide for an extension, and if the

3  defendants wish me to consider an extension, I would certainly

4  do so.  But I would advise each defendant to consult the rules.

5      Any -- any post-verdict motions that are appropriate

6  need to be filed either timely or an appropriate extension

7  needs to be received from the -- or granted by the Court.

8      So I'll just direct each defendant and their counsel

9  to make sure that those rules are consulted and followed, so

10 that we don't have any problem with timing or any- -- anything

11 that needed to be renewed.

12     And...

13     Anything else?

14    (Judge confers with law clerk.)

15     THE COURT:  I will record the verdicts.  And I -- I

16 don't -- as to those defendants who have been -- who have had

17 guilty findings, I don't generally enter the guilty

18 adjudication until -- until later.

19     And so if I get post-verdict motions, then I'll just

20 delay the adjudication at that point.  I'll consult the rules

21 and see if I have to enter anything else of record regarding

22 the mistrial.  I don't think I do.

23     I think it's really just going to be up to the

24 government to consult about that and make decisions, and then

25 we -- we just have to proceed as the rules and the law require,

1 including any consideration to Speedy Trial Act.  And so we'll

2 do that.

3          Is there anything else that -- Mr. Duva, that you can

4 think that we need to do on the record here?

5          MR. DUVA:  No, Your Honor.

6          THE COURT:  Does any defendant have any matter?  Or

7 is there anything else that I need to do of record, or that

8 they want to make of record?

9          MR. BELL:  No, Your Honor.

10          MR. LANDES:  No, Your Honor.

11          MR. SADOW:  No, Your Honor.  But the matter I did

12 raise earlier --

13          THE COURT:  Yeah.  I think what I'll do on that,

14 Mr. Sadow, I think I'll -- I think I'll -- if you want to -- if

15 you want me to consider -- because I haven't -- I don't think I

16 have done that before, but I'm not completely adverse to it,

17 depending on the situation.

18          But if you could -- if you could file a written

19 motion on that, and just -- and then I'll -- and see what the

20 government's position is, see -- if anybody else wants to join

21 in it, then that's fine.  But let's get it of record.  Okay?

22          MR. SADOW:  Absolutely.  It appears that the motion

23 is required under 5.02(d) --

24          THE COURT:  Yeah.

25          MR. SADOW:  -- so...

1          THE COURT:  So, you know, I've got an open mind about
2     that.  I mean, we generally don't allow it, but I've got an
3     open mind about it.
4          Is there anything else that any defendant wants on
5     the record?
6       (No response.)
7          THE COURT:  All right.  We're in recess.
8          COURT SECURITY OFFICER:  All rise.
9       (The proceedings concluded at 2:59 p.m.)
10                              - - -
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

### <u>CERTIFICATE</u>

```
UNITED STATES DISTRICT COURT    )
                                )
MIDDLE DISTRICT OF FLORIDA      )
```

  I hereby certify that the foregoing transcript is a true and correct computer-aided transcription of my stenotype notes taken at the time and place indicated herein.


   DATED this 6th day of July, 2022.



```
                    s/Shannon M. Bishop
                    Shannon M. Bishop, RDR, CRR, CRC
```