## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

vs.                                                    CASE NO. 3:20-cr-86-TJC-JBT

JORGE PEREZ and
RICARDO PEREZ

_____

### O R D E R

Earlier this year, after a complex multi-week trial of eight defendants on twenty-three counts, the jury found two Defendants—brothers Jorge and Ricardo Perez—guilty of Conspiracy to Commit Health Care Fraud and Wire Fraud (Count 1), Health Care Fraud (Counts 2–6), and Conspiracy to Commit Money Laundering (Count 8). (Docs. 768–69). However, the jury could not reach a verdict as to any other charge against them, nor as to any other Defendant. (See Docs. 768–75).[1]

Post-trial, the Perezes filed Motions for New Trial as to the counts of conviction (Docs. 786, 824, 849), which are now before the Court. The government responded in opposition (Docs. 831, 851), and the Perezes replied (Doc. 842). After the Court held a hearing on October 27, 2022, the record of

_____

[1] At the July 27, 2022 status conference, the government stated that if the guilty verdicts are upheld, it does not intend to retry the Perezes on the remaining counts.

which is incorporated by reference (Doc. 857), the parties filed supplemental briefing (Docs. 863, 864, 865, 867). The Motions for New Trial are due to be denied. The Court addresses each issue in turn.

## I.   ALLEGED JUROR MISCONDUCT

The most contentious issue raised by the Perezes involves allegations of juror misconduct. (Doc. 824 at 1–8). For this issue, the relevant facts begin on the last day of trial.

### a. Facts

After seven weeks, over 45 witnesses, and several days of deliberations, the trial concluded on June 27, 2022. (See Doc. 798). The jury returned their verdicts, and the Court declared a mistrial on the counts on which the jury could not agree. Id. at 97:2–23. All Defendants faced potential retrial on the mistried counts, including Jorge and Ricardo Perez, and the government received twenty-one days to decide whether it would retry the case. Id. at 98:1–17. After the verdicts were published but before the Court discharged the jury, Defendant Fletcher's counsel asked the Court whether it would waive Local Rule 5.02. Id. at 93:11–19.

Local Rule 5.02(d) expressly prohibits communication with a juror absent Court approval. See Local Rule 5.02(d)(1) ("No party may communicate with a juror or respond to a juror's unsolicited communication during or after trial."). To overcome this bar and communicate with a juror, the party must "move for

2

permission within fourteen days after the verdict" and "identify in the motion the juror and the need for the communication[.]" <u>See</u> Local Rule 5.02(d)(3)(A)–(B). Notably, if the Court grants the motion, the Local Rule also requires the movant "[to] abide by any condition the judge imposes, including on the place, manner, and scope of, and the participants in, the communication." <u>See</u> Local Rule 5.02(d)(3)(C).

The Court deferred discussing the Local Rule with Defendant Fletcher's counsel until after the jury's discharge. (Doc. 798 at 93:11–19). Then, while thanking the jurors for their service, the Court informed them that it generally does not allow the attorneys nor parties to contact them, but that it might do so at a later time. <u>Id.</u> at 94:20–95:10. The Court explained that: "[E]specially in a situation where a jury was not able to reach a verdict, sometimes it can be helpful for the lawyers to talk to jurors, if they're willing to talk. So I'll see about that. But for now that's the rule." <u>Id.</u> at 95:2–5. After the jury's discharge, the Court revisited counsel's request to waive Local Rule 5.02(d)'s prohibition against juror contact:

> **THE COURT:** Yeah. I think what I'll do on that, Mr. Sadow . . . I don't think I have done that before, but I'm not completely adverse to it, <u>depending on the situation</u>. But if you could . . . file a written motion on that, and . . . if anybody else wants to join in it, then that's fine. But let's get it of record. Okay?
>
> **MR. SADOW**: Absolutely. It appears that the motion is required under 5.02(d) –

…

**THE COURT**: I've got an open mind about that. I mean, we generally don't allow it, but <u>I've got an open mind about it</u>.

<u>Id.</u> at 100:13–101:3. (emphasis added).

Two days post-trial, in accordance with Local Rule 5.02(d)(3)(A), Defendant Fletcher filed a Motion for Permission to Communicate with Jurors Post-Trial. (Doc. 777). In his motion, Defendant Fletcher requested to communicate with the jurors "to learn more about his own case, the strengths and weaknesses of his arguments and styles, and the effectiveness of how his case was presented," particularly as "retrial may be inevitable." <u>Id.</u> at 1, 3. He also stated: "<u>The purpose of this motion and the communications, if permitted, is *__not__* to challenge the validity of the verdicts against Jorge Perez and Ricardo Perez.</u>" <u>Id.</u> at 1. (bolding and italics in original; emphasis otherwise added). He further stated that "Fletcher seeks only a firsthand evaluation of what he did or did not do well at trial, and in part to aid him in determining whether a retrial is in his best interest . . . <u>Fletcher is not fishing for evidence of misconduct</u>; he is only pursuing the rare opportunity to learn from the <u>unique posture</u> of this case." <u>Id.</u> at 3–4. (emphasis added).

One day later, before the Court could act on the motion, the government informed the Court that two of its attorneys spoke with one juror at length, despite Local Rule 5.02(d)'s prohibition, the Court's statements on the last day

4

of trial, and Defendant Fletcher's pending motion. (See Doc. 780). The Court scheduled a hearing for July 5, 2022, to investigate the government's contact with the juror and to hear Defendant Fletcher's Motion. Id. Defendant Fletcher then filed an Amended Motion for Sanctions, requesting that the Court disqualify two of the government attorneys from the case because of the Local Rule violation. (Doc. 782 at 5). Several defendants filed motions or notices joining one or both motions before the hearing. (See 778, 779, 783, 784, 785).

During the July 5, 2022 hearing, the Court asked about the government's contact with the juror, and heard each defense counsel's response, including counsel for Defendants Jorge Perez and Ricardo Perez. (Doc. 854). Both Jorge and Ricardo Perez's counsel joined the Motion for Sanctions ore tenus to the extent they requested the government disclose its communication with the juror in a detailed memorandum, and Jorge Perez's counsel suggested he wished to join in the motion to communicate with the jurors:

> **THE COURT**: So we'll start, as we always do, Mr. Bell, as the first named defendant, what -- do you have anything you wish to say?
>
> **MR. BELL**: No, other than, of course, this, Judge. To the extent that the Court -- I do think for Mr. Jorge Perez's perspective that we should have an accurate summary of exactly what was said during the course of the interview for whatever -- for whatever we could make of it. We have a somewhat different interest than the kind of academic interest in retrying the case, so it is important to know not only what the juror communicated to Mr. Duva, but also to the extent that within the Court's limitations that we have the opportunity to participate in any other inter- or at least some input

<u>in or knowledge of whatever is said in the course of any other interviews</u>.

**THE COURT**: Mr. Landes.

**MR. LANDES**: Judge, I'm not going to speak to the sanction aspect; other lawyers have done that. However, I will say that I believe this was a very unusual verdict after several days of deliberation. . . . So the portion where I want everything disclosed, I join in that strenuously. . . . I think a detailed memorandum of exactly what was said is in order.

<u>Id.</u> at 22:17–23:20. (emphasis added). After hearing from each party, the Court ruled that the government's attorneys violated Local Rule 5.02, but declined to disqualify the attorneys from the case. <u>Id.</u> at 30:3–35:11. Instead, as a sanction for their violations, the Court required the government to memorialize in detail the attorneys' conversation with the juror for circulation to all defense counsel. <u>Id.</u> at 33:3–20. Additionally, as the Court previously was inclined to permit all of the attorneys to communicate with the jurors post-trial before the government's violation, the Court determined an appropriate second sanction would be to prohibit the government from having any future contact with the jurors. <u>Id.</u> at 34:12–19, 36:20–37:7.

The Court also granted Defendant Fletcher's Motion for Permission to Communicate with Jurors Post-Trial and allowed any defense counsel to communicate with the jurors, including Jorge and Ricardo Perez's counsel, as both the Perezes faced potential retrial, and Jorge Perez's counsel conveyed he wished to participate in juror interviews. <u>Id.</u> at 22:25–26:6, 35:12–18. In this

ruling, though, the Court identified specific limitations on any communications

with jurors and stated at length the scope of permissible and impermissible

contact:

> **THE COURT**: Secondly, I am inclined to grant the Motion for
> Permission to Communicate With the Jurors Post-Trial and to
> allow any defense lawyer who wishes to do so to initiate those
> communications with the jurors as appropriate, with the
> limitation that <u>I do not favor asking jurors to talk about what
> happened in the deliberation room and what other people's views
> were.</u>
>
> I think the <u>purpose</u> of the interview or the discussion would be to
> find out what their impressions were, what they thought was
> important or not important or what they would have liked to have
> seen for themselves or not seen, <u>but I don't think it's an
> appropriate -- it's not designed to investigate deliberations or to
> create a basis for post-trial motions or anything like that</u>. It's
> <u>designed to get information from jurors</u> who may be willing to talk
> about the case so that those who . . . <u>may be having to go through
> a retrial or whatever other information might come of it would be
> -- would be better informed if they have to do it again</u>.

<u>Id.</u> at 35:12–36:5. (emphasis added). The Court then directly addressed Jorge

and Ricardo Perez's counsel:

> **THE COURT**: Now, that doesn't mean I would disallow Mr. Bell
> or Mr. Landes from having those interviews as well, <u>but I'm not
> authorizing it for the purpose of trying to get into the internal
> deliberations of the jury, which is not supposed to be the subject of
> discussion</u>. I'm authorizing it to allow individual jurors to talk to
> lawyers, if they care to, <u>about their impressions of the case and
> what they liked and what they didn't like and what they would
> have liked to have seen and so forth</u>, especially knowing that
> they're not going to be called to serve again.

Id. at 36:6–15. The Court's Order following the hearing reaffirmed these restrictions. (See Doc. 800).

In the Order, the Court incorporated the hearing record and reiterated that the Court limited communications with jurors to the jurors' individual impressions, ordered defense counsel not to speak with any juror about the deliberation process or internal discussions, and also instructed counsel to caution the jurors not to talk about deliberations or internal discussions. Id. at 1–2. The Court's Order read:

> 2.     Fletcher's Motion for Permission to Communicate with Jurors Post-Trial (Doc. 777) is **GRANTED, subject to the following limitations**. Defense counsel may communicate with a juror about his or her individual impressions of the proceedings and the evidence. However, defense counsel may **not** speak with any juror about the jury's deliberation process or internal discussions, and should caution any juror not to talk about the deliberation process or any internal discussions.

Id. at 2. (emphasis in original). After the government filed its memorandum recapitulating its conversation with the juror, the Court ordered the dissemination of the memorandum to defense counsel and reminded defense counsel of the restrictions in place on their conversations with jurors again. (See Doc. 804 at 2).

Then came the Perezes' Joint Motion for New Trial. (Doc. 824).[2] The Perezes claim they discovered juror misconduct through their post-trial juror

---

[2] Before the Joint Motion, Ricardo Perez filed a brief Motion for Judgment

interviews. Id. at 1–8. They allege four instances of misconduct. First, the Perezes allege they learned from Juror 10 that she overheard a conversation between two other jurors, whom she declined to identify, where one juror told the other that his wife googled Jorge Perez and learned he had been "associated with 16 or 17 other hospitals." Id. at 2. Second, Juror 29 told defense counsel that during deliberations she heard "one or two other unidentified jurors" say that Jorge Perez was "connected with 16 or 17 other hospitals." Id. Third, Juror 10 also told defense counsel that a different juror, Juror 55, said during deliberations that "she had been a juror in seven previous trials," even though she said she served on only two juries during jury selection. Id. at 6. Fourth, Juror 10 reported that Juror 55 also "repeatedly discussed her prior experience as a former Blue Cross employee during deliberations," which the Perezes contend was not fully disclosed during jury selection. Id. at 6–8. As relief, the Perezes request that the Court summon all the jurors, and the unidentified juror's wife, for investigation into each instance of alleged misconduct. Id. at 5–6, 8.

In response, the government challenged the allegations of juror misconduct and noted that the defense had not attached affidavits or other

_____

of Acquittal or New Trial, which raised no issues related to juror misconduct. (Doc. 786).

evidence in support. (Doc. 831 at 11). The Perezes then requested leave to reply, which the Court granted. (Docs. 832, 833). In support of their reply, the Perezes attached an affidavit signed by Jorge Perez's and Ricardo Perez's counsel where they described their conversations with the jurors:

> 4.      During the interview of Juror 10, someone asked the juror something to the effect of whether he/she had done any outside research on the case or any of the defendants. Juror number 10 said no. Juror 10 was then asked if he/she was aware of any other members of the jury who had done outside research during the case. Juror number 10 stated, in sum, at one point during the case he/she walked in a room and overheard two other jurors talking. One juror told the other, his wife had googled Jorge Perez and learned he had been affiliated with 16 or 17 hospitals. The two other jurors stopped talking about it soon after Juror number 10 entered the room. Juror number 10 declined to identify the two other jurors.
>
> 5.      Juror number 29 was interviewed earlier in the day of July 15, 2022. The protocol for his/her interview was the same as it was for Juror number 10. Juror 29 also denied having done any outside research during the trial about the case or the defendants in response to a question. But this juror then volunteered that during deliberations one of the other jurors stated that Jorge Perez was connected to multiple other hospitals (16 or 17). Juror 29 stated he/she asked when that evidence had been introduced at trial and received no response.

(Doc. 842 at 9–12).

While the jurors' alleged statements did not seem overly concerning or prejudicial given that multiple references were made throughout trial to Jorge Perez's involvement in other hospitals (See Docs. 744 at 171:13–173:4, 181:4–182:1, 196:4–14; 793 at 90:5–91:1), the Court nevertheless undertook to

10

investigate the matter. <u>See, e.g.,</u> <u>United States v. Ifediba</u>, 46 F.4th 1225, 1238–40 (11th Cir. 2022). However, the description of the juror interviews immediately gave the Court pause. (Doc. 857 at 10:12–17). The initial questions asked to both Jurors 10 and 29 seemed beyond the scope of the Court's Order permitting juror contact, as they did not relate to the juror's "individual impressions of the proceedings and the evidence," but rather appeared solely designed to investigate potential juror misconduct. <u>Id.</u> at 10:2–17. Further, the follow up question about whether other jurors performed outside research concerned the Court more, as this question about what research <u>other jurors did</u> involved "internal discussions" among the jury, which the Court explicitly ordered counsel not to ask about and directed counsel to caution jurors against sharing. <u>Id.</u> at 11:18–12:2. Not only that, the Court also felt this questioning exceeded the permissible scope of the interviews, which the parties had represented and the Court made clear was to assist in preparing for retrial, <u>not</u> to challenge the verdicts. (<u>See</u> Docs. 777 at 1; 854 at 35:12–36:15). In short, the jurors' statements appeared to arise solely in response to questions from counsel the Court had prohibited.

The Court held a hearing on October 27, 2022 on the Joint Motion for New Trial. (Docs. 845, 857). At the outset, the Court identified the series of events leading up to the Joint Motion for New Trial, along with its initial belief that defense counsel procured the jurors' statements in violation of Local Rule 5.02

11

and the Court's Order. (Doc. 857 at 4:19–13:21). The Court finished its opening

remarks saying:

> **THE COURT**: So I recognize that typically the Court would just
> respond to arguments made by the parties, but . . . I felt like I had
> been led to allow these interviews, which otherwise would have
> been directly prohibited by the local rules -- I felt like I had been
> led to allow that <u>under the express assurance that the questions
> would not be asked and the information would not be used in order
> to create a basis for Jorge Perez and Ricardo Perez to file a motion
> for new trial</u>.
>
> And I feel like in those circumstances I just owe it to the process,
> and <u>especially in light of the fact that I've already enforced the
> local rule against the government</u> -- I just felt like it was something
> I needed to raise . . . and to give Mr. Bell and Mr. Landes an
> opportunity to respond, because I wouldn't want to base a decision
> on something without, obviously, offering the -- the affected parties
> an opportunity to be heard . . . <u>I do need to understand this</u>.

<u>Id.</u> at 13:2–21. (emphasis added). In response, defense counsel initially

attempted to argue that the questions asked to the jurors were permissible as

the jurors' "individual impressions," but Jorge Perez's attorney admitted there

was conflict among defense counsel about whether the questions were

permissible at all:

> **MR. BELL**: Let me say this, Judge, that there was some internal
> dispute about the scope of the Court's order, as to whether this was
> a permissible line of inquiry, and, essentially, rather than seek
> guidance from the Court, I opted to elect that it was reasonably
> permitted by the Court's order and, if nothing else, acquiesced to
> the -- to this kind of line of questioning.
>
> To the extent that that violates -- I guess the ultimate question is,
> now that I was given the opportunity to participate in these
> interviews, that I was compelled under the circumstances to ask a

> question that didn't, on its face, go to -- at least in my view, there was a colorable argument that it may have affected the jurors' impressions. But to the extent that that exceeded the scope of the Court's order and I acquiesced, if nothing else, in it, I accept responsibility for that.

Id. at 14:5–18:21. On further inquiry, Bell reiterated the internal disagreement among the defense concerned "[w]hether these type of questions were permissible[.]" Id. at 20:19–24. And when asked by the Court, "if you didn't know and you weren't sure, why didn't you come back and ask me," Bell responded "I should have, Judge. But now we're here." Id. at 20:25–21:2. Bell also confirmed that the same questions about extrinsic conduct were addressed to all nine jurors who agreed to be interviewed. Id. at 52:9–12.[3]

Later in the hearing, Ricardo Perez's counsel argued that the jurors' statements were volunteered as "it's impossible to control what people say once they start talking," to which the Court responded:

> **THE COURT:** I was talked into [allowing the juror interviews]. I was talked into it under the representation that it would not be used as a basis to -- to be where we are right this minute . . .

---

[3] Bell again confirmed that defense counsel internally disagreed about whether the "extrinsic conduct" questions were allowed:

> **THE COURT:** A matter as to which there was internal disagreement among the defense lawyers as to the propriety of it, because apparently some of your number thought that that went beyond what I was envisioning, correct?

> **MR. BELL**: Yes, Judge.

Id. at 52:9–17.

[A]ccording to [your] affidavit -- <u>it wasn't that the juror volunteered this. You asked -- or somebody asked</u>. And . . . then you followed up. "No, I didn't do any research. "Well, did anybody else do any research?" <u>That's not . . . a juror just volunteering information</u>. And that's a sworn affidavit filed by two officers of this court as to what happened. And so I'm having a little -- a little bit of a problem with that.

**MR. LANDES:** All right. I understand.

<u>Id.</u> at 44:22–46:3.

By the conclusion of the hearing, although the Perezes' counsel attempted to argue that the Court's ruling permitted the questions they asked to the jurors, they also admitted: that the defense attorneys disagreed about whether the Court allowed those questions (18:6–21); that they should have clarified with the Court if there was ambiguity in its ruling (20:19–21:2); that they did not review Defendant Fletcher's Motion seeking relief from Local Rule 5.02 where he represented to the Court that the purpose of any communications would <u>not</u> be to challenge the verdicts against the Perezes (20:12–18); that they had not reviewed the hearing transcript from July 5, 2022 hearing, which was incorporated into the Court's Order (<u>id.</u>); and finally, neither counsel refuted that it was previously represented to the Court that the juror interviews would not be used to create bases for new trials (16:19–17:1; 19:5–16). Following the October 27, 2022, hearing, the Court received supplemental briefing on the Local Rule violation issue. (Docs. 864, 865). Now, the matter is before the Court.

14

**b. Discussion**

When a party alleges juror misconduct occurred, a court starts with the presumption of an impartial jury. United States v. Siegelman, 640 F.3d 1159, 1182 (11th Cir. 2011) (citing United States v. Winkle, 587 F.2d 705, 714 (5th Cir. 1979)). A party only overcomes that presumption when they obtain admissible evidence of juror misconduct that "makes an adequate showing of extrinsic influence to overcome the presumption of jury impartiality." United States v. Cuthel, 903 F.2d 1381, 1383 (11th Cir. 1990) (quoting United States v. Barshov, 733 F.2d 842, 851 (11th Cir. 1984) (internal quotations omitted)). As a threshold requirement, a party must obtain evidence of juror misconduct lawfully for it to be admissible. See United States v. Venske, 296 F.3d 1284, 1291 (11th Cir. 2002); Cuevas v. United States, 317 F.3d 751, 752–53 (7th Cir. 2003) (finding that the district court properly excluded juror misconduct evidence when the defendant's family members hired an investigator to interview jurors in violation of a local rule prohibiting such communication).

As a party does not have an automatic right to question jurors post-trial, "it is well settled that district courts have the power to make rules and issue orders prohibiting attorneys and parties from contacting jurors, whether directly or indirectly, absent prior court approval . . . . [and] [c]oncomitant with the district court's power to make rules and issue orders is the power to enforce those rules and orders." Venske, 296 F.3d at 1291 (internal citations omitted)

15

(collecting cases). "And, where attorneys or parties obtain evidence in violation of the court's rules or orders, the court may exercise its power to enforce those rules and orders by excluding the evidence wrongfully obtained." Id. The Court's power to enforce its own rules and orders serves "interests important to the integrity of the judicial process." Id. at 1291–92. Those include "the court's strong interest in protecting jurors from threats and needless harassment from unsuccessful parties," and "preserving the finality of the jury's verdict." Id. at 1291–92.

Venske exemplifies the protection of these interests. In that case, which also arose out of the Middle District of Florida, two defendants filed a motion for new trial and requested an evidentiary hearing based on alleged juror misconduct. Id. at 1286–87. In support, they filed two affidavits from private investigators alleging juror misconduct and extrinsic influence on jurors. Id. at 1287–88. For the first affidavit, the district court refused to consider any portion of it related to the jury's internal workings and deliberative process pursuant to Federal Rule of Evidence 606(b). Id. at 1288. The court then determined that the remaining portions of the affidavit failed to satisfy the parties' burden of credible and persuasive evidence of juror misconduct. Id. For the second affidavit, the court determined the defendants may have procured it in violation of the local rule prohibiting contact with jurors and set an evidentiary hearing to investigate the circumstances of the post-trial contact with jurors. Id. at

16

1288–89. After the hearing, the trial court determined that the defendants defied the local rule in obtaining the second affidavit, and thus, excluded the affidavit and refused to conduct an evidentiary hearing on the allegations therein. Id. at 1289. Lacking sufficient evidence of misconduct, the court denied the motions for new trial. Id.

On appeal, the defendants challenged the trial court's exclusion of the evidence of juror misconduct. Id. at 1290–92. They argued the trial court abused its discretion in excluding the second affidavit as a sanction for their violation of the local rule. Id. at 1290. The Eleventh Circuit disagreed. Id. at 1290–91. Concluding that the trial court's enforcement of its own rules against juror contact served strong interests, the Eleventh Circuit affirmed the district court's decision. Id. at 1291.

A more recent Eleventh Circuit case, United States v. Cavallo, 790 F.3d 1202 (11th Cir. 2015), similarly illustrates a trial court's interest in enforcing limitations on juror contact. In Cavallo, the defendants sought reversal of their convictions based on information about jury deliberations learned from a juror post-trial. Id. at 1225. On the day of the defendants' sentencing hearing, a juror from the trial approached one defendant and his attorney in the hallway, asked if they could speak, and the attorney responded they could not. Id. at 1221. The court then directed the juror not to communicate with anyone involved in the case. Id. But, several months later, defense counsel forwarded an email to

prosecutors that had been sent by the juror, which relayed not only the juror's impressions of the case and information about jury deliberations, but also information that a fellow juror had "learned from the internet" that one of the co-conspirators had pleaded guilty and received a sentence. Id. at 1222.

At a hearing to learn the circumstances of the juror communication, the juror testified that the defendant contacted him "out of the blue," which then led to several communications about the juror's service. Id. at 1223. The district ruled that the defendant violated the Middle District of Florida local rule restricting contact with jurors, and as a sanction, the court excluded the juror's email against the defendant and his co-defendant. Id. at 1225. Like in Venske, on appeal, the Eleventh Circuit affirmed the district court's finding that the defendant violated the local rule and its decision to strike the evidence of juror misconduct procured through the defendant's violation. Id. at 1227–29. The Cavallo court recapitulated its earlier reasoning in Venske and noted "we explained the strong policy interests in preventing the type of conduct engaged in by the defendants there, and by Defendants here. Those words bear repeating." Id. at 1228.

Like the trial courts in Venske and Cavallo, accepting the sworn affidavit of Jorge and Ricardo Perez's counsel, as well as their statements at the October 27, 2022 hearing on the Joint Motion for New Trial, the Court finds that counsel violated Local Rule 5.02(d) and the Court's Order when they asked the jurors

whether they performed outside research on the case and whether any other jury members performed outside research. Local Rule 5.02(d)(1) expressly prohibits any contact with jurors without the Court's permission. The Court authorized juror contact after receiving assurance that the communication would not be used to challenge the validity of the verdicts nor fish for misconduct. (See Docs. 777 at 1, 3–4; 800).[4] Most critically, the Court authorized that contact with specific limitations and made the scope of the contact clear, including that it would not be "to investigate deliberations or to create a basis for post-trial motions . . . ." (Doc. 854 at 35:19–25). Moreover, the Order—which incorporated the record of the July 5, 2022 hearing—reiterated that the Court allowed communication only about the juror's "individual impressions of the proceedings and the evidence" and forbade communication "about the jury's deliberation process or internal discussions[.]" (Doc. 800 at 2); (see Doc. 854 at 35:12–36:5).

---

[4] At the October 27, 2022 hearing and in their supplemental briefing, the Perezes' counsel attempted to distance themselves from Defendant Fletcher's motion that contained explicit representations that the juror contact would not be used to challenge the guilty verdicts. (See Docs. 777 at 1; 865 at 1–2). But the motion with those representations is what was required under Local Rule 5.02(d)(3)(A), what the Perezes effectively joined, and what the Court relied on and granted (See Doc. 800). The Perezes' counsel therefore cannot divorce themselves after-the-fact from the representations in the motion.

Defense counsels' question about whether the jurors performed outside research was not a question about the jurors' "individual impressions of the proceedings and the evidence." Rather, inherently the question is designed to elicit evidence of juror misconduct, which exceeds the scope of the Court's Order. Additionally, the follow-up question about what research other jurors performed similarly exceeds the scope of the jurors' individual impressions. It invaded the internal communications of the jury—as there is no other way a juror would know what research another juror did—which the Court expressly forbade. The questions served no purpose other than to challenge the validity of the verdicts in a motion for new trial. (Doc. 857 at 11:9–17, 15:25–16:2). The questions, therefore, violated both the letter and the spirit of the Court's Order permitting communications with jurors.

To the extent the Perezes argue their questions were permitted because the Court's ruling during the hearing was inconsistent, this is unpersuasive. (Doc. 865 at 1–9). Counsel cherry-picks excerpts of their statements and the Court's statements made during the July 5, 2022 hearing to create contrived discrepancies in the Court's ruling. See id. The Perezes' counsel quotes portions of their own statements to show "that they were interested in information which would support a motion for new trial." Id. at 2. But the statements cited by counsel do not show that they wished to ask juror questions that would challenge the validity of the verdicts. Even so, after counsel made those

20

statements, the Court <u>then</u> said to all counsel that the communications were "not designed to investigate deliberations or to create a basis for post-trial motions . . . ." (Doc. 854 at 35:19–36:5). The Court's Order permitting the interviews reaffirmed that principle. (Doc. 800). The Court was confident that all parties understood this based on the discussions regarding the circumstances of the juror interviews, which the Court granted based on the representations in the motion that: "The purpose of this motion and the communications, if permitted, is ***not*** to challenge the validity of the verdicts against Jorge Perez and Ricardo Perez." (Doc. 777 at 1). (emphasis in original).

The Perezes' argument that the Court's ruling was ambiguous is comprised of quotes of the Court's ruling during the hearing. (Doc. 865 at 3–4). But reading the quotes cited only demonstrates that the Court identified at length the guardrails of defense counsels' communication with the jurors. Local Rule 5.02(d)(3)(C) required counsel to abide by any condition the Court imposed concerning the permissible scope of the communication. This they failed to do. Instead, they asked questions designed to manufacture evidence of juror misconduct in direct violation of the Local Rule and the Court's Order.

In its supplemental briefing, the government agrees that the Perezes' counsel violated the Court's Order, but nevertheless recommends that the Court interview Jurors 10 and 29 "to focus on the procedure of how the information about an unidentified juror's spouse googling information developed, which will

also shed light on the substance of how, when, and where the extrinsic information was learned, and how (if at all) the information was used." (Doc. 864 at 10–12). However, the Court sufficiently investigated this topic when it received counsels' affidavit describing the juror contact and held the October 27, 2022 hearing where it considered counsels' statements. Based on this evidentiary record, no further inquiry is needed and the Court can readily determine that counsels' questions violated the Court's Order. Additionally, unnecessarily questioning the jurors goes against the strong policy interests in protecting jurors and the judicial process identified in <u>Venske</u> and <u>Cavallo</u>. <u>See Venske</u>, 296 F.3d at 1291–92; <u>Cavallo</u>, 790 F.3d at 1228. <u>Cf.</u> <u>United States v. Ifediba</u>, 46 F.4th 1225, 1238 (11th Cir. 2022) ("A district court has 'broad discretion in deciding whether to interrogate jurors regarding alleged misconduct' . . . 'The investigative procedure to be used in checking for juror misconduct falls within the discretion of the district court.'") (internal citation omitted).

Accordingly, Jurors 10 and 29's statements made in response to counsels' questions about the research other jurors performed were procured in violation of Local Rule 5.02(d) and the Court's Order. (Doc. 800). The Court therefore will not consider those statements.[5] Similar to <u>Venske</u> and <u>Cavallo</u>, the jurors'

---

[5] For clarity, the Court cannot consider Juror 10's statement that she overheard two jurors, whom she declined to identify, that one juror's wife

statements are excluded, and absent admissible allegations of juror misconduct, the Court denies the Joint Motion for New Trial on these grounds.

The Court also will not consider Juror 10's and 29's statements about Juror 55's prior jury service and professional experience. [6] Counsel never identified what questions prompted Jurors 10 and 29 to comment on Juror 55's statements made during deliberations. However, even if the questions asked were allowed, the responses remain inadmissible under Federal Rule of Evidence 606(b)(1), which provides that "a juror may not testify about any statement made or incident that occurred during the jury's deliberations . . . . [and] [t]he court may not receive a juror's affidavit or evidence of a juror's statement on these matters."

Here, the Perezes' counsel admit that Jurors 10 and 29 both describe comments made by Juror 55 during deliberations. (Doc. 842 at 10). As Rule 606(b)(1) bars any testimony or evidence about statements made during the jury's deliberations, the evidence about Juror 55's statements is presumptively

---

googled Jorge Perez and learned he was associated with 16 or 17 other hospitals. (See Doc. 824 at 2). Nor will the Court consider Juror 29's statements that during deliberations she heard "one or two other unidentified jurors" say that Jorge Perez was "connected with 16 or 17 other hospitals." Id.

[6] In the Perezes' counsels' Joint Motion for New Trial, they state that only Juror 10 reported Juror 55's statements made during deliberations; but in their affidavit, they state that both Juror 10 and 29 commented on Juror 55. (Compare Doc. 824 at 6 with Doc. 842 at 10).

excluded. Further, no exception under Rule 606(b)(2) renders the evidence admissible, as Juror 55's purported statements do not involve extraneous prejudicial information, outside influence, or mistake. The Court therefore strikes the evidence related to Juror 55's statements and denies the Joint Motion for New Trial on this ground.[7]

## II.   WEIGHT OF THE EVIDENCE

The Perezes next argue that the guilty verdicts went against the weight of the evidence. (Doc. 824 at 8–14). Federal Rule of Criminal Procedure 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." This standard permits the Court to "weigh the evidence and consider the credibility of the witnesses." United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir.

---

[7] Even if the evidence about Juror 55's statements was admissible and further investigated, the Court strains to see how the information—if true— would entitle the Perezes to a new trial. The Perezes have not provided evidence that Juror 55 failed to answer honestly a material question on voir dire, nor that a correct response would have provided a valid basis for a challenge for cause. Cf. Torres v. First Transit, Inc., 979 F.3d 876, 882 (11th Cir. 2020). During voir dire, Juror 55 reported that she previously served on two juries and described her role at Florida Blue. (Doc. 831 at 14). Whether she previously served on seven or two juries likely would not have created a valid for cause challenge during jury selection. Further, the Perezes fail to explain how she was dishonest about her professional experience at Florida Blue. Cf. Dockery v. Texas Dept. of Crim. Justice, No. 21-20439, 2022 WL 3097849, at *3 (5th Cir. Aug. 3, 2022) (holding that a juror could permissibly discuss his own employment and his own experiences during deliberations).

1985). "But Rule 33 isn't an invitation for the court to reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." <u>United States v. Witt</u>, 43 F.4th 1188, 1194 (11th Cir. 2022) (internal quotation marks and citation omitted). "Instead, to warrant a new trial, the evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." <u>Id.</u> (internal quotation marks and citation omitted). "That happens only in the rare case in which the evidence of guilt although legally sufficient is thin and marked by uncertainties and discrepancies." <u>Id.</u> (internal quotation marks and citations omitted).

The Perezes contend that the government's evidence fell short in establishing the elements of Count 1 for Conspiracy to Commit Health Care Fraud and Wire Fraud. (Doc. 824 at 9–14). The Perezes made a similar argument in their Joint Motion for Judgment of Acquittal (Doc. 821 at 2–14), which the Court denied (Doc. 866). Though the standards of review are different for each motion, the Court nevertheless reaches the same conclusion. After presiding over the multi-week trial and carefully reviewing the evidence admitted against each Defendant, the Court finds sufficient evidence supporting the jury's verdict and that the evidence does not so preponderate against the verdict as to render it a miscarriage of justice. Therefore, the Joint Motion New Trial is due to be denied for this reason, as well.

25

## III.   EVIDENTIARY RULINGS

The Perezes also contend that the Court improperly admitted two categories of evidence. (Doc. 824 at 15–25). First, they ask the Court to reconsider its ruling on admitting the claims spreadsheets created by the victim insurance companies as business records pursuant to Federal Rule of Evidence 803(6). Id. at 15–19; see, e.g., Doc. 684 at 72:15–74:10. The admission of the claims spreadsheets has been litigated several times before in pretrial motions and during trial. (See e.g., Docs. 450, 567, 684 at 71:24–72:14). In their motion, the Perezes resurrect an argument raised pretrial: that the claims spreadsheets were testimonial statements and therefore violated the Confrontation Clause when admitted into evidence because the defense had no opportunity to confront the person(s) who created the spreadsheets. (Doc. 824 at 15–19).

"The Confrontation Clause, which provides that a defendant has the right to be confronted with the witnesses against him, 'only applies to testimonial statements, specifically testimonial hearsay.'" United States v. Gutierrez, 810 Fed. App'x 761, 765 (11th Cir. 2020) (quoting United States v. Curbelo, 726 F.3d 1260, 1272 (11th Cir. 2013)).[8] Testimonial statements include those "made

---

[8] The Court does not rely on unpublished opinions as binding precedent, however, they may be cited when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022).

under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Crawford v. Washington, 541 U.S. 36, 52 (2004) (quotation marks and citation omitted). The government presented ample testimony at trial establishing that the claims spreadsheets contained data stored by the insurance companies, not data created by the insurance company for use at trial. (See, e.g., Doc. 684 at 71:8–17). The Eleventh Circuit has held that similar types of data are not testimonial under the Confrontation Clause. See United States v. Melgen, 967 F.3d 1250, 1260–61 (11th Cir. 2020) (holding that Medicare records were non-testimonial and did not implicate the Confrontation Clause, and that the Confrontation Clause did not require that the defendant be allowed to cross-examine decisionmakers regarding the criteria used to make summary charts of the Medicare records); United States v. Fuertes, 723 Fed. App'x 733, 738 (11th Cir. Jan. 23, 2018) (noting that an expert "testified based on his own review of the clinics' data on insurance claims, as well as other business records, none of which were testimonial for Confrontation Clause purposes").

Further, that the insurance companies pulled their claims data from their data warehouses and provided it in the spreadsheet format to the government does not render the spreadsheets testimonial. See United States v. Clotaire, 963 F.3d 1288, 1293–94 (11th Cir. 2020) (holding records admissible when the "format of the records was changed," so long as the "communicative content"

was not, and determining that "the government's selection of which record—or which portion of a longer record—to introduce at trial [does not] transform a qualifying business record into a record prepared for the purposes of trial"); United States v. Ross, 33 F.3d 1507, 1517 n.17 (11th Cir. 1994) (explaining that foreign immigration records were not inadmissible merely because "they consisted of computer print-outs prepared for purposes of litigation"); United States v. Hernandez, 913 F.2d 1506, 1512–13 (10th Cir. 1990). ("[S]o long as the original computer data compilation was prepared pursuant to a business duty in accordance with regular business practice, the fact that the hard copy offered as evidence was printed for purposes of litigation does not affect its admissibility."). Thus, the claims spreadsheets were properly admitted at trial and their admission did not violate the Confrontation Clause.

The Perezes also argue that the jury improperly viewed portions of a letter (Government's Exhibit 69), which created unfair prejudice. (Doc. 824 at 19–25). The letter, written by witness Mark Thomas, Esq. and addressed to Defendant James Porter Jr., provided legal opinions on a business arrangement between Porter's company and Putnam County Memorial Hospital. (See Doc. 817-327). The letter referenced several statutes, including the Florida Anti-Kickback and Anti-Patient Brokering/Anti-Fee Splitting Law. (See Doc. 748 at 201:3–7). The Court originally permitted the government to show the letter to the jury and gave the limiting instruction that the letter "bears only on the case

28

involving James S. Porter, Jr., and Sean Porter, and not as to any other defendant." Id. at 188:23–189:1. During cross-examination, the government asked about Thomas's opinions related to the anti-kickback statute referenced in his letter, and defense counsel objected. See id. at 201:3–203:9. The Court initially overruled the objection, but then ordered a sidebar at which the Court cautioned the government not to ask about criminal statutes not being tried in the case. Id. at 203:11–204:4.

After further objection from defense counsel, the Court dismissed the jury, reviewed the letter again, and ruled the government had the right to cross-examine the witness about the letter, as it related to the Porters' advice of counsel defense, but ordered the government not to show portions referencing the anti-kickback and anti-brokering laws nor question the witness about those areas. Id. at 204:14–216:18. When the jury returned, the Court instructed: "Before we broke, you heard brief testimony and had displayed Florida statutes regarding, quote, brokering, close quote, and, quote, anti-kickback, close quote, laws. Those laws are not relevant to your consideration, and I instruct you to disregard that testimony and the display that was put up on -- on the screen there." Id. at 225:24–226:4. The Court then admitted only a redacted copy of the letter into evidence. Id. at 257:15–20; Doc. 817-327.

The Perezes now argue that the portions of the letter the jury initially viewed were unduly prejudicial, despite the Court's instructions and admission

of a redacted copy of the letter into evidence. (Doc. 824 at 19–25). The government counters that the Court committed no error because it could have admitted the that entire letter, unredacted, into evidence as the letter related to Defendant Porters' advice of counsel defense. (Doc. 831 at 17).

The Court finds no error. The Court has broad discretion to determine the relevance of any given piece of evidence. United States v. Flanders, 752 F.3d 1317, 1334–35 (11th Cir. 2014). Although Federal Rule of Evidence 403 permits the Court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, it is "an extraordinary remedy" to be used sparingly. Id. at 1335 (citing United States v. Elkins, 885 F.2d 775, 784 (11th Cir. 1989)). Accordingly, "in reviewing issues under Rule 403," the Court must "look at the evidence in the light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact.'" Id. (quoting United States v. Tinoco, 304 F.3d 1088, 1120 (11th Cir. 2002)).

The letter written by the witness was plainly relevant to the Porters' advice of counsel defense. Although the jury reviewed portions of the letter referencing other laws not at play in the case, their review was brief. Further, limiting instructions generally reduce the risk of unfair prejudice. See United States v. Edouard, 485 F.3d 1324, 1346 (11th Cir. 2007). The Court therefore mitigated any potential undue prejudice by instructing the jury to disregard those references and only admitting a redacted copy of the letter into evidence.

The Perezes advance no reason why these limiting instructions were insufficient. Further, the Perezes' reliance on one juror's comment that he viewed the letter as "another light bulb moment" in the trial does not show unfair prejudice. (Docs. 824 at 22; 805 at 7). Even if the Court considered this juror's comment, reviewing it in context reveals no suggestion of undue prejudice, as the juror did not say he relied on the redacted portions of the letter or whether those portions influenced the jurors. (Doc. 805 at 6–7). Rather, the juror expressed that he found James Porter's defense weak, that the witness was "not credible," and he never mentioned the Perezes. Id. Thus, the Perezes' argument does not support that any unfair prejudice occurred by virtue of the letter. The Joint Motion for New Trial is denied on this ground.

## IV.   NEWLY DISCOVERED EVIDENCE

Finally, the Perezes filed a second Joint Motion for New Trial based on newly discovered evidence. (Doc. 849). Post-trial, the Perezes learned that the United States Department of Justice has a pending lawsuit against one of the victim insurance companies involved in this case, and may have investigated others on allegations that they submitted fraudulent diagnostic data to the Centers for Medicare and Medicaid Services, which resulted in over $100 million in payments. Id. at 1–4. The Perezes contend the government withheld this information from the Perezes in violation of its Brady and Giglio obligation. Id. at 3–4. Had the information been disclosed, the Perezes argue "it would have

31

been used at trial," and "[t]here is a reasonable probability that the outcome of the trial would have been different . . . ." <u>Id.</u> at 4.

"To succeed on a motion for new trial based on newly discovered evidence, the movant must establish that (1) the evidence was discovered after trial, (2) the failure of the defendant to discover the evidence was not due to a lack of due diligence, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material to issues before the court, and (5) the evidence is such that a new trial would probably produce a different result." <u>United States v. Jernigan</u>, 341 F.3d 1273, 1287 (11th Cir. 2003) (quoting <u>United States v. Ramos</u>, 179 F.3d 1333, 1336 n.1 (11th Cir. 1999)). "[W]e have held that motions for a new trial are highly disfavored, and that district courts 'should use "great caution" in granting a new trial motion based on newly discovered evidence.'" <u>Id.</u> (quoting <u>United States v. Garcia</u>, 13 F.3d 1464, 1472 (11th Cir. 1994)). Further, to establish a <u>Brady</u> violation, a defendant must show that: "(1) The government possessed favorable evidence to the defendant; (2) the defendant does not possess the evidence and could not obtain the evidence with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defendant, there is a reasonable probability that the outcome would have been different." <u>United States v. Vallejo</u>, 297 F.3d 1154, 1163–64 (11th Cir. 2002) (holding that district court did not abuse discretion in denying motion for new trial based on discovery

violations). "To establish a <u>Giglio</u> violation, the defendant must show that: (1) the prosecution knowingly used perjured testimony, or failed to correct false testimony upon learning of its falsity; and (2) the use of such testimony was material, meaning that it is reasonably likely that the false testimony could have affected the judgment." <u>United States v. Gallardo</u>, 977 F.3d 1126, 1142 (11th Cir. 2020).

The Perezes fail to meet the criteria showing a <u>Brady</u> or <u>Giglio</u> violation or that this newly discovered evidence requires a new trial. The Perezes do not refute that the pending DOJ lawsuit has been publicly available since it was filed in 2020, and there is no evidence the government suppressed it. (Doc. 849 at 2). At most, the Perezes argue the evidence would have been used to impeach witnesses employed by the insurance companies to show their bias and motive to curry favor with the government in the other suits. (Doc. 863 at 2). The Court questions whether this evidence would have been admissible impeachment evidence, as it is unclear if any of the insurance company witnesses in the <u>Perez</u> trial would have been aware of the civil proceedings, let alone been involved in them.[9] <u>See</u> <u>United States v. Noriega</u>, 117 F.3d 1206, 1218 (11th Cir. 1997)

---

[9] Indeed, Defendants do not identify witnesses whom they would have attempted to impeach with this evidence. As the Court asked during the October 27, 2022 hearing, "Who would you have cross-examined on it? Or what . . . would the impeachment be with it? And how would that have worked?" (Doc. 857 at 58:18–20). In response, Jorge Perez's counsel provided no clear description or examples of how he would have used the information. <u>Id.</u> at

(holding that a defendant must establish that newly discovered evidence would constitute proper impeachment evidence as a threshold step). In any event, even assuming the evidence would have been admitted at trial, case law is clear that impeachment evidence does not warrant a new trial. See, e.g., United States v. Pope, 132 F.3d 684, 688 (11th Cir. 1998) (holding that the defendant was not entitled to a new trial on grounds of newly discovered evidence involving impeachment material); United States v. Starrett, 55 F.3d 1525, 1554 (11th Cir. 1995) (same); United States v. Garcia, 13 F.3d 1464, 1472 (11th Cir. 1994) (same). Regardless, it is not probable that the use of this would have produced a different result at trial.

## V.   CONCLUSION

With the benefit of having presided over the lengthy and complex trial, the Court believes the Perezes received a fair trial, were convicted upon sufficient evidence, and that the reasons advanced for a new trial lack merit.

Accordingly, it is hereby

**ORDERED:**

1.      Defendants Jorge Perez and Ricardo Perez's Motions for New Trial (Docs. 786, 824, 849) are **DENIED**.

---

58:21–59:22.

2.      Richard Landes's Unopposed Motion to Withdraw as Counsel for Ricardo Perez (Doc. 844) is **DENIED**. Mr. Landes has stated he is able to represent Mr. Perez at his sentencing. <u>Id.</u> at 2. John Rockwell, who appeared to replace Mr. Landes if the Court ordered a new trial for Mr. Perez, is relieved of further responsibility in this case. (Doc. 847). The Court appreciates Mr. Rockwell's willingness to serve. Mr. Rockwell should submit a CJA voucher for the time he has spent on the case during his appointment.

**DONE AND ORDERED** in Jacksonville, Florida this 30th day of November, 2022.



TIMOTHY J. CORRIGAN
United States District Judge

ksm
Copies:

Counsel of Record
U.S. Probation
U.S. Pretrial Services
U.S. Marshals Service
Defendants