49769

OR 582 PAGE 803

DECLARATION OF CONDOMINIUM

OF

BUTTONWOOD BAY NO. 7, A CONDOMINIUM

FILED FOR RECORD
MONROE COUNTY FLORIDA
1974 Jun 26 PM 3: 05
RALPH W WHITE
CLERK OF CIRCUIT COURT

0497769

EXHIBIT A

░ 582 ░░ 805

## DECLARATION OF CONDOMINIUM

### OF

## BUTTONWOOD BAY NO. 7, A CONDOMINIUM

### ARTICLE I

#### Submission Statement

BUTTONWOOD BAY ASSOCIATES, a general partnership existing under the laws of the State of Florida (hereinafter called the "Developer"), is the owner of the fee simple title to that certain tract of land situated in Monroe County, Florida (hereinafter called the "Land"), on which there has been constructed two (2) buildings containing eighteen (18) Condominium Units. Developer hereby submits the Land and improvements thereon to condominium ownership pursuant to Chapter 711, Florida Statutes. The Condominium Act, as amended, upon the terms, conditions, restrictions and limitations hereinafter set forth.

### ARTICLE II

#### Name

The name by which this Condominium is to be known and identified is:

BUTTONWOOD BAY NO. 7, A CONDOMINIUM

### ARTICLE III

#### The Land

The Land which is hereby submitted to condominium ownership is situated in Monroe County, Florida, and is described in Exhibit "A" attached hereto and made a part hereof.

### ARTICLE IV

#### Definitions

As used in this Declaration of Condominium, the Exhibits attached hereto and all amendments thereof, unless the context otherwise requires, the following definitions shall prevail:

A. "Agreement for Recreational Facilities" means and refers to the Agreement under which the Association, as Lessee, and the Unit Owners have the right to the use of certain recreational areas and facilities, which Agreement is attached hereto as Exhibit "F", together with an Addendum thereto attached hereto as Exhibit "G".

B. "Articles of Incorporation" means the corporate charter of Buttonwood Bay Condominium Association, Inc., a non-profit Florida corporation, copy of which is attached hereto as Exhibit "D".

C. "Assessment" means a share of the funds required for the payment of Common Expenses which from time to time is assessed against the Unit owner.

## ARTICLE XV

### Common Expenses and Common Surplus

The Common Expenses shall be borne and paid equally by the Unit Owners (i.e., the owner of each Unit shall be responsible for one-eighteenth of such expenses), except as provided in Article XVI hereof.

The Common Surplus shall be shared equally by the Unit Owners (i.e., the owner of each Unit shall own a one-eighteenth share of such surplus).

## ARTICLE XVI

### Expenditures - Assessments - Surplus

The Association shall have the power to determine from time to time what expenditures are required to administer, operate, maintain and improve this Condominium and its properties, all other Condominiums administered by the Association and their properties, the Association itself, the Association properties and all other Association assets and to assess and collect the funds required by such expenditures from the Owners of the Units of the Condominiums administered by the Association. All such expenditures are deemed Common Expenses.

Expenditures pertaining exclusively to one Condominium shall be assessed against the Unit Owners of that Condominium in the percentage and in the manner set forth in the Declaration of Condominium pertaining to such Owners unless expressly provided to the contrary by the Articles of Incorporation, By-Laws or Agreement for Recreational Facilities. Expenditures pertaining to all Condominiums administered by the Association shall be prorated among such Condominiums in the proportion which the number of Units in a Condominium bears to the total number of Units in all Condominiums being administered by the Association, and shall be assessed against the Unit Owners of each respective Condominium in the percentage and in the manner set forth in the applicable Condominium Declaration unless expressly provided to the contrary by the Articles of Incorporation, By-Laws or Agreement for Recreational Facilities. The Association shall determine which expenditures pertain exclusively to one Condominium and which pertain to all and its decision shall be conclusive.

The excess of receipts over expenses pertaining exclusively to one Condominium shall be included in the Common Surplus of that Condominium. Such excess pertaining to all Condominiums shall be the Common Surplus of all Condominiums and shall be prorated among such Condominiums in the proportion which the number of Units in a Condominium bears to the total number of Units in all Condominiums being administered by the Association. The Association shall determine which surplus pertains exclusively to one Condominium and which pertains to all, and its decision shall be conclusive.

The determination of expenditures, assessments and collection thereof shall be made pursuant to the provisions of the Condominium Act, this Declaration, the Articles of Incorporation and By-Laws of the Association, and the Agreement for Recreational Facilities, subject to the following provisions:

A. Interest on Delinquent Payments. Assessments and installments thereon which are unpaid when due shall bear interest from the due date at the rate of ten percent (10%) per annum until paid. All payments on account shall be applied first to interest and then to the principal payment due.

-7-

B. **Liens for Assessments - Reasonable Attorneys' Fees.**
The Association shall have a first lien on each Unit for any unpaid assessments and interest thereon against the Unit Owners of such Units but all such liens shall be subordinate and inferior to the lien of institutional first mortgages recorded prior to the time said liens became effective and fixed. Reasonable attorneys' fees incurred by the Association to enforce the collection of such assessments or the enforcement of such liens shall be payable by the Unit Owners and secured by such lien. The Board of Directors of the Association may take such action as they may deem necessary to collect assessments by personal action or by forcing and foreclosing said lien and may settle and compromise the same if it is in the best interest of the Association. Said lien shall be effective as and in the manner provided for by the Condominium Act and shall have the priorities established by said Act. The Association shall be entitled to bid up to the amount of its lien together with costs and attorneys' fees in any sale held pursuant to a suit to foreclose an assessment lien and to apply as a cash credit against its bid all sums due the Association covered by the lien enforced. During such foreclosure the Unit Owner shall be required to pay a reasonable rental for the use of the Unit and the plaintiff in such foreclosure shall be entitled to the appointment of a receiver to collect same. The Association may also, at its option, sue to recover a money judgment for unpaid assessments without thereby waiving the lien securing the same.

C. **Exceptions for Institutional First Mortgagees.**
Where a first institutional mortgagee of record or other purchaser of a Unit obtains title thereto as a result of the foreclosure of an institutional first mortgage or where said institutional first mortgagee acquires a deed to said Unit in lieu of foreclosure, such acquirer of the title shall not be liable for the share of Common Expenses or assessments by the Association pertaining to such Unit or chargeable to the former Owner of such Unit which became due prior to the acquisition of title thereto as aforementioned. Such unpaid share of Common Expenses or assessments shall be deemed to be a Common Expense collectible from all the Unit Owners of Condominiums administered by the Association, including such acquirer, his heirs and assigns.

D. **Exception as to Payment of Assessments by Developer.**
During the first nine months after the recording of this Declaration, the Developer shall not be assessed nor shall it pay any Common Expenses on account of unsold Units; provided, however, that if the sums paid by all other Owners shall be insufficient to pay all Common Expenses actually incurred and expended, the Developer shall pay such insufficiency, except that such amount shall not exceed the Developer's prorata share of such Total Expenses based upon the number of Units owned by the Developer.

## ARTICLE XVII

### Parking

The owner(s) of each Unit shall be entitled to the exclusive use of one (1) parking space for each Unit owned. The Association shall designate and assign such space. The Association shall determine the use of surplus parking spaces, including the right to lease such spaces to Unit Owners, and to make charges therefor.

-8-

## CERTIFICATE OF AMENDMENT
## TO THE BY-LAWS OF
## BUTTONWOOD BAY CONDOMINIUM ASSOCIATION, INC.

WHEREAS, Buttonwood Bay Condominium Association, Inc., (hereinafter "Association") is the entity responsible for the operation of the following described condominiums:

| | O.R. Book | Page |
|---|---|---|
| Buttonwood Bay No.  1, a condominium | 538 | 223 |
| Buttonwood Bay No.  2, a condominium | 540 | 1047 |
| Buttonwood Bay No.  3, a condominium | 543 | 293 |
| Buttonwood Bay No.  4, a condominium | 551 | 545 |
| Buttonwood Bay No.  5, a condominium | 558 | 370 |
| Buttonwood Bay No.  6, a condominium | 570 | 438 |
| Buttonwood Bay No.  7, a condominium | 582 | 803 |
| Buttonwood Bay No.  8, a condominium | 592 | 252 |
| Buttonwood Bay No.  9, a condominium | 627 | 519 |
| Buttonwood Bay No. 10, a condominium | 649 | 726 |
| Buttonwood Bay No. 11, a condominium | 670 | 46 |
| Buttonwood Bay No. 12, a condominium | 710 | 34 |
| Buttonwood Bay No. 13, a condominium | 727 | 491 |
| Buttonwood Bay No. 14, a condominium | 751 | 1019 |
| Buttonwood Bay No. 15, a condominium | 756 | 1914 |
| Buttonwood Bay No. 16, a condominium | 760 | 518 |
| Buttonwood Bay No. 17, a condominium | 785 | 171 |
| Buttonwood Bay No. 18, a condominium | 785 | 480 |
| Buttonwood Bay No. 19, a condominium | 795 | 2192 |
| Buttonwood Bay No. 20, a condominium | 799 | 850 |

All of the above-references to Official Records Book and Page numbers referring to the Public Records of Monroe County, Florida; and

WHEREAS, the By-Laws of Buttonwood Bay Condominium Association, Inc., were attached as an exhibit to the above-referenced Declarations of Condominium; and

WHEREAS, at a duly called and convened meeting of the Board of Directors of the Association held on _December 9, 1988_, the full Board unanimously approved the amendment to the By-Laws as set forth below; and

WHEREAS, at a duly called and convened meeting of the membership of the Association at which a quorum was present held on February 18, 1989, the membership by a vote in excess of that required by Article III, Section 5 of the By-Laws of the Association approved the amendment to the By-Laws as set forth below.

NOW, THEREFORE, the undersigned hereby certify that the attached is a true copy of the amendments to Article V, Section 4(g) of the By-Laws of the Association as approved by the Board of Directors and the members:

BUTTONWOOD BAY CONDOMINIUM
ASSOCIATION, INC.

BY: _Daniel A. Johnson_
                        , PRESIDENT

WITNESS

ATTEST: _____
                        , SECRETARY

WITNESS

(SEAL)

THIS INSTRUMENT PREPARED BY:

ANTHONY A. KALLICHE, ESQUIRE
BECKER, POLIAKOFF & STREITFELD, P.A.
BLUE LAGOON CORPORATE CENTER
6161 BLUE LAGOON DRIVE, SUITE 250
MIAMI, FLORIDA 33126

581328   OFF. REC. 1085 PAGE 1778

STATE OF FLORIDA      :
                      : SS
COUNTY OF MONROE      :

    I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State and County aforesaid to take acknowledgements, personally appeared _David Johnson_ and _Alfred Weihl_ well known to me to be the President and Secretary of the corporation executing this instrument, and that they acknowledged executing the same voluntarily under the authority duly vested in them by said Corporation.

    WITNESS my hand and official seal in the County and State last aforesaid, this __9__ day of __March__, 1989.

NOTARY PUBLIC, STATE OF FLORIDA
(Seal)

My Commission Expires:

NOTARY PUBLIC STATE OF FLORIDA
MY COMMISSION EXP SEPT 25,1991
BONDED THRU GENERAL INS. UND.

AMENDMENT TO BY-LAWS

Article V, Section 4

"(g).  Late Charges.  In the event that any assessment
or installment thereof is not paid within fifteen
(15) days of the due date, the Board of Directors
may impose a late charge in the amount of $10.00.
This fee is deemed to be a reasonable estimate of
the additional administrative charges incurred by
the Association in processing the delinquent account.
The Association may increase the amount of the late
charge from time to time by resolution of the Board
of Directors to take into account increases in such
administrative charges."

Recorded in Official Records Book
in Monroe County, Florida
Record Verified
     DANNY L. KOLHAGE
        Clerk Circuit Court

UNITED STATES OF AMERICA v. JORGE PEREZ AND RICARDO PEREZ
CASE NO. 3:20-CR-86(S1)-TJC-JBT

BUTTONWOOD BAY CONDOMINIUM ASSOCIATION INC., Petitioner
Petition for Remission or Mitigation of Forfeiture

## EXHIBIT "B"

| | |
|---|---:|
| Monthly Maintenance due 06/01/23 - 12/01/23 at $1,368.49 each | $ 9,579.43 |
| Monthly Maintenance due 01/01/24 - 01/01/25 at $1,384.09 each | $17,993.17 |
| Special Assessment due 03/01/24 - 01/01/25 at $296.91 each | $3,266.01 |
| Late Fee due 06/15/23 - 01/15/25 at $25.00 each | $475.00 |
| Late Fee-SA due 03/15/24 - 01/15/25 at $25.00 each | $250.00 |
| Interest | $2,136.95 |
| Administrative fee due 07/30/24 - 07/30/24 at $50.00 each | $50.00 |
| Cost of Placing and Releasing Lien | $27.00 |
| Certified/Registered Mail, Return Receipt Requested | $53.10 |
| Deed Search | $3.25 |
| Legal Fees | $2,196.00 |
| SUBTOTAL | $36,029.91 |
| Less payments | (2,786.98) |
| TOTAL: | $33,242.93 |

# The 2024 Florida Statutes

**718.303  Obligations of owners and occupants; remedies.—**

(1)  Each unit owner, tenant and other invitee, and association is governed by, and must comply with the provisions of, this chapter, the declaration, the documents creating the association, and the association bylaws which are expressly incorporated into any lease of a unit. Actions at law or in equity, or both, for failure to comply with these provisions may be brought by the association or by a unit owner against:

(a)  The association.

(b)  A unit owner.

(c)  Directors designated by the developer, for actions taken by them before control of the association is assumed by unit owners other than the developer.

(d)  Any director who willfully and knowingly fails to comply with these provisions.

(e)  Any tenant leasing a unit, and any other invitee occupying a unit.

The prevailing party in any such action or in any action in which the purchaser claims a right of voidability based upon contractual provisions as required in s. 718.503(1)(a) is entitled to recover reasonable attorney fees. A unit owner prevailing in an action between the association and the unit owner under this subsection, in addition to recovering his or her reasonable attorney fees, may recover additional amounts as determined by the court to be necessary to reimburse the unit owner for his or her share of assessments levied by the association to fund its expenses of the litigation. This relief does not exclude other remedies provided by law. Actions arising under this subsection are not considered actions for specific performance.

(2)  A provision of this chapter may not be waived if the waiver would adversely affect the rights of a unit owner or the purpose of the provision, except that unit owners or members of a board of administration may waive notice of specific meetings in writing if provided by the bylaws. Any instruction given in writing by a unit owner or purchaser to an escrow agent may be relied upon by an escrow agent, whether or not such instruction and the payment of funds thereunder might constitute a waiver of any provision of this chapter.

(3)  The association may levy reasonable fines for the failure of the owner of the unit or its occupant, licensee, or invitee to comply with any provision of the declaration, the association bylaws, or reasonable rules of the association. A fine may not become a lien against a unit. A fine may be levied by the board on the basis of each day of a continuing violation, with a single notice and opportunity for hearing before a committee as provided in paragraph (b). However, the fine may not exceed $100 per violation, or $1,000 in the aggregate.

(a)  An association may suspend, for a reasonable period of time, the right of a unit owner, or a unit owner's tenant, guest, or invitee, to use the common elements, common facilities, or any other association property for failure to comply with any provision of the declaration, the association bylaws, or reasonable rules of the association. This paragraph does not apply to limited common elements intended to be used only by that unit, common elements needed to access the unit, utility services provided to the unit, parking spaces, or elevators.

(b)  A fine or suspension levied by the board of administration may not be imposed unless the board first provides at least 14 days' written notice to the unit owner and, if applicable, any tenant, licensee, or invitee of the unit owner sought to be fined or suspended, and an opportunity for a hearing before a committee of at least three members appointed by the board who are not officers, directors, or employees of the association, or the spouse, parent, child, brother, or sister of an officer, director, or employee. The role of the committee is limited to

EXHIBIT C

determining whether to confirm or reject the fine or suspension levied by the board. If the committee does not approve the proposed fine or suspension by majority vote, the fine or suspension may not be imposed. If the proposed fine or suspension is approved by the committee, the fine payment is due 5 days after notice of the approved fine is provided to the unit owner and, if applicable, to any tenant, licensee, or invitee of the unit owner. The association must provide written notice of such fine or suspension by mail or hand delivery to the unit owner and, if applicable, to any tenant, licensee, or invitee of the unit owner.

(4) If a unit owner is more than 90 days delinquent in paying a fee, fine, or other monetary obligation due to the association, the association may suspend the right of the unit owner or the unit's occupant, licensee, or invitee to use common elements, common facilities, or any other association property until the fee, fine, or other monetary obligation is paid in full. This subsection does not apply to limited common elements intended to be used only by that unit, common elements needed to access the unit, utility services provided to the unit, parking spaces, or elevators. The notice and hearing requirements under subsection (3) do not apply to suspensions imposed under this subsection.

(5) An association may suspend the voting rights of a unit owner or member due to nonpayment of any fee, fine, or other monetary obligation due to the association which is more than $1,000 and more than 90 days delinquent. Proof of such obligation must be provided to the unit owner or member 30 days before such suspension takes effect. At least 90 days before an election, an association must notify a unit owner or member that his or her voting rights may be suspended due to a nonpayment of a fee or other monetary obligation. A voting interest or consent right allocated to a unit owner or member which has been suspended by the association shall be subtracted from the total number of voting interests in the association, which shall be reduced by the number of suspended voting interests when calculating the total percentage or number of all voting interests available to take or approve any action, and the suspended voting interests shall not be considered for any purpose, including, but not limited to, the percentage or number of voting interests necessary to constitute a quorum, the percentage or number of voting interests required to conduct an election, or the percentage or number of voting interests required to approve an action under this chapter or pursuant to the declaration, articles of incorporation, or bylaws. The suspension ends upon full payment of all obligations currently due or overdue the association. The notice and hearing requirements under subsection (3) do not apply to a suspension imposed under this subsection.

(6) All suspensions imposed pursuant to subsection (4) or subsection (5) must be approved at a properly noticed board meeting. Upon approval, the association must notify the unit owner and, if applicable, the unit's occupant, licensee, or invitee by mail or hand delivery.

(7) The suspensions permitted by paragraph (3)(a) and subsections (4) and (5) apply to a member and, when appropriate, the member's tenants, guests, or invitees, even if the delinquency or failure that resulted in the suspension arose from less than all of the multiple units owned by a member.

(8) A receiver may not exercise voting rights of any unit owner whose unit is placed in receivership for the benefit of the association pursuant to this chapter.

History.—s. 1, ch. 76-222; s. 1, ch. 77-174; s. 12, ch. 84-368; s. 16, ch. 90-151; s. 14, ch. 91-103; s. 5, ch. 91-426; s. 11, ch. 92-49; s. 864, ch. 97-102; s. 14, ch. 2003-14; s. 20, ch. 2008-28; s. 16, ch. 2010-174; s. 8, ch. 2011-196; s. 6, ch. 2013-188; s. 10, ch. 2015-97; s. 7, ch. 2017-188; s. 7, ch. 2018-96; s. 11, ch. 2021-99; s. 19, ch. 2024-244.

Copyright © 1995-2025 The Florida Legislature • Privacy Statement • Contact Us

# The 2024 Florida Statutes

| Title XL | Chapter 718 | View Entire Chapter |
| REAL AND PERSONAL PROPERTY | CONDOMINIUMS | |

**718.121   Liens.—**

(1)   Subsequent to recording the declaration and while the property remains subject to the declaration, no liens of any nature are valid against the condominium property as a whole except with the unanimous consent of the unit owners. During this period, liens may arise or be created only against individual condominium parcels.

(2)   Labor performed on or materials furnished to a unit may not be the basis for the filing of a lien under part I of chapter 713, the Construction Lien Law, against the unit or condominium parcel of any unit owner not expressly consenting to or requesting the labor or materials. Labor performed on or materials furnished for the installation of a natural gas fuel station or an electric vehicle charging station under s. 718.113(8) may not be the basis for filing a lien under part I of chapter 713 against the association, but such a lien may be filed against the unit owner. Labor performed on or materials furnished to the common elements are not the basis for a lien on the common elements, but if authorized by the association, the labor or materials are deemed to be performed or furnished with the express consent of each unit owner and may be the basis for the filing of a lien against all condominium parcels in the proportions for which the owners are liable for common expenses.

(3)   If a lien against two or more condominium parcels becomes effective, each owner may relieve his or her condominium parcel of the lien by exercising any of the rights of a property owner under chapter 713, or by payment of the proportionate amount attributable to his or her condominium parcel. Upon the payment, the lienor shall release the lien of record for that condominium parcel.

(4)(a)   If an association sends out an invoice for assessments or a unit's statement of the account described in s. 718.111(12)(a)11.c., the invoice for assessments or the unit's statement of account must be delivered to the unit owner by first-class United States mail or by electronic transmission to the unit owner's e-mail address maintained in the association's official records.

(b)   Before changing the method of delivery for an invoice for assessments or the statement of the account, the association must deliver a written notice of such change to each unit owner. The written notice must be delivered to the unit owner at least 30 days before the association sends the invoice for assessments or the statement of the account by the new delivery method. The notice must be sent by first-class United States mail to the unit owner at his or her last address as reflected in the association's records and, if such address is not the unit address, must be sent by first-class United States mail to the unit address. Notice is deemed to have been delivered upon mailing as required by this paragraph.

(c)   A unit owner must affirmatively acknowledge his or her understanding that the association will change its method of delivery of the invoice for assessments or the unit's statement of the account before the association may change the method of delivering an invoice for assessments or the statement of account. The unit owner may make the affirmative acknowledgment electronically or in writing.

(5)   An association may not require payment of attorney fees related to a past due assessment without first delivering a written notice of late assessment to the unit owner which specifies the amount owed the association and provides the unit owner an opportunity to pay the amount owed without the assessment of attorney fees. The notice of late assessment must be sent by first-class United States mail to the unit owner at his or her last address as reflected in the association's records and, if such address is not the unit address, must also be sent by first-class United States mail to the unit address. Notice is deemed to have been delivered upon mailing as required by this

subsection. A rebuttable presumption that an association mailed a notice in accordance with this subsection is established if a board member, officer, or agent of the association, or a manager licensed under part VIII of chapter 468, provides a sworn affidavit attesting to such mailing. The notice must be in substantially the following form:

NOTICE OF LATE ASSESSMENT

RE: Unit  of  _(name of association)_

The following amounts are currently due on your account to  _(name of association)_ , and must be paid within 30 days of the date of this letter. This letter shall serve as the association's notice of its intent to proceed with further collection action against your property no sooner than 30 days of the date of this letter, unless you pay in full the amounts set forth below:

Maintenance due  _(dates)_         $ .
Late fee, if applicable            $ .
Interest through  _(dates)_ *       $ .
TOTAL OUTSTANDING              $ .

*Interest accrues at the rate of   percent per annum.

(6)   Except as otherwise provided in this chapter, no lien may be filed by the association against a condominium unit until 45 days after the date on which a notice of intent to file a lien has been delivered to the owner by registered or certified mail, return receipt requested, by first-class United States mail to the owner at his or her last address as reflected in the association's records and, if such address is not the unit address, by first-class United States mail to the unit address. Notice is deemed to have been delivered upon mailing as required by this subsection, provided that it is in substantially the following form:

NOTICE OF INTENT<br>TO RECORD A CLAIM OF LIEN

RE: Unit  of  _(name of association)_

The following amounts are currently due on your account to  _(name of association)_ , and must be paid within 45 days after your receipt of this letter. This letter shall serve as the association's notice of intent to record a Claim of Lien against your property no sooner than 45 days after your receipt of this letter, unless you pay in full the amounts set forth below:

Maintenance due  _(dates)_         $ .
Late fee, if applicable            $ .
Interest through  _(dates)_ *       $ .
Certified mail charges  _(dates)_       $ .
Other costs          $ .
TOTAL OUTSTANDING              $ .

*Interest accrues at the rate of   percent per annum.

History.—s. 1, ch. 76-222; s. 26, ch. 90-109; s. 858, ch. 97-102; s. 12, ch. 2008-28; s. 3, ch. 2008-202; s. 4, ch. 2014-146; s. 4, ch. 2018-96; s. 102, ch. 2019-3; s. 3, ch. 2021-91; s. 7, ch. 2021-99; s. 12, ch. 2024-244.

Copyright © 1995-2025 The Florida Legislature • Privacy Statement • Contact Us

# The 2024 Florida Statutes

Title XL
REAL AND PERSONAL PROPERTY

Chapter 718
CONDOMINIUMS

View Entire Chapter

**718.116** Assessments; liability; lien and priority; interest; collection.—

(1)(a) A unit owner, regardless of how his or her title has been acquired, including by purchase at a foreclosure sale or by deed in lieu of foreclosure, is liable for all assessments which come due while he or she is the unit owner. Additionally, a unit owner is jointly and severally liable with the previous owner for all unpaid assessments that came due up to the time of transfer of title. This liability is without prejudice to any right the owner may have to recover from the previous owner the amounts paid by the owner. For the purposes of this paragraph, the term "previous owner" does not include an association that acquires title to a delinquent property through foreclosure or by deed in lieu of foreclosure. A present unit owner's liability for unpaid assessments is limited to any unpaid assessments that accrued before the association acquired title to the delinquent property through foreclosure or by deed in lieu of foreclosure.

(b)1. The liability of a first mortgagee or its successor or assignees who acquire title to a unit by foreclosure or by deed in lieu of foreclosure for the unpaid assessments that became due before the mortgagee's acquisition of title is limited to the lesser of:

a. The unit's unpaid common expenses and regular periodic assessments which accrued or came due during the 12 months immediately preceding the acquisition of title and for which payment in full has not been received by the association; or

b. One percent of the original mortgage debt. The provisions of this paragraph apply only if the first mortgagee joined the association as a defendant in the foreclosure action. Joinder of the association is not required if, on the date the complaint is filed, the association was dissolved or did not maintain an office or agent for service of process at a location which was known to or reasonably discoverable by the mortgagee.

2. An association, or its successor or assignee, that acquires title to a unit through the foreclosure of its lien for assessments is not liable for any unpaid assessments, late fees, interest, or reasonable attorney's fees and costs that came due before the association's acquisition of title in favor of any other association, as defined in s. 718.103 or s. 720.301(9), which holds a superior lien interest on the unit. This subparagraph is intended to clarify existing law.

(c) The person acquiring title shall pay the amount owed to the association within 30 days after transfer of title. Failure to pay the full amount when due shall entitle the association to record a claim of lien against the parcel and proceed in the same manner as provided in this section for the collection of unpaid assessments.

(d) With respect to each timeshare unit, each owner of a timeshare estate therein is jointly and severally liable for the payment of all assessments and other charges levied against or with respect to that unit pursuant to the declaration or bylaws, except to the extent that the declaration or bylaws may provide to the contrary.

(e) Notwithstanding the provisions of paragraph (b), a first mortgagee or its successor or assignees who acquire title to a condominium unit as a result of the foreclosure of the mortgage or by deed in lieu of foreclosure of the mortgage shall be exempt from liability for all unpaid assessments attributable to the parcel or chargeable to the previous owner which came due prior to acquisition of title if the first mortgage was recorded prior to April 1, 1992. If, however, the first mortgage was recorded on or after April 1, 1992, or on the date the mortgage was recorded, the declaration included language incorporating by reference future amendments to this chapter, the provisions of paragraph (b) shall apply.

(f)   The provisions of this subsection are intended to clarify existing law, and shall not be available in any case where the unpaid assessments sought to be recovered by the association are secured by a lien recorded prior to the recording of the mortgage. Notwithstanding the provisions of chapter 48, the association shall be a proper party to intervene in any foreclosure proceeding to seek equitable relief.

(g)   For purposes of this subsection, the term "successor or assignee" as used with respect to a first mortgagee includes only a subsequent holder of the first mortgage.

(2)   The liability for assessments may not be avoided by waiver of the use or enjoyment of any common element or by abandonment of the unit for which the assessments are made.

(3)   Assessments and installments on assessments which are not paid when due bear interest at the rate provided in the declaration, from the due date until paid. The rate may not exceed the rate allowed by law, and, if no rate is provided in the declaration, interest accrues at the rate of 18 percent per year. If provided by the declaration or bylaws, the association may, in addition to such interest, charge an administrative late fee of up to the greater of $25 or 5 percent of each delinquent installment for which the payment is late. Any payment received by an association must be applied first to any interest accrued by the association, then to any administrative late fee, then to any costs and reasonable attorney fees incurred in collection, and then to the delinquent assessment. The foregoing is applicable notwithstanding s. 673.3111, any purported accord and satisfaction, or any restrictive endorsement, designation, or instruction placed on or accompanying a payment. The preceding sentence is intended to clarify existing law. A late fee is not subject to chapter 687 or s. 718.303(4).

(4)   If the association is authorized by the declaration or bylaws to approve or disapprove a proposed lease of a unit, the grounds for disapproval may include, but are not limited to, a unit owner being delinquent in the payment of an assessment at the time approval is sought.

(5)(a)   The association has a lien on each condominium parcel to secure the payment of assessments. Except as otherwise provided in subsection (1) and as set forth below, the lien is effective from and shall relate back to the recording of the original declaration of condominium, or, in the case of lien on a parcel located in a phase condominium, the last to occur of the recording of the original declaration or amendment thereto creating the parcel. However, as to first mortgages of record, the lien is effective from and after recording of a claim of lien in the public records of the county in which the condominium parcel is located. Nothing in this subsection shall be construed to bestow upon any lien, mortgage, or certified judgment of record on April 1, 1992, including the lien for unpaid assessments created herein, a priority which, by law, the lien, mortgage, or judgment did not have before that date.

(b)   To be valid, a claim of lien must state the description of the condominium parcel, the name of the record owner, the name and address of the association, the amount due, and the due dates. It must be executed and acknowledged by an officer or authorized agent of the association. The lien is not effective 1 year after the claim of lien was recorded unless, within that time, an action to enforce the lien is commenced. The 1-year period is automatically extended for any length of time during which the association is prevented from filing a foreclosure action by an automatic stay resulting from a bankruptcy petition filed by the parcel owner or any other person claiming an interest in the parcel. The claim of lien secures all unpaid assessments that are due and that may accrue after the claim of lien is recorded and through the entry of a final judgment, as well as interest, administrative late fees, and all reasonable costs and attorney fees incurred by the association incident to the collection process. Upon payment in full, the person making the payment is entitled to a satisfaction of the lien.

(c)   By recording a notice in substantially the following form, a unit owner or the unit owner's agent or attorney may require the association to enforce a recorded claim of lien against his or her condominium parcel:

NOTICE OF CONTEST OF LIEN

TO:  _(Name and address of association)_  You are notified that the undersigned contests the claim of lien filed by you on  ,  _(year)_ , and recorded in Official Records Book   at Page  , of the public records of   County, Florida, and that the time within which you may file suit to enforce your lien is limited to 90 days from the date of service of this notice. Executed this   day of  ,  _(year)_ .

After notice of contest of lien has been recorded, the clerk of the circuit court shall mail a copy of the recorded notice to the association by certified mail, return receipt requested, at the address shown in the claim of lien or most recent amendment to it and shall certify to the service on the face of the notice. Service is complete upon mailing. After service, the association has 90 days in which to file an action to enforce the lien; and, if the action is not filed within the 90-day period, the lien is void. However, the 90-day period shall be extended for any length of time during which the association is prevented from filing its action because of an automatic stay resulting from the filing of a bankruptcy petition by the unit owner or by any other person claiming an interest in the parcel.

(d)   A release of lien must be in substantially the following form:

RELEASE OF LIEN

The undersigned lienor, in consideration of the final payment in the amount of $ , hereby waives and releases its lien and right to claim a lien for unpaid assessments through  , _(year)_, recorded in the Official Records Book  at Page  , of the public records of  County, Florida, for the following described real property:

UNIT NO.  OF _(NAME OF CONDOMINIUM)_ , A CONDOMINIUM AS SET FORTH IN THE DECLARATION OF CONDOMINIUM AND THE EXHIBITS ANNEXED THERETO AND FORMING A PART THEREOF, RECORDED IN OFFICIAL RECORDS BOOK  , PAGE  , OF THE PUBLIC RECORDS OF  COUNTY, FLORIDA. THE ABOVE DESCRIPTION INCLUDES, BUT IS NOT LIMITED TO, ALL APPURTENANCES TO THE CONDOMINIUM UNIT ABOVE DESCRIBED, INCLUDING THE UNDIVIDED INTEREST IN THE COMMON ELEMENTS OF SAID CONDOMINIUM.

_(Signature of Authorized Agent)_                              _(Signature of Witness)_

_(Print Name)_                    _(Print Name)_

                                                                                    _(Signature of Witness)_
                                                                                         _(Print Name)_

Sworn to (or affirmed) and subscribed before me this   day of  , _(year)_ , by _(name of person making statement)_ .
_(Signature of Notary Public)_
_(Print, type, or stamp commissioned name of Notary Public)_
Personally Known  OR Produced  as identification.

(6)(a)   The association may bring an action in its name to foreclose a lien for assessments in the manner a mortgage of real property is foreclosed and may also bring an action to recover a money judgment for the unpaid assessments without waiving any claim of lien. The association is entitled to recover its reasonable attorney's fees incurred in either a lien foreclosure action or an action to recover a money judgment for unpaid assessments.

(b)   No foreclosure judgment may be entered until at least 45 days after the association gives written notice to the unit owner of its intention to foreclose its lien to collect the unpaid assessments. The notice must be in substantially the following form:

DELINQUENT ASSESSMENT

This letter is to inform you a Claim of Lien has been filed against your property because you have not paid the _(type of assessment)_ assessment to _(name of association)_ . The association intends to foreclose the lien and collect the unpaid amount within 45 days of this letter being provided to you.

You owe the interest accruing from _(month/year)_ to the present. As of the date of this letter, the total amount due with interest is $ . All costs of any action and interest from this day forward will also be charged to your account.

Any questions concerning this matter should be directed to _(insert name, addresses, and telephone numbers of association representative)_ .

If this notice is not given at least 45 days before the foreclosure action is filed, and if the unpaid assessments, including those coming due after the claim of lien is recorded, are paid before the entry of a final judgment of foreclosure, the association shall not recover attorney fees or costs. The notice must be given by delivery of a copy of it to the unit owner or by certified or registered mail, return receipt requested, addressed to the unit owner at his or her last known address; and, upon such mailing, the notice shall be deemed to have been given, and the court shall proceed with the foreclosure action and may award attorney fees and costs as permitted by law. The notice requirements of this subsection are satisfied if the unit owner records a notice of contest of lien as provided in subsection (5). The notice requirements of this subsection do not apply if an action to foreclose a mortgage on the condominium unit is pending before any court; if the rights of the association would be affected by such foreclosure; and if actual, constructive, or substitute service of process has been made on the unit owner.

(c)   If the unit owner remains in possession of the unit after a foreclosure judgment has been entered, the court, in its discretion, may require the unit owner to pay a reasonable rental for the unit. If the unit is rented or leased during the pendency of the foreclosure action, the association is entitled to the appointment of a receiver to collect the rent. The expenses of the receiver shall be paid by the party which does not prevail in the foreclosure action.

(d)   The association has the power to purchase the condominium parcel at the foreclosure sale and to hold, lease, mortgage, or convey it.

(7)   A first mortgagee acquiring title to a condominium parcel as a result of foreclosure, or a deed in lieu of foreclosure, may not, during the period of its ownership of such parcel, whether or not such parcel is unoccupied, be excused from the payment of some or all of the common expenses coming due during the period of such ownership.

(8)   Within 10 business days after receiving a written or electronic request therefor from a unit owner or the unit owner's designee, or a unit mortgagee or the unit mortgagee's designee, the association shall issue the estoppel certificate. Each association shall designate on its website a person or entity with a street or e-mail address for receipt of a request for an estoppel certificate issued pursuant to this section. The estoppel certificate must be provided by hand delivery, regular mail, or e-mail to the requestor on the date of issuance of the estoppel certificate.

(a)   An estoppel certificate may be completed by any board member, authorized agent, or authorized representative of the association, including any authorized agent, authorized representative, or employee of a management company authorized to complete this form on behalf of the board or association. The estoppel certificate must contain all of the following information and must be substantially in the following form:

1.   Date of issuance:

2.   Name(s) of the unit owner(s) as reflected in the books and records of the association:

3.   Unit designation and address:

4.   Parking or garage space number, as reflected in the books and records of the association:

5.   Attorney's name and contact information if the account is delinquent and has been turned over to an attorney for collection. No fee may be charged for this information.

6.   Fee for the preparation and delivery of the estoppel certificate:

7.   Name of the requestor:

8.   Assessment information and other information:

ASSESSMENT INFORMATION:

a.   The regular periodic assessment levied against the unit is $  per  _(insert frequency of payment)_ .

b.   The regular periodic assessment is paid through _(insert date paid through)_ .

c.   The next installment of the regular periodic assessment is due _(insert due date)_ in the amount of $ .

d.   An itemized list of all assessments, special assessments, and other moneys owed on the date of issuance to the association by the unit owner for a specific unit is provided.

e. An itemized list of any additional assessments, special assessments, and other moneys that are scheduled to become due for each day after the date of issuance for the effective period of the estoppel certificate is provided. In calculating the amounts that are scheduled to become due, the association may assume that any delinquent amounts will remain delinquent during the effective period of the estoppel certificate.

OTHER INFORMATION:

f. Is there a capital contribution fee, resale fee, transfer fee, or other fee due? (Yes) (No). If yes, specify the type and the amount of the fee.

g. Is there any open violation of rule or regulation noticed to the unit owner in the association official records? (Yes) (No).

h. Do the rules and regulations of the association applicable to the unit require approval by the board of directors of the association for the transfer of the unit? (Yes) (No). If yes, has the board approved the transfer of the unit? (Yes) (No).

i. Is there a right of first refusal provided to the members or the association? (Yes) (No). If yes, have the members or the association exercised that right of first refusal? (Yes) (No).

j. Provide a list of, and contact information for, all other associations of which the unit is a member.

k. Provide contact information for all insurance maintained by the association.

l. Provide the signature of an officer or authorized agent of the association.

The association, at its option, may include additional information in the estoppel certificate.

(b) An estoppel certificate that is hand delivered or sent by electronic means has a 30-day effective period. An estoppel certificate that is sent by regular mail has a 35-day effective period. If additional information or a mistake related to the estoppel certificate becomes known to the association within the effective period, an amended estoppel certificate may be delivered and becomes effective if a sale or refinancing of the unit has not been completed during the effective period. A fee may not be charged for an amended estoppel certificate. An amended estoppel certificate must be delivered on the date of issuance, and a new 30-day or 35-day effective period begins on such date.

(c) An association waives the right to collect any moneys owed in excess of the amounts specified in the estoppel certificate from any person who in good faith relies upon the estoppel certificate and from the person's successors and assigns.

(d) If an association receives a request for an estoppel certificate from a unit owner or the unit owner's designee, or a unit mortgagee or the unit mortgagee's designee, and fails to deliver the estoppel certificate within 10 business days, a fee may not be charged for the preparation and delivery of that estoppel certificate.

(e) A summary proceeding pursuant to s. 51.011 may be brought to compel compliance with this subsection, and in any such action the prevailing party is entitled to recover reasonable attorney fees.

(f) Notwithstanding any limitation on transfer fees contained in s. 718.112(2)(k), an association or its authorized agent may charge a reasonable fee for the preparation and delivery of an estoppel certificate, which may not exceed $250, if, on the date the certificate is issued, no delinquent amounts are owed to the association for the applicable unit. If an estoppel certificate is requested on an expedited basis and delivered within 3 business days after the request, the association may charge an additional fee of $100. If a delinquent amount is owed to the association for the applicable unit, an additional fee for the estoppel certificate may not exceed $150.

(g) If estoppel certificates for multiple units owned by the same owner are simultaneously requested from the same association and there are no past due monetary obligations owed to the association, the statement of moneys due for those units may be delivered in one or more estoppel certificates, and, even though the fee for each unit shall be computed as set forth in paragraph (f), the total fee that the association may charge for the preparation and delivery of the estoppel certificates may not exceed, in the aggregate:

1. For 25 or fewer units, $750.
2. For 26 to 50 units, $1,000.
3. For 51 to 100 units, $1,500.

4. For more than 100 units, $2,500.

(h)  The authority to charge a fee for the preparation and delivery of the estoppel certificate must be established by a written resolution adopted by the board or provided by a written management, bookkeeping, or maintenance contract and is payable upon the preparation of the certificate. If the certificate is requested in conjunction with the sale or mortgage of a unit but the closing does not occur and no later than 30 days after the closing date for which the certificate was sought the preparer receives a written request, accompanied by reasonable documentation, that the sale did not occur from a payor that is not the unit owner, the fee shall be refunded to that payor within 30 days after receipt of the request. The refund is the obligation of the unit owner, and the association may collect it from that owner in the same manner as an assessment as provided in this section. The right to reimbursement may not be waived or modified by any contract or agreement. The prevailing party in any action brought to enforce a right of reimbursement shall be awarded damages and all applicable attorney fees and costs.

(i)  The fees specified in this subsection shall be adjusted every 5 years in an amount equal to the total of the annual increases for that 5-year period in the Consumer Price Index for All Urban Consumers, U.S. City Average, All Items. The Department of Business and Professional Regulation shall periodically calculate the fees, rounded to the nearest dollar, and publish the amounts, as adjusted, on its website.

(9)(a)  A unit owner may not be excused from payment of the unit owner's share of common expenses unless all other unit owners are likewise proportionately excluded from payment, except as provided in subsection (1) and in the following cases:

1.  If authorized by the declaration, a developer who is offering units for sale may elect to be excused from payment of assessments against those unsold units for a stated period of time after the declaration is recorded. However, the developer must pay common expenses incurred during such period which exceed regular periodic assessments against other unit owners in the same condominium. The stated period must terminate no later than the first day of the fourth calendar month following the month in which the first closing occurs of a purchase contract for a unit in that condominium. If a developer-controlled association has maintained all insurance coverage required by s. 718.111(11)(a), common expenses incurred during the stated period resulting from a natural disaster or an act of God occurring during the stated period, which are not covered by proceeds from insurance maintained by the association, may be assessed against all unit owners owning units on the date of such natural disaster or act of God, and their respective successors and assigns, including the developer with respect to units owned by the developer. In the event of such an assessment, all units shall be assessed in accordance with s. 718.115(2).

2.  A developer who owns condominium units, and who is offering the units for sale, may be excused from payment of assessments against those unsold units for the period of time the developer has guaranteed to all purchasers or other unit owners in the same condominium that assessments will not exceed a stated dollar amount and that the developer will pay any common expenses that exceed the guaranteed amount. Such guarantee may be stated in the purchase contract, declaration, prospectus, or written agreement between the developer and a majority of the unit owners other than the developer and may provide that, after the initial guarantee period, the developer may extend the guarantee for one or more stated periods. If a developer-controlled association has maintained all insurance coverage required by s. 718.111(11)(a), common expenses incurred during a guarantee period, as a result of a natural disaster or an act of God occurring during the same guarantee period, which are not covered by the proceeds from such insurance, may be assessed against all unit owners owning units on the date of such natural disaster or act of God, and their successors and assigns, including the developer with respect to units owned by the developer. Any such assessment shall be in accordance with s. 718.115(2) or (4), as applicable.

(b)  If the purchase contract, declaration, prospectus, or written agreement between the developer and a majority of unit owners other than the developer provides for the developer to be excused from payment of assessments under paragraph (a), only regular periodic assessments for common expenses as provided for in the declaration and prospectus and disclosed in the estimated operating budget shall be used for payment of common expenses during any period in which the developer is excused. Accordingly, no funds which are receivable from unit

purchasers or unit owners and payable to the association, including capital contributions or startup funds collected from unit purchasers at closing, may be used for payment of such common expenses.

(c)   If a developer of a multicondominium is excused from payment of assessments under paragraph (a), the developer's financial obligation to the multicondominium association during any period in which the developer is excused from payment of assessments is as follows:

1.   The developer shall pay the common expenses of a condominium affected by a guarantee, including the funding of reserves as provided in the adopted annual budget of that condominium, which exceed the regular periodic assessments at the guaranteed level against all other unit owners within that condominium.

2.   The developer shall pay the common expenses of a multicondominium association, including the funding of reserves as provided in the adopted annual budget of the association, which are allocated to units within a condominium affected by a guarantee and which exceed the regular periodic assessments against all other unit owners within that condominium.

(10)   The specific purpose or purposes of any special assessment, including any contingent special assessment levied in conjunction with the purchase of an insurance policy authorized by s. 718.111(11), approved in accordance with the condominium documents shall be set forth in a written notice of such assessment sent or delivered to each unit owner. The funds collected pursuant to a special assessment shall be used only for the specific purpose or purposes set forth in such notice. However, upon completion of such specific purpose or purposes, any excess funds will be considered common surplus, and may, at the discretion of the board, either be returned to the unit owners or applied as a credit toward future assessments.

(11)(a)   If the unit is occupied by a tenant and the unit owner is delinquent in paying any monetary obligation due to the association, the association may make a written demand that the tenant pay to the association the subsequent rental payments and continue to make such payments until all monetary obligations of the unit owner related to the unit have been paid in full to the association. The tenant must pay the monetary obligations to the association until the association releases the tenant or the tenant discontinues tenancy in the unit.

1.   The association must provide the tenant a notice, by hand delivery or United States mail, in substantially the following form:

Pursuant to section 718.116(11), Florida Statutes, the association demands that you pay your rent directly to the condominium association and continue doing so until the association notifies you otherwise.

Payment due the condominium association may be in the same form as you paid your landlord and must be sent by United States mail or hand delivery to   (full address)  , payable to   (name)  .

Your obligation to pay your rent to the association begins immediately, unless you have already paid rent to your landlord for the current period before receiving this notice. In that case, you must provide the association written proof of your payment within 14 days after receiving this notice and your obligation to pay rent to the association would then begin with the next rental period.

Pursuant to section 718.116(11), Florida Statutes, your payment of rent to the association gives you complete immunity from any claim for the rent by your landlord for all amounts timely paid to the association.

2.   The association must mail written notice to the unit owner of the association's demand that the tenant make payments to the association.

3.   The association shall, upon request, provide the tenant with written receipts for payments made.

4.   A tenant is immune from any claim by the landlord or unit owner related to the rent timely paid to the association after the association has made written demand.

(b)   If the tenant paid rent to the landlord or unit owner for a given rental period before receiving the demand from the association and provides written evidence to the association of having paid the rent within 14 days after receiving the demand, the tenant shall begin making rental payments to the association for the following rental period and shall continue making rental payments to the association to be credited against the monetary obligations of the unit owner until the association releases the tenant or the tenant discontinues tenancy in the unit.

(c)   The liability of the tenant may not exceed the amount due from the tenant to the tenant's landlord. The tenant's landlord shall provide the tenant a credit against rents due to the landlord in the amount of moneys paid to the association.

(d)   The association may issue notice under s. 83.56 and sue for eviction under ss. 83.59-83.625 as if the association were a landlord under part II of chapter 83 if the tenant fails to pay a required payment to the association after written demand has been made to the tenant. However, the association is not otherwise considered a landlord under chapter 83 and specifically has no obligations under s. 83.51.

(e)   The tenant does not, by virtue of payment of monetary obligations to the association, have any of the rights of a unit owner to vote in any election or to examine the books and records of the association.

(f)   A court may supersede the effect of this subsection by appointing a receiver.

History.—s. 1, ch. 76-222; s. 1, ch. 77-174; s. 9, ch. 77-221; s. 7, ch. 77-222; s. 6, ch. 78-328; s. 8, ch. 84-368; s. 12, ch. 90-151; s. 9, ch. 91-103; ss. 4, 5, ch. 91-426; s. 6, ch. 92-49; s. 10, ch. 94-350; s. 87, ch. 95-211; s. 856, ch. 97-102; s. 7, ch. 98-322; s. 33, ch. 99-6; s. 1, ch. 2000-201; s. 56, ch. 2000-302; s. 7, ch. 2003-14; s. 6, ch. 2007-80; s. 5, ch. 2008-240; s. 12, ch. 2010-174; s. 6, ch. 2011-196; s. 10, ch. 2014-133; s. 3, ch. 2014-146; s. 89, ch. 2015-2; s. 9, ch. 2015-97; s. 1, ch. 2017-93; s. 2, ch. 2021-91; s. 7, ch. 2022-269; s. 19, ch. 2023-203.

Copyright © 1995-2025 The Florida Legislature • Privacy Statement • Contact Us

# The 2024 Florida Statutes

**718.115 Common expenses and common surplus.—**

(1)(a) Common expenses include the expenses of the operation, maintenance, repair, replacement, or protection of the common elements and association property, costs of carrying out the powers and duties of the association, and any other expense, whether or not included in the foregoing, designated as common expense by this chapter, the declaration, the documents creating the association, or the bylaws. Common expenses also include reasonable transportation services, insurance for directors and officers, road maintenance and operation expenses, in-house communications, and security services, which are reasonably related to the general benefit of the unit owners even if such expenses do not attach to the common elements or property of the condominium. However, such common expenses must either have been services or items provided on or after the date control of the association is transferred from the developer to the unit owners or must be services or items provided for in the condominium documents or bylaws. Unless the manner of payment or allocation of expenses is otherwise addressed in the declaration of condominium, the expenses of any items or services required by any federal, state, or local governmental entity to be installed, maintained, or supplied to the condominium property by the association, including, but not limited to, firesafety equipment or water and sewer service where a master meter serves the condominium, shall be common expenses whether or not such items or services are specifically identified as common expenses in the declaration of condominium, articles of incorporation, or bylaws of the association.

(b) The common expenses of a condominium within a multicondominium are the common expenses directly attributable to the operation of that condominium. The common expenses of a multicondominium association do not include the common expenses directly attributable to the operation of any specific condominium or condominiums within the multicondominium. This paragraph is intended to clarify existing law and applies to associations existing on the effective date of this act.

(c) The common expenses of a multicondominium association may include categories of expenses related to the property or common elements within a specific condominium in the multicondominium if such property or common elements are areas in which all members of the multicondominium association have use rights or from which all members receive tangible economic benefits. Such common expenses of the association shall be identified in the declaration or bylaws as originally recorded or as amended under the procedures provided therein of each condominium within the multicondominium association. This paragraph is intended to clarify existing law and applies to associations existing on the effective date of this act.

(d) If provided in the declaration, the cost of communications services as defined in chapter 202, information services, or Internet services obtained pursuant to a bulk contract is a common expense. If the declaration does not provide for the cost of such services as a common expense, the board may enter into such a contract, and the cost of the service will be a common expense. The cost for the services under a bulk rate contract may be allocated on a per-unit basis rather than a percentage basis if the declaration provides for other than an equal sharing of common expenses, and any contract entered into before July 1, 1998, in which the cost of the service is not equally divided among all unit owners, may be changed by vote of a majority of the voting interests present at a regular or special meeting of the association, to allocate the cost equally among all units. The contract must be for at least 2 years.

1. Any contract made by the board on or after July 1, 1998, may be canceled by a majority of the voting interests present at the next regular or special meeting of the association. Any member may make a motion to cancel the contract, but if no motion is made or if such motion fails to obtain the required majority at the next regular or special meeting, whichever occurs first, following the making of the contract, such contract shall be deemed ratified for the term therein expressed.

2. Such contract must provide, and is deemed to provide if not expressly set forth, that any hearing-impaired or legally blind unit owner who does not occupy the unit with a non-hearing-impaired or sighted person, or any unit owner receiving supplemental security income under Title XVI of the Social Security Act or food assistance as administered by the Department of Children and Families pursuant to s. 414.31, may discontinue the cable or video service without incurring disconnect fees, penalties, or subsequent service charges, and, as to such units, the owners are not required to pay any common expenses charge related to such service. If fewer than all members of an association share the expenses of cable or video service, the expense shall be shared equally by all participating unit owners. The association may use the provisions of s. 718.116 to enforce payment of the shares of such costs by the unit owners receiving cable or video service.

(e)1. Except as provided in s. 718.113(5)(d), if the installation of hurricane protection is the responsibility of the unit owners pursuant to the declaration of condominium or a vote of the unit owners under s. 718.113(5), the cost of the installation of hurricane protection by the association is not a common expense and must be charged individually to the unit owners based on the cost of installation of hurricane protection appurtenant to the unit. The costs of installation of hurricane protection are enforceable as an assessment and may be collected in the manner provided under s. 718.116.

2. Notwithstanding s. 718.116(9), and regardless of whether the declaration requires the association or unit owners to install, maintain, repair, or replace hurricane protection, the owner of a unit in which hurricane protection that complies with the current applicable building code has been installed is excused from any assessment levied by the association or shall receive a credit if the same type of hurricane protection is installed by the association. A credit is applicable if the installation of hurricane protection is for all other units that do not have hurricane protection and the cost of such installation is funded by the association's budget, including the use of reserve funds. The credit must be equal to the amount that the unit owner would have been assessed to install the hurricane protection. However, such unit owner remains responsible for the pro rata share of expenses for hurricane protection installed on common elements and association property by the board pursuant to s. 718.113(5) and remains responsible for a pro rata share of the expense of the replacement, operation, repair, and maintenance of such hurricane protection. Expenses for the installation, replacement, operation, repair, or maintenance of hurricane protection on common elements and association property are common expenses.

(f) Common expenses include the costs of insurance acquired by the association under the authority of s. 718.111(11), including costs and contingent expenses required to participate in a self-insurance fund authorized and approved pursuant to s. 624.462.

(g) If any unpaid share of common expenses or assessments is extinguished by foreclosure of a superior lien or by a deed in lieu of foreclosure thereof, the unpaid share of common expenses or assessments are common expenses collectible from all the unit owners in the condominium in which the unit is located.

(2) Except as otherwise provided by this chapter, funds for payment of the common expenses of a condominium shall be collected by assessments against the units in that condominium in the proportions or percentages provided in that condominium's declaration. In a residential condominium, or mixed-use condominium created after January 1, 1996, each unit's share of the common expenses of the condominium and common surplus of the condominium shall be the same as the unit's appurtenant ownership interest in the common elements.

(3) Common surplus is owned by unit owners in the same shares as their ownership interest in the common elements.

(4)(a) Funds for payment of the common expenses of a condominium within a multicondominium shall be collected as provided in subsection (2). Common expenses of a multicondominium association shall be funded by assessments against all unit owners in the association in the proportion or percentage set forth in the declaration as required by s. 718.104(4)(h) or s. 718.110(12), as applicable.

(b)  In a multicondominium association, the total common surplus owned by a unit owner consists of that owner's share of the common surplus of the association plus that owner's share of the common surplus of the condominium in which the owner's unit is located, in the proportion or percentage set forth in the declaration as required by s. 718.104(4)(h) or s. 718.110(12), as applicable.

History.—s. 1, ch. 76-222; s. 1, ch. 77-174; s. 7, ch. 84-368; s. 1, ch. 88-148; s. 11, ch. 90-151; s. 8, ch. 91-103; s. 3, ch. 91-116; ss. 5, 8, ch. 91-426; s. 5, ch. 92-49; s. 9, ch. 94-350; s. 3, ch. 96-396; s. 4, ch. 98-322; s. 55, ch. 2000-302; s. 11, ch. 2002-27; s. 5, ch. 2007-80; s. 10, ch. 2008-28; s. 4, ch. 2008-240; s. 11, ch. 2010-174; s. 40, ch. 2010-209; s. 5, ch. 2013-188; s. 283, ch. 2014-19; s. 11, ch. 2024-244.

Copyright © 1995-2025 The Florida Legislature • Privacy Statement • Contact Us

THIS INSTRUMENT PREPARED BY:
BECKER & POLIAKOFF, P.A.
Carolyn C. Meadows, Esq.
1 East Broward Blvd., Suite 1700
Fort Lauderdale, FL 33301
Phone: (954) 985-4102
Fax: (954) 987-5940

### CLAIM OF LIEN FOR CONDOMINIUM ASSESSMENTS

STATE OF FLORIDA
COUNTY OF BROWARD

BEFORE ME, the undersigned notary public, personally appeared Carolyn C. Meadows, Authorized Agent of Buttonwood Bay Condominium Association, Inc., a Florida corporation, on behalf of the corporation. Affiant is (_x_) personally known to me and Affiant is the Authorized Agent of Buttonwood Bay Condominium Association, Inc., whose post office address is c/o Allied Property Group, 96000 Overseas Highway, Key Largo, FL, 33037-2131, and that pursuant to Section 718.116 of the Florida Statutes as well as the Declaration of Condominium of Buttonwood Bay 2 Condominium Association, Inc., said Association is owed the following amounts for shares of the common expenses:

| Description | Amount |
|---|---|
| Monthly Maintenance due 06/01/23 - 12/01/23 at $1,368.49 each | $ 9,579.43 |
| Monthly Maintenance due 1/1/24 - 11/1/24 at $1,384.09 each | $15,224.99 |
| Special Assessment due 3/1/24 - 11/1/24 at $296.91 each | $ 2,672.19 |
| Less payments | ( 2,786.98) |
| **TOTAL:** | $24,689.63 |

plus interest at the rate of 10% per annum from the due dates.

This Claim of Lien shall also secure all unpaid assessments, interest, costs, late charges and attorneys fees which are due and which may accrue subsequent to the date of this Claim of Lien and prior to entry of a final judgment of foreclosure.

The Lienor claims this lien on the following described property in Monroe County, Florida:

**Unit No. M-4 of Buttonwood Bay No. 7, a Condominium, according to the Declaration of Condominium recorded in Official Records Book 582, Page 803, and all exhibits and amendments thereof, Public Records of Monroe County, Florida.**

**A/K/A: 96000 Overseas Highway, Unit M4, Key Largo, FL 33037**

the current owner of which is **LIANSY C. CARBONELL, a single woman.**

The amount due to the Lienor remains outstanding as of November 5, 2024.

BUTTONWOOD BAY CONDOMINIUM
ASSOCIATION, INC.

Carolyn C. Meadows

BY: _____ (SEAL)
Carolyn C. Meadows, Authorized Agent

SWORN TO AND SUBSCRIBED before me by means of ☐ physical presence or ☒ online notarization this 5th day of November, 2024, by Carolyn C. Meadows, Authorized Agent.

_____ (SEAL)
NOTARY PUBLIC SIGNATURE
STATE OF FLORIDA AT LARGE

AYESHA RAWLINS
Notary Public, State of Florida
My Comm. Expires Feb 15, 2026
Commission No. HH 229420

Printed Name of Notary Public
My Commission Expires:

Notarial Act Performed by Audio visual communication

25726031v.1 B02391/423582

EXHIBIT D