UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                    Case No. 3:20-cr-86(S1)-TJC-JBT

JORGE PEREZ, ET AL.

**MOTION TO DISMISS OR STRIKE VERIFIED
PETITION OF VIVIAN PEREZ AS TRUSTEE OF
THE PEREZ FAMILY IRREVOCABLE TRUST**

The United States of America moves, pursuant to Federal Rule of Criminal Procedure 32.2(c)(1)(A), to dismiss or strike the verified petition filed by Vivian Perez, as successor Trustee of the Perez Family Irrevocable Trust. She contests the forfeiture of only two of the forfeited assets: (1) approximately $243,645.14 from the sale of the real property located at 13820 SW 142nd Avenue, Miami, Florida 33186 (the "SW 142 Avenue property") and (2) approximately $246,546.95 from the sale of a unit in the Buttonwood Bay condominium, located at 96000 Overseas Highway Unit No. W31, Key Largo, Florida (the "Buttonwood Bay" property) (collectively, the "Real Properties"), which were forfeited as substitute assets from her brothers, defendants Jorge and Ricardo Perez. The Court should dismiss or strike her petition without a hearing because she has not established that she has standing to contest the forfeiture of the Real Properties, nor has she stated a claim for relief in accordance with 21 U.S.C. § 853(n)(3). In support of its motion, the United States provides the following memorandum of law.

# MEMORANDUM OF LAW

I. **Background**

   A. **The Real Properties**

   1. Empower Investment Group, LLC ("EIG") was formed in early 2016 with three managers: defendants Ricardo and Jorge Perez and their father, Jorge E. Perez ("Perez Sr.").[1] Throughout their commission of the fraud scheme, Jorge and Ricardo Perez exercised dominion and control over EIG and its assets consistent with ownership.

   2. EIG purchased the Buttonwood Bay property on May 6, 2016. *See* Warranty Deed recorded on May 9, 2016 in the Official Records of Monroe County, Florida, Doc # 2074741, Bk # 2795, Pg# 1508, attached as **Exhibit A.**

   3. EIG purchased the SW 142nd Avenue property on September 15, 2016. *See* Warranty Deed recorded on September 22, 2016 in the Official Records of Miami-Dade County, Florida, CFN # 20160553580, Bk # 30240, Pg # 886, attached as **Exhibit B**.

   B. **Criminal Case**

   4. Jorge and Ricardo Perez were charged in the Superseding Indictment, in pertinent part, with conspiracy to commit health care and wire fraud in violation of 18 U.S.C. § 1349 (Count One); health care fraud in violation of 18 U.S.C. §§ 1347 and 2 (Counts Two through Six); and conspiracy to commit illegal monetary

---

[1] *See* Florida Department of State Division of Corporation business records, available at https://dos.fl.gov/sunbiz/search.

2

transactions in violation of 18 U.S.C. § 1956(h) (Count Eight). Doc. 180. The Superseding Indictment gave them notice that the United States would seek forfeiture of the proceeds that they obtained from the fraud as well as property involved in the money laundering, including the Real Properties. *Id.* at 28-39.

5. In December 2021, the United States, Jorge Perez, and his judgment creditor, Marshall Glade, Liquidating Trustee of the Campbellton-Graceville Hospital Liquidating Trust ("CGH Liquidating Trustee") agreed to the interlocutory sale of the Buttonwood Bay property.[2] The parties agreed that Jorge Perez's pre-trial sale of the property would maximize and preserve the value of the property, which was subject to a first mortgage lien in default. The parties further agreed that the net sale proceeds would be considered substitute *res* and would be held by the United States subject to agreement of the parties or court adjudication of the forfeiture.

6. EIG sold the Buttonwood Bay property on December 28, 2021, resulting in $246,546.95 in net proceeds. *See* Warranty Deed recorded in the Official Records of Monroe County, Florida on December 28, 2021, Doc # 2354476, Bk # 3145, Pg # 1363, attached as **Exhibit C**. Perez Sr. signed the deed on behalf of EIG.

---

[2] The CGH Liquidating Trustee was, at that time, pursuing proceedings supplementary in Monroe and Miami-Dade Counties to collect on a $5 million dollar judgment obtained against Jorge Perez and Empower H.I.S. in CGH's Chapter 11 bankruptcy case in the Northern District of Florida, *In re: Campbellton-Graceville Hospital Corporation*, Case No. 17-40185-KKS (Bankr. N.D. Fla.) (Bankruptcy Case). He sought the avoidance of certain fraudulent transfers of property and the appointment of a receiver to sell properties purchased with fraud proceeds, including the Real Properties.

7. On June 27, 2022, a jury found Jorge and Ricardo Perez guilty of Counts One through Six and Eight. Docs. 768, 769.

8. On December 15, 2023, the Court sentenced Jorge and Ricardo Perez, but deferred ruling on restitution and forfeiture. Docs. 1098, 1099.

9. On June 18, 2024, Jorge Perez, individually and on behalf of Empower H.I.S., entered into a settlement agreement in the Bankruptcy Case in which he agreed to pay $50,000 to the CGH Liquidating Trustee.[3]

10. Then, in October 2024, the United States, the CGH Liquidating Trustee, and EIG entered into an agreement to release $50,000 of the Buttonwood Bay proceeds to the CGH Liquidating Trustee, which the parties agreed would satisfy Jorge Perez's payment obligations under the June 18, 2024 settlement agreement. The parties also agreed that the payment would extinguish any claim that the CGH Liquidating Trustee had to any property subject to forfeiture. Vivian Perez signed the agreement as a Manager of EIG.[4]

11. On November 6, 2024, the Court entered a Preliminary Order of Forfeiture for Proceeds and for Direct and Substitute Assets (POF) against Jorge and Ricardo Perez (Doc. 1184) which was incorporated into their criminal judgments.

---

[3] In turn, the CGH Liquidating Trustee agreed to release and discharge Jorge Perez, Empower H.I.S., and EIG from all claims; dismiss the proceeding supplementary in Monroe and Miami-Dade Counties; and enter a satisfaction of the $5 million dollar bankruptcy judgment. *See* Bankruptcy Case, at Docs. 1465, Ex. A (Settlement Agreement); Doc. 1471 (Court approval).

[4] On July 17, 2024, EIG's Annual Report was amended to name Vivian Perez as a manager in addition to Ricardo Perez.

Docs. 1185, 1186. In relevant part, the POF provided that the defendants shall be liable for a $6,592,239.27 order of forfeiture, representing the proceeds they jointly obtained from the health care fraud and money laundering conspiracies. Doc. 1184 at 1. The Court also found that the United States was entitled to seek the forfeiture of any of the defendants' property as a substitute asset. *Id.* at 2. The Court ordered the forfeiture of EIG, the SW 142 Avenue property, and the Buttonwood Bay property sale proceeds as substitute assets. *Id.* at 2-3.[5]

12. Despite the pending forfeiture, Ricardo Perez and Vivian Perez, as managers of EIG, entered into a contract to sell the SW 142 Avenue property. Doc. 1228.

13. The United States agreed to allow the sale to take place provided the net proceeds of the sale were directed to the Government. Doc. 1228.

14. Ricardo and Vivian Perez, on behalf of EIG, sold the SW 142nd Avenue property on January 24, 2025. *See* Warranty Deed recorded in the Official Records of Miami-Dade County, Florida on January 29, 2025, CFN: 20250071679, Book 34596, Page 2590, attached as **Exhibit D**.

---

[5] The United States initially intended to seek the forfeiture of the Real Properties as direct assets. However, to simplify the contested restitution and forfeiture proceedings and in recognition that any financial penalty would be difficult to collect, the United States limited its tracing theory and pursued the forfeiture of the Real Properties as substitute assets, based on the position that the defendants were de-facto owners of the Real Properties and EIG was a mere nominee for the defendants. *See United States v. A Single Family Residence Located at 900 Rio Vista Blvd.*, 803 F.2d 625, 630 (11th Cir. 1986) (courts look beyond legal title to decide who has dominion and control of a Florida property when determining its true owner).

15. Thereafter, an amended POF was entered to reflect the forfeiture of the $243,645.14 in sale proceeds rather than the property itself. Doc. 1129.

### C. The Trustee's Petition

16. According to Vivian Perez's petition, the Perez Family Irrevocable Trust (the "Trust") was executed by Perez Sr. on November 28, 2018. Doc. 1221 at 15.

17. Thus, the Trust was created at a time when defendants were facing legal scrutiny and civil lawsuits for the fraudulent conduct that would form the basis for their criminal charges.[6]

18. Ricardo and Jorge Perez were the only named descendants of the Trust. Doc. 1221 at 15. Perez Sr. did not name his two other children, Vivian and Carlos, thereby disinheriting them.

19. Perez Sr. appointed Ricardo Perez as Trustee, with Jorge Perez to serve as a successor Trustee if needed. Doc. 1221 at 15, 17.

20. Vivian Perez alleges that she became the successor Trustee on March 13, 2024 – three months after Ricardo Perez was sentenced, and when contested forfeiture negotiations were underway. *Id.* at 46-47.

---

[6] *See, e.g.,* Press Release, The Office of Missouri State Auditor, *Auditor Galloway uncovers evidence of $90 million billing scheme at Putnam County Memorial Hospital* (August 9, 2017), available at https://auditor.mo.gov/news/item/auditor-galloway-uncovers-evidence-90-million-billing-scheme-putnam-county-memorial (last visited May 16, 2025); *see also Shaffer v. Health Acquisition Company LLC et al.*, Case No. 4:18-cv-00601-NKL (W.D. Mo.); *Rightchoice Managed Care, Inc. et al v. Hospital Partners, Inc. et al.*, Case No. 5:18-cv-6037 (W.D. Mo.).

6

21.     Vivian Perez claims that she, as Trustee, has a right, title, or interest in the Real Properties because EIG is trust property, and therefore, the Real Properties are also trust property. *Id.* at 7-8.

22.     She also claims that, when EIG purchased the Real Properties, Perez Sr. was the sole EIG shareholder and that Jorge Perez did not own EIG or the Real Properties. *Id.* But Vivian Perez did not assert a claim to EIG. *See id.* at 3, 7-8.

23.     Nor does she make clear that her father, Perez Sr., died in February 2023. Doc. 1073 at ¶ 81.

24.     Pursuant to the terms of the Trust, the defendants, having survived their father, are the sole beneficiaries of the Trust. Doc. 1221 at 15.

25.     In effect, Vivian Perez claims that Perez Sr. bequeathed the Real Properties—which were purchased with funds obtained during the commission of the health care fraud conspiracy—solely to the defendants, seemingly confirming the defendants' dominion and control over the Real Properties.

## II.     Legal Argument

### A.     Overview of the Criminal Ancillary Forfeiture Proceeding

The ancillary proceeding, which is governed by 21 U.S.C. § 853 and Federal Rule of Criminal Procedure 32.2, provides a procedure where third parties who claim their property interests have been forfeited may challenge the validity of the forfeiture order and establish their legitimate ownership interest. *See United States v. Marion*, 562 F.3d 1330, 1336 (11th Cir. 2009). The only issue to resolve in an

ancillary forfeiture proceeding is the ownership of the property ordered forfeited in the criminal case. *United States v. Gilbert*, 244 F.3d 888, 911 (11th Cir. 2001).

### B. Standing

The petitioner must establish both Article III and statutory standing to contest the forfeiture. *Via Mat Int'l S. Am. Ltd. v. United States*, 446 F.3d 1258, 1262-63 (11th Cir. 2006); *United States v. $38,000.00 in United States Currency*, 816 F.2d 1538, 1543, 1545 (11th Cir. 1987). A petitioner's Article III standing is a threshold issue for the Court to determine in every forfeiture proceeding, as it determines the power of the Court to entertain the petition. *See Via Mat Int'l S. Am. Ltd.*, 446 F.3d at 1262-63. "At the heart of Article III standing is the existence of an injury, not ownership." *Id.* The petitioner must have suffered an injury in fact; that is, an invasion of a legally protected interest which is concrete and particularized, and actual or imminent, and not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). There must also be a causal connection between the alleged injury and the forfeiture, and it must be likely that a favorable decision of the court would redress the injury. *See id.* at 560-61. A petitioner need not own the property to have standing to contest its forfeiture; a lesser property interest, such as a possessory interest, is sufficient. *See Via Mat Int'l S. Am. Ltd.*, 446 F.3d at 1262-63.

Unlike Article III standing, statutory standing does not ask whether there is a redressable injury, but instead, whether the petitioner has a cause of action under 21 U.S.C. § 853(n)(2). *United States v. Sanchez*, No. 22-11923, 2023 WL 5844958, at *4

8

(11th Cir. Sept. 11, 2023). Section 853(n)(2) states that only those asserting "a *legal interest* in property which has been ordered forfeited to the United States" may petition the court for a hearing in an ancillary proceeding to adjudicate the validity of the alleged interest. 21 U.S.C. § 853(n)(2) (emphasis added). Importantly, a "legal interest" only encompasses "legally protected rights, not equitable rights." *United States v. Timley*, 507 F.3d 1125, 1129 (8th Cir. 2007).

### C. Pleading Requirements

To assert a claim in the ancillary proceeding, a third party must file a timely petition for a hearing to adjudicate the validity of their alleged interest, signed under penalty of perjury. 21 U.S.C. § 853(n)(2)-(3). As the ancillary proceeding is civil in nature, the Federal Rules of Civil Procedure apply. *See United States v. Amodeo*, 916 F.3d 967, 972 (11th Cir. 2019). Accordingly, a petitioner "under § 853(n), must plead 'enough facts to state a claim to relief that is plausible on its face.'" *See United States v. Catala*, 870 F.3d 6, 9 (1st Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Section 853(n)(3) requires the petitioner to set forth:

> [T]he nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought.

21 U.S.C. § 853(n)(3).

Federal courts require strict compliance with these pleading requirements. *See, e.g., United States v. Avila-Torres*, Case No. 17-20148-Cr-Scola, 2019 WL 2177342, at *4 (S.D. Fla. May 20, 2019). Indeed, it is "vital" to apply these pleading standards

9

"in light of the substantial risk of false claims historically associated with forfeiture proceedings." *United States v. Yu*, Case No. 6:16-CR-0023-ORL-37GJK, 2016 WL 4803195, at *1 (M.D. Fla. Sept. 13, 2016).

### D. Grounds for Dismissal

A court may dismiss a third-party petition without holding a hearing "for lack of standing, for failure to state a claim, or for any other lawful reason." Fed. R. Crim. P. 32.2(c)(1)(A). Thus, a motion to dismiss a third-party petition should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b). *See Marion*, 562 F.3d at 1342.[7] A court also has discretion to strike deficient claims pursuant to Federal Rule of Civil Procedure 12(f). *See United States v. King*, No. 3:06-CR-212-J-33MCR, 2009 WL 2525560, at *2 (M.D. Fla. Aug. 17, 2009). At the motion to dismiss stage, the court must assume that the facts set forth in a petition are true. Fed. R. Crim. P. 32.2(c)(1)(A); *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).

As Rule 32.2 contemplates, the Court is not required to allow time for discovery, or hold a hearing, prior to ruling on the United States' motion to dismiss. *See United States v. Salti*, 579 F.3d 656, 664 (6th Cir. 2009). As a result, courts in this district routinely dismiss third-party petitions for lack of standing or failure to

---

[7] A motion to dismiss based on lack of Article III standing should be evaluated under Rule 12(b)(1). *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Svs., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). A motion to dismiss for lack of statutory standing, however, should be evaluated under Rule 12(b)(6). *See Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1274 n. 6 (11th Cir. 2018).

state a claim without holding a hearing. *See, e.g.*, *United States v. Hassan*, 411 F. Supp. 3d 1302, 1307 (M.D. Fla. 2019) (court may dismiss any third-party petition that fails to meet the pleading requirements without holding a hearing); *United States v. Lima*, No. 8:09-cr-377-T-17TBM, 2011 WL 5525339, at *2 (M.D. Fla. Oct. 19, 2011) ("A hearing is not required prior to ruling on a motion to dismiss where the third party fails to allege any legal right, title, or interest in the forfeited property"), *r. & r. adopted*, 2011 WL 5525354 (M.D. Fla. Nov. 14, 2011).

When evaluating a third-party petition, the Court should look to the law that created the alleged property right—in this case, Florida law— to determine the nature of a petitioner's interest in the property. *See United States v. Shefton*, 548 F.3d 1360, 1364 (11th Cir. 2008) (citing *United States v. Fleet*, 498 F.3d 1225, 1231 (11th Cir. 2007)). If the petitioner has no legal interest in property, "the inquiry ends, and the claim fails for lack of standing." *United States v. Lee*, 748 F. Supp. 3d 1142, 1152 (M.D. Fla. 2024) (quoting *Timley*, 507 F.3d at 1130) (internal quotations omitted). However, if the petitioner has alleged an interest in property under such law, federal law will determine whether the petitioner's alleged interest meets the grounds for relief under section 853(n). *See Shefton*, 548 F.3d at 1364 (citing *Fleet*, 498 F.3d at 1231).

### E. Grounds for Relief in the Ancillary Proceeding

Federal law provides only two avenues of relief for third parties seeking to establish their interest in criminally forfeited property. *United States v. Kennedy*, 201

11

F.3d 1324, 1328, 1334 (11th Cir. 2000). Under section 853(n)(6), a petitioner must either prove, by the preponderance of the evidence: "(1) at the time of the acts giving rise to the forfeiture of the subject property, she held some interest in the property superior to the interest of the defendant, *see* 21 U.S.C. § 853(n)(6)(A); or (2) she was a bona fide purchaser for value who purchased an interest in the subject property without cause to believe that the property was subject to forfeiture. *See* 21 U.S.C. § 853(n)(6)(B)." *United States v. Soreide*, 461 F.3d 1351, 1354–55 (11th Cir. 2006). There is no "innocent owner" defense for petitioners in criminal forfeiture proceedings. *Id.* at 1354. Likewise, there is also no "special equity provision" in section 853(n)(6). *Kennedy*, 201 F.3d at 1334. If, and only if, the petitioner can establish that she falls into one of these two limited avenues of relief, may the Court enter a final order of forfeiture that amends the preliminary order of forfeiture in accordance with its determination. *See* 21 U.S.C. § 853(n)(6); *United States v. Watkins*, 320 F.3d 1279, 1282 (11th Cir. 2003).

   **F.** **The Petition Must Be Dismissed Because Vivian Perez, as Trustee, Does Not Have Standing to Contest the Forfeiture of the Real Properties**

As set forth below, Vivian Perez's petition should be dismissed because she has not alleged an interest in the Real Properties sufficient to establish Article III and statutory standing. The Trust does not own the Real Properties.

### *i.* The Trustee Did Not Hold Legal Title to the Real Properties

Vivian Perez claims that the Real Properties were Trust property, but she has not demonstrated when and how the Trustee assumed legal title consistent with Florida law. **EIG** was the titled owner of the Real Properties upon their purchase in 2016 and remained the titled owner until *it* sold them to third parties. Ex. A-D. But Vivian Perez has not asserted a claim on behalf of EIG, and the time to do so has expired.[8] Instead, she made a claim to the Real Properties on behalf of the Trust. Thus, this Court must evaluate her interest in the property as Trustee, and not any interest that EIG may have.

In Florida, it is presumed that the person whose name appears on a legal title is the property's owner. *U.S. v. Hovind*, No. 3:06-cr-83/MCR, 2009 WL 2369340, at *4 (N.D. Fla. July 29, 2009) (citing *Hagopian v. Zimmer*, 653 So.2d 474, 475 (Fla. 3d DCA 1995)). No deeds or other instruments of conveyance recorded in the public record—including the deeds attached to her petition – suggest that the Real Properties were ever property of the Trust.[9] And Vivian Perez has not alleged that such a deed exists. Nor has she offered any facts to suggest that the forfeiture of the

---

[8] The failure to file a petition within the mandatory 30-day period set forth in 21 U.S.C. § 853(n)(2) extinguishes a third-party's interests. *Marion*, 562 F.3d at 1336-37, 1339 (citing 21 U.S.C. § 853(n)(7) and Fed. R. Crim. P. 32.2(c)(2)).

[9] This Court is permitted to consider extraneous information beyond the four corners of the petition when evaluating its jurisdiction to hear the petition. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990) (when resolving a motion to dismiss under Rule 12(b)(1), the court is permitted to examine evidence outside the pleadings).

Real Properties would invade some other legally protected interest of the Trust that is actual and concrete and not merely conjectural. *See, e.g.*, *Lujan*, 504 U.S. at 560.

> ii. *The Trust Does Not Demonstrate a Legally Protected Interest in the Real Properties*

To be sure, the Trust itself does not establish any legally protected interest in the Real Properties. Florida law allows a trust to be created by transfer of property to another person as trustee, by the owner of property declaring that the owner holds identifiable property as trustee, or by the exercise of a power of appointment in favor of a trustee. Fla. Stat. § 736.0401. In some cases, a trustee may be able to transfer assets to a trust by using the trust instrument itself as the document of conveyance. *See Johnson v. Johnson*, 845 So. 2d 217, 220 (Fla. 2d DCA 2003) (trust may be an effective conveyance despite no accompanying deed where schedule attached to trust described real property and trust declared that property listed in schedule was delivered to trustee).

However, to convey a real property interest to a trustee, the conveyance must conform to the traditional deed requirements under Florida law, which requires an "instrument, in writing, signed in the presence of two subscribing witnesses by the party conveying the property." *See* Fla. Stat. § 689.01(1); *Brevard Cnty. v. Ramsey*, 658 So. 2d 1190, 1194 (Fla. 5th DCA 1995) ("If a settlor attempts to transfer real property to a trustee, the requirements of section 689.06 apply."); *see also Flinn v. Van Devere*, 502 So. 2d 454, 455 (Fla. 3d DCA 1986) (trust and attached schedule did not

14

constitute a conveyance of real property because the settlor did not also execute a deed conveying real property to the trustees).

Moreover, for a conveyance of real property to be valid, a deed or other instrument "must describe the property such that it is evident that a particular parcel, and not a different or unspecified one, is to be conveyed." *Mendelson v. Great Western Bank*, F.S.B., 712 So. 2d 1194, 1196 (Fla. 2d DCA 1998). In this case, the Trust instrument cannot satisfy these requirements – the Trust does not even mention the Real Properties, much less attempt to convey them.

To the contrary, the Trust itself proves Vivian Perez's claim untenable. It states that title to real property "will not vest in any Trustee . . . until the Trustee[] executes a written instrument accepting title to those assets." Doc. 1221 at 28. Until the Trustee accepts title to such an asset, "the Trustees will have no fiduciary duty with respect to that asset." *Id.*[10]

### iii. Even if the Trust Owns EIG, the Trustee Lacks Standing to Contest the Forfeiture of the Real Properties

Vivian Perez suggests that because EIG is Trust property, EIG's assets are also Trust property. Not so. First, nothing in her petition provides any factual detail regarding when Perez Sr. ever conveyed his purported interest in *EIG* to the

---

[10] The synopsis of the Trust, Article 2, also clearly states that "assets may be transferred into the Trust only by formal transfer of legal title to the Trustees." and "[l]isting assets on Schedule A does not cause those assets to be transferred to the Trust." Doc. 1221 at 10.

Trustee.[11] The petition only reflects that Perez Sr. intended to transfer a 99% interest in a limited liability limited partnership (LLLP), Empower Capital Group LLLP, to be held in Trust, and that he intended to assign his 100% interest in EIG to Empower Capital Group LLLP.

Florida Department of State business records show Empower Capital Group LLLP was formed by Empower Capital Management, LLC, of which Perez Sr. was the sole manager. It is unclear if the Trustee became a partner of Empower Capital Group LLLP by virtue of the Trust instrument.[12] Accepting for argument's sake that she did, she would only own a personal property interest in the partnership, and would not own the partnership's purported assets, including EIG. *See* Fla. Stat. § 620.8203 ("Property acquired by a partnership is property of the partnership and not of the partners individually."); *Buchman v. Canard*, 926 So. 2d 390, 392 (Fla. 3d DCA 2005) (property acquired by a partnership is property of the partnership, and is not owned by the individual partner such that partner could claim a homestead interest).

---

[11] Nor is the United States aware of any other facts demonstrating the Trust's ownership of EIG. The Trust provides that, once Perez Sr. transfers assets to the Trust, the transfer cannot be undone or revert back to him. Doc. 1221 at 15. And yet, Perez Sr. continued to hold himself out as the "sole member" of EIG well past the creation of the Trust. *See, e.g.*, Ex. C.

[12] The Trust directs the Trustee to "determine whether the effecting of any measures with respect to any partnership interests would be of benefit to the beneficiaries of the Trust or of my estate." *See* Doc. 1221 at 31. And, "[i]f it is determined that one or more measures should be effected, the Trustees shall take such actions as are required to effect these measures," including, but not limited to, "the continuation of the Trust as a partner in any of the partnerships." *Id.* No facts are offered to show efforts by the Trustee to continue as partner in Empower Capital Group LLLP.

16

Likewise, even if Vivian Perez, in her capacity as Trustee, was a member of EIG,[13] this would only mean that she holds a personal property interest in EIG – *i.e.*, EIG company shares. *See Olmstead v. F.T.C.*, 44 So.3d 76, 80 (Fla. 2010) (a member's ownership interest in an LLC is personal property reasonably understood to fall within the scope of corporate stock). She would not hold legal title to EIG's assets, because a corporate entity is separate from its members. *See, e.g., Ezeamama v. Estate of Chibugo*, 390 So.3d 189, 191 (Fla. 3d DCA 2024). A member of a LLC does not have a legal interest in the assets of the company, even in the case of a single-member LLC. *See* Fla. Stat. § 605.0110(4) ("A member of a limited liability company has no interest in any specific limited liability company property"); *see also Ezeamama*, 390 So.3d at 191 (assets owned by a single-member LLC are not assets belonging to the member's estate); *BankAtlantic v. Estate of Glatzer*, 61 So. 3d 1222, 1223 (Fla. 3d DCA 2011) (while Estate entitled to take possession of professional association stock held by doctor upon death, no such conclusion extended to the association's bank account funds which were "one step removed" from the Estate).

Indeed, in applying Florida law, the Second Circuit in *United States v. Swartz Fam. Tr.*, 67 F.4th 505 (2d Cir. 2023) determined that a third-party petitioner that owned 35% of LLC, which, in turn, owned a franchised chain of sandwich shops that was forfeited, lacked a legal interest in the franchise necessary for standing to

---

[13] By her own admission, Vivian Perez is not a member of EIG in her capacity as Trustee or otherwise. She states in her petition that she is a manager of EIG, and that Perez Sr. was the only shareholder. Doc. 1221 at 7.

17

pursue its claim, because a member of an LLC has no legal interest in the assets belonging to the LLC. *Id.* at 516-17. As alleged by the Trustee in this case, the petitioner there was "merely a shareholder at least two corporate levels removed from any legal interest in the Asset." *Id.* at 516.

    **C.**    **The Trustee Has Failed to Comply with 21 U.S.C. § 853(n)(3)'s Pleading Requirements**

Vivian Perez's petition should also be dismissed for failure to comply with the pleading requirements of 21 U.S.C. § 853(n)(3) and state a claim for relief. To survive dismissal, a petitioner must allege enough detail about the nature and extent of her interest, and the time and circumstances of her acquisition of that interest, to allow the Court to determine whether the petition merits a hearing. *Hassan*, 411 F. Supp. 3d at 1308.

Vivian Perez makes a bald, unsupported claim of ownership: "[t]he Trust owns Empower Investment Group, LLC, and therefore the properties owned by Empower Investment Group, LLC." Doc. 1221 at 7. She was required to offer more than these conclusory allegations to state a claim under 21 U.S.C. § 853(n). *Hassan*, 411 F. Supp. 3d at 1308-09 (dismissing third-party petition pursuant to 21 U.S.C. § 853(n)(3) where petitioner only alleged that she had a marital interest in the property and that she holds the interest as a "tenant by the entirety," but made no mention of the extent of her interest and the time and circumstances of her acquisition of her right, title, or interest in the property); *Lima*, 2011 WL 5525339, at *2-3 (dismissing third-party petition for failure to state a claim to forfeited 401(k) funds under 21

18

U.S.C. § 853(n)(3) where petition only contained conclusory allegations that the assets were "marital assets" and "joint property" by reason of petitioner and her children being listed as beneficiaries).

While her petition also includes documents, they do not explain when and how the Real Properties were conveyed to the Trustee, or how the Trustee (and not EIG, or the defendants individually) exercised dominion and control over the Real Properties. Compliance with the pleading requirements is especially necessary here, where the defendants directed funds to EIG during the conspiracy, directed the sales of the Real Properties during this case, and have otherwise held themselves out to be the true owners.

Finally, Vivian Perez appears to base her petition on 21 U.S.C. § 853(n)(6)(B) and asserts that, when the Real Properties were purchased, EIG was a "bona fide purchaser for value." However, Vivian Perez is pursuing her petition on behalf of the Trust, and not EIG. She has not set forth any plausible facts for how she, as Trustee, may be entitled to relief under either avenue of relief in 21 U.S.C. § 853(n)(6). Because she has failed to allege a legal interest in the property, and failed to state a claim in accordance with the pleading requirements of section 853(n)(3), a hearing is unnecessary. *See, e.g., Hassan*, 411 F. Supp. 3d at 1310.

### III. Conclusion

Vivian Perez, as successor Trustee of the Perez Family Irrevocable Trust, lacks standing to contest the forfeiture of the Real Properties pursuant to Rule 32.2(c)(1)(A), 21 U.S.C. § 853(n)(2), and Article III of the U.S. Constitution.

Moreover, her petition does not state a claim for relief in accord with the pleading requirements of 21 U.S.C.§ 853(n)(3). Thus, the United States respectfully requests that the Court dismiss and/or strike her petition for lack of standing and for failure to state a claim, without holding a hearing.

        Respectfully Submitted,

        GREGORY H. KEHOE
        United States Attorney

By:    *s/James A. Muench*
       JAMES A. MUENCH
       Assistant United States Attorney
       Florida Bar Number 472867
       400 North Tampa Street, Suite 3200
       Tampa, Florida 33602
       (813) 274-6000 – telephone
       E-mail: james.muench2@usdoj.gov

       *s/Anita M. Cream*
       ANITA M. CREAM
       Assistant United States Attorney
       Florida Bar Number 56359

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system that will send a notice of electronic filing to counsel of record.

       *s/James A. Muench*
       JAMES A. MUENCH
       Assistant United States Attorney